UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EDWARD LEWIS TOBINICK M.D., A
MEDICAL CORPORATION d/b/a THE
INSTITUTE OF NEUROLOGICAL
RECOVERY, a California Medical Corporation;
INR PLLC d/b/a INSTITUTE OF
NEUROLOGICAL RECOVERY, a Florida
professional limited liability company; and
EDWARD TOBINICK, M.D., an individual,

**CASE NO.  14-CIV-80781-WJZ**

        Plaintiffs,

v.

STEVEN NOVELLA, M.D., an individual;
YALE UNIVERSITY, a Connecticut corporation;
SGU PRODUCTIONS, LLC, a Connecticut
limited liability company; and SOCIETY FOR
SCIENCE-BASED MEDICINE, INC., a Florida
corporation,

        Defendants.
_____/

## AMENDED COMPLAINT

Plaintiffs, EDWARD LEWIS TOBINICK M.D, A MEDICAL CORPORATION d/b/a

THE INSTITUTE OF NEUROLOGICAL RECOVERY, a California Medical Corporation ("the

Institute");   INR PLLC d/b/a INSTITUTE OF NEUROLOGICAL RECOVERY, a Florida

professional limited liability company (collectively with the Institute, "the INR Plaintiffs"); and

EDWARD TOBINICK, M.D. ("Tobinick"), through undersigned counsel, hereby amend their

Complaint pursuant to Rule 15(a)(1)(B) and sue Defendants, STEVEN NOVELLA, M.D. an

individual ("Novella"); YALE UNIVERSITY, a Connecticut corporation ("YALE"); SGU

PRODUCTIONS, LLC, a Connecticut limited liability company ("SGU"); and SOCIETY FOR

SCIENCE-BASED MEDICINE, INC., a Florida corporation ("SBM") (collectively with

Novella, Yale and SGU, "Defendants"), and in support, state as follows:

## NATURE OF ACTION

1.      This is a civil action for, among other things, injunctive relief and damages in excess of $75,000.00, exclusive of interest and costs.  This civil action concerns violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

## THE PARTIES

2.      Plaintiff EDWARD LEWIS TOBINICK M.D, A MEDICAL CORPORATION d/b/a THE INSTITUTE OF NEUROLOGICAL RECOVERY is a medical corporation organized under the laws of the State of California, with its principal place of business in Los Angeles County, California.

3.      Plaintiff INR PLLC is a corporation organized under the laws of the State of Florida, with its principal place of business in Palm Beach County, Florida.

4.      Plaintiff TOBINICK resides in Palm Beach County, Florida, is over the age of eighteen, and is otherwise *sui juris*.

5.      Defendant NOVELLA resides in the State of Connecticut, is over the age of eighteen, and is otherwise *sui juris*.

6.      Defendant YALE is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Connecticut.

7.      Defendant SGU is a corporation organized under the laws of the State of Connecticut, with its principal place of business in Connecticut.

8.      Defendant SBM is a corporation organized under the laws of the State of Florida, with its principal place of business in Leon County, Florida.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121 because this action arises under the trademark laws of the United States (15 U.S.C. §1051 et. seq.)

10.     Defendants are doing business in this district and are transacting business in this district by committing the complained of tortious acts within this district.  By reason of the foregoing acts of Defendants, in personam jurisdiction exists over the Defendants.

11.     Defendants have committed the complained of tortious acts in commerce which may lawfully be regulated by Congress.  Defendants' complained of activities have affected and damaged Plaintiffs' interstate business which is located within this District.  Venue is proper in this District as to Defendants pursuant to 28 U.S.C. §1391 (b)(2) and (c)(2).

12.     By way of example, Defendant NOVELLA is subject to the personal  jurisdiction of this Court by virtue of the following non-exhaustive factors:

      a.      Committing a tortious act by publishing false and defamatory statements on a website that was and is both accessible in this District and accessed in this District;

      b.      Committing a tortuous act by publishing false and defamatory statements while operating, conducting, engaging in, or carrying on a business in the State of Florida;

        i.      More particularly, NOVELLA is a director of SBM;

        ii.     As shown on SBM's annual report filed March 10, 2014 with the Florida Department of State, Division of Corporations, NOVELLA maintains a business address in the State of Florida for his role as a

director of SBM;

    iii.    NOVELLA'S publication of false and defamatory statements was and continues to be done in furtherance of his business with SBM;

c.    Conducting systematic and continuous business within the State of Florida;

    i.    More particularly, NOVELLA maintains a business, SBM, in Florida;

    ii.    NOVELLA publishes regular articles on websites that are accessible to and accessed in this District;

    iii.    NOVELLA broadcasts a weekly podcast which is broadcast and listened to in this District; and,

    iv.    NOVELLA makes his books and other items available for purchase in this District.

