## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

EDWARD LEWIS TOBINICK M.D., A
MEDICAL CORPORATION d/b/a
INSTITUTE OF NEUROLOGICAL              **CASE NO. 9:14-cv-80781-WJZ**
RECOVERY, a California Medical Corporation;
INR PLLC d/b/a INSTITUTE OF
NEUROLOGICAL RECOVERY, a Florida
professional limited liability company; and
EDWARD TOBINICK, M.D., an individual,

Plaintiffs.

v.

STEVEN NOVELLA, M.D., an individual;
YALE UNIVERSITY, a Connecticut
corporation; SGU PRODUCTIONS, LLC, a
Connecticut limited liability company; and
SOCIETY FOR SCIENCE-BASED
MEDICINE, INC., a Florida Corporation,

Defendants

_____/

### DEFENDANT DR. STEVEN NOVELLA'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(2) FOR LACK OF PERSONAL JURISDICTION, FRCP 12(b)(3) FOR IMPROPER VENUE, AND FAILURE TO COMPLY WITH FLORIDA STATUTE §770.01

Defendant, STEVEN NOVELLA, M.D., moves to dismiss the Amended Complaint for

lack of personal jurisdiction, improper venue, failure to comply with Florida Statute §770.01's pre-

suit requirement, and a for violating the single publication rule.

**I.      Introduction**

This case truly begins on May 5, 2013, when the Los Angeles Times published an exposé

on the Plaintiff, Dr. Tobinick called "*A Wife's Alzheimer's, a Husband's Obsession.*"[1] Novella Decl.

¶33.  This <u>Los Angeles Times</u> exposé told the story of a devoted husband who turned to a local

doctor, Edward Tobinick, for unorthodox "medical" methods, which he claimed would cure his

---

[1]      Attached hereto as Exhibit A is the declaration of Dr. Steven Novella, herein after referred
to as "Novella Decl."

wife's Alzheimer's disease.[2]  Tobnick's now-abandoned method for was to use a drug called "Enbrel."  Enbrel was not approved for the treatment of Alzheimer's.  Nevertheless, Dr. Tobnick sold it to Alzheimer's patients at his California clinic, and the Los Angeles Times recounted the tale of a desperate husband, willing to try anything to save his wife from dementia and death.  Tobnick's "treatments" for this one patient were costly but ineffective.  The desperate husband paid more than $130,000.00 to Tobinick over the course of those two years, for the cost of Enbrel injections alone, before his wife finally wasted away.  The Defendant, Dr. Novella[3] saw the Los Angeles Times article, it alarmed him that a licensed medical professional was relying on such obviously unfounded treatment.  Novella Decl. ¶¶33-34.  As part of Novella's quest to educate and protect the public from such unethical "medical" practices, Novella wrote and published "*Enbrel for Stroke and Alzheimer's?*" for Science-Based Medicine on May 8, 2013, the article that forms the basis for this suit.  Novella Decl. ¶41.  Novella's article parallels the previously-published Los Angeles Times exposé.  Dr. Novella believes it is his professional and ethical responsibility to inform the public of the risks and rewards of these questionable medical practices.  Novella Decl. ¶51.  Dr. Novella believes in sound medical practices and scientific testing over profit.  Novella Decl. ¶51-54. The Article was written about California subjects, by a Connecticut-based author, and did not target Florida.  Furthermore, the first publication of the article was not in Florida, but Connecticut.

Plaintiffs' Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Dr. Novella.  Plaintiffs' Amended Complaint is also dismissible per Fed. R. Civ. P. 12(b)(3) as it was filed in an improper venue.  The defamation claims should be dismissed for failure to comply with Fla. Stat. §770.01's pre-suit notice requirement.  Finally, Count Five should be dismissed as impermissibly duplicative of another cause of action, and thus for violating the single publication rule.

---

[2]     A copy of the Article is attached hereto as Exhibit B.  The article is also available at http://www.latimes.com/science/la-me-chiate-20130505-dto-story.html#page=1

[3]     Defendant Dr. Steven Novella is a board certified neurologist at Yale New Haven Hospital (in Connecticut) and is an Assistant Professor of Neurology at the Yale School of Medicine in New Haven, Connecticut.  Novella Decl. ¶¶1-3.  Unrelated to his employment with Yale School of Medicine and Yale New Haven Hospital, Dr. Novella is also a medical journalist, and as such, acts as editor of and contributor to Science-Based Medicine, and produces the weekly podcast The Skeptics Guide to the Universe, both dedicated to communicating his opinion on current events in science and medicine, and published from Connecticut. Novella Decl. ¶¶14, 24.

II.     **Legal Analysis**

A.      **Improper Venue Mandates Dismissal**

Under 28 U.S.C. §1391(b), a civil action based on federal question jurisdiction, such as false advertising under the Lanham Act, may only be brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  *Id.* Furthermore, pursuant to 28 U.S.C. §1391(c)(2), "an entity with the capacity to sue and be sued… shall be deemed to reside… if a plaintiff, only in the judicial district in which it maintains its principal place of business."  This statute does not provide a basis for venue in this District.

1.      **Venue is inappropriate under 28 U.S.C. §1391(b)(1)**

To demonstrate that venue is appropriate pursuant to 28 U.S.C §1391(b)(1), Plaintiffs must demonstrate that all defendants reside in the same state, namely Florida, and at least one defendant resides in the Southern District of Florida.  However, Dr. Novella is a Connecticut resident. Novella Decl. ¶4; ECF 55 ¶5.  Yale University is a resident of Connecticut.  ECF 1 ¶6; ECF 34 ¶2; ECF 55 ¶6.  SGU Productions is a resident of Connecticut.  ECF 1 ¶7; ECF 55 ¶7.  Only Society for Science-Based Medicine is a Florida resident, by being incorporated in Tallahassee, which is in the *Northern* District of Florida.  ECF 1 ¶8; ECF 55 ¶8.  Only one defendant is in Florida, and none reside in the Southern District.

2.      **Venue is inappropriate under 28 U.S.C. §1391(b)(2)**

For venue to be appropriate under 28 U.S.C. §1391(b)(2), Plaintiffs must demonstrate that a substantial part of the acts which give rise to their false advertising claim arose within the Southern District of Florida.  Plaintiffs claim that venue is proper because "Defendants' complained of activities have affected and damaged Plaintiffs' interstate business which is located within this District."  ECF 55 ¶11.  However, none of the events giving rise to the claim occurred in this District, and Plaintiffs present no allegation (much less evidence) to the contrary.

