**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

EDWARD LEWIS TOBINICK M.D., A
MEDICAL CORPORATION d/b/a
INSTITUTE OF NEUROLOGICAL              **CASE NO. 9:14-cv-80781-WJZ**
RECOVERY, a California Medical Corporation;
INR PLLC d/b/a INSTITUTE OF
NEUROLOGICAL RECOVERY, a Florida
professional limited liability company; and
EDWARD TOBINICK, M.D., an individual,

Plaintiffs.

v.

STEVEN NOVELLA, M.D., an individual;
YALE UNIVERSITY, a Connecticut
corporation; SGU PRODUCTIONS, LLC, a
Connecticut limited liability company; and
SOCIETY FOR SCIENCE-BASED
MEDICINE, INC., a Florida Corporation,

Defendants
_____/

---

**DEFENDANT DR. STEVEN NOVELLA'S REPLY IN SUPPORT OF HIS MOTION TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant, STEVEN NOVELLA, M.D., hereby files this Reply in Support of his Motion to

Dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, failure to

comply with Florida Statute §770.01's pre-suit requirement, and a for violating the single publication

rule.  Plaintiffs have failed to rebut the challenges, claims, and affidavit presented by Dr. Novella's

Motion to Dismiss.

I.      **Introduction**

        A.      **Improper Venue Mandates Dismissal**

        Under 28 U.S.C. §1391(b), a civil action based on federal question jurisdiction, such as false

advertising under the Lanham Act, may only be brought in "(1) a judicial district where any

defendant resides, if all defendants reside in the same State; (2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred or a substantial part of

property that is the subject of the action is situated; or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." *Id.* Furthermore, pursuant to 28 U.S.C. §1391(c)(2), "an entity with the capacity to sue and be sued… shall be deemed to reside… if a plaintiff, only in the judicial district in which it maintains its principal place of business." This statute does not provide a basis for venue in this District.

> **1.      Venue is inappropriate under 28 U.S.C. §1391(b)(1)**

Plaintiffs concede that venue is not appropriate pursuant to 28 U.S.C.§1391(b)(1), as they failed to respond to any arguments set forth by Dr. Novella regarding improper venue under this Section.  Venue is not appropriate under 28 U.S.C. §1391(b)(1).

> **2.      Venue is inappropriate under 28 U.S.C. §1391(b)(2)**

For venue to be appropriate under 28 U.S.C. §1391(b)(2), Plaintiffs must demonstrate that a substantial part of the acts giving rise to their false advertising claim **arose within** the Southern District of Florida.  Plaintiffs claim that venue is proper because "Defendants' complained of activities have affected and damaged Plaintiffs' interstate business which is located within this District."  ECF 55 ¶11.  As addressed in Dr. Novella's Motion to Dismiss, and supporting affidavit, none of the events giving rise to the claim occurred in this District, and Plaintiffs present no allegation (much less evidence) to the contrary.  ECF 65.  See Novella Decl. ECF 65-1.  Plaintiffs fail to provide contrary supporting evidence of Dr. Novella's actions in this District, as they have all been clearly explained in the Motion to Dismiss.

"Plaintiffs contend that substantial activities which give rise to this action occurred in this district."  ECF 77 at 3.      Additionally, Plaintiffs allege "Novella committed a tortious act by publishing false and defamatory statements on a website, www.sciencebasedmedicine.org, that was and is both accessible in this District and accessed in this District."  *Id.*  None of these allegations are sufficient to support a claim that a substantial part of the activities that give rise to Plaintiffs' allegations took place here.  Where "Plaintiff only makes conclusory statements that a substantial part of the events or omissions giving rise to the claim occurred in the District… even applying this provision [§1391], Plaintiff fails to allege any facts which would support his contention that venue is proper."  *Corley v. Osprey Ship Mgmt., Inc.*, 2007 U.S. Dist. LEXIS 5083, 4-5 (S.D. Fla. Jan. 24, 2007).  Plaintiffs' Amended Complaint cannot be cured by Tobinicks' conclusory, blanket statements contained in his affidavit.  Moreover, Plaintiffs have already been provided with notice of this deficiency, after Dr. Novella filed his original Motion to Dismiss.  ECF 36.  Despite full view of Dr. Novella's arguments outlining specifically why venue is not appropriate, Plaintiffs continue to fail to

adequately allege proper venue.  Plaintiffs' Amended Complaint is wholly incapable of supporting an argument that any acts, let alone a substantial part of the events, actually occurred in this District. Moreover, Plaintiffs' Opposition does not correct any of the insufficiencies.

