IN THE U.S. DISTRICT COURT OF THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:14-cv-80781-RLR

EDWARD LEWIS TOBINICK M.D., a
Medical Corporation d/b/a THE INSTITUTE
OF NEUROLOGICAL RECOVERY, a
California Medical Corporation; INR PLLC
d/b/a INSTITUTE OF NEUROLOGICAL
RECOVERY, a Florida professional limited
liability company; and EDWARD
TOBINICK, M.D., an individual,

        Plaintiffs,

vs.

STEVEN NOVELLA, M.D., an individual;
YALE UNIVERSITY, a Connecticut
corporation; SGU PRODUCTIONS, LLC, a
Connecticut limited liability company; and
SOCIETY FOR SCIENCE-BASED
MEDICINE, INC., a Florida corporation,

        Defendants.
_____/

**DEFENDANT SOCIETY FOR SCIENCE-BASED MEDICINE
REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Defendant Society for Science-Based Medicine (Society) replies to Plaintiffs' Opposition to the Society's Motion to Dismiss.

## I.
## INTRODUCTION

The Plaintiffs rely upon a variety of palpably disingenuous arguments including the hypothesis that the Society was "formed for the purpose of promoting its goal of harming physicians who practice medicine in a manner unsatisfactory to [the Society]." (DE 81 at 1). Plaintiffs then seek to expand that assertion into a factor motivating the

Case No. 9:14-cv-80781-RLR

Society to discourage consumers from obtaining medical treatment with which it disagrees and to otherwise issue defamatory information as a revenue strategy. (DE 81 at 7). As a backup to those assertions, Plaintiffs urge that the Society is liable for the actions of Dr. Novella, a separate Defendant in his individual capacity, because he happens to be one of the Society's Directors. These positions (some of which are not asserted in the Amended Complaint) are untenable, and the Motion to Dismiss should be granted.

## II.
## THE COMMUNICATIONS DECENCY ACT DOES APPLY TO THE SOCIETY AND PRECLUDES PLAINTIFFS' CLAIMS AGAINST THIS DEFENDANT.

Plaintiffs contend that the Communications Decency Act (CDA)[1] does not protect the Society because it has acted as an "information content provider". (DE 81 at 3). In reality, the case cited by the Plaintiffs actually illustrate why the CDA does apply.

The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the ***creation or development*** of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3)(emphasis added).[2] The Society neither created nor developed the Novella Article at issue herein (DE 74-1, ¶ 11), nor does it create or develop other such articles. Instead, the Society's website provides resources and information concerning all

---

[1] The CDA protects online service providers and users from claims based on content provided by third parties, stating in part that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

[2] Sec. 230 immunity requires that: (1) the defendant be a service provider or user of an interactive computer service; (2) the cause of action treats the defendant as a publisher or speaker of information; and (3) a different information content provider provided the information. *Whitney Info. Network, Inc. v. Verio, Inc.*, 79 U.S.P.Q.2d 1606 (M.D. Fla. 2006) (internal citations omitted).

Case No. 9:14-cv-80781-RLR

aspects of the concept of science-based medicine and a central resource for communication among individuals and organizations concerned with the concept of science-based medicine. (DE 74-1, ¶¶ 5-6).

Plaintiffs cite to *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 801 (N.D. Cal. 2011), which denied CDA immunity to an interactive computer service provider[3] who was also an information content provider. In *Fraley*, the service provider (Facebook) took its users' names, photographs and likenesses without their consent and used the information to create <u>new content</u> ("Sponsored Stories") it then published as endorsements of third-party products or services. *Id.* In doing so, Facebook compiled data provided by Facebook users, transformed the character of that data and created a separate commercial endorsement thread to which users had not consented. *See Id.* at 802. Facebook's Sponsored Stories went "beyond a publisher's traditional editorial functions such as deciding whether to publish, withdraw, postpone or *alter* content" – functions that receive immunity under the CDA. *Id.* (internal quotation marks and citations omitted); s*ee also Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) (website operator may select content for publication from a pool of user-submitted material without losing § 230 immunity.); *Corbis Corporation v. Amazon.com, Inc.*, 351 F.Supp.2d 1090 (W.D. Wash. 2004) (soliciting or encouraging users to submit content does not itself deprive a website operator of § 230 immunity.); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) (internet search engine operator was immune

---

[3]An "interactive computer service" is defined as "any information service, system, or access software provider that *provides or enables computer access by multiple users* to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." § 230(f)(2) (emphasis added).

under CDA from any defamation, invasion of privacy or negligence liability arising from its archiving of, caching of or providing access to allegedly defamatory, unauthorized or threatening postings; the operator could not be held liable as a publisher or speaker of third-party content).

