**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

EDWARD LEWIS TOBINICK M.D., A
MEDICAL CORPORATION d/b/a
INSTITUTE OF NEUROLOGICAL
RECOVERY, a California Medical Corporation;
INR PLLC d/b/a INSTITUTE OF
NEUROLOGICAL RECOVERY, a Florida
professional limited liability company; and
EDWARD TOBINICK, M.D., an individual,

          Plaintiffs.

v.

STEVEN NOVELLA, M.D., an individual; YALE
UNIVERSITY, a Connecticut corporation; SGU
PRODUCTIONS, LLC, a Connecticut limited
liability company; and SOCIETY FOR SCIENCE-
BASED MEDICINE, INC., a Florida corporation,

          Defendants.

Case No:  9:14-cv-80781-WJZ

---

**SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)**

**I.    Introduction**

The <u>Los Angeles Times</u> published an exposé on Plaintiffs, on May 5, 2013, entitled "*A Wife's Alzheimer's, a Husband's Obsession.*"  This article recounted the story of a husband, desperate to do anything to save his wife, and willing to pay whatever it took to find a cure.  ECF 65-2. According to the article, the husband sought out EDWARD LEWIS TOBINICK M.D., A MEDICAL CORPORATION (which is the relevant Plaintiff against whom this Motion is filed, and which is hereinafter referred to as "Tobinick M.D.").  Tobinick M.D. administered dubious treatments at astronomical cost, and while the patient succumbed, Tobinick M.D. prospered. Dr. Novella saw the <u>Los Angeles Times</u> article, and wrote "*Enbrel for Stroke and Alzheimer's.*"

ECF 1 at 21; 55-1.  This article discussed the <u>Los Angeles Times</u> article, the California conduct of Tobinick M.D., the plausibility of Tobinick M.D.'s "treatments," and the need for greater research and testing before such treatments should be sold to patients.  That article forms the basis of the litigation here. [1]

"The First Amendment presupposes that the freedom to speak one's mind is not only an aspect of individual liberty -- and thus a good unto itself -- but also is essential to the common quest for truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union*, 466 U.S. 485, 503-04, 104 S. Ct. 1949, 1961 (1984).  Dr. Novella's article is simply one part of that quest. Tobinick M.D.'s lawsuit is part of an ignoble quest to quash the truth, because the truth cuts in to his profits – which he clearly places above his patients' well-being.

Tobinick M.D.'s treatments are questionable, at best.  See Exhibit A, the California Medical Board's Accusations against Tobinick and Tobinick M.D.  Tobinick fears criticism of his methods especially when that criticism is accurate and backed up by science.  *Even if the criticism were not accurate*, Tobinick would have no chance of recovery for his defamation claims, because he is a public figure, and thus must meet the actual malice test set out in *New York Times v. Sullivan*.  He cannot possibly do so, and thus his defamation claims are legally doomed.  Since Tobinick M.D. is a California plaintiff, Florida's choice-of-law rules require this Court to apply California law.  Thus, Tobinick M.D. must face this Anti-SLAPP motion, and this Court must dismiss Tobinick M.D.'s claims and award Novella his attorneys' fees and costs.

## II.    The Parties

This Motion is filed only against EDWARD LEWIS TOBINICK M.D., A MEDICAL CORPORATION, a California Corporation ("Tobinick M.D.").  Tobinick M.D.  is a California

---

[1] The plaintiff insists upon calling this article an "advertisement" in order to support its dubious claim that the Lanham Act applies to some of its claims.  Whether it is an "advertisement" or an "article" is legally irrelevant to this Motion.  After all, "Heed their Rising Voices" was an advertisement in the <u>New York Times</u>, which formed the basis for the litigation in *New York Times v. Sullivan*, 376 U.S. 254 (1964).

Anti-SLAPP Motion

Corporation with a principal place of business in California.  ECF 55 at 1, 2.  It cannot argue that it is not subject to California law.  Being subject to California law, it must answer for its unsupportable SLAPP suit by having its claims stricken, and it must pay the Defendant's costs and fees.  See Cal. Code §425.16.

## III.   Analysis

California Code §425.16 is designed to protect against Strategic Lawsuits Against Public Participation ("SLAPP Suits"), which are baseless lawsuits attempting to stifle the defendant's First Amendment rights.  "The point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights."  *People ex rel. Lockyer v. Brar*, 115 Cal. App. 4th 1315, 1317, 9 Cal. Rptr. 3d 844 (4th Dist. 2004).  The Anti-SLAPP statute allows a defendant to file a special motion to strike the plaintiff's complaint, in order to cut down the costs and delay that chill the exercise of constitutionally protected free speech.  Cal. Code §425.16(b)(1).

