UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EDWARD LEWIS TOBINICK M.D., A
MEDICAL CORPORATION d/b/a THE
INSTITUTE OF NEUORLOGICAL
RECOVERY, a California Medical Corporation;
INR PLLC d/b/a INSTITUTE OF
NEUROLOGICAL RECOVERY, a Florida
professional limited liability company; and
EDWARD TOBINICK, M.D., an individual,

    Plaintiffs,

v.

STEVEN NOVELLA, M.D., an individual;
YALE UNIVERSITY, a Connecticut corporation;
SGU PRODUCTIONS, LLC, a Connecticut
Limited liability company; and SOCIETY FOR
SCIENCE-BASED MEDICINE, INC., a Florida
corporation,

    Defendants.
_____/

CASE NO.: 14-CIV-80781-WJZ

**PLAINTIFF'S OPPOSITION TO DEFENDANT, STEVEN NOVELLA M.D.'s,
MOTION TO STRIKE (ANTI-SLAPP MOTION)**

COMES NOW, Plaintiff, EDWARD LEWIS TOBINICK M.D, A MEDICAL CORPORATION d/b/a THE INSTITUTE OF NEUROLOGICAL RECOVERY, a California Medical Corporation ("the Institute), through undersigned counsel, hereby files its opposition to Defendant's, STEVEN NOVELLA, M. D., an individual ("Novella" ), Motion to Strike (Anti-S.L.A.P.P Motion) and in support, states as follows:

**INTRODUCTION**

The threshold determination for the court is whether to apply California law. Defendant, a non-resident of California, seeks to invoke California's anti-SLAPP statute. If the court

743546v1 998173.0001

determines Florida law should apply the analysis ends and the motion to strike must be denied. Even if California law is applied, Plaintiff's evidence provides a prima facie showing that Defendant has indeed committed libel, trade libel and libel per se with actual malice as defined by both Florida and California law as well as tortuous interference and unfair competition. With this prima facie showing, Defendant's Motion to Strike must be denied.

## CHOICE OF LAW

### *1. Application of Florida's Conflict of Laws Rule*

Regarding the case at issue, Defendant Novella is attempting to apply *California Civil Code § 425.16* in hopes of striking Plaintiff's Amended Complaint. Defendant's Motion to Strike (or "Anti-SLAPP Motion) is essentially a California law designed to curtail the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*, 448 F.Supp.2d 1172, 1179 (C.D.Cal.2006). Notwithstanding the merits of the motion, and before this Court can begin to analyze the application of the California law, it must first determine whether California substantive law applies altogether.

A federal court sitting in diversity jurisdiction will apply the conflict of law rules of the forum state of which it is sitting. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The first step in a choice of law analyses is to ascertain the nature of the problem involved, i.e. is the specific problem of the law concerning, contracts, torts, property, etc. *Acme Circus Operating Co., Inc. v. Kuperstock*, 711 F.2d 1538, 1540 (11th Cir. 1983). The second step is to determine what choice of law rule the particular state applies to that type of legal issue. *Id.* And finally, the court must apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies. *Id.*

As this Court is sitting in the forum state of Florida, it is necessary to apply Florida's conflict of law rules to the issues here now. It should be noted first that Florida no longer abides by the Latin pseudonym "*lex loci delicti*", which essentially is a conflict of law measure based solely on "where the injury occurred". *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980). Florida recognizes that "[o]ther factors may combine to outweigh the place of injury as a controlling consideration, [and] make the determination of applicable law a less mechanical, and more rational, process". *Id.*

In light of this rationale, Florida has adopted the "most significant relationships test" for tort issues set forth in the *Restatement (Second) of Conflict of Laws §145-146*, which prescribes four (4) contacts to be taken into account when determining the applicable state law. These are:

    1) the place where the injury occurred;

    2) the place where the conduct causing the injury occurred;

    3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and;

    4) the place where the relationship, if any, between the parties is centered.