13.    Similarly, Defendant YALE is subject to the personal jurisdiction of this Court by virtue of the following non-exhaustive factors:

a.    Committing a tortious act by publishing false and defamatory statements on a website that was and is both accessible in this District and accessed in this District;

b.    Conducting systematic and continuous business within the State of Florida;

    i.    More particularly, YALE is the Sponsor of clinical trials that recruit and study subjects (patients) in this District;

    ii.    YALE receives substantial income related to its clinical trial

activities in this District

iii.    YALE  conducts fundraising activities in this District;

iv.    YALE regularly recruits students in this District;

v.    YALE regularly recruit athletes in this District;

vi.    YALE regularly participates in speaking engagements in this District;

vii.    YALE maintains a website that is accessible to and accessed in this District; and,

viii.    YALE sells books and other merchandise in this District.

14.    Similarly, Defendant SGU is subject to the personal  jurisdiction of this Court by virtue of the following non-exhaustive factors:

a.    Committing a tortious act by publishing false and defamatory statements on a website that was and is both accessible in this District and accessed in this District;

b.    Conducting systematic and continuous business within the State of Florida;

i.    SGU maintains an interactive website that is accessible to and accessed in this District;

ii.    On its website, SGU sells merchandise that is made available for sale to residents in this District.

15.    Likewise, Defendant SBM is subject to the personal  jurisdiction of this Court by virtue of the following non-exhaustive factors:

a.    Committing a tortious act by publishing false and defamatory statements

on a website that was and is both accessible in this District and accessed in this District;

b.   Committing a tortuous act by publishing false and defamatory statements while operating, conducting, engaging in, or carrying on a business in the State of Florida and by conducting systematic and continuous business within the State of Florida;

i.   More particularly, SBM is a Florida Corporation which conducts business in Florida and maintains a registered agent in this District;

ii.   The business purpose of SBM is to bring harm to medical practitioners who practice medicine in a way SBM does not agree with (as set forth on SBM'S webpage, its mission is, "Educating consumers, professionals, business people, legislators, law enforcement personnel, organizations and agencies about Science-Based Medicine," while asserting that, "People should not suffer, die and lose hope, time and money due to pseudo-medicine").

iii.   In carrying out its mission, SBM has published false and defamatory statements about Plaintiffs and caused harm to Plaintiffs in this District;

## GENERAL ALLEGATIONS

16.   The INR Plaintiffs provide medical services to selected patients with unmet medical needs.

17.   In pertinent part to the relief requested in this action, the INR Plaintiffs provide commercial medical treatment for internal medicine patients with certain neurological disorders,

including patients with chronic neurological dysfunction after stroke and traumatic brain injury; patients with Alzheimer's disease; and patients with intractable disc-related pain syndromes, including patients with intractable sciatica and patients with intractable headaches related to disc-related pain. In particular, the INR Plaintiffs provide internal medicine patients with intractable neurological disorders, including intractable post-stroke spasticity and intractable post-stroke pain, and including those with additional neurological disorders, with certain of its patented perispinal etanercept treatments.

18.     In direct competition with the INR Plaintiffs, NOVELLA and YALE also provide commercial medical treatment for patients with neurological disorders, including patients with post-stroke neurological dysfunction, post-stroke spasticity, intractable headaches, disc-related pain and sciatica, and patients with Alzheimer's disease.

19.     The treatment methods provided by the INR Plaintiffs differ from the treatments methods provided by NOVELLA and YALE.

20.     More specifically, the INR Plaintiffs utilize etanercept delivered by perispinal administration for treatment of patients after stroke, including for treatment of post-stroke spasticity.

21.     NOVELLA is part of the Yale Botulinum Program, a Program that uses Botox® for treatment of post-stroke spasticity and for treatment of patients with intractable headaches.

22.     Further, NOVELLA publishes articles regularly, broadcasts a weekly podcast and generally promotes himself as a "Skeptic" who challenges medical practices he disagrees with.

23.     In his role as a Skeptic, NOVELLA sells books, t-shirts, key chains, profits from personal appearances, and conducts fundraising activities.