Dr. Novella resides and works in Connecticut, where he also wrote and published the subject article.  Novella Decl. ¶16.  None of the complained-of activities, let alone a "substantial part" of the activities, took place in the Southern District.  Id.  To the extent that Plaintiffs argue that there could be harm in the Southern District, Plaintiffs failed to plead any facts other than conclusory allegations.  For example, Plaintiffs allege that Dr. Novella's article was published on a

website that *could be accessed* in the Southern District of Florida. ECF 55 ¶12(a).  Furthermore, Plaintiffs argue that because Dr. Novella is on the board for the Society for Science-Based Medicine, which is incorporated in the *Northern* District of Florida, that he *must* be doing business in the *Southern* District of Florida.  ECF 55 ¶12(b)(ii).  None of these allegations are sufficient to support a claim that a substantial part of the activities that give rise to Plaintiffs' allegations took place here.  Where "Plaintiff only makes conclusory statements that a substantial part of the events or omissions giving rise to the claim occurred in the District… even applying this provision [§1391], Plaintiff fails to allege any facts which would support his contention that venue is proper." *Corley v. Osprey Ship Mgmt., Inc.*, 2007 U.S. Dist. LEXIS 5083, 4-5 (S.D. Fla. Jan. 24, 2007).

### 3.      Venue is inappropriate under 28 U.S.C. §1391(b)(3)

For venue to be appropriate under subsection 3, Plaintiffs must show that when no other district is appropriate, that *at least one* defendant resides in the Southern District.  None of the Defendants reside here; venue is inappropriate under 28 U.S.C. §1391(b)(3).

### 4.      Venue is inappropriate under 28 U.S.C. §1391(c)(2)

For venue to be appropriate under 28 U.S.C. §1391(c)(2), Plaintiffs must show that the Southern District of Florida is their principal place of business, which they cannot do.  Plaintiffs are incorporated in **California**.  ECF 55 at ¶2 ("Plaintiff EDWARD LEWIS TOBINICK M.D., A MEDICAL CORPORATION d/b/a THE INSTITUTE OF NEUROLOGICAL RECOVERY is a medical corporation organized under the laws of the state of **California**, with its principal place of business in Los Angeles County, **California**").  Also attached hereto as Exhibit C is a true and correct copy of the California Secretary of State business entity detail for Edward Lewis Tobinick, M.D., A Medical Corporation – incorporated in Los Angeles since 1984.  Therefore, this case should be dismissed. Fed. R. Civ. P. 12(b)(3).

### B.      This Court Lacks Personal Jurisdiction Over Dr. Novella

"The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction by '[p]resent[ing] enough evidence to withstand a motion for directed verdict.'" *Goforit Entm't LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1328 (M.D. Fla. 2007) (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)).  "If 'the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Goforit*, 513 F. Supp. 2d at 1328 (quoting *Stubbs*, 447 F.3d at 1357).

### 1.      Florida Long Arm Statute

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." *Zamora Radio, LLC v. Last.fm Ltd.*, 2011 U.S. Dist. LEXIS 69101, 10, 2011 WL 2580401 (S.D. Fla. June 28, 2011) citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-627 (11th Cir. 1996); *Cable/Home Commc'n v. Network Prod's*, 902 F.2d 829, 855 (11th Cir. 1990). Florida's long-arm statute grants the court jurisdiction only over non-resident defendants who commit certain and specific acts. Fla. Stat. §48.193. Specifically, a Florida court may assert jurisdiction over any person who "commit[s] a tortious act within the state." Fla. Stat. §48.193(1)(b). Plaintiffs' Amended Complaint alleges, as the basis of this Court's personal jurisdiction over Dr. Novella, the conclusory statement: "Defendants are doing business in this district and is transacting business in this district by committing the complained of tortious acts within this district." ECF 55 at ¶10. This is not enough.

Specific jurisdiction exists when the defendant conducts business activities that establish sufficient forum-related contacts. Fla. Stat. §48.193(1)(a). Specific jurisdiction can also attach if the defendant commits a tortious act *in Florida*. Fla. Stat. §48.193(1)(b). Plaintiffs fail to allege facts specific to establish the Court's jurisdiction over Dr. Novella under either provision, and to the extent they might have, Novella (and other defendants) have refuted them.

### a.      §48.193(1)(b)

"For personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort." *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389 (11th Cir. 1988) citing l*Watts v. Haun*, 393 So.2d 54, 56 (Fla. 2d DCA 1981).

Plaintiffs make no specific allegations as to how Dr. Novella's allegedly tortious conduct was *directed into Florida*. Instead, Plaintiffs make generic statements that Dr. Novella writes articles that are available to readers in Florida, and that Dr. Novella's podcasts are available to listeners in Florida. ECF 55 ¶12. This is not enough.

Dr. Novella undertook no activities in Florida, let alone those "essential to the success of the tort." It has been determined that "committing a tortious act in Florida under section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written

communications into Florida.  However, the cause of action must arise from the communications. This predicate finding is necessary because of the connexity requirement contained in section 48.193(1).”  *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).

"[P]osting defamatory material on a website alone does not constitute the commission of a tortious act within Florida for purposes of section 48.193(1)(b), Florida Statutes.”  *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010).  Furthermore, "it is not [] enough that the actions of a defendant committed outside of Florida ultimately have consequences in Florida."  *Blumberg v. Steve Weiss. & Co.*, 922 So. 2d 361, 364 (Fla. 3d DCA 2006).  Dr. Novella's article conveyed his academic and professional opinion of off-label usage of a drug to treat a neurological disease by a doctor with no clinical certification to act as a neurologist.  Dr. Novella contends that this article is not defamatory, but is his opinion, based on provably true statements.  Novella Decl. ¶41.  Also, this plainly not-defamatory article was written and published in *Connecticut* about Tobinick's activities in *California* while treating a *California* patient, and was not specifically directed into Florida.  Novella Decl. ¶¶41-44.