### 3. Venue is inappropriate under 28 U.S.C. §1391(b)(3)

Plaintiffs concede that venue is not appropriate pursuant to 28 U.S.C.§1391(b)(3), as they failed to respond to any arguments set forth by Dr. Novella regarding improper venue under this Section.  Therefore, venue is not appropriate under 28 U.S.C. §1391(b)(3).

### 4. Venue is inappropriate under 28 U.S.C. §1391(c)(2)

Plaintiffs concede that venue is not appropriate pursuant to 28 U.S.C.§1391(c)(2), as they failed to respond to any arguments set forth by Dr. Novella regarding improper venue under this Section.  Therefore, venue is not appropriate under 28 U.S.C. §1391(c)(2).

### B. This Court Lacks Personal Jurisdiction Over Dr. Novella

"The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction by '[p]resent[ing] enough evidence to withstand a motion for directed verdict.'" *Goforit Entm't LLC v. Digimedia.com L.P.*, 513 F. Supp. 2d 1325, 1328 (M.D. Fla. 2007) (quoting *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006)). "If 'the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'" *Goforit*, 513 F. Supp. 2d at 1328 (quoting *Stubbs*, 447 F.3d at 1357).  Here, Dr. Novella presented a detailed affidavit addressing the complete lack of interactivity with and connection to Florida.  ECF 65-1.  The burden then shifted back to Plaintiffs to produce evidence supporting their claim of personal jurisdiction. Instead, Tobinick provided an affidavit that attested to nothing except his conclusory allegations. For example, Tobinick states "Substantial activities which give rise to this action occurred in this district."  ECF 77-1 at ¶ 3.  Well then, since Tobinick says so, perhaps we should all go home, since he has provided "evidence" in the form of an affidavit that attests to something that he could not possibly know anything about, from first-hand knowledge.  Then again, since Tobinick is a dermatologist, pretending to be a neurologist, this is par for the course.

Tobinick's "evidence" continues similarly, attesting that his "personal knowledge," not only includes snake oil sales, but the inner workings of Dr. Novella's personal thoughts and motivations. ECF 77-1 at ¶5.  Accordingly, unless Tobinick is qualified as a psychic, his affidavit has absolutely

no evidentiary value – except as stark and compelling evidence that he has no real argument as to why the Motion to Dismiss should be denied.

### 1.      Florida Long Arm Statute

Plaintiffs' Amended Complaint alleges, as the basis of this Court's personal jurisdiction over Dr. Novella, the conclusory statement: "Defendants are doing business in this district and is transacting business in this district by committing the complained of tortious acts within this district." ECF 55 at ¶10.  And when given the opportunity to make more specific statements about personal jurisdiction, Plaintiffs continue to make sweeping, unsubstantiated, overgeneralized claims that the website, <sciencebasedmedicine.org> is and was accessible in this District.  ECF 77 at 3. Simply because the website, as a whole, is or has been, accessed by a resident of Florida has no bearing on whether a resident of Florida actually read the subject article.  Secondly, Plaintiffs continue to make no mention of who in Florida has actually read the subject article.

Specific jurisdiction exists when the defendant conducts business activities that establish sufficient forum-related contacts.  Fla. Stat. §48.193(1)(a).  Specific jurisdiction can also attach if the defendant commits a tortious act *in Florida*.  Fla. Stat. §48.193(1)(b).  Plaintiffs fail to allege facts specific to establish the Court's jurisdiction over Dr. Novella under either provision, and to the extent they might have, Novella (and other defendants) have refuted them.