In the case at bar, the Society is an interactive computer service provider because it allows access to multiple users on the Internet and provides resources and information concerning all aspects of science-based medicine. Plaintiffs treat the Society as if it were responsible for creating the material and is thus the speaker of it. Contrary to Plaintiffs' allegations, the Society is not an information content provider because the information on the Society's website has been provided by third parties and has not been edited, changed, transformed or otherwise altered in any way that would preclude § 230 immunity.[4]

### III.
### THE LANHAM ACT CLAIMS ARE NOT VIABLE AGAINST THE SOCIETY.

The core of Plaintiffs' Lanham Act and other liability claims against the Society is the notion that the Society's purpose is to harm physicians with whom it disagrees. In support of this assertion, the Plaintiffs note that the Society's website states its mission as "'*Educating* consumers, professionals, business people . . . about Science-Based Medicine.'" (DE 81 at 1-2, 6)(emphasis added). Plaintiffs then quote from a portion of

---

[4] Not only has the data remained untouched, the Society did not even perform traditional editorial functions, such as deciding whether to publish, withdraw, postpone or alter content – functions that would not affect the Society's immunity under § 230. Moreover, the Society took no affirmative steps to single out, promote, feature or highlight Dr. Novella's Article. In fact, the Society was unaware the Article was part of the voluminous amount of content it hosts until the commencement of this action. (DE 74-1).

Case No. 9:14-cv-80781-RLR

the website that states "'People should not suffer, die and lose hope, time and money due to pseudo-medicine.'" *Id.* Nowhere do these statements even arguably set forth a goal or purpose of harming doctors. The Society's mission has clearly been identified as one that educates consumers and professionals. (DE 74-1). Even Dr. Novella's statement that he has "a professional and ethical obligation to inform and educate the public about the relative *risks and rewards*" of certain practices (DE 81 at 6)(emphasis added) cannot be viewed as an intent to harm doctors.

Plaintiffs contend that the Article was written by Dr. Novella, one of the Society's Directors, (DE 81 at 2, 6) as if to assert a claim for vicarious liability. The Amended Complaint attempts to assert claims against Dr. Novella in his individual capacity only, and does not attempt to state a claim against the Society on a theory of vicarious liability for Dr. Novella's actions. In asserting this position, the Plaintiffs ignore the fact that the Society did not even exist at the time Dr. Novella authored and published the Article. (See DE 74-2). It would be ridiculous to assert that the Society could be vicariously liable for individual actions of Dr. Novella that occurred prior to the creation of the Society and before Dr. Novella was a Director.

The Society does not practice medicine or provide medical treatments to patients, and therefore clearly does not compete with the Plaintiffs. Compounding the ridiculosity, Plaintiffs argue that the Society is somehow promoting its own interests by defaming Plaintiffs; that "the more defamatory information it has on its website, the more readers are likely to visit its site, generate revenue and advance the interests of [the Society]." (DE 81 at 7); and that by now defending itself against these claims the Society "is completely unfazed by the fact that it is harming Plaintiffs." (DE 81 at 8).

These are not factual allegations that support a claim for relief; they are mere conclusory assertions drawn out of the air with no properly alleged factual basis.

For the reasons asserted in the Society's Motion to Dismiss (DE 74) and hereinabove, the Plaintiffs' Lanham Act claim must fail.

## IV.
## THE SOCIETY IS ENTITLED TO THE PROTECTIONS OF THE NOTICE REQUIREMENTS IN § 770.01, FLA. STAT.

The pre-suit notice requirement of § 770.01, Fla. Stat., applies to allegedly defamatory statements made in a public medium the purpose of which is the free dissemination of news or analytical comment on matters of public concern. *Comins v. Vanvoorhis*, 135 So.3d 545, 560 (Fla. 5th DCA 2014) (citing *Ross v. Gore*, 48 So.2d 412 (Fla. 1950)).

Florida's Fifth District Court of Appeal recently held that blogs with a primarily informational purpose are considered media defendants pursuant to § 770.01. *Comins*, 135 So.3d at 559. Blogs have "stepped into the void left by a shrinking print industry, and perform the same important function – delivering news, information, and commentary to the masses." *Id.* Thus, blogs that disseminate information and analytical criticism on issues of public interest are entitled to pre-suit notice.

Disseminating information on matters of specialized public interest (i.e. science-based medicine) is precisely the function of the Society's interactive website. The case cited by Plaintiffs (DE 81 at 5) arose from a one-time publication on defendant's website canceling his concert, and was held to not confer media status on that defendant. *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321 (S.D. Fla. 2012). The Society is an organization that provides information regarding science-based medicine, an issue of

Case No. 9:14-cv-80781-RLR

public interest. The purpose of the Society is to educate similarly to what a periodical would do. Therefore, the Society is a media defendant and entitled to the protection of § 770.01.[5]

Plaintiffs further state that the Society "cannot simultaneously contend that it is [...] a media defendant [...] while also claiming it did not disseminate the Advertisement at all." (DE 81 at 5). The Society has not denied that the Article was posted as part of voluminous third party material on its website. The Society has simply stated that it was unaware of the Article until the commencement of this suit because no pre-suit notice was received from the Plaintiffs. (DE 74-1).