California's Anti-SLAPP statute applies in federal court.  *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003); *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005).  The Anti-SLAPP statute applies in cases filed in courts outside of California, where choice of law analysis determines applicability. *Acme Circus Operating Co. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983).  In this case, California's Anti-SLAPP statute applies to Tobinick M.D., as it cannot escape California law by filing in a state that lacks an Anti-SLAPP law.

Dr. Novella will demonstrate that under Florida's choice of law analysis, the California Anti-SLAPP statute applies to Tobinick M.D.'s claims; that Novella's statements were made in furtherance of his right to free speech; and, that Tobinick M.D. has no likelihood of success on the merits of its claims against Dr. Novella.  That is all it takes, and that is what this Court shall see.  *Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014); *Navellier v. Sletten*, 29 Cal. 4th 82, 88, 124 Cal. Rptr. 2d 530, 535, 52 P.3d 703, 708 (2002) ("Section 425.16

posits instead a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity… If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim"). In this case, we add a step – a choice of law analysis – and that is where we will begin.

### A. Choice of Law

#### 1. Florida Applies the "Most Significant Relationship" Test

Florida resolves conflict-of-laws questions by applying the 'most significant relationship' test as set forth in the *Restatement (Second) of Conflict of Laws*. This test is comprised of four factors: 1) the place the injury occurred; 2) the place the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and 4) the place where the parties' relationship is centered. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980); *Grupo Televisa, S.A. v. Telemundo Commc'n Group, Inc.,* 485 F.3d 1233, 1240 (11th Cir. 2007). The state of the plaintiff's domicile usually has the most significant relationship to the case, and therefore its law will usually govern.

The *Restatement* provides that "[t]he rights and liability of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Restatement (Second) of Conflict of Laws* §145 (1971); *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 1001. There is a presumptive rule that the law of plaintiff's domicile applies. *Restatement (Second) of Conflict of Laws* §150(2) (1977); *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1091 (S.D.N.Y. 1984); *Ranbaxy Labs., Inc. v. First Databank, Inc.,* 2014 U.S. Dist. LEXIS 31916 (M.D. Fla. Mar. 12, 2014).

This case almost perfectly matches an earlier case from this Court: *Jaisinghani v. Capital Cities/ABC*, 973 F. Supp. 1450 (S.D. Fla. 1997). In that case, under the "significant relationship" analysis, the Southern District of Florida applied California defamation law because the plaintiff

RANDAZZA | LEGAL GROUP

was domiciled in California. "Clearly, Plaintiff himself has a more significant relationship with California than with any other state.  Moreover, the article in question focused on Plaintiff's… activities in California… Plaintiff appears to be engaged in the very thing that Florida's borrowing statute was designed to prevent: forum shopping. California has the most significant relationship to this case and California's one year statute of limitations will bar this case from proceeding." *Id.* at 1455.  See also *Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y.2013) (Applying Nevada Anti-SLAPP statute in a New York case, as plaintiff was a Nevada resident).

Courts are not required to apply one state's law to all of the issues before it in one case. Instead, the court must undertake an issue-by-issue analysis.  "Florida courts apply the 'most significant relationship' test, not to a collective sum of issues in dispute, but to each individual issue which arises in the case."  *Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1578 (11th Cir. 1990), citing *Hertz v. Piccolo*, 453 So.2d 12 (Fla. 1984).  Even if some aspects of a claim are properly analyzed under one state's law, other aspects of that claim may be analyzed under another state's law.  Here, Tobinick M.D.'s claims against Dr. Novella must be analyzed through the lens of California law, and thus, the Anti-SLAPP law is triggered.

**2.      The Place the Alleged Injury Occurred is California**

In a recent Middle District case, we find the opposite fact pattern – a California defendant sought the employment of the California Anti-SLAPP law.  *Ranbaxy Labs., Inc. v. First Databank, Inc.*, 2014 U.S. Dist. LEXIS 31916 (M.D. Fla. Mar. 12, 2014).   While that case did not go the defendant's way, the Middle District articulated precisely the rule that Novella seeks this Honorable Court to employ here.  "Applying Florida choice of law principles, the applicable substantive law for purposes of the anti-SLAPP statute is the state of [the plaintiff's] principal place of business, where the loss of sales and market share was most felt."  *Id.* citing *Restatement (Second) of Conflict of Laws* §150(1), (3) (1971).   In applying the *Restatement's* factors in determining choice of law, and Tobinick M.D.'s own arguments, it is clear that the alleged injury (with