These four (4) contacts can have varying degrees of weight depending on the type of issues before the Court. *Section 145* of the Restatement (Second) advises specifically that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue". *Id.* For example, in situations involving a multistate publication that injures the plaintiff's reputation or causes financial harm, the plaintiff's "…domicil[e], or on occasion his principal place of business, is the single most important contact for determining the applicable state law". *Id.*

Furthermore, the importance of each separate contact is relative to the kind of tort issue before the Court. *Id.* For example, in a false advertising case, the plaintiff might suffer a

pecuniary loss of customers or trade, which "…will normally be felt most severely at the plaintiff's headquarters or principal place of business" and, therefore, that state's substantive law would apply. *Id.* However, the plaintiff may have no discernable pecuniary loss, but rather the defendant may have obtained an "unfair profit" from the misleading advertising. *Id.* In that scenario, the Restatement (Second) emphasizes that the "principal location of the *defendant's* conduct will usually be given the greatest weight in determining the state whose local laws determine the rights and liabilities…", and not the "principal place of business" of the plaintiff. *Id.* (emphasis added) Thus, the "…significant relationship test must be applied in its totality." *Celotex Corp. v. Meehan*, 523 So.2d 141, 143 (Fla.1988).

Although *Section 145* of the Restatement (Second) on torts is the primary focus of the conflict of law issue here, it should also be noted that *Section 6* of the Restatement (Second) deals with policy considerations that underlie *all* choice-of-law tests within the Restatement. These include:

> 1) the needs of the interstate and international systems;
>
> 2) the relevant policies of the forum;
>
> 3) the relevant policies of other interested states and the relative interest of those states in the determination of a particular issue;
>
> 4) the protection of justified expectations;
>
> 5) the basic policies underlying the particular field of law;
>
> 6) certainty, predictability and uniformity of result; and
>
> 7) ease of the determination and application of the law to be applied.[1]

As Florida does not have a statutory directive regarding choice of law, this Court is bound to apply the Restatement (Second) as applicable based on the individual issue before it.

---

[1] *Restatement (Second) of Conflict of Laws §6*
743546v1 998173.0001

*Digioia v. H. Koch & Sons*, 944 F.2d 809, 812 (11th Cir.1991). As there are few hard-and-fast rules to guide the application of these principles, in order for the Court to "…determine which sovereign has the 'most significant relationship' to a particular issue, a court must examine the facts and circumstances presented in each particular case." *Id.* Thus it is necessary to review the facts in this case in order to apply the proper substantive law.

### 2. 'Significant Relationship Test' and Defendant's 'Anti-SLAPP Motion'

Novella seeks to utilize California's Anti-SLAPP law through Florida's choice of law rules against Plaintiff, EDWARD LEWIS TOBINICK M.D., a California Medical Corporation. Additionally, Novella contends that because Plaintiff's domicile and principal place of business is in California, under Florida's "significant relationships test", this Court should apply California substantive law. Novella's arguments and cited case law, however, are conveniently misguided and omit the true legal implications and spirit of Florida's conflict of law rules.

Novella, throughout his choice of law argument, adamantly repeats the notion that the Plaintiff is organized under the laws of California and is domiciled there as well. It is undisputed that *Edward Tobinick M.D.* is a California corporation with its principal place of business in California. However, if analyzing the significant relationship test 'applied in its totality', this Court should conclude that Florida's substantive law is to be applied to the case at issue. *Celotex Corp,.523* So.2d 141 at143.

The facts in this case, as outlined in Plaintiff's Amended Complaint, show a repeated and concerted effort by Novella to tarnish the abilities of Plaintiff's medical treatments and professional acumen. Novella continually disseminated false accusations and created a misleading description of facts in its targeted advertising campaign on the Internet. As the audiences to these advertisements have no particular state boundaries, the first contact under the 'significant relationship test' (where the injury occurred) is seemingly inapplicable and difficult

743546v1 998173.0001

to discern. Even though normally the "…location of the injury is held to occur wherever the periodical is located", with the advertisement posted on the Internet, this factor does not provide much guidance as to which substantive law should apply. *Stepanian v. Addis*, 782 F.2d 902, 903 (11th Cir.1986)

Although the "principal place of business" and "domicile" of the plaintiff are generally the primary contacts when analyzing conflict of law rules for defamation and libel cases in Florida, this rule is not absolute. *Restatement (Second) of Conflict of Laws §150(f)*. Despite Novella's failure to apprise this Court of such, the Restatement (Second) explicitly contemplates scenarios analogous with the case at issue. In particular, when a plaintiff is a legal entity and the defamatory statements are disseminated multistate (such as in our case), the Restatement suggests, "[a] state, which is *not* the state of the plaintiff's principal place of business, may be that of the most significant relationship with respect to the particular issue if it is the state where the defamatory communication caused *plaintiff the greatest injury to its reputation*." *Id.* (emphasis added).