24.     In violation of the Lanham Act, NOVELLA has and continues to publish a false

advertisement disparaging Plaintiffs entitled "Enbrel for Stroke and Alzheimer's", (the "Advertisement") and implying that the INR Plaintiffs' use of etanercept is ineffective and useless. A copy of the Advertisement is attached hereto as Exhibit "1".

25.     In promoting his own interests as both a competitor of Plaintiffs and as a Skeptic, NOVELLA published known falsehoods in the Advertisement about Plaintiffs' and their services.

26.     Likewise, YALE, SGU and SBM have directly made and/or continue to publish the Advertisement by linking to the website www.sciencebasedmedicine.org on which the advertisement resides, or publishing it on their own websites or otherwise promoting it.

27.     Further, YALE has an interest in promoting its faculty and associated physicians such as NOVELLA for its own financial and reputational benefit.

28.     In its publication of the Advertisement through its promotion of NOVELLA, YALE has published known falsehoods in the Advertisement about Plaintiffs' and their services for the promotion of their own interests.

29.     SGU is an entity controlled by NOVELLA which sells merchandise and conducts fundraising activities.

30.     By publishing the Article on its website, SGU promoted its own interests while publishing known falsehoods about Plaintiffs' and their services.

31.     A business purpose of SBM is to bring harm to medical practitioners who practice medicine in a way that SBM does not agree with.

32.     Specifically, SBM states on its webpage that its mission is, "Educating consumers, professionals, business people, legislators, law enforcement personnel, organizations and agencies about Science-Based Medicine," while asserting that, "People should not suffer, die

and lose hope, time and money due to pseudo-medicine".

33.     SBM published known falsehoods in the Advertisement about Plaintiffs' and their services for the promotion of their own interests.

34.     In addition to constituting a false advertisement, the Advertisement also tarnishes the federally registered trademarks of the INR Plaintiffs. "Institute of Neurological Recovery" is a registered trademark owned by INR PLLC, and "INR" is a registered trademark owned by the Institute.

35.     Despite the assertions in the Advertisement, however, the fact is that the INR Plaintiffs have had great success in treating their patients with etancercept after stroke.

36.     Further, substantial scientific evidence suggests that etanercept has utility for a variety of neuroinflammatory conditions, including for medical treatment after stroke.

37.     Etanercept works by blocking the effects of excess amounts of a protein called TNF.

38.     TNF is an immune signaling molecule that is centrally involved in the initiation and amplification of the inflammatory response.

39.     Blocking TNF reduces inflammation.

40.     TNF-mediated inflammation is not limited to the joints.

41.     TNF-mediated inflammation also occurs in the skin, the gastrointestinal tract, the eyes, and the brain, spinal cord, and spinal nerve roots.

42.     TNF-mediated inflammation is a generalized phenomenon that may occur in every organ system.

43.     Etanercept has been established to be useful for a wide variety of inflammatory disorders in multiple organ systems.

44.     The evidence-based use of etanercept for selected neuroinflammatory indications is supported by current best evidence, including not only the peer-reviewed Scientific Publications of the INR Plaintiffs' physicians and their colleagues, but also the peer-reviewed publications of independent academic scientists.

45.     In fact, as of May 2014, there is substantial scientific evidence in both the basic science and clinical medical literature that suggests the potential utility of etanercept for a variety of neurological disorders.

46.     There are multiple scientific studies that have specifically tested etanercept in animals and humans.

47.     Over the course of more than a decade, the INR Plaintiffs' physicians and their colleagues have published a series of peer-reviewed publications that have helped illuminate the role of immune mechanisms in the pathogenesis of a variety of neuroinflammatory disorders. In particular, these publications have provided new insight into the role of excess TNF in brain disorders and neuropathic pain.

48.     The INR Plaintiffs' scientific findings have been published in multiple, peer-reviewed medical articles, including articles published in the journals Expert Review of Neurotherapeutics, CNS Drugs, BMC Neurology, Current Alzheimer Research, Clinical Therapeutics, Drug Discovery Today, and Current Medical Research and Opinion.

49.     There have been citations to the INR Plaintiffs' publications by hundreds of academic scientists from around the world, including in *Nature Clinical Practice Neurology* and *F1000 Biology*.