Plaintiffs also laughably allege that the article constitutes "false advertising."  However, Plaintiffs presented nothing to show how this article constitutes "advertising." The article in question is not commercial speech.  Dr. Novella does not profit from it.  Novella Decl. ¶23.  The article does not promote Dr. Novella's own business, or suggest that a prospective patient ought to utilize Dr. Novella's services in lieu of Tobinick's.  Novella Decl. ¶¶42-49.

Furthermore, even if the article had constituted commercial speech, Plaintiffs do not allege how the article was *directed at* or *transmitted into* Florida.  This Court has agreed with the Northern District of Illinois, finding that "national advertisements (including those on the internet) that do not specifically target [the forum state] are insufficient to subject a defendant to jurisdiction here."  *Zamora Radio, LLC v. Last.fm Ltd.*, 2011 U.S. Dist. LEXIS 69101, 26, 2011 WL 2580401 (S.D. Fla. June 28, 2011) *citing David White Instruments, LLC. v. TLZ. Inc.*, 2003 U.S. Dist. LEXIS 8375, at *16 (N.D. Ill 2003).  While Dr. Novella's article may have been *accessible* to a reader in Florida, that is not enough.  Dr. Novella did not specifically target Florida consumers.  Novella Decl. ¶43.  There is no allegation supporting a link between Dr. Novella's article and Tobinick's claims of false advertising in Florida.

Plaintiffs fail to satisfy the requirement of Fla. Stat. §48.193(1)(b), which requires a plaintiff to show that a cause of action arises out of a defendant's transmissions into Florida.  *Id.*  To do so would require an allegation that *some* person *in Florida* was *sent* a communication *from* Dr. Novella.

6

Dr. Novella's subject article, the allegedly "false advertising," was simply posted on Science-Based Medicine for a general audience, without targeting any market -- not directly disseminated into Florida. The article made reference to The Institute of Neurological Recovery, a *California* Corporation. Novella Decl. ¶¶35-39. Plaintiffs' Amended Complaint fails to allege with any specificity how Dr. Novella specifically sent his article into Florida, sought out Florida readership, or targeted Floridians as clients. Therefore, personal jurisdiciton under Fla. Stat. 48.193(1)(b) is inappropriate here.

### b. Section 48.193(1)(a)

Plaintiffs failed to allege anything to demonstrate that personal jurisdiciton would be appropriate under §48.193(1)(b), because Plaintiffs have neglected to demonstrate how Dr. Novella's single article constitutes a "tortious activity committed in Florida." Alternatively, Florida's long-arm statute also provides for jurisdiction where an individual conducts business in Florida. However, Plaintiffs also fail to demonstrate how anything Dr. Novella does constitutes "doing business in Florida."

"In order to establish that a defendant was carrying on a business or business venture in the state, . . . '[t]he activities of the [defendant] sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit.' In *Sculptchair*, the court held there was no jurisdiction under section 48.193(1)(a) over defendants who never manufactured, sold, leased, or solicited orders for their products in Florida or maintained offices or agents in the state." *Schuster v. Carnival Corp.*, 2011 U.S. Dist. LEXIS 126455, 12-13 (S.D. Fla. Feb. 3, 2011) citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996). To establish that a defendant is carrying on a business for the purpose of the long-arm statute, the defendant's activities must be considered collectively and show a general course of business activity in Florida for pecuniary benefit. *See Sculptchair*. The allegations in Plaintiffs' Amended Complaint do not satisfy this provision.

As discussed above, Dr. Novella has had minimal contact with the State of Florida. He is a resident of Connecticut, where he has lived and worked for the past 22 years. Novella Decl. ¶4. He is not now, nor has he ever been a resident of Florida. Novella Decl. ¶5. Dr. Novella does not own a Florida business, own Florida real estate, or hold Florida bank accounts. Novella Decl. ¶¶9-13. Dr. Novella is a neurologist and professor at Yale New Haven Hospital and Yale University, in New Haven, Connecticut. Novella Decl. ¶1-3. Dr. Novella is on the Board of the Society for Science-Based Medicine, which is a non-profit corporation, incorporated in Leon County, Florida.

Novella Decl. ¶¶27-32.   The Tallahassee address listed on The Society for Science Based-Medicine's annual report is the personal home address of one of the other members of The Society, as The Society is an online-based organization that provides users a forum to discuss issues in medical science.   The Society does not sell any products or services.   Novella Decl. id.   Furthermore, The Society was incorporated on June 7, 2013, after the article was published.   Novella Decl. ¶28.   Dr. Novella became a member of the board of The Society on June 20, 2013, again, after the article was published.   Novella Decl. ¶29.   The board of the Society for Science-Based Medicine has never had an in-person meeting in Florida.   Novella Decl. ¶31.   The Society for Science-Based Medicine's board's founding meeting was conducted over the Internet, because The Society is an Internet-based organization providing a forum for discussion.   Novella Decl. ¶¶31-32.   The Society for Science-Based Medicine does not have a physical location, office, or storefront for members to meet or confer.   All discussion is conducted over the Internet.   Novella Decl. ¶32.   Plaintiffs do not adequately allege or show facts to identify any activity by Dr. Novella that would show a general course of business undertaken for pecuniary gain in Florida by *any* Defendant, much less Dr. Novella.

Plaintiffs allege that Dr. Novella's single article published in Connecticut about a California corporation somehow subjects him to jurisdiction in Florida.   In a similar case, the Southern District of Florida dismissed a similarly weak complaint.   "The Court finds that selling subscriptions to an internet site to an unknown, relatively small number of Florida residents, without more, does not constitute carrying on a business in Florida under §48.193(1)(a) and does not constitute the commission of a tortious act in Florida under §48.193(1)(b).   Therefore, the Florida Long-Arm Statute fails to confer jurisdiction over Defendant." *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004).   Dr. Novella's conduct did not even rise to the level of selling subscriptions in Florida, which still would not create personal jurisdiction over him.   Instead, he simply wrote an article that was published on the Internet, in *Connecticut*.   Dr. Novella did not engage in any commercial activity, specifically aimed at Florida, that would possibly give rise to carrying on business activities in Florida.   Personal jurisdiction is inappropriate under Fla. Stat. §48.193(1)(a).