### a.      §48.193(1)(b)

"For personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant committed a substantial aspect of the alleged tort in Florida by establishing that the activities in Florida were essential to the success of the tort."  *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389 (11th Cir. 1988) citing *Watts v. Haun*, 393 So.2d 54, 56 (Fla. 2d DCA 1981).  Plaintiffs make no specific allegations as to how Dr. Novella's allegedly tortious conduct was *directed into Florida*. Instead, Plaintiffs make generic statements that Dr. Novella writes articles that are available to readers in Florida, and that Dr. Novella's podcasts are available to listeners in Florida.  ECF 55 ¶12. All Plaintiffs seem to argue that if you can view a website somewhere, then jurisdiction attaches there.  In other words, every website subjects any author on that website to jurisdiction in every jurisdiction in the world – from Saipan to San Diego to Sanford.  Therefore, under this logic, this case could just as readily have been brought in Montana, Guam, or California.   This is a strange position indeed, and utterly unsupported by any case law whatsoever.

Plaintiffs also allege that the article constitutes "false advertising."  However, Plaintiffs presented nothing to show how this article constitutes "advertising." The article in question is not commercial speech.  Dr. Novella does not profit from it.  ECF 65-1, Novella Decl. ¶23.  The article does not promote Dr. Novella's own business, or suggest that a prospective patient ought to utilize Dr. Novella's services in lieu of Tobinick's.  ECF 65-1, Novella Decl. ¶¶42-49.  In fact, the very notion of this is absurd on its face.  Tobinick is a nationally discredited dermatologist who has used questionable methods to achieve questionable results, in a snake oil scheme. Dr. Novella is a prominent and eminent Assistant Professor of Neurology at Yale University.  Tobinick is hardly Novella's *competition*.

Furthermore, even if the article had constituted commercial speech of some kind, Plaintiffs do not allege how the article was *directed at* or *transmitted into* Florida.  This Court has agreed with the Northern District of Illinois, finding that "national advertisements (including those on the internet) that do not specifically target [the forum state] are insufficient to subject a defendant to jurisdiction here." *Zamora Radio, LLC v. Last.fm Ltd.*, 2011 U.S. Dist. LEXIS 69101, 26, 2011 WL 2580401 (S.D. Fla. June 28, 2011) *citing David White Instruments, LLC. v. TLZ. Inc.*, 2003 U.S. Dist. LEXIS 8375, at *16 (N.D. Ill 2003).  While Dr. Novella's article may have been *accessible* to a reader in Florida, that is not enough.  Dr. Novella did not specifically target Florida consumers.  Novella Decl. ¶43.  There is no allegation supporting a link between Dr. Novella's article and Tobinick's claims of false advertising in Florida.  Plaintiffs' Amended Complaint fails to allege with any specificity how Dr. Novella specifically sent his article into Florida, sought out Florida readership, or targeted Floridians as clients.  Therefore, personal jurisdiciton under Fla. Stat. 48.193(1)(b) is inappropriate here.

Plaintiffs rely extensively on *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201 (Fla. 2010), but Plaintiffs clearly do not understand the facts or the law of that case.  They wish that the case stood for the proposition that posting allegedly defamatory on the Internet establishes jurisdiction.  ECF 77 at 6.  However, that is not the case at all.  "We conclude that posting defamatory material on a website alone does not constitute the commission of a tortious act within Florida for purposes of section 48.193(1)(b), Florida Statutes.  Rather, the material posted on the website about a Florida resident must not only be *accessible* in Florida, but also be *accessed* in Florida in order to constitute the commission of the tortious act of defamation within Florida under section 48.193(1)(b)." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010) (emphasis in original).  Even then, all that *Internet Solutions* analyzed (at the Florida Supreme Court) was whether such conduct satisfied the Florida Long Arm statute.  *Id.*  That case was initially filed in the Middle District of Florida, which

held that the defendant's conduct fit the long arm statute, but not the due process clause. *Internet Solutions Corp. v. Marshall*, 2008 U.S. Dist. LEXIS 28261, 2008 WL 958136 (M.D. Fla. Apr. 7, 2008). The plaintiff appealed to the 11th Circuit, which declined to rule on the substantive issues until the Florida Supreme Court answered the certified question on the Florida Long Arm statute. It did, and remanded the case back to the 11th Circuit, which sent it back to the Middle District, holding just as it should here – that even if the defendant's conduct fit the Long Arm statute, it did not fit the due process clause. *Internet Solutions Corp. v. Marshall*, 2010 U.S. Dist. LEXIS 145503 (M.D. Fla. Sept. 29, 2010).