As a final effort to avoid application of § 770.01, Plaintiffs assert that by sending presuit notice to Dr. Novella, they somehow complied with the requirement to also provide notice to the Society. (DE 81 at 5-6; DE 82 at 5). The presuit letter to Dr. Novella dated May 17, **2013**, (DE 55-2) was addressed to his Hamden, Connecticut, address and makes no mention of the Society, although it does list Dr. Novella's other affiliations (DE 55-2 at 2). This is not surprising inasmuch as the Society had not yet come into existence. Thus, Plaintiffs are asserting that a letter to Dr. Novella somehow suffices as statutory notice to a separate entity that did not yet exist and had not yet had any connection to the Article.

---

[5] Plaintiffs contend that the Society is not a media defendant, yet they took care to plead that such notice was provided to Dr. Novella, SGU and Yale University, none of whom are traditional media parties. (See DE 55, ¶¶ 89-90, 96). The providing of such notice prior to filing suit, as well as the pleading of it in a manner that conveys it is a necessary element of the claim, contradicts Plaintiffs' position on interpretation of the "other medium" phrase in the statute.

Case No. 9:14-cv-80781-RLR

## V.
## CONCLUSION

Plaintiffs posit that "a simple and ordinary reading of the pleading" will elucidate the allegations against the Society. (DE 81 at 2-3). Unfortunately, however, the introductory paragraph to the Amended Complaint establishes that the word "Defendants" is to refer collectively to all Defendants (DE 55 at 1-2), rendering the pleading ambiguous at best. For example, paragraphs 99 and 100 appear to address activities of Defendant SGU, but with no discernible connection to the Society. Plaintiffs then proceed to allege a "Second Advertisement" by Dr. Novella on July 23, 2014, that supposedly compounded the problem (DE 55 at 16-17) but with no allegation of participation by the Society. By lumping together all allegations and all claims against all Defendants, the Plaintiffs have presented a confusing and imprecise pleading.

For this and all reasons set forth in the Motion to Dismiss (DE 74 and its exhibits) and hereinabove, the Society for Science-Based Medicine requests that this Court dismiss the Amended Complaint against it, or alternatively, grant summary judgment, at the cost and expense of the Plaintiffs, and further seeks such additional relief as shall be appropriate.

Case No. 9:14-cv-80781-RLR

## **CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 18th day of September 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served on this day upon: adb@trippscott.com; pgh@trippscott.com; sfh@trippscott.com; ele@trippscott.com; and rep@trippscott.com and Alexander D. Brown, Esq., Peter G. Herman, Esq. and Salvatore H. Fasulo, Esq., Tripp Scott, P.A., 110 Southeast 6th Street, 15th Floor, Fort Lauderdale, FL 33301, Counsel for Plaintiffs; Marc J. Randazza, Esq., Randazza Legal Group, Attorney for Steven Novella, M.D., 3625 S. Town Center Drive, Las Vegas, NV 89135, MJR@randazza.com, ecf@randazza.comand; Darren J. Spielman, Esq., Robert C. Kain, Jr., Esq., Kain & Associates, Attorneys for SGU Productions, LLC, 900 S.E. Third Avenue, Suite 205, Ft. Lauderdale, FL 33316, dspielman@complexip.com, rkain@complexip.com; Andrew H. Marks, Esq., Kimberly Freedman, Esq., Coffey Burlington, P.L., Attorneys for Yale University, 2601 South Bayshore Drive, Miami, Florida 33133, marks@coffeyburlington.com, kfreedman@coffeyburlington.com; and Jeffrey R. Babin, Esq., John M. Doroghazi, Esq., Wiggin and Dana LLP, Attorneys for Yale University, 265 Church Street, P.O. Box 1832, New Haven, CT 06508-1832, jbabbin@wiggin.com, jdoroghazi@wiggin.com., either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant,
Society for Science-Based Medicine, Inc.
Cole Scott & Kissane Building
9150 South Dadeland Blvd., Suite 1400
P.O. Box 569015
Miami, FL 33256
Telephone: (305) 350-5338
Facsimile: (305) 373-2294
Primary email: Edward.Polk@csklegal.com
Secondary email: Jeanne.Spital@csklegal.com

/s/  Edward S. Polk
_____
Edward S. Polk, Esq.
Florida Bar Number 239860
Jeanne K. Spital, Esq.
Florida Bar Number 344273

**COLE, SCOTT & KISSANE, P.A.**
COLE, SCOTT & KISSANE BUILDING - 9150 SOUTH DADELAND BOULEVARD - SUITE 1400 - P.O. BOX 569015 - MIAMI, FLORIDA 33256 - (305) 350-5300 - (305) 373-2294 FAX