respect to Tobinick M.D.) occurred in California. Tobinick M.D. is a California corporation. ECF 55 at 2. Attached hereto as Exhibit B is the California Secretary of State record for Tobinick M.D.[2] California has an interest in protecting its corporations from tortious conduct. *Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013), presents another analogous fact pattern in which the Southern District of New York applied the Nevada Anti-SLAPP law because the plaintiff was a Nevada citizen, the plaintiff's business was based in Nevada, and "Nevada has an interest in protecting its citizens from tortious conduct." *Id.* at 477-478. It seems that any time a court is confronted with a defendant seeking the employment of an Anti-SLAPP statute from the *plaintiff's* home state, federal courts have applied the Anti-SLAPP law, even when the state in which the federal court sits does not have one.

As in *Adelson*, (where the plaintiff was a Nevada party) the operative plaintiff here is overwhelmingly, if not entirely, in California, and has presented facts from which it can not now turn away. In trying to keep this case from being transferred out of Florida, the Tobinick M.D. joined with the Florida plaintiffs in arguing: "Defendants' complained of activities have affected and damaged Plaintiffs' interstate business which is located within this District." ECF 55 at 3. When the plaintiffs wrote this, they were presumably referring to all three Plaintiffs, but there can be no serious argument that a California clinic, which sees California patients, which is located in California, suffered business damage in Florida – especially when there is another plaintiff with a Florida clinic and Florida patients.[3] No, the plaintiffs were arguing that they felt the impact of the alleged defamation where the plaintiffs themselves are situated.

---

[2] Tobinick M.D. only sees patients in Los Angeles. Tobinick M.D. cannot possibly argue that it sees Florida patients. Dr. Tobinick has a Florida clinic, which presumably does not see California patients.
[3] And, under the Anti-SLAPP statute, the claims are evaluated under the Summary Judgment standard, not the Motion to Dismiss standard. Therefore, the plaintiff's well-pled allegations are not necessarily taken as true – and are especially not taken as true when no reasonable trier of fact could find them to be true. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

Based on Plaintiffs' own arguments as to why Florida is appropriate *jurisdiction* for Plaintiffs Tobinick and INR PLLC (the Florida corporation), California's is the appropriate choice of law for Tobinick M.D., no matter where this case eventually winds up being heard. The center of Tobinick M.D.'s corporate operations are in California, it is incorporated in the State of California, and its principal place of business is Los Angeles, California.  ECF 55 at 2. Tobinick M.D. cannot seriously contend that it has Florida patients or any presence in Florida whatsoever, otherwise, why would there even be a Florida corporation and clinic?

With regard to the place where the injury occurred, although Plaintiffs assert generally that their injury was sustained in Florida, it is impossible to see how a California corporation, which only conducts business within the state of California, could have suffered any injury anywhere but California.  "When a corporation, or other legal person, claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time, if the matter complained of was published in that state." *Restatement (Second) of Conflict of Laws* §150(3) (1971).  By extension, statements made about a California corporation, whose office is located in California, who only see patients in California, must be subject to California law – and their state law claims must be evaluated under California law.

In examining the most significant relationship test to Tobinick M.D.'s (a California corporation) claim of defamation against Dr. Novella, the test results can only read "California." The claims are premised on an article Novella wrote regarding a California corporation, with its principal place of business in California, the article was accessible in California, and was inspired by an article published in the *Los Angeles Times*.  The state with the most significant relationship to *this Plaintiff's claims* is California.

//

//

**B.      Defendant's Communication Triggers the Anti-SLAPP Statute**

Now that we have determined that California law applies, let us apply it and evaluate Plaintiff's position under the Anti-SLAPP law.  The first prong of the Anti-SLAPP law requires a showing by Dr. Novella that his statement was made "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  Cal. Code §425.16(b)(1).  Dr. Novella's article is precisely the type of conduct that §425.16 was designed to protect -- an expression of speech in the public interest.   Dr. Novella's article bears directly on the health, safety, and well-being of the community of patients and anyone interested in public health issues.  Publications about matters "affecting public health [are] of such inherent public concern that there could be no possible question" they are issues of public interest.  *United Med. Labs. v. CBS, Inc.*, 404 F.2d 706, 711 (9th Cir. 1968).  Accordingly, Courts routinely hold that publications pertaining to matters of public significance and public health are protected by the Anti-SLAPP law.  See, e.g., *DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562, 567, 92 Cal. Rptr. 2d 755, 759 (2000); *Sharper Image Corp. v. Consumers Union of United States, Inc.*, 2004 U.S. Dist. LEXIS 23204, 2004 WL 2554451 (N.D. Cal. Nov. 9, 2004).