Examples of a "reputation" injury is also provided in the Restatement (Second) for situations when, "…the plaintiff suffered greater special damages in this state than in the state of its principal place of business… or, the matter claimed to be defamatory related to an activity of the plaintiff that is principally located in this state". *Id.*

The facts are that Dr. Tobinick (the individual) is a resident of the State of Florida and provides medical treatment to patients in Florida using the same techniques (entanercept delivered by perispinal administration) as it does in California. Although the Plaintiff "*Edward Tobinick M.D.*" is a California corporation for organizational purposes, it is openly doing business in California under the name "*The Institute of Neurological Recovery*". Consequently, this is the same name Dr. Tobinick's Florida practice is doing business under.

It is clear that *Edward Tobinick M.D.* suffered "greater special damages in this state", as the owner (Dr. Tobinick, the individual) would unequivocally feel the most injury within the State of Florida. Not only are there injuries to both of his practices in California and Florida due to the loss of potential patients and profits, but also to his personal reputation as a medical provider. Being that Dr. Tobinick resides in Florida, the injuries to his reputation would most significantly be realized among the community for which he must defend his reputation on a daily basis (i.e., Florida).

Furthermore, "[s]ince a corporation has no reputation in the sense that an individual has, it is only with respect to its credit, *property* or *business* that a corporation can be injured by a false publication." (emphasis added) *Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.*, 5th Cir. 1967, 378 F.2d 377. Due to the false advertising disseminated by Novella and the other Defendants, the reputation of Plaintiff's "business" was most directly injured in the State of Florida. The business name "*Institute of Neurological Recovery*" not only has a significant presence in Florida, it is the subject of Novella's advertisements. The incorporated entity in California itself is not subject to reputational injury; but rather, the business product and business name of the entity are subject to injury-- both of which have a stronger relationship to Florida.

Even more, the Plaintiff's reputation regarding its "property" was also injured primarily in Florida.  The name "*The Institute of Neurological Recovery*" is a registered trademark owned by the Florida corporation, INR PLLC. The advertisements directly injured the name and use of the trademark property. Therefore, the California Plaintiff has likewise suffered injuries as it shares the same name and uses the same registered trademark of its Florida counterpart. Thus, the state where the "…defamatory communication *caused plaintiff the greatest injury* to its reputation…" is most substantial in Florida and only indirectly felt in California.

Additionally, the matter claimed to be defamatory and libelous is related to "an activity of the plaintiff that is principally located in this state". *Id.* Although the controverted medical treatments (or "activities") are also provided in California through Plaintiff's business, the activity that Novella relates to specifically are primarily located in Florida. It is the medical treatments and Dr. Tobinick (individually) that Novella made libelous accusations towards of which have substantial ties to the State of Florida, as Dr. Tobinick resides in Florida and practices in Florida under the same business name as the California corporation. Furthermore, Novella mentions the registered trademark "*The Institute of Neurological Recovery*" consistently in his malicious advertising campaign, which is owned by the Florida corporation, INR PLLC. Therefore, the Restatement (Second) would hold that Florida substantive law would apply as the libelous publication relates to "activity that is principally located in this state." *Id.*

Other contacts the Restatement (Second) recommends the forum state consider is "…the state or states where the *defendant* did his act or acts of communication, such as assembling, printing and distributing a magazine or book and…the state or states of the defendant's domicil, incorporation or organization and *principal place of business*." (emphasis added) *Restatement (Second) of Conflict of Laws §150(f).* As the libelous medium Novella utilized was the Internet, the only discernable location that can be suggested as to "where the defendant did his act of communication" would be the physical location of the company or website's legal incorporation and principal place of business that published the advertisement.