50.     TOBINICK is one of the physicians at, and is the founder of, the INR Plaintiffs. He graduated Phi Beta Kappa and Magna Cum Laude with honors in biology from Brandeis

University in Waltham, Massachusetts, received his M.D. from the University of California San Diego School of Medicine in La Jolla, California, and completed post-graduate residencies at UCLA. He has been an invited ad hoc expert reviewer for the journals *Brain Research*, *CNS Drugs*, *Current Alzheimer Research*, *Experimental Neurology*, *Future Neurology*, *Journal of Neurochemistry*, *Journal of Neuroimmunology, Neuroscience, and Pharmaceutical Medicine,* and was a member of the Editorial Board of the *Journal of Neuroinflammation*.

51.     TOBINICK has presented his scientific findings regarding the effects of etanercept for neurological disorders at multiple U.S. and international medical and scientific conferences, including the Days of Molecular Medicine Conference at the Karolinska Institute in Sweden in 2006; the 2008 Drug Repositioning Summit in Boston; the International Conference on Alzheimer's Disease in Chicago in 2008; the 7th Annual Alzheimer's Drug Discovery Conference in New York in 2006; the 2008 Best Practices in the Continuum of Care: Advances in Alzheimer's Disease Management conference at the University of Arkansas Medical Sciences in Little Rock, Arkansas; and, in 2009, the 3rd International Restauracion Neurologica Conference in Havana, Cuba, the World Pharmaceutical Congress in Philadelphia and the 5th Modern Drug Discovery Conference in San Diego.

52.     The Advertisement is extremely inflammatory and defamatory in nature as it contains multiple false and misleading statements of fact regarding Plaintiffs.

53.     The Advertisement's claims regarding the effectiveness of the INR Plaintiff's treatments are not supported by the evidence and are literally false.

54.     For example, the Advertisement states that "*Tobinick…is claiming that a wide range of neurological conditions not known to be immune mediated are treated by a specific immunosuppressant.*"

55.    This implies not only that etanercept should not be used for neurological conditions such as stroke and Alzheimer's disease as the INR Plaintiffs do, but also that stroke and Alzheimer's disease are not known to be immune mediated.

56.    Both propositions are false.

57.    Indeed, the pathophysiology of both stroke and Alzheimer's disease are well known to be immune-mediated.

58.    For example, Richard Ransohoff MD, Editor of the new journal Neurology: Neuroimmunology and Neuroinflammation, has stated:

> Neuroinflammation has been studied for decades almost exclusively as a cardinal feature of explicitly inflammatory processes such as MS, NMO, inflammatory neuropathy, acute infection, stroke, and trauma. With recent genetic findings it is now clear that inflammation plays a central (but not exclusive) part in Alzheimer disease, Parkinson disease, tauopathy, and other neurodegenerations. Inflammation is also strongly suspected as having a role in neurodevelopmental disease, including autism and schizophrenia.

Ransohoff, R., *Call for papers: Neurology: Neuroimmunology & Neuroinflammation, a new Neurology journal.* Neurology, 2014. **82**: p. 648-649.

59.    Furthermore, in 2013 and 2014 alone there were no fewer than 10 separate publications reporting favorable effects of etanercept for neuroinflammatory indications.

60.    The Advertisement further states that "*Tobinick has also started to publish case series – little more than retrospective case series reporting on his own patients…. all but worthless coming from a clinic like Tobinick's.*"

61.    This statement is false.

62.    The publications of TOBINICK include multiple, invited review articles in prominent journals.  And, the observational studies published by TOBINICK and his colleagues include patients treated by multiple physicians, not simply TOBINICK's own patients.  Further, the scientific publications of TOBINICK and his colleagues have been cited by hundreds of

researchers from academic centers around the world and in neuroscience journals such as Nature Clinical Practice Neurology. And, TOBINICK has been an invited *ad hoc* reviewer for the journals *Brain Research, CNS Drugs, Current Alzheimer Research, Experimental Neurology, Future Neurology, Journal of Neurochemistry, Journal of Neuroimmunology, Neuroscience, and Pharmaceutical Medicine,* and was a member of the Editorial Board of the *Journal of Neuroinflammation.*

63.    The Advertisement further falsely implies that the INR Plaintiffs have committed a health fraud insomuch as the Advertisement was placed into a category identified as "Health Fraud."

64.    Not only is this defamatory and outrageous as it implies that the Plaintiffs have intended to willfully deceive patients, but it also implies Plaintiff have violated Federal Law.

65.    Specifically, 18 U.S.C. 1347 defines Health care fraud as a crime wherein one attempts to defraud Medicare or Medicaid.