### c.    Section 48.193(2)

Where Plaintiffs have failed to establish sufficient minimum contacts necessary to confer specific jurisdiction over Dr. Novella, Plaintiffs have also failed to make any showing of general jurisdiction over Dr. Novella.   "General personal jurisdiction arises from a party's contacts with

the forum state that are unrelated to the litigaiton." *Wallack v. Worldwide Mach. Sales*, 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003). Florida's general jurisdiction statute provides that a court may exercise jurisdiction over a non-resident if the defendant "is engaged in substantial and not isolated activity within the state… whether or not the claim arises from that activity." See Fla. Stat §48.193(2).

Dr. Novella has engaged in virtually no activity in the State of Florida, as related to this litigation, or otherwise. Dr. Novella is a 22-year resident of Connecticut. Novella Decl. ¶4. Dr. Novella works in Conencticut. Novella Decl. ¶¶1-4 Dr. Novella is a registered voter in New Haven County, Connecticut. Novella Decl. ¶8. Dr. Novella does not now, nor has he ever, owned property in Florida. Novella Decl. ¶9. Dr. Novella has a Connecticut driver's license. Novella Decl. ¶7. Dr. Novella does not have any bank accounts with any banks located in Florida. Novella Decl. ¶11. Dr. Novella has never paid taxes to the state of Florida. Novella Decl ¶6. Dr. Novella does not routinely contract with Florida businesses. Novella Decl. ¶¶13, 21, 22. Dr. Novella writes for <u>Science-Based Medicine</u>, which does not direct advertising to Florida. Novella Decl. ¶20. Dr. Novella does not utilize any person or service to promote or advertise <u>Science-Based Medicine</u> to the public. Novella Decl. ¶¶25-26. Furthermore, <u>Science-Based Medicine</u> does not target or seek out readership in Florida. Novella Decl. ¶¶18-22, 26, 43. Dr. Novella does not operate any businesses in the State of Florida. Novella Decl. ¶10. The only contact Dr. Novella has had with the State of Florida is being on the Board of The Society for Science-Based Medicine, which is a non-profit corporation, incorporated in Tallahassee. Novella Decl. ¶27-29. However, as Dr. Novella does not participate in activity in, or directly aimed at, Florida, this is insufficient to establish minimum contacts to confer jurisdiction. Novella Decl. ¶¶49, 55.

       2.    **This Court's exercise over Dr. Novella would violate the Due Process requirement of the Fourteenth Amendment**

Even if Plaintiffs could satisfy Florida's Long Arm Statute, subjecting Dr. Novella to this Court's jurisdiction would violate Federal Due Process. "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not [sic] present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goforit*, 513 F. Supp. 2d at 1329 (citing *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The plaintiff must establish a prima facie case of personal jurisdiction and that the constitutional

requirement of minimum contacts has been satisfied. *Goforit*, 513 F. Supp. 2d at 1328 (citing *Stubbs*, 447 F.3d at 1360).

"The ***Zippo*** sliding scale is a website-tailored personal jurisdiction analysis that considers when a website can subject an entity to personal jurisdiction through assessing the sufficiency of minimum contacts by measuring the degree of activity or passivity of the website." *Celorio v. Google Inc.*, 872 F. Supp. 2d 1327, 1332 (N.D. Fla. 2012) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D.Pa. 1997).

      **a.**      **Minimum Contacts**

The Eleventh Circuit in *Posner* adopted a three-part test to determine satisfaction of the minimum contacts requirement. "First, the contacts must be related to the plaintiff's cause of action." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999) (citing *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993)). "Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there." *Posner*, 178 F.3d at 1220 (citing *Vermeulen*, 985 F.2d at 1546). See also *Louis Vuitton Malletier, S. A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) (utilizing the same test).

      **i.**      **Plaintiffs' claims do not "arise out of or relate to" Dr. Novella's contacts with Florida**

Plaintiffs' claims do not arise out of activities in Florida, because Dr. Novella did not conduct activities in Florida, nor was his article calculated to advertise to Floridians (nor even to communicate directly to Floridians in any capacity). *See generally*, the Declaration of Dr. Steven Novella. Dr. Novella wrote and published the subject article from Connecticut, and premised the article on his training and experience as a neurologist and professor in Connecticut. Novella Decl.¶41. Dr. Novella does not advertise to Florida residents, and does not tailor his writings to appeal to Florida residents. Novella Decl. ¶¶43-44. Furthermore, Dr. Novella wrote his article about Tobinick's medical practices, while relying on a Los Angeles Times article about Tobinick, whose principal place of business is California, and whose unethical actions took place in California. ECF 1 at ¶2; ECF 55 at ¶2. Exhibit D. Novella Decl. ¶¶36-41. There is no causal relationship between Dr. Novella, Florida, and Tobinick. This fails to satisfy the minimum contacts test.

   **ii.**  **Dr. Novella has not purposefully availed himself of the Privilege of Doing Business in Florida**

  The minimum contacts necessary to subject a nonresident defendant to the processes of the forum state must include conduct through which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state" such that "he should reasonably anticipate being haled into court here." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), see also *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109-110 (1987). The "purposeful availment" test examines whether the defendant's voluntary actions reasonably and foreseeably create liability in the forum state. *See Worldwide Volkswagen.* The minimum contacts constitutional requirement serves two objectives: "it protects against the burdens of litigation in a distant or inconvenient forum" unless the defendant's contacts to the forum state make it just and fair to force him or her to defend a cause of action; and "it acts to ensure that the states, through their courts, do not reach out beyond the limits imposed on them by their status as co-equal sovereigns in a federal system." *Worldwide Volkswagen* at 292. Dr. Novella's contacts with Florida do not relate, or give rise, to Plaintiffs' claims. Even if Dr. Novella's alleged contacts with Florida arguably relate to Plaintiff's claims, his activities cannot be considered purposefully directed to Florida such that he would anticipate being haled into court here.

  The Court has recognized a sliding scale test to determine the activity of a website in relation to personal jurisdiction. *Travelocity.com LP v. Pier 35 Events, Inc.*, 2014 U.S. Dist. LEXIS 90821, 17-18 (S.D. Fla. July 3, 2014), *see Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). That court recognized that not all websites function the same or serve the same purpose. Websites may be "active," by which a consumer may buy products directly on that website; "passive," whereby the website merely posts information and has no interactive component; or intermediary, whereby a user may exchange information with the host computer, but the level of interaction is limited. *Id.* "A passive web site only makes information available to those interested in viewing the web site in foreign jurisdictions whereas an active web site allows for those interested in foreign jurisdictions to enter into contracts over the Internet with the defendant." *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1329 (S.D. Fla. 2001). Dr. Novella's article on <u>Science-Based Medicine</u> falls within the passive category because the website is primarily used for posting information in the form of articles.