Plaintiffs have provided no evidence whatsoever that the subject article has actually been accessed in Florida, thus failing to step over the inch-high bar set by the Florida Supreme Court in *Internet Solutions v. Marshall*. Instead, Plaintiffs rely on general assertions that the website <sciencebasedmedicine.org> is *accessible* in Florida and presumptions that it has been accessed in Florida. ECF 77 at 3; 77-1 at ¶6. That does not provide any indication whatsoever that the subject article has actually been accessed in Florida. Plaintiffs' Amended Complaint provided no identification of any individual who has actually viewed the subject article in Florida. Nor did Plaintiffs' Opposition rebut Dr. Novella's contention that no specifically identifiable person has actually accessed the subject article in Florida. Therefore, even the easy-to-obtain standard for the Long Arm statute, has not been met.

Even if it had been, this Court should follow the *Internet Solutions v. Marshall* procedural history for guidance as to what should happen here. In *Internet Solutions*, on remand, in light of the Florida Supreme Court's ruling that publishing material on the Internet *may* give rise to personal jurisdiction, the Middle District of Florida still concluded that there was no personal jurisdiction over Marshall. That Court determined that where the interactivity of the website was only intermediary, and non-commercial, that Court determined "the exercise of personal jurisdiction based on the *Zippo* sliding scale is not proper." *Internet Solutions Corp. v. Marshall*, 2010 U.S. Dist. LEXIS 145503, 12 (M.D. Fla. Sept. 29, 2010). Additionally, "[w]hen applying the purposeful direction standard to Internet activity, the court recognizes that 'the fact that Defendant's websites are equally accessible everywhere does not establish targeting of Florida… [V]isits to a website by Florida residents would not, without more, constitute sufficient minimum contacts.'" *Id.* citing *Goforit*, 513 F. Supp. 2d at 1330. The Court in *Internet Solutions* also determined that where Marshall did not target Florida-specific companies, nor was her website searchable by Florida-specific companies, and it is unclear that Marshall even wrote about other Florida-based companies, other than Internet Solutions, it was determined that "Marshall's contacts with Florida do not indicate that she

purposefully availed herself of the privilege of conducting activities in Florida or should reasonably anticipate being haled into a Florida court." *Id.* at 18. Ultimately, the Court in *Internet Solutions v. Marshall* granted Marshall's Motion to Dismiss for lack of personal jurisdiction, stating "[t]here were not sufficient minimum contacts to satisfy the principles of the Due Process Clause, and an exercise of personal jurisdiction over the defendant would offend the traditional notions of fair play and substantial justice." *Id.* at 20.  Just as in *Internet Solutions*, Dr. Novella has not purposefully availed himself of Florida, has not maintained sufficient minimum contacts, and an exercise of personal jurisdiction over him would offend the traditional notions of fair play and substantial justice.

> **b.      Section 48.193(1)(a)**

Florida's long-arm statute also provides for jurisdiction where an individual conducts business in Florida.  However, Plaintiffs also fail to demonstrate how anything Dr. Novella does constitutes "doing business in Florida."  Plaintiffs concede that §48.193(1)(a) does not give rise to personal jurisdiction, as Plaintiffs failed to address this Section, and have failed to rebut Dr. Novella's assertion that there is no personal jurisdiction under §48.193(1)(a).

> **c.      Section 48.193(2)**

Florida's general jurisdiction statute provides that a court may exercise jurisdiction over a non-resident if the defendant "is engaged in substantial and not isolated activity within the state… whether or not the claim arises from that activity."  See Fla. Stat §48.193(2).  Dr. Novella's Motion to Dismiss sufficiently and adequately addressed all of the bases for a lack of personal jurisdiction under §48.193(2).  Plaintiffs concede that §48.193(2), as thay have failed to address this Section in their Opposition to Dr. Novella's Motion to Dismiss.

> **2.      This Court's exercise over Dr. Novella would violate the Due Process requirement of the Fourteenth Amendment**

The Eleventh Circuit in *Posner* adopted a three-part test to determine satisfaction of the minimum contacts requirement.  "First, the contacts must be related to the plaintiff's cause of action." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999) (citing *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993)).  "Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there." *Id.  See Louis Vuitton Malletier, S. A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) (utilizing the same test).  However, Plaintiffs have failed to address or rebut this three-part test raised by Dr. Novella in his Motion to Dismiss.