> The Supreme Court has repeatedly extolled the importance of the freedom of speech, explaining that the First Amendment expresses 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open,' and that 'speech concerning public affairs is more than self-expression; it is the essence of self-government. Accordingly, speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection'… **'It would be difficult to find a value of a higher order than the constitutionally-protected rights to free speech and petition that are at the heart of California's anti-SLAPP statute.'**

*Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1356 (11th Cir. 2014) (emphasis added), citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S. Ct. 710, 721, 11 L. Ed. 2d 686 (1964), *Snyder v. Phelps*, 131 S. Ct. 1207, 1215, 179 L. Ed. 2d 172 (2011), and *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1015-16 (9th Cir. 2013).

Additionally, Dr. Novella's article touched on information concerning Tobinick's medical license and suitability to practice medicine in the state of California, Tobinick M.D.'s ethics, and the California Medical Board's accusations against Tobinick M.D. Those statements are protected as "written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." §425.16(e)(3). Whether Tobinick and Tobinick M.D. have been subject to discipline by the California Medical Board is certainly an issue of public interest. See Exhibit A.

Because Plaintiff's claims arise from Dr. Novella's statement regarding a matter of public interest, Dr. Novella has met his burden in "showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). Therefore, Plaintiff now bears the burden to demonstrate that it has the probability of prevailing on the merits of its claims. It cannot meet that burden.

**C.    Tobinick M.D. Cannot Prevail on its State Law Claims**

The second prong of the Anti-SLAPP statute evaluation is the likelihood of whether Plaintiff will prevail on the success of the merits of their claims. They will not.

**1.    Libel**

The Plaintiff engages in a bit of "shotgun pleading," in which it provides multiple duplicative claims, all of which generally fall under the umbrella of "defamation." Novella will discuss some of the particularities of some of these claims, but the bulk of the analysis is under the "defamation" heading in this Motion.

**a.    Trade Libel**

Plaintiff alleges that Dr. Novella's article constitutes trade libel. ECF 55 at 23. "To establish trade libel, a plaintiff must allege that the defendant published a **knowingly false** statement harmful to the interests of another and intended such publication to harm the plaintiff's pecuniary interests." *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 820 (9th Cir. 1995), *see*

*also Restatement (Second) of Torts* §623A.  As demonstrated below, this standard is impossible for Tobinick M.D. to meet.

       **b.**      **Libel Per Se**

     Additionally, Plaintiff alleges that Dr. Novella's article constitutes libel per se.  ECF 55 at 24.  "A published statement is libelous *per se* if: (1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession."  *Klayman v. Judicial Watch, Inc.*, 2014 U.S. Dist. LEXIS 71045, 12-13 (S.D. Fla. May 23, 2014).  Plaintiff alleged that Dr. Novella's article falls under this fourth category, by injuring his trade or profession.

     In order to demonstrate that a statement has injured one's trade or profession, "*Per se* defamatory statements must impute conduct to plaintiffs incompatible with the essential functions of their respective jobs.  Where courts have found conduct to be incompatible with one's profession, the conduct referred to in the defamatory statement went directly to a person's ability to perform duties essential to his or her employment, or was sufficiently related to skills required of the profession."  *Klayman* at 17, citing *Scobie v. Taylor*, No. 13-60457-CIV, 2013 U.S. Dist. LEXIS 99786, 2013 WL 3776270, at *3 (S.D. Fla. July 17, 2013).  For Plaintiff to meet this burden of proof claiming libel per se, **first and foremost, the statements must be false**.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  Dr. Novella's article expressed facts and opinions addressing concerns about Tobinick M.D.'s unsuccessful and unethical practices in using Enbrel for off-label purposes, which makes overly broad promises of a cure, first for back pain, then for Alzheimer's, and now for stroke.  "There is no such thing as a 'false' opinion."  *Ollman v. Evans*, 750 F.2d 970, 976 (D.C. Cir. 1984), and thus the element of falsity is absent from ay of Novella's statements of opinion.  Based on the foregoing, Plaintiff has failed to demonstrate any likelihood of success on the merits of their claim of libel per se.