In this case, Novella primarily utilized a website wholly-owned by the *Society for Science-Based Medicine* ("SBM"), a Florida corporation with its principal place of business in Florida. Additionally, Novella is listed as a Director of the SBM corporation and maintains a business address in the State of Florida for his role as SBM Director ( a copy of the Sunbiz report is attached hereto as Exhibit "A." Novella continuously publishes multiple articles on SBM's

743546v1 998173.0001

Florida-based website and sells several types of merchandise for profit to Florida citizens (and presumably others). The Restatement (Second) specifically suggests the forum state to factor this kind of contact particularly for this kind of scenario. *See §150(f).* As Novella's "acts of communication" clearly derive from a corporation within the State of Florida, there is no doubt that this contact should be weighed significantly by the forum state when considering which substantive law to apply.

Novella, a non-resident of California, is simply attempting to apply a California law to protect him from his libelous acts within the State of Florida. Plaintiff's reputational injury has the most significant relationship to Florida, as does Novella through his corporate involvement and use of the Florida-based website. If analyzing the significant relationship test 'applied in its totality'[2], it is clear the contacts within the State of Florida overwhelmingly suggest an application of Florida substantive law. As such the motion to strike should be denied as there is no equivalent under Florida law.

## CAL. C.C.P. §425.16 (Anti-SLAPP)

Defendant's reliance upon California's anti-SLAPP rule is misplaced. It does not apply to parties but rather it applies only to causes of action. The anti-SLAPP statute allows a motion to strike to be made against only a cause of action, not a cause of action as it applies to an individual plaintiff. *M.G. v. Time Warner, Inc.,* 89 Cal.App.4th 623 (2001). Defendant is expressly bringing this motion only against EDWARD LEWIS TOBINICK M.D, A MEDICAL CORPORATION d/b/a THE INSTITUTE OF NEUROLOGICAL RECOVERY. As such the statute is inapplicable to this case and the motion to strike should be denied.

Counts I and II of the amended complaint include a prayer for injunctive relief. The anti-SLAPP statute applies only to a cause of action and not a remedy. Injunctive relief is a remedy

---

[2] *Celotex Corp,.523* So.2d 141 at143.
743546v1 998173.0001

and not a cause of action. *Guessous v. Chrome Hearts, LLC,* 179 Cal.App.4th 1177(2009); *Marlin v. Amico Venezia,* LLC, 154 Cal.App.4th 154(2007). Accordingly, the motion to strike is once again inapplicable to this amended complaint.

CAL. C.C.P. §425.16(b)(1) provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." A probability of prevailing on a claim, sufficient to withstand a motion to strike under anti-SLAPP statute is established if the plaintiff presents evidence establishing a prima facie case which, if believed by the trier of fact, will result in judgment for the plaintiff. *Slauson Partnership v. Ochoa*, 112 Cal.App.4th 1005 (2003), 5 Cal.Rptr.3d 668. To protect plaintiff's right to a jury trial, the court may not weigh the credibility or comparative probative strength of competing evidence but instead considers whether the plaintiff has made a prima facie showing of facts based on competent admissible evidence that would, if proved, support a judgment in plaintiff's favor. *Mann v. Quality Old Time Service, Inc.,* 120 Cal. App. 4th 90, 105-106, 15 Cal.Rptr. 3d 215,223 (4th Dist. 1999). The anti-SLAPP statute poses no obstacle to suits that possess minimal merit. *Mendoza v. Wichmann*, 194 Cal. App.4th 1430, 1449, 123 Cal. Rptr.3d 823,837 (3d Dist. 2011). Only a cause of action that lacks even minimal merit constitutes SLAPP. *Overstock.com v. Gradient Analytics, Inc.* 151 Cal. App.4th 688, 699-700, 61 Cal. Rptr.3d 29,38 (1st Dist. 2007).