66.    For the reasons identified herein, any suggestion that Plaintiffs are committing a health fraud are false.

67.    Likewise any assertion that Plaintiffs are violating Federal Law in this or any other manner are false.

68.    In addition to the false claims relating to the substantive aspects of the Plaintiffs' practice, the Advertisement also contains numerous false, inflammatory and defamatory statements which are objectively disproved.

69.    The Advertisement falsely asserts that the INR Plaintiffs are "*a one-man institute*".

70.    The fact is, however, that the INR Plaintiffs employ multiple physicians.

71.    The Advertisement falsely states that "*Tobinick has since moved his clinic to Florida, which is a very quack-friendly state.*"

72.    However, the California offices of the Institute were open at the time the Advertisement was published, and remain in operation today.

73.    Florida is not a "quack-friendly state."

74.    Further, The Advertisement has deceived consumers.

75.    The Plaintiffs were recently featured favorably on the Australian and New Zealand versions of 60 Minutes for their etanercept treatments for stroke patients.

76.    As a result of the publicity, there was an initial high level of interest amongst consumers for the treatments.

77.    However, that interest has been materially eroded as result of the Advertisement.

78.    Plaintiffs have specifically identified a customer who has made an appointment for consultation, but cancelled that appointment after viewing the Advertisement.

79.    At all times material hereto, YALE has directly made and continues to make the false and malicious statements itself by providing links to Novella's website (www.sciencebasedmedicine.org) on which the Advertisement resides, on Yale's own website.

80.    YALE has also contributorily infringed on Plaintiffs' trade names by continuing to support and to promote NOVELLA's conduct in making the false and malicious statements contained within the Advertisement.  Such support and promotion has enabled NOVELLA to infringe on Plaintiffs' trade names with YALE's full knowledge of the conduct.  All the while, YALE has failed to take reasonable remedial measures.

81.    Further, YALE has profited from the false and malicious statements contained within the Advertisement, as YALE provides services which directly compete with the services

provided by Plaintiffs.

82.     At all times material hereto SGU has directly made and continues to make the false and malicious statements itself by publishing the Advertisement on a website it owns, www.sciencebasedmedicine.org.

83.     According to the website, www.sciencebasedmedicine.org was expressly "created to promote and discuss the views" of its editors.

84.     SGU has also contributorily infringed on Plaintiffs' trade names by publishing the Advertisement on its website.  Such publication has enabled NOVELLA to infringe on Plaintiffs' trade names with SGU's full knowledge of the conduct.  All the while, SGU has failed to take reasonable remedial measures.

85.     Further, SGU has profited from the false and malicious statements contained within the Advertisement, as viewers visit SGU's website to read the Advertisement.

86.     As stated on the website www.sciencebasedmedicine.org, SBM is an organization that was created as, "the next step toward educating consumers" about the views found on the website.

87.     As such, SBM has directly made and continues to make the false and malicious statements itself by "educating consumers" about the Advertisement.

88.     SBM has also contributorily infringed on Plaintiffs' trade names by "educating consumers" about the Advertisement.  Such action has enabled NOVELLA to infringe on Plaintiffs' trade names with SBM's full knowledge of the conduct.  All the while, SBM has failed to take reasonable remedial measures.

89.     On or about May 17, 2013, Plaintiffs notified NOVELLA, via written correspondence, that the Advertisement was false and defamatory.  A true and correct copy of

the correspondence is attached as Exhibit "2".

90.     At that time, Plaintiffs also demanded that NOVELLA retract the Advertisement, and immediately cease and desist from disseminating the falsehoods any further.

91.     As of this date, NOVELLA has ignored or refused to comply with Plaintiffs' demand to cease and desist using the false and deceptive Advertisement.

92.     On or about May 5, 2014, Plaintiffs notified Yale, via written correspondence, that the Advertisement was false and defamatory.  A true and correct copy of the correspondence is attached as Exhibit "3".

93.     At that time, Plaintiffs also demanded that YALE cease and desist from promoting the falsehoods any further.

94.     As of this date, YALE has ignored or refused to comply with Plaintiffs' demand to cease and desist from promoting the falsehoods.

95.     On or about May 21, 2014, Plaintiffs notified SGU, via written correspondence to it and its website's editors, that the Advertisement was false and defamatory.  A true and correct copy of the correspondence is attached as Exhibit "4".

96.     At that time, Plaintiffs also demanded that SGU retract the Advertisement, and immediately cease and desist from publishing the Advertisement any further.

97.     As of this date, SGU has ignored or refused to comply with Plaintiffs' demand to cease and desist using the false and deceptive Advertisement.