  The Eleventh Circuit has limited the definition of "purposeful availment" in the context of Internet activity. "We are not saying that the mere operation of an interactive website alone gives rise to purposeful availment anywhere the website can be accessed." *Louis Vuitton Malletier, S.A. v.*

*Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013) citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452-53 (3d Cir. 2003).  In *Toys "R" Us*, the Third Circuit held that "purposeful availment" is fully in line with the *Zippo* cases, relying on the sliding scale to fashion a test for personal jurisdiction in the context of the Internet.  *Id.*

For websites that only provide content without being "active," this Court has determined that there is **no personal jurisdiction**.  For example, "AccuRadio's users can only listen to streaming live audio, post comments, and subscribe to a newsletter.  There is no evidence to suggest that AccuRadio has directed its advertising or marketing efforts for its service to the State of Florida.  Hence, with a low level of interactivity and lack of purposeful availment, we find that personal jurisdiction would not be warranted under a sliding scale analysis." *Zamora Radio, LLC v. Last.fm Ltd.*, 2011 U.S. Dist. LEXIS 69101, 20-21, 2011 WL 2580401 (S.D. Fla. June 28, 2011) citing *Minn. Pub. Radio v. Va. Beach Edu. Broad. Found., Inc.*, 519 F. Supp. 2d 970 (D. Minn. 2007).  Much like AccuRadio, Dr. Novella did not direct any advertising or marketing efforts to the State of Florida.  Novella Decl. ¶¶43, 44, 49.  In fact, why would Dr. Novella "advertise" to Florida-based patients, when his practice is in Connecticut, he lacks a Florida medical license, and has no interest in the Florida market to which he allegedly "advertised."  Novella Decl. ¶42.

Although Tobinick is a doctor in Florida and California, Dr. Novella's readers do not specifically seek information on Florida doctors.  Rather, they are interested in Dr. Novella's opinions on science and medicine generally.  Plaintiffs have not alleged, and can not demonstrate, that there is a high level of interactivity, and mere incidental mention of Florida in one article, coupled with a lack of purposeful availment here, does not give rise to personal jurisdiction.

Quite simply, a Plaintiff viewing allegedly tortious activity on the Internet is not sufficient to confer personal jurisdiction over a defendant.  "Although Plaintiff claims that it viewed the video over the Internet in Florida, nothing in the record indicates that Defendants purposefully directed the video to Florida residents… Because this Court does not have personal jurisdiction over Defendants with regard to Plaintiff's… claims, such claims are due to be dismissed." *Alpha Tech. U.S.A. Corp. v. MLSNA Dairy Supply, Inc.*, 2013 U.S. Dist. LEXIS 167884, 19, 2013 WL 6195766 (M.D. Fla. Nov. 26, 2013).  Here, Plaintiffs are purportedly claiming, while providing no supporting cognizable allegations, that personal jurisdiction over Dr. Novella is appropriate because Tobinick was able to view the article while he happened to be in Florida.  But simply viewing a website while in Florida, without any evidence that the website was purposefully directed to Florida residents, is not sufficient to confer personal jurisdiction over a non-resident defendant.

The Court in *Travelocity.com* explained the level of proof that should have been presented, but was absent, in order to support jurisdiction under a due process analysis:

> Finally, even if the remote business activities of Pier 35 could be considered sufficient to sustain either specific or general jurisdiction under the provisions of the Florida long-arm statute asserted by Travelocity, the court is not persuaded that the exercise of jurisdiction under either provision of the statute would comport with the due process requirements of the Fourteenth Amendment. Specifically, the court is not persuaded that Pier 35 has purposefully availed itself of the privilege of conducting business in Florida. First, there is no evidence of the specific direction of Pier 35's activity at the State of Florida, by advertising or otherwise, and no evidence that Pier 35 had any particular reason to know that the gift cards which it distributed under the Agreement were ultimately purchased by Florida residents or used for the purchase of Florida-based travel accommodations. Further, there is no evidence that Pier 35's performance under the Agreement involved any direct communications or interactions with any Florida residents, and no suggestion that Pier 35 was targeting customers in Florida; rather, it appears that Pier 35 was advertising generally for a worldwide audience and making cards available for purchase on the internet in a manner that could be accessed by potential travelers anywhere, usable by such persons only if they first redeemed the cards on the internet website through direct interactions with Travelocity. In other words, it does not appear that Pier 35 did anything affirmatively to reach into this jurisdiction, but rather engaged in generalized internet activities creating the possibility that "anyone, anywhere" might buy a gift card and redeem it on the travelocityincentives.com website.

*Travelocity.com LP v. Pier 35 Events, Inc.*, 2014 U.S. Dist. LEXIS 90821, 22-23 (S.D. Fla. July 3, 2014). In applying that same analysis to this case: there is no evidence of the specific direction of Dr. Novella's activity at the State of Florida, by advertising or otherwise, and no evidence that Dr. Novella had any particular reason to know that his article would be read by residents of the State of Florida. Rather, it appears that Dr. Novella's article was simply available to be read by a worldwide audience on the Internet – with no particular care to whether it was read in Florida or Alaska. In other words, Dr. Novella did nothing to affirmatively reach into this jurisdiction; he engaged in generalized Internet activities, creating the possibility that anyone, anywhere may read his article. To accept Plaintiffs' theory, would be to subject Novella to jurisdiction *everywhere*.

The information provided in the subject article is accessible in Florida, California, Connecticut, and any other location in the world where the website is available. However, Florida receives no different treatment than any other state or country where the article located on Science-Based Medicine is available. Nor is there any allegation that Dr. Novella's information is somehow tailored to Florida residents or specifically advertised or marketed to them. While there

is no dispute that Dr. Novella's article is available in Florida (as much as it is available in every other state, country, and territory globally), the mere ability of Florida residents to view the webpage is not sufficient to create specific personal jurisdiction over Dr. Novella.