Instead, Plaintiffs rely entirely on *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008), to support their vague position that there are somehow sufficient contacts between Florida and Dr. Novella. However, *Licciardello* is factually distinct, and that significantly matters in this case. Much like *Internet Solutions*, the court in *Licciardello* gave wide latitude to the plaintiff when it comes to application of the Long Arm statute. However, it then held that due process concerns did not warrant dismissal after looking at the particular facts of the case. In *Licciardello*, Internet activity gave rise to jurisdiction where the defendant used the plaintiff's trademarked name and picture on his website to imply that the plaintiff actually endorsed the defendant's product, as the court found that there was grossly intentional conduct with the specific intent to infringe on the plaintiff's known trademark. That is not the case here.

Furthermore, since *Licciardello* was decided, the Court has recognized a sliding scale test to determine the activity of a website in relation to personal jurisdiction. *Travelocity.com LP v. Pier 35 Events, Inc.*, 2014 U.S. Dist. LEXIS 90821, 17-18 (S.D. Fla. July 3, 2014), *see Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). That court recognized that not all websites function the same or serve the same purpose. Websites may be "active," by which a consumer may buy products directly on that website; "passive," whereby the website merely posts information and has no interactive component; or intermediary, whereby a user may exchange information with the host computer, but the level of interaction is limited. *Id.* "A passive web site only makes information available to those interested in viewing the web site in foreign jurisdictions whereas an active web site allows for those interested in foreign jurisdictions to enter into contracts over the Internet with the defendant." *Miami Breakers Soccer Club, Inc. v. Women's United Soccer Ass'n*, 140 F. Supp. 2d 1325, 1329 (S.D. Fla. 2001). Dr. Novella's article on Science-Based Medicine falls within the passive category because the website is primarily used for posting information in the form of articles.

Quite simply, a Plaintiff viewing allegedly tortious activity on the Internet is not sufficient to confer personal jurisdiction over a defendant. "Although Plaintiff claims that it viewed the video over the Internet in Florida, nothing in the record indicates that Defendants purposefully directed the video to Florida residents… Because this Court does not have personal jurisdiction over Defendants with regard to Plaintiff's… claims, such claims are due to be dismissed." *Alpha Tech. U.S.A. Corp. v. MLSNA Dairy Supply, Inc.*, 2013 U.S. Dist. LEXIS 167884, 19, 2013 WL 6195766 (M.D. Fla. Nov. 26, 2013). Here, Plaintiffs are purportedly claiming, while providing no supporting cognizable allegations, that personal jurisdiction over Dr. Novella is appropriate because Tobinick was able to view the article while he happened to be in Florida. But simply viewing a website while

in Florida, without any evidence that the website was purposefully directed to Florida residents, is not sufficient to confer personal jurisdiction over a non-resident defendant.

### C. Plaintiffs' Amended Complaint Fails to Comply with Florida Statute §770.01, and thus the Defamation Claim Must Be Dismissed

Florida law has a strict statutory requirement in defamation actions.  Pursuant to Florida Statute §770.01, a defamation plaintiff must provide at least five days pre-litigation notice to **all** defendants.  Compliance with Section 770.01 is <u>mandatory</u>. *Orlando Sports Stadium*[1] and *Gannett*[2] specify that the notice must <u>specifically</u> identify the false or defamatory statements at issue, or dismissal is mandated by law.  *Orlando Sports Stadium*, 316 So.2d at 610; *Gannett*, 308 So.2d at 599-600.

Pursuant to §770.01, before commencing a civil action for libel against Dr. Novella for the published article, Tobinick was required to provide written notice to Dr. Novella specifying precisely which statements he alleged to be false and defamatory.  Tobinick failed to provide the requisite pre-litigation notice.  While Plaintiffs still assert that the initial letter, sent by Tobinick to Dr. Novella on May 17, 2013 was sufficient, as addressed by Dr. Novella in his Motion to Dismiss (ECF 65) and further outlined below, it is not.