### c.      Defamation

Defamation requires a showing of publication of a statement of fact, that is false, unprivileged, has a tendency to damage, and the defendant's fault in publishing the statement amounted to at least negligence.  Cal. Civ. Code §44-46.  "The elements of a claim for defamation are as follows: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."  *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1214 n.8 (Fla. 2010), citing *Jews for Jesus, Inc. v. Rapp,* 997 So. 2d 1098, 1106 (Fla. 2008).  The law of the United States, and the states of California and Florida all hold public figure defamation plaintiffs to a higher burden than private individuals.  *New York Times v. Sullivan*, 376 U.S. 254, 280-282 (1964); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006); *Silvester v. Am. Broad. Cos.*, 650 F. Supp. 766, 770 (S.D. Fla. 1986).  While public figures can recover for defamation, the standard is terribly high.  A public figure cannot prevail in a defamation claim unless it proves that the statement was made with 'actual malice,' that is, with *knowledge* of its falsity or with *reckless disregard* for the truth. *New York Times v. Sullivan*, 376 U.S. 280.  The standard is a subjective one: there must be sufficient evidence to permit the conclusion that the defendant actually had a "high degree of awareness of . . . probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Thusly, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard. *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 688 (1989).; *St. Amant v. Thompson*, 390 U.S. 727, 731, 733 (1968).

Tobinick is a public figure who proudly basks in the spotlight, whenever he can.  The Plaintiff clearly has "attempt[ed] to thrust himself into the public eye."  *Copp v. Paxton*, 45 Cal. App. 4th 829, 846, 52 Cal. Rptr. 2d 831, 844 (1996); *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1494 (11th Cir. 1988).  By Plaintiff's own account, he is world-renowned for his work as a

physician and for the clinics he has created.  ECF 55 at 14.  This includes a full spread article in the <u>Los Angeles Times</u> and features on the New Zealand and Australian versions <u>60 Minutes</u>. ECF 55 at 14.  "As a result of the publicity, there was an initial high level of interest amongst consumers for the treatments."  *Id.*  Furthermore, "TOBINICK has presented his scientific findings regarding the effects of etanercept for neurological disorders at multiple U.S. and international medical and scientific conferences."  ECF 5 at 11.  Tobinick, by and through Tobinick M.D., have published dozens of articles in numerous journals, published around the world.  ECF 55 at 10.  "[H]undreds of academic scientists from around the world" have cited to Tobinick's publications.  *Id.*  The Plaintiff based much of its case on its fame.  It cannot seriously contend that it is a private figure now.  Plaintiff's "own experience and credentials are completely germane to the public controversy.  The public needed to know whether there was reason 'to listen to him.'"  *Copp v. Paxton* at 846, citing *Waldbaum v. Fairchild Publs.*, 627 F.2d 1287 (D.C. Cir. 1980).  While Tobinick M.D. are promoting their off-label medical practices around the world, they catapulted themselves into the public eye.  As a result, to prevail on a claim of defamation, Tobinick M.D. must prove that Dr. Novella's article was written with actual malice.[4]

Even if it were not a public figure before the <u>Los Angeles Times</u> article made the rounds, that one article turned it into a public figure. "[I]t is no answer to the assertion that one is a public figure to say, truthfully, that one doesn't choose to be. It is sufficient, . . . that '[the defendant] voluntarily engaged in a course that was bound to invite attention and comment.'" *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1496 (11th Cir. 1988), quoting *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 861 (5th Cir. 1978).  Often, public figures are so without any voluntary behavior making them one.  *See Silvester v. Am. Broad. Cos.*, 650 F. Supp. 773, citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S. Ct. 2997, 3013, 41 L. Ed. 2d 789 (1974).

---

[4] Even if it is determined that Tobinick M.D. is not a public figure, it must still demonstrate that Dr. Novella's article was written with negligence, which as discussed in greater detail below, it was not.

Therefore, even if Tobinick did not run to the spotlight like a syringe-wielding giant moth, he would have that light shining upon him just the same.

Actual malice exists only where a speaker makes a false statement of fact with either knowledge of its falsity or reckless disregard for the truth. "[A]nyone claiming to be defamed by the communication must show actual malice or go remediless." *Sullivan*, 376 U.S. at 281. Plaintiffs cannot show that Dr. Novella's article was false, and more importantly, they most certainly cannot show that it was written with knowledge of its falsity. Attached as Exhibit C is the declaration of Dr. Novella (hereinafter "Novella Decl."). Novella Decl. ¶20. "The complaint here makes no attempt to plead a knowing and reckless falsehood. It contains only the conclusory boilerplate allegation that defendant acted 'maliciously and oppressively, and in conscious disregard of [plaintiffs'] rights…' This is insufficient to state a cause of action in a case where actual malice of the *Sullivan* type is required." *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1018, 26 Cal. Rptr. 3d 350, 359 (2005). Mere negligence in reporting "can never give rise to liability in a public figure defamation case." *Newton v. National Broadcasting Co.*, 930 F.2d 662, 680 (9th Cir. 1990). "Moreover, [the plaintiff] must prove actual malice with clear and convincing evidence." *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001). "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