While anti-SLAPP statute is meant to be interpreted broadly, its purpose is to curb meritless lawsuits, not to prohibit bona fide claims. *M.G. v. Time Warner, Inc.,* 89 Cal.App.4th 623 (2001). Plaintiffs have alleged violation of 15 USC §1125(a) in Count I, unfair competition in Count II, trade libel in Count 3, libel per se in Count IV, and tortuous interference with

business relationships in Count V. Although the Defendant only requests Counts 2-5 be stricken, he further seeks to have the entire amended complaint be stricken with prejudice. The complaint obviously cannot be stricken with prejudice if there are remaining counts.

Plaintiff's causes of action originate from an advertisement published on-line by Defendant, Novella, on or about May 8, 2013. A copy of the advertisement is attached hereto as Exhibit "2." In response to the slanderous accusations by Novella, Dr. Tobinick wrote him a letter providing peer-reviewed medical literature supporting the use of perispinal etanercept for the treatment of selected neuroinflammatory disorders and inviting him to the clinic to witness firsthand the benefits of the treatment protocol. The letter further demanded a retraction of the advertisement. A copy of the letter is attached as Exhibit "3." Notwithstanding the demand for retraction, Defendant Novella had the audacity to publish yet another advertisement endorsing his misstatement of facts from the first advertisement. A copy of the second advertisement is attached as Exhibit "34." But Novella was not finished yet. He published a blog once again reiterating the falsehoods he published earlier. A copy of the blog is attached as Exhibits 36 and 37.

Novella provided not only opinions but false statements of facts in the aforementioned publications. His malicious intent is evident in the second paragraph of the original advertisement wherein he expresses his displeasure with the neutral tone of a L.A. Times article by stating, " I would have preferred an exposé of a dubious clinic exploiting desperate patients by peddling false hope. He refers to Dr. Tobinick's clinic as a "quack clinic." On page two of the original publication (Exhibit 2) he claims Dr. Tobinick's clinic is a one-man institute, an erroneous statement of fact that was easily verifiable. (See Exhibit "A", Tobinick Aff., ¶ 42-46) On page three of the publication Novella states Dr. Tobinick has since moved his clinic to Florida, which is a quack-friendly state. Dr. Tobinick did indeed open a clinic in Florida but did

not move his California clinic (Tobinick Aff. ¶47-52). This is yet another example an intentional and malicious act by Novella to discredit Dr. Tobinick wherein he suggests Dr. Tobinick had to flee California. On page four of the original publication Novella states, "The claims of Tobinick, however, are not in the gray area- they are leaps and bounds ahead of the evidence. This is another erroneous statement of fact buttressed by the response letter sent to Novella enclosing abstracts of 69 scientific/medical journal articles. A simple Google search or medline search would have revealed additional peer reviewed articles supporting Dr. Tobinick's claims.(see Tobinick Aff. ¶11, 18, 21, 30). On page 5 Novella asserts, "Unless all these factors are controlled for with proper blinding, no conclusions about the treatment effect are possible. Dr. Tobinick is providing the kind of evidence that is guaranteed to be positive, but not the kind of evidence that would determine if his treatments are effective or not. If a patient obtains relief of symptoms then treatment is effective. Dr. Tobinick has treated many patients who have obtained significant relief of symptoms. (See Exhibits 5-12). Moreover there have been double blind, placebo controlled studies regarding the safety and tolerability of Etanercept in Alzheimer's Disease. All Novella had to do would be to search the website "ClincalTrials.gov. Instead he proclaimed false statements of facts to endorse his website and promote his corporation at the expense of Dr. Tobinick. Novella is also wrong about his assertion on page 6 that Dr. Tobinick charged a patient $132,000 over four years. (see Tobinick Aff.¶23-24) Finally, Novella concludes by calling Dr. Tobinick, "a dubious practitioner, practicing at the fringes of medical ethics and evidence, making bold claims without adequate justification. While dubious practitioner and practicing at the fringes of medical ethics and evidence may arguably constitute opinion, the phrase "making bold claims without adequate justification" is a statement of fact. There are a plethora of peer-reviewed studies attesting to the efficacy of enteracept as utilized by Dr. Tobinick. (see Tobinick Aff. ¶11, 18, 21, 30)