98.     On May 23, 2014, shortly after Exhibits 3 and 4 were received by YALE and SGU, respectively, NOVELLA edited the Advertisement, presumably in an effort to attempt to correct some of the falsehoods contained therein.

99.     The changes to the Advertisement were published on SGU's website for a few

hours. However, by the end of the day, the edits had been removed and the Advertisement was returned to its original form.

100.    The temporary changes to the Advertisement on May 23, 2014 show that Defendants knew of and were readily able to correct the falsehoods contained within the Advertisement, but maliciously and intentionally choose to libel Plaintiffs instead.

101.    Even worse, on July 23, 2014, NOVELLA again published the allegations of the Advertisement by reasserting its false claims on SGU's website in a second article which can be found at: http://www.sciencebasedmedicine.org/another-lawsuit-to-suppress-legitimate-criticism-this-time-sbm/?utm_source=rss&utm_medium=rss&utm_campaign=another-lawsuit-to-suppress-legitimate-criticism-this-time-sbm.  A copy of this second article is attached hereto as Exhibit "5", and is hereinafter referred to as the "Second Advertisement."

102.    The Second Advertisement is false and misleading as NOVELLA again indicates that there have been no double-blind placebo-controlled clinical trials of the treatment provided by the Plaintiffs.

103.    However, a randomized, double-blind, placebo-controlled study has been conducted which does provides evidence of a therapeutic effect of etanercept for Alzheimer's.

104.    As a direct, natural and proximate result of Defendants' actions, Plaintiffs have suffered damages including, lost profits, lost customers, lost goodwill and damage to their business and professional reputation.

105.    Moreover, patients who would benefit from treatment by Plaintiffs are being persuaded by the Defendants' actions to forego that treatment.

106.    As a further direct, natural and proximate result of Defendants' actions, Plaintiffs have been compelled to retain the law firm of Tripp Scott, P.A. and have become obligated to

pay all costs and attorney's fees associated with this action.

## COUNT I - VIOLATION OF 15 U.S.C.A. §1125(a)

107.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.    Section 43 of the Lanham Act, 15 USC 1125(a) provides as follows:

(a)    Civil Action
        (1)    Any person who, ...in connection with any goods or services, ...uses in commerce any word, term, name, ...or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --

                        *        *        *        *

        (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

109.    The acts complained of above constitute a clear violation of 15 U.S.C.A. §1125(a) in that the Advertisement falsely describes Plaintiffs' services.

110.    NOVELLA published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting his own interests.

111.    YALE published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

112.    SGU published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

113.    SBM published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

114.    Pursuant to 15 U.S.C.A. 1116(a), Plaintiffs are entitled to an injunction to prevent

the continued violation of 15 U.S.C.A. §1125(a).

115.    The conduct of NOVELLA and SGU is willful and intentional as evidenced by the publication of the Second Advertisement after the initiation of this lawsuit.

116.    As the conduct of the NOVELLA and SGU was and is willful and intentional, Plaintiffs are entitled to relief under 15 U.S.C.A. 1117(a) which provides that:

> When ... a violation under section 1125(a) ... of this title ... shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of 1111 and 1114 of this title [inapplicable], and subject to the provisions of equity, to recover (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action. .... In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount of actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.   The court in exceptional circumstances may award reasonable attorneys fees to the prevailing party.

117.    As a direct and proximate result of Defendants' conduct, Plaintiffs have retained the law firm of Tripp Scott, P.A. to represent them in this matter and they are obligated to pay the law firm all costs and its attorney's fees associated with this action. Pursuant to 15 U.S.C.A. 1117(a) Plaintiffs are entitled to recoup such costs and attorney's fees against NOVELLA and SGU for their willful and intentional violation of 15 U.S.C.A. 1125(a).

**WHEREFORE**, Plaintiffs demand:

I.    That Defendants, their officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained from directly or indirectly disseminating false statements concerning Plaintiffs or otherwise engaging in deceptive acts and practices in the conduct of its business;

II.      That Defendants be required to account to Plaintiffs for any and all profits derived by Defendants, and to compensate Plaintiffs for all damages sustained by Plaintiffs by reason of the acts complained of herein, and that the Court:

       (a)      award Plaintiffs compensatory damages in an amount to be proven at trial for the injuries Plaintiffs sustained as a result of Defendants' acts complained of herein,

       (b)      award punitive and exemplary damages sufficient to deter Defendants from similar conduct in the future;