### b.   The Effects Test

The Supreme Court, in *Calder v. Jones*, 465 U.S. 783 (1984) laid out the pre-Internet test for determining jurisdiction, known as the "effects test." That test requires that (1) there occurs an intentional act; (2) the act is expressly aimed at the forum state; and (3) the act causes injury that the defendant knows is likely to be suffered in the forum state. *Id.* at 787-788. In that case, the defendants had "expressly aimed" their conduct towards the forum state. *Id.* at 789. There, the jurisdiction existed because the magazine distributed over 600,000 copies of its publication in California, which was also its largest state of circulation. The Court noted that the defendants there knew that the brunt of the harm from their allegedly tortious activity would be felt in California, where the Plaintiff's entire existence lay. *Id.* at 789-790. The obvious distinction is that the magazine there purposefully and knowingly availed itself of doing business in California when it delivered the 600,000 copies to California every month, and wrote about a California resident whose entire reputation was centered in California. The magazine in *Calder* could have avoided California's jurisdiction by not shipping subscriptions to the state. Furthermore, the Plaintiff in that case had a decidedly California-centric reputation to be harmed. In this case, Tobinick is a relative newcomer to Florida – and his California-centric reputation would be the most obvious target of the exposé.[4]

The Internet makes the "effects test" of *Calder* a bit muddled. If the Court were to simplify the idea of the effects test in light of the Internet, the result may be that a nonresident defendant would always be subject to jurisdiction in Florida simply because the plaintiff's complaint alleged defamation of a Florida resident, regardless of any contacts established by the defendant. This is an assault on the First Amendment, and an impermissible conclusion to reach, because the only way then to avoid jurisdiction in any forum state would be to decline to speak on any matters critical of any entity in the forum state. The result would be silenced speech and a dearth of information available for consumers, because authors would be wary of writing about anyone in a

---

[4]     It is clear why the Plaintiff forum-shopped this case to Florida. California has an Anti-SLAPP statute, which would dispense with the claims quickly, and with great consequence to a Plaintiff who would bring such an unsupportable defamation claim. Unfortunately, Florida has not yet seen fit to pass such a statute, thus making it a haven for such cases.

14

state that did not have an Anti-SLAPP statute – essentially reducing online discourse to Washington, Oregon, California, Nevada, Texas, and the District of Columbia.

### i.   Exercising jurisdiction offends traditional notions of fair play and substantial justice

In determining whether an exercise of personal jurisdiction would be reasonable under the circumstances, the court considers four factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute. *Louis Vuitton* at 1358 (internal quotation marks omitted).

First, exercising jurisdiction over Dr. Novella will impose a significant burden on him. Connecticut is more than 1,000 miles from South Florida, and Dr. Novella has no contacts with the state to make this reasonable.   Novella Decl. ¶55.   Second, Florida has no interest in adjudicating a dispute over whether a doctor in Connecticut wrote and published an article in Connecticut, thereby allegedly engaging in false advertising in Connecticut, as related to his business in Connecticut, while discussing a disreputable medical practice that took place in California.   Third, while Plaintiffs have an interest in obtaining convenient relief, the mere convenience of a frivolous lawsuit filed thousands of miles from the defendant (and even further from at least one Plaintiff!) is not an interest that is sufficient to outweigh the Defendants' due process rights.   The Plaintiffs will not be deprived of a convenient and effective forum – presumably the California-based Plaintiff could simply file in California.   Plaintiffs presumably chose to file this case in Florida not so much because it is convenient for them to do so (since at least one of them is a California resident), but to forum-shop their way out of a state that would require a quick disposal of frivolous defamation claims.   Fourth, the judicial system is interested in resolving the dispute, but not this Court.   Weighing all of these factors demonstrates that subjecting Defendant Dr. Novella to this Court's jurisdiction would not comport with "fair play and substantial justice."   It would be a violation of due process for this Court to exercise jurisdiction over Dr. Novella, as the only forum that was foreseeable was California.

### C.   Plaintiffs' Amended Complaint Fails to Comply with Florida Statute §770.01, and thus the Defamation Claim Must Be Dismissed

Florida law has a strict statutory requirement in defamation actions.   Pursuant to Florida Statute §770.01, a defamation plaintiff must provide at least five days pre-litigation notice to **all** defendants.   Compliance with Section 770.01 is <u>mandatory</u>. *Orlando Sports Stadium*[5] and *Gannett*[6]

---

[5]       *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607 (Fla. 4th DCA 1975).

specify that the notice must <u>specifically</u> identify the false or defamatory statements at issue, or dismissal is mandated by law. *Orlando Sports Stadium*, 316 So.2d at 610; *Gannett*, 308 So.2d at 599-600. This provision, which is intended to permit corrections or retractions by the publisher of an allegedly defamatory statement and foster settlements in lieu of legal action, applies to blogs as well. *Comins v. VanVoorhis*, 135 So. 3d 545 (Fla. 5th DCA 2014). "The purpose of the statute is to protect the public's interest in the free dissemination of news." *Mancini v. Personalized Air Conditioning & Heating*, 702 So. 2d 1376, 1378 (Fla. 4th DCA 1997).

§770.01, is a model of clarity and simplicity:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

This case involves 1) a civil action, which was 2) brought for publication, 3) in an "other medium," for 4) libel. Plaintiffs' claims of trade libel and libel per se are premised on the allegedly false statements contained in Dr. Novella's article, which was published on <u>Science-Based Medicine</u>. Therefore, pursuant to §770.01, before commencing a civil action for libel against Dr. Novella for the published article, Tobinick was required to provide written notice to Dr. Novella specifying precisely which statements he alleged to be false and defamatory. Tobinick failed to provide the requisite pre-litigation notice.

The statute's "other medium" language has been held to apply to the Internet. "The presuit notice requirement of section 770.01 applies to allegedly defamatory statements made in such a public medium the purpose of which is the free dissemination of news or analytical comment on matters of public concern." *Comins v. VanVoorhis*, 135 So. 3d at 560 (Fla. 5th DCA 2014), *see also Alvi Armani Medical, Inc. v. Hennessy*, 629 F. Supp. 2d 1302, 1307 (S.D. Fla. 2008) *citing Canonico v. Calloway*, 35 Med. L. Rptr. 1549 (Fla. Cir. Ct. Feb. 22, 2007); see also *Holt v. Tampa Bay Television, Incorporated*, 34 Med. L. Rptr. 1540, 1542 (Fla. Cir. Ct. March 17, 2005) *aff'd* 976 So. 2d 1106 (Fla. 2d DCA 2007). Dr. Novella's article on <u>Science-Based Medicine</u>, as outlined above, is certainly an analytical comment on a matter of public concern, and therefore, §770.01 applies.