### 1. Failure to Comply with §770.01 *Requires* Dismissal of Plaintiffs' Amended Complaint

Tobinick's failure to provide proper notice compels *judgment* in Novella's favor.  "Failure to comply with the notice provision of section 770.01 requires dismissal of the complaint for failure to state a cause of action." *Mancini* 702 So. 2d at 1377.  Specifically, "[d]ismissal of the libel and slander count was proper also on the ground that appellant did not show adequately that he complied with the section 770.01, Florida Statutes requirement that a plaintiff must 'serve notice in writing on the defendant specifying the article or broadcast and the statements therein which he alleges to be false and defamatory' ***before*** instituting his action for libel or slander." *Cummings v. Dawson*, 444 So. 2d 565, 566 (Fla. 1st DCA 1984) (emphasis in original).  Where Tobinick did not provide pre-litigation notice to Dr. Novella, as required under the statute, the claims must be dismissed as a matter of law.  "The presuit notice requirement of section 770.01 applies to allegedly defamatory statements made in such a public medium the purpose of which is the free dissemination of news or analytical comment on matters of public concern." *Comins v. VanVoorhis*, Case No. 5D11-2754 (Fla. 5th DCA 2014).  The court left no ambiguity there.  Here, Dr. Novella authored an article commenting on a matter of public concern, and as such, he is entitled to pre-suit notice under §770.01.  This applies to

---

[1]     *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607 (Fla. 4th DCA 1975).
[2]     *Gannett Fla. Corp. v. Montesano*, 308 So. 2d 599 (Fla. 1st DCA 1975).

the defamation claims no matter what Plaintiffs try and call the article – be it an "Advertisement" or any other fanciful name they wish to attach to it.

The only pre-suit correspondence from Tobinick to Dr. Novella was sent on May 17, 2013. It specifies only one *single allegedly general false statement*.  Specifically, the letter claimed that the article "overall paint[s] a false and highly defamatory picture" and addressed dissatisfaction that Dr. Novella was critical of Tobinick's assertion that Etanercept therapy is successful.  (ECF 55-2 at 25). Tobinick's letter fails to meet the standard because Tobinick failed to allege with specificity, exactly which statements he believed to be false or defamatory.

Additionally, unlike Tobinick's improper pre-litigation letter for the first article, Plaintiffs entirely failed to comply with §770.01 regarding Dr. Novella's second article, yet they rely upon it for their Amended Complaint.  A letter from 2013 can not form the basis for a proper §770.01 notice about statements published in 2014, unless we are all grossly misinformed about the space-time continuum, or Tobinick has not only cured Alzheimer's with Enbrel, but has also invented time travel.

Since Plaintiffs embarked on this case without providing proper pre-suit notice, their claims must be dismissed as to the second article. Plaintiffs entirely fail to address the requirements of §770.01, as it pertains to the "Second Advertisement."[3]  Plaintiffs provide no basis for why they may not be required to provide notice for the "Second Advertisement," presumably as there is none.

In sum, if there is *any* 770.01 notice, it was only for a single allegedly false statement.  With respect to any other allegedly defamatory statements, the Complaint must be dismissed as a matter of law.

### 2.    Plaintiffs' Additional Claims Violate the Single Publication Rule

Florida law does not accommodate multiple causes of actions arising from a single wrongful act, and accordingly is hostile to Tobinick's addition of a tortious interference claim to his unmeritorious defamation causes of action.  "In Florida, a single publication gives rise to a single cause of action." *Orlando Sports Stadium,* 316 So.2d at 609 (Fla. 4th DCA 1975).

Plaintiffs rely on *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) as their basis for rebutting Dr. Novella's assertion that the single publication rule bars Plaintiffs from seeking multiple causes of action arising out of one article.  *Callaway Land* relies heavily on *Orlando Sports Stadium*, agreeing that a single publication gives rise to only one single

---

[3] The use of the term "advertisement" is only to discuss the terminology used by the Plaintiffs.  The characterization of news articles as such is without legal, factual, logical, or even fanciful support.  It likely seemed like a clever idea in the beginning, with Plaintiffs hoping that nobody would ever critically examine their claims.