Based on the actual malice standard for public figure defamation claims, Tobinick M.D., must prove that Dr. Novella acted with reckless disregard for the truth. In the context of evaluating an Anti-SLAPP motion, a public figure, even a limited purpose public figure "who sue[s] for defamation must establish a probability that they can produce **clear and convincing evidence** that the allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity." *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1578 (Cal. Ct. App. 2005) (Anti-SLAPP special motion to strike was granted and attorney's fees

were awarded where the plaintiff could not demonstrate actual malice), *see also Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 297 (Fla. 2d DCA 2001).

As was his Constitutional prerogative, Dr. Novella provided his opinion on the relative risks and merits of using drugs for off-label indications, and his concerns surrounding the questionable health clinics that make such bold promises to their patients. While Plaintiff tried to provide a few cherry-picked statements in the subject article that they believe to be not entirely true, it has put forth no demonstrative evidence, nor is it capable of doing so, that Dr. Novella made any statements that he knew to be untrue, nor even for which he harbored any doubt. Novella Decl. ¶19. That said, even if there were minor factual inconsistencies, this does not convert a statement which "substance or gist conveys essentially the same meaning" into defamation. *Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999). The court must consider "all the words used," and not merely a particular, cherry-picked sentence. *Id.* "[T]he fact that a statement 'standing alone' could be construed as false is not sufficient to support a defamation claim." *Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1339, 93 Cal. Rptr. 3d 782, 794 (2009). Instead, Plaintiff has sought litigation here to silence statements made that accurately reflect the professional opinion of an expert in the field of neurology, and that speak critically of Tobinick M.D.'s practices. "[C]ertain statements were either simple name-calling or not provable factually... 'The law provides no redress for harsh name-calling.'" *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1105 (9th Cir. 2005) citing *Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002).

### i.     Dr. Novella's statements were protected as opinion

Only statements of fact, and not opinion, are defamatory under the law of both Florida and California. *Town of Sewall's Point v. Rhodes*, 852 So. 2d 949, 951 (Fla. DCA 4th 2003). "An opinion is protected because it cannot, under *Gertz*, be 'false.' Because a statement must be false to be actionable defamation, an opinion is simply not actionable defamation. It makes no

difference whether the plaintiff alleging the defamation is a private or a public person." *Lewis v. Time, Inc.*, 710 F.2d 549, 553 (9th Cir. 1983), citing *Restatement (Second) of Torts* §558(a) (1977). Dr. Novella's article, commenting on what he believes to be best practices for doctors regarding off-label usages of drugs and the ethical implications of putting profits before patients is simply his opinion, and in context, would not be interpreted as statements of fact. *Dockery v. Fla. Democratic Party*, 799 So. 2d 291, 294 (Fla. 2d DCA 2001). Novella Decl. ¶6-13.

Plaintiff seems to take offense to the notion that Dr. Novella believes that Florida is a "quack friendly state," and thus by extension, Tobinick M.D. asserts that it has been defamed. Nevertheless, courts in Florida and California make it clear that impolite, hyperbolic opinion of this type is protected speech. See, e.g., *Town of Sewall's*, 852 So. 2d at 949 (describing an individual's property as a "Hillbilly Hellhole" was a statement of opinion, and not fact, and therefore not defamatory). "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole.'" *Lewis v. Time, Inc.*, at 553, quoting *Information Control Corp. v. Genesis One Computer*, 611 F.2d 781, 784 (9th Cir. 1980). See also *Greenbelt Cooperative Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (U.S.1970) (establishing that rhetorical hyperbole is protected under the First Amendment).