The second publication by Novella restates his erroneous statements of facts and adds a few more. Novella accuses Dr. Tobinick of utilizing "experimental treatments." Dr. Tobinick may utilize "off label treatments" but that is not synonymous with "experimental treatments." (see *Perez v. Nidek Co., LTD.,* 711 F3d 1109 (9th Cir. 2013)). Novella claims Dr. Tobinick's treatment protocol cannot bring back dead brain cells in Alzheimer's patients resulting in patient improvement. Novella claims there are no double blind placebo controlled clinical trials but attached hereto as Exhibits 19 and 21 are the results of double blind placebo controlled clinical trials for Alzheimer's patients.

Dr. Novela gets even uglier in his blog publication. Once again he states, "So, there's no double-blind placebo controlled trials looking at Enbrel for Alzheimer's disease or stroke or traumatic brain injury." That is an erroneous statement of fact disproven above, not an opinion. "He charges something like $4000 for a treatment." This is yet another erroneous statement of the facts (see Tobinick aff. ¶23-24). When commenting upon the patient cited in the LA Times article he stated, "she continued to progress, really without any apparent change in the course of the illness." This is untrue. (see Tobinick aff. ¶25-29). It is clear that Novella intended to harm Dr. Tobinick's reputation as it was foreseeable his misstatement of facts would be repeated elsewhere. This is evident by his blog statement, "I wrote about it on Science-based Medicine and on <u>Neurologica</u>. <u>Orac</u> wrote about it on <u>Respectful Insolence</u>." Finally, it is clear that Novella is not voicing his opinion but rather stating erroneous facts. This is evident by his blog statement, "**We are actually stating what science says."** The best evidence of what science says is encompassed in the numerous scientific journal articles attached to this memorandum in opposition and not Novella's misstatement of the facts.

### 1. Trade Libel and Libel per se

Plaintiff has presented ample evidence that Novella is guilty of trade libel which requires a showing that the defendant published a knowingly false statement harmful to the interests of another and intended such publication to harm the plaintiff's pecuniary interests. Even after being provided with no less than 69 scientific peer reviewed articles, Novella continued to repeat his mantra of misstatement of facts in subsequent publications. Dr. Tobinick and his practice have no wonder experienced a dramatic decline in income and have substantiated occasions where patients have cancelled appointments after reviewing the articles published by Novella.(see Tobinick aff. ¶57). 'Old-fashioned 'malice,' in the sense of spite or ill will or a desire to do harm to the plaintiff for its own sake, undoubtedly still is sufficient to make the defendant liable, even where he honestly believes his statement to be true and would otherwise have a privilege to make it. One who speaks for such a malevolent purpose takes the risk that what he says will prove to be false. But improper intent or purpose includes more than this. It includes the defendant who purposely interferes with the interests of the plaintiff in a manner in which he is not privileged so to interfere. . . . The unprivileged purpose to do harm is itself malice, and it is in such cases that the word has been defined to mean without just cause or excuse. 'Finally, defendant will be liable if he knows that what he says is false, regardless of whether he has a spite motive or intends to affect the plaintiff at all. The deliberate liar must take the risk that his statement will prove to be economically damaging to others if a reasonable man would have foreseen the possibility. *Collier County Publishing Co., Inc v. Chapman*, 318 So.2d 492 (Fla. 2nd DCA 1975)

A publication is libelous per se**,** or actionable per se, if, when considered alone, without innuendo, it charges that a person has committed an infamous crime; charges a person with having an infectious disease; tends to subject one to hatred, distrust, ridicule, contempt, or

disgrace; or tends to injure one in his trade or profession. *Richard v. Gray*, 62 So.2d 597 (Fla.1953). Plaintiff has satisfied the evidentiary requirements for both prongs of the test. Novella falsely claimed Dr. Tobinick fled California to go to a "quack friendly" state which is erroneous. He merely opened additional offices in Florida.  In his blog he claimed to only be stating scientific fact in spite of being provided scientific studies to the contrary previously. Novella falsely stated the California Board of Medicine found Dr. Tobinick to be unethical. Only one interpretation is possible to explain Novella's actions, he wanted to promote his own website at the expense of Dr. Tobinick's reputation and earning ability. These actions support a finding of actual malice and/or a reckless disregard for the truth.