       (c)      require NOVELLA and SGU to pay Plaintiffs the costs of this action, including Plaintiffs' attorneys' fees; and

       (d)      require Defendants to pay Plaintiffs' prejudgment and post-judgment interest at the applicable rates on all amounts awarded;

III.      That Defendants be required to disseminate corrective advertising, at Defendants' expense and upon Plaintiffs' approval, that informs the trade and the purchasing public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or require Defendants to pay Plaintiffs costs in producing and disseminating such corrective advertising;

IV.      That Defendants, within 30 days after service upon them of the judgment, file with the Court and serve upon Plaintiffs a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction provisions of said judgment; and,

V.      That Plaintiffs have such other and further relief as the court may deem just and proper.

## COUNT II - UNFAIR COMPETITION

118.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 106 of this Complaint as if fully set forth herein.

119.    This cause of action arises under the common law of unfair competition. Jurisdiction of this court is by virtue of 28 U.S.C. §1338(b) and by the principles of supplemental jurisdiction, 28 U.S.C. §1367.  Venue lies under 28 U.S.C. §1391.

120.    NOVELLA published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting his own interests.

121.    YALE published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

122.    SGU published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

123.    SBM published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

124.    The conduct of NOVELLA and SGU is willful and intentional as evidenced by the publication of the Second Advertisement after the initiation of this lawsuit.

125.    Defendants' wrongful acts of unfair competition have proximately caused and will continue to cause Plaintiffs substantial injury to their goodwill and reputation.

126.    Defendants' wrongful acts have caused and will continue to cause Plaintiffs irreparable harm.

127.    Plaintiffs have no adequate remedy at law for Defendants continued acts of unfair competition.

128.    Plaintiffs are entitled to a judgment restraining Defendants from engaging in

further unfair competition and infringement and for all resulting damages.

**WHEREFORE**, Plaintiffs demand:

I.     That Defendants, their officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations in active concert, participation and combination with them, be enjoined and restrained from directly or indirectly disseminating false statements concerning Plaintiffs or otherwise engaging in deceptive acts and practices in the conduct of its business;

II.     That Defendants be required to account to Plaintiffs for any and all profits derived by Defendants, and to compensate Plaintiffs for all damages sustained by Plaintiffs by reason of the acts complained of herein, and that the Court:

(a)     award Plaintiffs compensatory damages in an amount to be proven at trial for the injuries Plaintiffs sustained as a result of Defendants' acts complained of herein, that said damages be trebled pursuant to 15 U.S.C. §1117;

(b)     award punitive and exemplary damages sufficient to deter Defendants from similar conduct in the future;

(c)     require Defendants to pay Plaintiffs the costs of this action, including Plaintiffs' attorneys' fees pursuant to 15 U.S.C. §1117; and

(d)     require Defendants to pay Plaintiffs prejudgment and post-judgment interest at the applicable rates on all amounts awarded;

III.     That Defendants be required to disseminate corrective advertising, at Defendants' expense and upon Plaintiffs' approval, that informs the trade and the purchasing public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or require Defendants to pay Plaintiffs' costs in

producing and disseminating such corrective advertising;

    IV.    That Defendants, within 30 days after service upon them of the judgment, file with the Court and serve upon Plaintiffs a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction provisions of said judgment; and,

    V.    That Plaintiffs have such other and further relief as the court may deem just and proper.

## COUNT III - TRADE LIBEL

129.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 106 of this Complaint as if fully set forth herein.

130.    Defendants maliciously publicized false, deceptive or misleading statements affecting the reputation and business interests of Plaintiffs.

131.    NOVELLA published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting his own interests.

132.    YALE published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

133.    SGU published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

134.    SBM published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

135.    The conduct of NOVELLA and SGU is willful and intentional as evidenced by the publication of the Second Advertisement after the initiation of this lawsuit.

136.    As a direct result of Defendants' actions, Plaintiffs have suffered damages

including the loss of profits, customers, goodwill, and damage to its reputation.

137.   But for Defendants' false, deceptive or misleading statements, Plaintiffs would not have suffered damage to their reputation and had clients believing that Plaintiffs' services are a sham.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for damages, both compensatory and punitive, together with prejudgment interest, costs and attorney's fees pursuant to Section 57.105, Florida Statutes, and for such other additional relief as this Court deems just, necessary, reasonable and proper.

## COUNT IV – LIBEL PER SE

138.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 106 of this Complaint as if fully set forth herein.