The publication in which the allegedly defamatory articles appeared, regularly distributes news and information to the public. Novella Decl. ¶¶14-17. Further, it was no single-issue upstart, as <u>Science-Based Medicine</u> has been publishing regularly since January 1, 2008. Novella

---

[6]       *Gannett Fla. Corp. v. Montesano*, 308 So. 2d 599 (Fla. 1st DCA 1975).

Decl. ¶17.  It is published continuously, and reports on matters of public concern.  Novella Decl. ¶¶14-15.  Novella, as the author of the article in question, is as entitled to the same Section 770.01 notice as the publication itself.  *Mancini* 702 So. 2d at 1380.  Tobinick's refusal to comply with 770.01 was fatal to his claim.

1. **Failure to Comply with §770.01 *Requires* Dismissal of Plaintiffs' Amended Complaint**

Tobinick's failure to provide proper notice compels judgment in Novella's favor.  "Failure to comply with the notice provision of section 770.01 requires dismissal of the complaint for failure to state a cause of action."  *Mancini* 702 So. 2d at 1377.  Specifically, "[d]ismissal of the libel and slander count was proper also on the ground that appellant did not show adequately that he complied with the section 770.01, Florida Statutes requirement that a plaintiff must 'serve notice in writing on the defendant specifying the article or broadcast and the statements therein which he alleges to be false and defamatory' *before* instituting his action for libel or slander."  *Cummings v. Dawson*, 444 So. 2d 565, 566 (Fla. 1st DCA 1984) (emphasis in original).  Where Tobinick did not provide pre-litigation notice to Dr. Novella, as required under the statute, the claims must be dismissed.

The pre-suit notice requirement is not a forgiving standard.  A defamation plaintiff must provide pre-suit notice that states, *with particularity*, the *statements believed to be defamatory*.  See Fla. Stat. § 770.01; *Orlando Sports Stadium,* 316 So. 2d 607 (Fla. 4th DCA 1975).  In *Orlando Sports Stadium*, the Fourth DCA held that it does not suffice to merely identify the article; it must identify the **precise** false and defamatory statements contained therein.  The First DCA reached a similar conclusion in *Gannett Florida Corporation v. Montesanto*, where the plaintiff gave the following pre-suit notice:

> Pursuant to Florida Statute 770.01, you are hereby notified that a civil action for libel will be brought against The Gannett Florida Corporation in the Circuit Court of Volusia County Florida, after five days from the service of this notice for the publication in the newspaper "Today" on or about May 10, 1970, of the attached article which was false and defamatory in that it imputed a crime to my client, Mr. Carmen.

*Gannett*, 308 So. 2d at 599.  The court found that this notice lacked the required specificity.  *Gannett*, 308 So. 2d at 599-600.  Consequently, the court reversed a defamation judgment against the defendant based on this technical noncompliance.  *Id.*

The only pre-suit correspondence from Tobinick to Dr. Novella was sent on May 17, 2013.  It specifies only one *single allegedly general false statement*.  Specifically, the letter claimed that the article

"overall paint[s] a false and highly defamatory picture" and addressed dissatisfaction that Dr. Novella was critical of Tobinick's assertion that Etanercept therapy is successful.  (ECF 55-2 at 25).  Falling far short of *Gannett* and *Orlando Sports Stadium*, Tobinick failed to identify specific false and defamatory statements.

Tobinick may argue that the letter he wrote was "close enough" and thus complied with §770.01.  However, this is neither horseshoes nor hand grenades.  This is a matter of fundamental importance and "close enough" does not suffice.  Tobinick's letter fails to meet the standard because Tobinick failed to allege with specificity, exactly which statements he believed to be false or defamatory.

In *Gannett*, the First DCA considered a notice that failed to specify which specific statements were defamatory, and thus held that it fell short of the stringent requirements of Section 770.01.  *Gannett,* 308 So. 2d at 599-600.  *See also Canonico v. Callaway*, 26 So. 3d 53, 55 (Fla. 2d DCA 2010) (strictly construing §770.01).  No reasonable interpretation of §770.01 could conclude that Tobinick satisfied its requirements.   Considering Tobinick's pre-litigation correspondence with Novella, with its vague reference to painting a defamatory picture of Tobinick and 30 additional pages of references to Tobinick's self-perceived preeminence, there is no factual dispute as to the insufficiency of Tobinick's notice regarding the initial article written by Dr. Novella.   Furthermore, Plaintiffs' letter actually raises the claim of false light, and not defamation.  The Court has explicitly declined to recognize a claim of false light as separate from defamation.  *Bradley v. City of St. Cloud*, 2013 U.S. Dist. LEXIS 89862, 12, 2013 WL 3270403 (M.D. Fla. June 25, 2013), *see Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1114 (Fla. 2008).

Additionally, unlike Tobinick's improper pre-litigation letter for the first article, Plaintiffs entirely fail to comply with §770.01 regarding Dr. Novella's second article.  As for the second article, where Dr. Novella disclosed being sued, Plaintiffs provided no notice whatsoever, as required by §770.01.   Instead, Plaintiffs simply amended their Complaint to add frivolous allegations for the subsequent article.  Without providing proper pre-litigation notice, Plaintiffs' claims must be dismissed as to the second article as well.

### 2.     Plaintiffs' Additional Claims Violate the Single Publication Rule

Florida law does not accommodate multiple causes of actions arising from a single wrongful act, and accordingly is hostile to Tobinick's addition of a tortious interference claim to his unmeritorious defamation causes of action.  In cases addressing the scenario presented in this case – a plaintiff claiming defamation and basing a claim of tortious interference with business

18

relations upon that supposed defamation – Florida precludes a plaintiff from seeking relief on the tortious interference claim. *Orlando Sports Stadium,* 316 So.2d at 609 (Fla. 4th DCA 1975); *see Easton v. Weir*, 167 So.2d 245 (Fla. 2d DCA 1964) (holding that a single wrongful act gives rise to only a single cause of action). The single action rule applies to tortious interference claims like the one in this case.