cause of action.   However, Plaintiffs are conflating correlation and causation in the factual circumstances of *Callaway Land*, improperly stating that the single publication "rule only applies where the causes of action arise from a defamation claim that has been time barred."   ECF 77 at 10. That is incorrect.   In *Callaway Land*, the court determined that "[b]ecause the disparagement of title claim was time barred, the claims for tortious interference and abuse of process must also fail where they are subject to the single publication/single action rule."   *Callaway Land*, 831 So. 2d at 208.   Put simply, where the single publication rule bars multiple causes of action arising out of the same publication, and where one cause of action is time barred, the others fail, simply because other causes of action from that same publication cannot stand.   However, this is not to say that the single publication rule, as articulated in *Orlando Sports Stadium*, is somehow now only limited to causes of action that have been time barred.

The alleged conduct in this case is pure speech that may not be enjoined, despite being structured in the alternative as tortious interference.   The single publication rule bars Tobinick's tortious interference claim as a matter of law, as it is based on nothing more than Novella's article. Tobinick never alleged nor introduced a single additional fact, beyond those duplicative of his defamation claims, to support a claim for tortious interference.   Just as numerous Florida courts have held before, this is impermissible under the single publication rule, and the cause of action should be resolved in Novella's favor as a matter of law.   *Orlando Sports Stadium*, 316 So.2d at 609; *see Easton v. Weir*, 167 So.2d 245 (Fla. 2d DCA 1964).

## III.    Conclusion

Based on the foregoing, Defendant Dr. Novella's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3) should be granted because the Court lacks proper personal jurisdiction over the Defendant.   Plaintiffs' Amended Complaint is entirely flawed, as it merely states that the alleged tort gives rise to jurisdiction.   Plaintiffs fail to make a prima facie showing how jurisdiction would attach under Florida's long-arm statute.   The declaration of Dr. Novella further makes evident that Defendant's alleged activities do not bring it within the ambit of that statute.   In the alternative, even if the Court somehow finds that jurisdiction exists under the long-arm statute, Plaintiffs still must demonstrate that Dr. Novella has sufficient contacts to satisfy the Due Process requirement. To exercise jurisdiction over Dr. Novella here would not comport with fair play and substantial justice, and instead would only serve to chill Dr. Novella's constitutional right to Free Speech.

Furthermore, Plaintiffs' Amended Complaint ought to be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue.   The Southern District of Florida is not the appropriate venue here

as none of the Defendants reside in the Southern District of Florida, this action did not arise out of substantial activity in the Southern District of Florida, and Plaintiffs' principal place of business is not in the Southern District of Florida.

Lastly, Plaintiffs' Amended Complaint ought to be dismissed pursuant to Fed. Stat. §770.01 for failure to comply with the statute's pre-litigation requirements.

Respectfully Submitted,

*Marc J. Randazza*

_____

Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 9:14-cv-80781-WJZ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 5, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: adb@trippscott.com; pgh@trippscott.com; and shf@trippscott.com; Alexander D. Brown, Esq.; Peter G. Herman, Esq.; and Salvatore H. Fasulo, Esq., Attorneys for Plaintiffs, Tripp Scott, PA, 110 Southeast 6th Street, 15th Floor, Fort Lauderdale, FL 33301; dspielman@complexip.com; rkain@complexip.com; Darren Spielman, Esq.; Robert Kain, Esq., Kain & Associates, Attorneys for Defendant SGU Productions, 900 SE Third Avenue, Suite 205, Fort Lauderdale, FL 33316; amarks@coffeyburlington.com; kfreedman@coffeyburlington.com; Andrew H. Marks, Esq.; Kimberly Freedman, Esq., Coffey Burlington, Attorneys for Defendant Yale University, 2601 South Bayshore Drive, Penthouse Miami, FL 33133; jdoroghazi@wiggin.com; jbabbin@wiggin.com; John M. Doroghazi, Esq.; Jeffrey R. Babbin, Esq., Wiggin and Dana LLP, co-counsel for Defendant Yale University, 265 Church Street, PO Box 1832, New Haven, CT 06508-1832; edward.polk@csklegal.com; jeanne.spital@csklegal.com; Edward Polk, Esq.; Jeanne Spital, Esq., Cole, Scott, Kissane, PA, Attorneys for Defendant Society for Science-Based Medicine, 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33256, via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com