### ii.     Dr. Novella's statements, even if not true, are privileged from liability under the fair reporting privilege

California provides a privilege as a protection against a defamation claim for fair reporting of any public official proceeding. Cal. Code §47. "Under California law, a newspaper report is 'fair and true' if it captures 'the substance, the gist, the sting of the libelous charge.'" *Colt v. Freedom Commc'ns, Inc.*, 109 Cal. App. 4th 1551, 1558, 1 Cal. Rptr. 3d 245, 250 (2003), quoting *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992). Florida equally recognizes

this privilege. *Huszar v. Gross*, 468 So. 2d 512, 516 (Fla. 1st DCA 1985). Dr. Novella's statements regarding the accusations made by the California Medical Board against Tobinick or Tobinick M.D.'s misdeeds and impropriety are thus protected, as Dr. Novella's article accurately reflected the accusations against Plaintiffs. The California Medical Board's accusations against Tobinick and Tobinick M.D. addressed concerns of "corrupt of dishonest acts" relating to advertising that created false or unjustified expectations of favorable results in his off-label usage of etanercept; engaging in a scheme to defraud patients; repeated acts of negligence involving patients; prescribing etanercept injections to patients without first examining them adequately; falsifying documents; excessive treatment by injecting patients with etanercept without acceptable scientific evidence to support the off-label usages; and unprofessional conduct. See Exhibit A. Nothing in Dr. Novella's article misrepresented the accusations and findings put forth by the California Medical Board. Novella Decl. ¶8-9.

### 2.    Unfair Competition

Plaintiff makes the generic allegation that "NOVELLA published the Advertisement and the Second Advertisement, and the false and misleading statements contained therein, in furtherance of promoting his own interests." ECF 55 at 21. However, Plaintiff makes no specific allegations as to how Dr. Novella and Tobinick M.D. are in competition in any way. Dr. Novella is a neurologist in Connecticut, focusing on treatment of migraines. Dr. Novella is also an author for Science-Based Medicine, seeking to correct misinformation surrounding current trends in medicine. Dr. Novella is also a professor of neurology at Yale Medical School. Tobinick M.D. is a California-based corporation that provides off-label treatments to patients suffering from stroke and Alzheimer's. Dr. Novella and Tobinick M.D. are in no way in competition with each other. They are not treating the same patients. They are not in the same geographic area. They have no overlapping business of any kind.

To a state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324-25 (M.D. Fla. 2007). While the court in *Third Party Verification* did not require the plaintiff to comply with Fed. R. Civ. P. 9(b) heightened pleading standard, courts in California have held that to demonstrate the "fraudulent conduct of a competitor" element of unfair competition, the claim must satisfy the particularity requirements of Rule 9(b). See e.g., *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003). Plaintiff cannot show that Tobinick M.D. and Dr. Novella are competitors, nor that Dr. Novella has engaged in any fraudulent conduct, nor consumer confusion whatsoever.[5] It is impossible that Plaintiff could ever demonstrate that a patient sought out Dr. Novella's treatments for migraines at Yale-New Haven Hospital in Connecticut, when they thought they were seeking unfounded treatments for Alzheimer's at a clinic in Los Angeles, California. Plaintiff is has no hope of success on the merits of its unfair competition claim.

### 3.     Tortious Interference

Plaintiff also alleges generally, that Dr. Novella has engaged in tortious interference with Tobinick M.D.'s business relationships by authoring the subject article. ECF 55 at 25. To prevail in a claim for tortious interference, a plaintiff must show "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship." *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. 4th DCA 2009), *see also Wynn v. NBC*, 234 F. Supp. 2d 1067, 1119 (C.D. Cal. 2002). "This cause of action requires a business

---

[5] Moreover, Plaintiff has not even pled any of the elements of unfair competition with the exacting standards of Fed. R. Civ. P. 9(b).

relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Plaintiff has failed to identify the existence of any business relationship with a patient, which Dr. Novella had actual knowledge of, and which Dr. Novella intentionally and unjustifiably interfered with, resulting in damage to Tobinick M.D. as a result of that unjustified interference. Nor will it be able to do so.

Even if Dr. Novella had knowledge of specific and identifiable customer relationships between patients and Tobinick M.D., writing an article containing his opinions and concerns about Tobinick M.D.'s practices would certainly be justified. This is not tortious interference, but instead is providing education and awareness to the public, allowing them to make informed decisions regarding their health and welfare. If this is tortious interference, then every newspaper or magazine that writes an exposé should be forewarned – that kind of thing is no longer permitted in the Southern District of Florida or California.

In addition to being intentional and unjustified, the alleged tortious interference with a business relationship must be direct and intentional. *Lawler v. Eugene Weusthoff Mem. Hospital Ass'n.*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986). Plaintiff has put forth nothing to suggest that there was any business harm, which can specifically and identifiably be related back to Dr. Novella's actions. Any harm was most certainly self-inflicted, as discussed in the California Board of Medicine's sanctions against Tobinick and Tobinick M.D.

    a.    **Tobinick M.D. cannot masquerade its defamation claim as one for tortious interference**

Neither Florida nor California law accommodates multiple causes of action arising from a single wrongful act, and accordingly is hostile to Tobinick M.D.'s claim of tortious interference disguised as an unmeritorious defamation allegation. *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607, 609 (Fla. 4th DCA 1975); *Smith v. Santa Rosa Press Democrat*, 2011 U.S. Dist.