It bears mentioning at this point that both Novella and his counsel are aware that the California Board of Medicine filed Accusations that were subsequently amended yet they attach the original Accusation consisting of numerous withdrawn accusations to their motion. They know the original Accusation is null and void. The original Accusation contains 47 pages whereas the Second Amended Accusation contains less than 8 pages. If defendant and defense counsel are so well acquainted with the decision of the Board, surely they must have read paragraph 11 which provides, "the admissions made by the Respondent herein are only for the purposes of this proceeding, or any other proceedings in which the Division, the Board, or other professional licensing agency is involved, and shall not be admissible in any other criminal or civil proceeding" or by the finding in paragraph 10 that "published, peer reviewed scientific studies since May 2002 have provided evidence that perispinal etanercept is effective for treatment of disc-related pain." This constitutes further evidence of continued malice on behalf of Novella.

## 2. There is a prima facie showing of libel with actual malice

From May 8, 2013 through July 26, 2014 Defendant Novella published multiple false and defamatory statements of fact regarding Plaintiffs. After notification of the falsity of his statements and a request for their removal he increased his defamatory attack against Plaintiffs. The false and unprivileged defamatory statements of fact by Novella included the following:

1. Falsely stating that *"Tobinick…is claiming that a wide range of neurological conditions not known to be immune mediated are treated by a specific immunosuppressant"*, when no such claim was made by Tobinick or Plaintiff (Tobinick Affidavit "TA" ¶ 9-22).

2. Mischaracterizing and libeling Plaintiff and Edward Tobinick MD with respect to treatment of a patient at Plaintiff's medical practice: *"…really without any apparent change in the course of the illness … that's pretty disgusting, sucking $132,000 out of a desperate husband…."* when the husband was not charged this fee (TA ¶23-29); and the injections, contrary to Novella's assertion, were followed by a positive change in the course of the illness (TA ¶25-29)

3. Falsely mischaracterizing the scientific basis for Plaintiff's medical practice by stating *"there's no double-blind placebo controlled trials looking at Enbrel for Alzheimer's disease"*. (TA ¶30-34)

4. Falsely claiming that *"Tobinick, however, has not produced such evidence* [double-blind placebo-controlled clinical trials]" (TA ¶18, 30-41).

5. Mischaracterization of Plaintiff's medical practice as a *"one-man institute"* (TA ¶42-46)

6. Falsely stating that *"Tobinick has since moved his clinic to Florida, which is a very quack-friendly state"* (TA ¶47-52)

### 3. Unfair Competition

To state a claim for unfair competition under Florida common law a party must plead 1) deceptive or fraudulent conduct of a competitor; and 2) likelihood of consumer confusion. *Third party Verification, Inc. v. Signaturelink.*, 492 F. Supp. 2d 1314, 1324-25 (M.D. Fla. 2007). Plaintiff has met this burden by demonstrating deceptive and fraudulent conduct on behalf of Novella in his refusal to acknowledge scientific literature and his proclamation that there is no scientific literature supporting the efficacy of Dr. Tobinick's treatment protocol. The cancellation by at least one patient after reading Novella's publication further demonstrates consumer confusion. The significant decline in new patients after the publications is further evidence of consumer confusion. Defendant also claims the parties are in no way in competition with each other. Novella professes to treat headaches as does Dr. Tobinick.( see Tobinick Aff. ¶58). Furthermore, Dr. Tobinick has treated patients form New England, New York, New Jersey and countries throughout the world.

### 4. Tortious Interference

Elements of tortious interference with business relationship are as follows: (1) existence of business relationship; (2) knowledge of relationship on part of defendant; (3) intentional and unjustified interference with relationship by defendant; and (4) damage to plaintiff as a result of breach of relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812 (Fla. 1995). Plaintiff has provided ample evidence to support a finding of its claim for tortuous interference. Plaintiff can and will prove all of the necessary elements. Novella was certainly aware that Dr. Tobinick had doctor – patient relationships as he alluded to them in his publications. He published defamatory statements to the public that there is no scientific support for Dr. Tobinick's treatment protocol which he knew to be false. Even in his motion to strike defendant still claims the Novella's article accurately represented the Accusations by the Board of

Medicine when he knew the accusations were amended and for the most part dropped. Finally Dr. Tobinick has suffered an extreme loss of income and at least one verifiable instance where a patient cancelled after reviewing Novella's publications. (see Tobinick aff. ¶56).