139.   Defendants maliciously publicized false, deceptive or misleading statements affecting the reputation of TOBINICK.

140.   NOVELLA published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting his own interests.

141.   YALE published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

142.   SGU published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

143.   SBM published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

144.   The conduct of NOVELLA and SGU is willful and intentional as evidenced by the publication of the Second Advertisement after the initiation of this lawsuit.

145.    As a direct result of Defendants' actions, TOBINICK has suffered damages including the loss of profits, customers, goodwill, and damage to his reputation.

146.    But for Defendants' false, deceptive or misleading statements, TOBINICK would not have suffered damage to his reputation.

**WHEREFORE**, TOBINICK demands judgment against Defendants for damages, both compensatory and punitive, together with prejudgment interest, costs and attorney's fees pursuant to Section 57.105, Florida Statutes, and for such other additional relief as this Court deems just, necessary, reasonable and proper.

## COUNT V - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

147.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 106 of this Complaint as if fully set forth herein.

148.    Plaintiffs had advantageous business relationships with its customers and clients.

149.    Defendants knew or should have known of those relationships.

150.    Defendants have intentionally and without justification tortiously interfered with Plaintiffs' business relationships by making false statements about Plaintiffs through the publication of the Advertisement.

151.    NOVELLA published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting his own interests.

152.    YALE published the Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

153.    SGU published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting its own interests.

154.    SBM published the Advertisement, and the false and misleading statements

contained therein, in furtherance of promoting its own interests.

155.   The conduct of NOVELLA and SGU is willful and intentional as evidenced by the publication of the Second Advertisement after the initiation of this lawsuit.

156.   As a result of Defendants' tortious interference, Plaintiffs have incurred damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for damages, both compensatory and punitive, together with prejudgment interest, costs and attorney's fees pursuant to Section 57.105, Florida Statutes, and for such other additional relief as this Court deems just, necessary, reasonable and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 1st  day of August 2014.

> TRIPP SCOTT, P.A.
> Attorneys for Plaintiffs
> 110 Southeast 6th Street, 15th Floor
> Fort Lauderdale, Florida 33301
> Telephone: (954) 525-7500
> Telecopier: (954) 761-8475
>
> By:   /s/Alexander D. Brown            ,
> Alexander D. Brown
> Fla Bar No 752665
> adb@trippscott.com
> Peter G. Herman
> Fla Bar No 752665
> pgh@trippscott.com
> Salvatore H. Fasulo
> Fla Bar No 143952
> shf@trippscott.com
> ele@trippscott.com
> rep@trippscott.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on August 1, 2014, we electronically filed the foregoing

document with the Clerk of Court using CM/ECF.  We also certify that a true and correct copy of the foregoing document is being served on this day upon the parties on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.


By: _____/s/ Alexander D. Brown_____
                Alexander D. Brown

## SERVICE LIST

Edward S. Polk
Jeanne K. Spital
COLE, SCOTT & KISSANE, P.A.,
**Attorneys for Society for Science-Based Medicine, Inc.,**
Dadeland Centre II
9150 S. Dadeland Boulevard, 14th Floor
Miami, Florida 33156
Telephone: (786) 268-6763
Facsimile: (305) 373-2294
Edward.Polk@csklegal.com
Jeanne.Spital@csklegal.com

Marc J. Randazza
Randazza Legal Group
**Attorneys for Novella**
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Telephone: (702) 420-2001
Facsimile: (305) 437-7662
ecf@randazza.com

Andrew H. Marks
Kimberly Freedman
Coffey Burlington, P.L.
**Attorneys for Yale University**
2601 South Bayshore Drive
Miami, Florida 33133
Telephone: (786) 268-6763
Facsimile: (305) 373-2294
amarks@coffeyburlington.com
kfreedman@coffeyburlington.com

Jeffrey R. Babin
John M. Doroghazi
Wiggin and Dana LLP
**Attorneys for Yale University**
265 Church Street
P.O. Box  1832
New Haven, CT 06508-1832
Telephone: (203) 498-4400
Facsimile:  (203) 782-2889
jbabbin@wiggin.com
jdoroghazi@wiggin.com

Darren Spielman
Robert Kain
Kain & Associates
**Attorneys for SGU Productions, LLC**
900 S.E. 3rd Ave., Suite 205
Fort Lauderdale, FL 33316
Telephone: (954)-768-9002
Facsimile: (954) 768-0158
rkain@complexip.com
dspielman@complexip.com