In *Orlando Sports Stadium*, the plaintiff filed suit against a newspaper for defamation and tortious interference, alleging that the articles concerning the plaintiff were defamatory. 316 So. 2d at 608. The appellate court found that the defamation and tortious interference claims were essentially the same because they were based on the same articles and because the "thrust" of the complaint was that these articles were injurious to the plaintiff. *Id.* at 609. The extraneous tortious interference claim was "nothing more than separate elements of damage flowing from the alleged wrongful publications." *Id.* They were simply restated defamation claims. Accordingly, the court dismissed the tortious interference claim because the plaintiff failed to comply with the pre-suit notice requirements applicable to defamation claims. See Fla. Stat. §770.01. The court explained that a "[a] contrary result might very well enable plaintiffs in libel to circumvent the notice requirements… by the simple expedient of redescribing the libel action to fit a different category of intentional wrong." *Orlando Sports Stadium*, 316 So. 2d at 609. (Internal quotation marks omitted).

Tobinick must establish an additional, distinct action that is not embodied within the defamation causes of action to bring a tortious interference claim. Specifically, for a claim of tortious interference, Plaintiffs must establish the specific acts of interference with specific clients or customers. "In Florida, a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." *Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 815 (Fla. 1994). At best, Plaintiffs' allegation of tortious interference claims interfere with the public at large because Plaintiffs have not put forth any evidence or allegations of specific customers whose relationship with Plaintiffs was identifiably damaged. Furthermore, "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* Plaintiffs make no such identifiable allegations, and instead rely on their generic defamation argument, to broadly claim that Dr.

Novella's articles, which may have been read by members of the general public, allegedly interfered with Plaintiffs' relationships with its customers. This argument is insufficient.

Florida courts anticipated that plaintiffs would recast their defamation claims as tortious interference in order to avoid the pre-suit notice requirements of the First Amendment and Fla. Stat. §770.01 and have interpreted the single publication rule to prevent such gamesmanship. *Orlando Sports Stadium*, 316 So.2d at 609. "This single publication/single action rule is designed to discourage the erosion of free speech safeguards by the simple expedient of looking to a substitute cause of action." *Id.* Simply reconstituting claims, as Plaintiffs are attempting to do here, is an impermissible attempt to evade First Amendment safeguards, which are well engrained in defamation law. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S. Ct. 876, 99 L. Ed. 2d 41 (1988).

The single publication rule prohibits multiple instances of liability arising from the same speech. *Trujillo v. Banco Central del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998); *accord Callaway Land & Cattle Co., Inc. v. Banyon Lakes C. Corp.*, 831 So.2d 204, 208 (Fla. 2d DCA 2002) (a single publication gives rise to a single cause of action). The alleged conduct in this case is pure speech that may not be enjoined, despite being structured in the alternative as tortious interference. The single publication rule bars Tobinick's tortious interference claim as a matter of law, as it is based on nothing more than Novella's article. Tobinick never alleged nor introduced a single additional fact, beyond those duplicative of his defamation claims, to support a claim for tortious interference. Just as numerous Florida courts have held before, this is impermissible under the single publication rule, and the cause of action should be resolved in Novella's favor as a matter of law. *Orlando Sports Stadium*, 316 So.2d at 609; *see Easton v. Weir*, 167 So.2d 245 (Fla. 2d DCA 1964).

## III.    Conclusion

Based on the foregoing, Defendant Dr. Novella's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) should be granted because the Court lacks proper personal jurisdiction over the Defendant. Plaintiffs' Amended Complaint is entirely flawed, as it merely states that the alleged tort gives rise to jurisdiction. Plaintiffs fail to make a prima facie showing how jurisdiction would attach under Florida's long-arm statute. The declaration of Dr. Novella further makes evident that Defendant's alleged activities do not bring it within the ambit of that statute. In the alternative, even if the Court somehow finds that jurisdiction exists under the long-arm statute, Plaintiffs still must demonstrate that Dr. Novella has sufficient contacts to satisfy the Due Process requirement. To exercise jurisdiction over Dr. Novella here would not comport with

fair play and substantial justice, and instead would only serve to chill Dr. Novella's constitutional right to Free Speech.

Furthermore, Plaintiffs' Amended Complaint ought to be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue.  The Southern District of Florida is not the appropriate venue here as none of the Defendants reside in the Southern District of Florida, this action did not arise out of substantial activity in the Southern District of Florida, and Plaintiffs' principal place of business is not in the Southern District of Florida.

Lastly, Plaintiffs' Amended Complaint ought to be dismissed pursuant to Fed. Stat. §770.01 for failure to comply with the statute's pre-litigation requirements.


Respectfully Submitted,

*Marc J. Randazza*

_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 9:14-cv-80781-WJZ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 11, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: adb@trippscott.com; pgh@trippscott.com; and shf@trippscott.com; Alexander D. Brown, Esq.; Peter G. Herman, Esq.; and Salvatore H. Fasulo, Esq., Attorneys for Plaintiffs, Tripp Scott, PA, 110 Southeast 6th Street, 15th Floor, Fort Lauderdale, FL 33301; dspielman@complexip.com; rkain@complexip.com; Darren Spielman, Esq.; Robert Kain, Esq., Kain & Associates, Attorneys for Defendant SGU Productions, 900 SE Third Avenue, Suite 205, Fort Lauderdale, FL 33316; amarks@coffeyburlington.com; kfreedman@coffeyburlington.com; Andrew H. Marks, Esq.; Kimberly Freedman, Esq., Coffey Burlington, Attorneys for Defendant Yale University, 2601 South Bayshore Drive, Penthouse Miami, FL 33133; jdoroghazi@wiggin.com; jbabbin@wiggin.com; John M. Doroghazi, Esq.; Jeffrey R. Babbin, Esq., Wiggin and Dana LLP, co-counsel for Defendant Yale University, 265 Church Street, PO Box 1832, New Haven, CT 06508-1832; edward.polk@csklegal.com; jeanne.spital@csklegal.com; Edward Polk, Esq.; Jeanne Spital, Esq., Cole, Scott, Kissane, PA, Attorneys for Defendant Society for Science-Based Medicine, 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33256, via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

*Marc J. Randazza*

_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com