LEXIS 121449, 39 Media L. Rep. 2709, 2011 WL 5006463 (N.D. Cal. Oct. 20, 2011), citing *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 265, 208 Cal. Rptr. 137, 151, 690 P.2d 610, 624 (1984) and *McClatchy Newspapers v. Superior Court*, 189 Cal. App. 3d 961, 965, 234 Cal. Rptr. 702, 704 (1987). A single wrongful act gives rise to only a single cause of action. In *Orlando Sports Stadium*, the appellate court found that the defamation and tortious interference claims were essentially the same because they were based on the same articles and the thrust of the complaint was that those articles were injurious to the plaintiff. *Orlando Sports Stadium* at 609. Because Tobinick M.D.'s claim of tortious interference arises solely out of the same facts and allegations as alleged in the defamation claim, the tortious interference claim cannot stand because it is simply a recitation of the defamation claim.

Even where the underlying defamation claim has not yet been disposed of by the court, the single publication rule still prohibits multiple instances of liability arising from the same instance of speech. *Trujillo v. Banco Central del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998). Therefore, as a matter of law, the single publication rule bars Plaintiff's tortious interference claim, as it is premised on nothing more than Dr. Novella's article, the nucleus of Tobinick M.D.'s defamation claim. Plaintiff has not alleged nor introduced a single additional fact to support its claim for tortious interference. Therefore, this cause of action ought to be resolved in Dr. Novella's favor.

## IV.  CONCLUSION

An Anti-SLAPP motion is evaluated in federal court under Rule 56. *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006). Accordingly, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not a disfavored procedural short-

cut, but rather "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Cronley v. Pensacola News-Journal, Inc.*, 561 So. 2d 402, 405 (Fla. 1st DCA 1990) ("summary judgments are to be liberally granted where the constitutional requirement of actual malice applies"); *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 252, 208 Cal. Rptr. 137, 141, 690 P.2d 610, 614 (1984) ("summary judgment remains a 'favored' remedy in defamation cases involving the issue of 'actual malice' under the *New York Time*s standard"). Thus, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but… must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e), *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The California Plaintiff will be unable to do so without violating the law, rules of ethics, and any sense of logic.

Accordingly, the California Anti-SLAPP statute requires Counts 2, 3, 4, and 5 of the Amended Complaint be stricken as they pertain to Tobinick M.D. and Dr. Novella. Based on the foregoing, Dr. Novella respectfully requests that Plaintiff's Amended Complaint be stricken, with prejudice, and that the Court award Dr. Novella attorneys' fees and costs associated with this Motion, as required by the Anti-SLAPP statute.

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
California Bar No. 269535
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 9:14-cv-80781-WJZ

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 30, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served upon: adb@trippscott.com; pgh@trippscott.com; and shf@trippscott.com; Alexander D. Brown, Esq.; Peter G. Herman, Esq.; and Salvatore H. Fasulo, Esq., Attorneys for Plaintiffs, Tripp Scott, PA, 110 Southeast 6th Street, 15th Floor, Fort Lauderdale, FL 33301; dspielman@complexip.com; rkain@complexip.com; Darren Spielman, Esq.; Robert Kain, Esq., Kain & Associates, Attorneys for Defendant SGU Productions, 900 SE Third Avenue, Suite 205, Fort Lauderdale, FL 33316; amarks@coffeyburlington.com; kfreedman@coffeyburlington.com; Andrew H. Marks, Esq.; Kimberly Freedman, Esq., Coffey Burlington, Attorneys for Defendant Yale University, 2601 South Bayshore Drive, Penthouse Miami, FL 33133; jdoroghazi@wiggin.com; jbabbin@wiggin.com; John M. Doroghazi, Esq.; Jeffrey R. Babbin, Esq., Wiggin and Dana LLP, co-counsel for Defendant Yale University, 265 Church Street, PO Box 1832, New Haven, CT 06508-1832; edward.polk@csklegal.com; jeanne.spital@csklegal.com; Edward Polk, Esq.; Jeanne Spital, Esq., Cole, Scott, Kissane, PA, Attorneys for Defendant Society for Science-Based Medicine, 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33256, via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

*Marc J. Randazza*
_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com