## Conclusion

If the court finds Florida law applies the analysis ends there and the motion to strike must be denied. Even if the court finds California law applicable to this motion, plaintiff has made a sufficient evidentiary showing of a likelihood of prevailing far exceeding the minimal merit requirement under the law. The plaintiff has demonstrated that mixed in with his blasphemous opinions, Novella intentionally, maliciously, and/or recklessly misstated facts to support his opinions. All of this was done under the guise of performing a public service when, in fact, the articles were published in a sensationalized manor to attract readers and thus donations and the purchase of merchandise. In order to truly perform a public service, Dr. Novella needs to open his eyes and examine the evidence before issuing critiques. The plaintiff herein requests attorney's fees for having to defend this motion.

Dated this 16th day of October, 2014.

Respectfully submitted,

TRIPP SCOTT, P.A.
*Attorneys for Plaintiffs*
110 S.E. Sixth St., 15th Floor
Fort Lauderdale, FL 33301
Telephone (954)
Facsimile (954) 761-8475

By: */s/ Reid A. Cocalis*
    Reid A. Cocalis, Esq.
    Florida Bar No. 0724114
    rac@trippscott.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on October 16, 2014, we electronically filed the foregoing document with the Clerk of Court using CM/ECF.  We also certify that a true and correct copy of the foregoing document is being served on this day upon the parties on the attached service list via transmission of Notices of Electronic Filing generated by CM/ECF.

        TRIPP SCOTT, P.A.
        Attorneys for Plaintiffs
        110 SE 6 St Fl 15
        Fort Lauderdale, Florida 33301
        Telephone: (954) 525-7500
        Facsimile: (954) 761-8475

        By:   */s/ Reid A. Cocalis*
            Reid A. Cocalis
            Fla Bar No.: 724114
            rac@trippscott.com
            Alexander D. Brown
            Fla Bar No.: 752665
            adb@trippscott.com
            Peter G. Herman
            Fla Bar No.: 752665
            pgh@trippscott.com
            ele@trippscott.com
            rep@trippscott.com

## SERVICE LIST

Edward S. Polk
Jeanne K. Spital
COLE, SCOTT & KISSANE, P.A.,
Attorneys for Society for Science-Based Medicine, Inc.,
Dadeland Centre II
9150 S. Dadeland Boulevard, 14th Floor
Miami, Florida 33156
Telephone: (786) 268-6763
Facsimile: (305) 373-2294
Edward.Polk@csklegal.com
Jeanne.Spital@csklegal.com

Andrew H. Marks
Kimberly Freedman
Coffey Burlington, P.L.
Attorneys for Yale University
2601 South Bayshore Drive
Miami, Florida 33133
Telephone: (786) 268-6763
Facsimile: (305) 373-2294
amarks@coffeyburlington.com
kfreedman@coffeyburlington.com

Darren Spielman
Robert Kain
Kain & Associates
Attorneys for SGU Productions, LLC
900 S.E. 3rd Ave., Suite 205
Fort Lauderdale, FL 33316
Telephone: (954)-768-9002
Facsimile: (954) 768-0158
rkain@complexip.com
dspielman@complexip.com

Marc J. Randazza
Randazza Legal Group
Attorneys for Novella
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Telephone: (702) 420-2001
Facsimile: (305) 437-7662
ecf@randazza.com

Jeffrey R. Babin
John M. Doroghazi
Wiggin and Dana LLP
Attorneys for Yale University
265 Church Street
P.O. Box 1832
New Haven, CT 06508-1832
Telephone: (203) 498-4400
Facsimile: (203) 782-2889
jbabbin@wiggin.com
jdoroghazi@wiggin.com