## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:14-CV-80781-ROSENBERG/BRANNON

EDWARD LEWIS TOBINICK, MD, et al.,

     Plaintiffs,

v.

M.D. STEVEN NOVELLA, et al.,

     Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANT NOVELLA'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Novella's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to FRCP 12(b)(2) for Lack of Personal Jurisdiction, FRCP 12(b)(3) for Improper Venue, and Failure to Comply with Florida Statute § 770.01 [DE 65], filed herein on August 11, 2014. The Court carefully has considered the Motion [DE 65], the Response [DE 77] and the Reply [DE 84]. The Court is otherwise fully advised in the premises. For the reasons discussed below, the Motion is granted in part and denied in part.

### I.      BACKGROUND[1]

Plaintiff Edward Tobinick ("Plaintiff Tobinick") is a doctor who provides medical treatment to patients with "unmet medical needs" via two institutions—"Edward Lewis Tobinick M.D.," a California medical corporation (hereinafter "the California Institute"), and "INR PLLC," a Florida professional limited liability company (hereinafter "the Florida Institute")—both doing business as the "Institute of Neurological Recovery" (collectively "Plaintiffs"). DE 55, Am. Compl., ¶¶ 2–4, 16. Defendant Steven Novella (hereinafter "Defendant Novella") is a

---

[1] This section draws largely from Plaintiffs' Amended Complaint [DE 55]. The Court draws from other sources, such as the affidavit attached to Defendant Novella's Motion to Dismiss [DE 65 Ex. 1], only to the extent the Court considers it necessary to provide context for the instant motion.

board-certified neurologist at Yale New Haven Hospital and an Assistant Professor of Neurology at the Yale School of Medicine, both of which are located in New Haven, Connecticut, where Defendant Novella resides. DE 65 Ex. 1, Decl. of Dr. Steven Novella ("Novella Decl."), ¶¶ 2, 4. Defendant Novella's primary contact with Florida (separate and apart from any torts he allegedly committed therein) is his membership on the board of The Society for Science-Based Medicine ("the Society"), a Florida corporation. *Id.* ¶¶ 29–30. He maintains a business address in Florida in connection with his position on the Society's board.[2]

On May 8, 2013, Defendant Novella published an article ("the first article") that criticized Plaintiffs' treatment methods on the www.sciencebasedmedicine.org website. Am. Compl. ¶ 24; Am. Compl. Ex. 1.[3] Defendant Novella is an editor of, and contributor to, that website. Novella Decl. ¶ 14. On June 9, 2014, Plaintiffs filed suit against Defendant Novella for drafting and publishing the first article.[4] Compl.; Am. Compl. ¶ 24. On July 23, 2014, Defendant Novella published another article ("the second article") on www.sciencebasedmedicine.org

---

[2] The affidavits are slightly contradictory as to whether or not Defendant Novella has a mailing address in Florida. *Compare* Novella Decl. ¶ 12 ("I do not have a . . . mailing address in Florida."), *with* DE 77 Ex. 1, Aff. in Opp'n to Novella's Mot. to Dismiss ("Tobinick Aff."), ¶ 14 ("As shown on SBM's annual report filed March 10, 2014 with the Florida Department of State, Division of Corporations, Novella maintains a business address in the State of Florida for his role as a director of SBM."). "Where there is a conflict in affidavits, placing different constructions on the facts, the district court should give greater weight to the Plaintiff's version, particularly when 'the jurisdictional questions are apparently intertwined with the merits of the case.'" *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, 792 F. Supp. 1566, 1580 (S.D. Fla. 1992) (quoting *Delong Equip. Co. v. Wash. Mills Abrasive*, 840 F.2d 843, 845 (11th Cir.1988)). The Court thus assumes Defendant Novella has a business address in Florida in connection with his position as the Vice President of the Society for Science-Based Medicine's Board. This "fact" would be most relevant if the Court needed to evaluate Defendant Novella's minimum contacts with the State of Florida. Because the Court need not conduct a minimum contacts analysis for the reasons discussed below, the Court declines to hold an evidentiary hearing to resolve this issue. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (noting that such a hearing is "discretionary"). Moreover, neither party has requested an evidentiary hearing.
[3] The first article was edited on May 23, 2014, but the edits were removed and the article was returned to its original form later that same day. Am. Compl. ¶¶ 98–99.
[4] Plaintiffs also filed suit against Defendant Society for Science-Based Medicine, Inc., Defendant SGU Productions, LLC, and Defendant Yale University for providing links on the internet to the article or otherwise promoting it. Am. Compl. ¶ 26. In two previous Orders, this Court dismissed Defendants SGU Productions, LLC and Defendant Yale University. DE 91, 92. Plaintiffs' Motion for Reconsideration as to the Court's dismissal of Defendant SGU Productions, LLC was denied. DE 115. Defendant Society for Science-Based Medicine, Inc. remains a party to the suit pending resolution of its Motion to Dismiss Amended Complaint, for More Definite Statement or for Summary Judgment [DE 74].

pertaining to Plaintiffs and their practice. Am. Compl. ¶ 101; Am. Compl. Ex. 5. The Amended Complaint addresses statements made in both articles.

Plaintiffs' Amended Complaint alleges five counts: violations of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); unfair competition under 28 U.S.C. § 1338(b) (Count II); trade libel (Count III); libel per se (Count IV); and tortious interference (Count V). The crux of each of Plaintiffs' claims is a number of allegedly false statements made in the two articles published by Defendant Novella. Plaintiffs' Amended Complaint alleges that a number of statements in the initial article are false. The allegedly false statements concern the validity of Plaintiff Tobinick's treatments, the scientific literature discussing those treatments, the size and locations of Plaintiff Tobinick's Institutes, and, by implication, the categorization of Plaintiff Tobinick's practice as "health fraud." *See id.* ¶¶ 54–56, 60–61, 63–64, 69–70, 71–72. The only statement in the second article which Plaintiffs allege is false and misleading is Defendant Novella's statement, as characterized by Plaintiffs, that "there have been no double-blind placebo-controlled clinical trials of the treatment provided by the Plaintiffs."[5] *Id.* ¶¶ 102–03.

Presently before the Court is Defendant Novella's Motion to Dismiss the Amended Complaint [DE 65].

## II.    DISCUSSION

Defendant Novella's Motion to Dismiss raises four arguments for dismissal: first, that venue is improper; second, that the Court lacks personal jurisdiction over Defendant Novella; third, that Plaintiffs failed to comply with the Florida pre-suit notice requirements; and fourth, that the single publication/single action rule bars Plaintiffs' tortious interference claim. Each

---

[5] The Court notes that the statement the Plaintiffs appear to be targeting in this paragraph actually states that "*I* [Defendant Novella] *could not find* a single double-blind placebo-controlled trial establishing the efficacy of [Tobinick's] treatment for any of the conditions I listed above. (There are small studies for disc herniation showing conflicting results.)[.]" Am. Compl. Ex. 5 at 3 (emphasis added).

3

argument is discussed in turn. For the reasons stated below, the Motion is granted in part and denied in part.

    **A.**    **Venue**

Plaintiffs' Amended Complaint alleges that "[v]enue is proper in this District as to Defendants pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2)." Am. Compl. ¶ 11. Defendant Novella argues that venue is proper under neither provision.[6] Plaintiffs' Response only addresses the first provision, and the Court accordingly limits its analysis to the parties' arguments involving 28 U.S.C. § 1391(b)(2).

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." When considering where "a substantial part of the events or omissions giving rise to the claim occurred," courts should consider only "those acts and omissions that have a close nexus to the wrong." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). "[I]n the context of defamation and other non-physical torts, courts generally hold that venue under section 1391[(b)](2) is proper in the district where the injured party resides and the defamatory statements were published." *Capital Corp. Merch. Banking v. Corp. Colocation, Inc.*, No. 6:07-CV-1626ORL19KRS, 2008 WL 4058014, at *3 (M.D. Fla. Aug. 27, 2008) (collecting cases).

Defendant's position is that "[n]one of the complained-of activities, let alone a 'substantial part' of the activities, took place in the Southern District," because Defendant Novella "resides and works in Connecticut, where he also wrote and published the subject article." *See* DE 65, Def. Novella's Mot. to Dismiss ("Mot. to Dismiss"), at 3; Novella Decl. ¶

---

[6] Defendant Novella also makes arguments with respect to the impropriety of venue under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(3), but because Plaintiffs do not allege venue is proper under either provision in their Amended Complaint, the Court finds it need not address these provisions.

16. Plaintiffs argue the converse: that "the brunt of [Defendant's] tortious acts caused economic and reputational damages in this District," as the website on which Defendant published his statements "was and is both accessible in this District and accessed in this District." *See* DE 77, Pls.' Resp., at 3; DE 77 Ex. 1, Aff. in Opp'n to Novella's Mot. to Dismiss ("Tobinick Aff."),[7] ¶ 4; Am. Compl. ¶ 12. Moreover, Plaintiffs argue that Defendant knew Plaintiffs would suffer economic harm in Florida with the publication of his allegedly defamatory statements, and "[t]he only services provided by Plaintiffs in Florida are provided in this District." *See* Pls.' Resp. at 3–4; Tobinick Aff. ¶ 9; Am. Compl. Ex. 1 at 3.

The Court agrees with Plaintiffs, and finds venue in this District proper. As noted above, where defamation is alleged, venue under § 1391(b)(2) is generally appropriate in the District in which the injured party resides. Plaintiffs do business in Florida, and their business in Florida occurs exclusively within this District. Defendant Novella was aware at the time he published his article that Plaintiff Tobinick resided in Florida and did business in the state. Am. Compl. Ex. 1 at 3. Venue is thus proper in the Southern District of Florida. *See Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC*, No. 8:09-CV-1885-T-23MAP, 2009 WL 3822773, at *3 (M.D. Fla. Nov. 16, 2009); *Capital Corp. Merch. Banking*, 2008 WL 4058014, at *3.

Accordingly, the Court finds that venue in the Southern District of Florida is proper under 28 U.S.C. § 1391(b)(2).

---

[7] The Court notes at this point that it has not considered portions of Plaintiff Tobinick's counter-affidavit which are inappropriate. "Affidavits must be based on personal knowledge, and, therefore, affidavits based on nothing more than information and beliefs are not sufficient . . . ." *BigGro §.com, Inc. v. Sales 360, LLC*, No. 8:05CV1450T17MSS, 2006 WL 539526, at *1 (M.D. Fla. Mar. 6, 2006). Plaintiff Tobinick's affidavit makes a number of assertions that clearly are not based on his personal knowledge. *See, e.g.*, Tobinick Aff. ¶ 7 ("Novella's tortious act was done with the intent of harming Plaintiffs' reputations and driving potential customers away from services provided by Plaintiffs in this District for the purpose of promoting his business interests."). The Court has not considered statements such as these, which are clearly not based on Plaintiff Tobinick's personal knowledge.

### B.    Personal Jurisdiction

Defendant Novella also moves to dismiss the Amended Complaint for lack of personal jurisdiction. Mot. to Dismiss at 4–14. Plaintiffs are responsible for "establish[ing] a prima facie case of personal jurisdiction over a nonresident defendant," and must present "enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990). Allegations in the plaintiffs' complaint are accepted as true. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). However, where defendants produce "affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.* Defendant Novella has submitted an affidavit alongside his Motion to Dismiss, and Plaintiffs have submitted a counter-affidavit alongside their response.

For this Court to assert personal jurisdiction over Defendant Novella, Plaintiffs must show that exercising jurisdiction over him would comply with both the Florida long-arm statute and federal due process requirements. Florida's long-arm statute is applicable because the Lanham Act—the statute governing Plaintiffs' sole federal claim and, consequently, the basis for federal jurisdiction[8]—is silent regarding service of process. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626–27 (11th Cir. 1996) ("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the

---

[8] Count II of the Plaintiffs' Complaint alleges unfair competition in violation of 28 U.S.C. § 1338(b). *See* Am. Compl. ¶¶ 118–28. Jurisdiction under that provision is premised on the Plaintiffs' Lanham Act claim, however. *See* 28 U.S.C. § 1338(b) ("The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.").

existence of personal jurisdiction."). Exercise of jurisdiction over Defendant Novella must also comply with federal due process. *See id.* at 626.

> i.    *Florida's Long-Arm Statute*

Although Defendant Novella's Motion to Dismiss discusses the applicability of three separate provisions of the Florida long-arm statute, Plaintiffs only argue the applicability of Florida Statute section 48.193(1)(a)(2) in their Response.[9] *See* Pls.' Resp. at 4–6. As such, that is the only provision this Court considers.[10]

Florida Statute section 48.193(1)(a)(2) provides as follows:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . .
> 2. Committing a tortious act within this state.

*Id.* The Florida Supreme Court interpreted section 48.193(1)(a)(2)'s predecessor provision in response to a certified question posed by the Eleventh Circuit in *Internet Solutions Corporation v. Marshall*, 557 F.3d 1293 (11th Cir. 2009) (per curiam). The question posed by the Eleventh Circuit, as rephrased by the Florida Supreme Court, was:

> DOES A NONRESIDENT COMMIT A TORTIOUS ACT WITHIN FLORIDA FOR PURPOSES OF SECTION 48.193(1)(b) WHEN HE OR SHE MAKES ALLEGEDLY DEFAMATORY STATEMENTS ABOUT A COMPANY WITH ITS PRINCIPAL PLACE OF BUSINESS IN FLORIDA BY POSTING THOSE STATEMENTS ON A WEBSITE, WHERE THE WEBSITE POSTS CONTAINING THE STATEMENTS ARE ACCESSIBLE AND ACCESSED IN FLORIDA?

*Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1203 (Fla. 2010). The Florida Supreme Court answered the question in the affirmative. *Id.* The Eleventh Circuit, applying the Florida

---

[9] The parties both cite Florida Statute section 48.193(1)(b), which was renumbered as Florida Statute section 48.193(1)(a)(2) in 2013. 2013 Fla. Sess. Law Serv. Ch. 2013–164 (C.S.S.B. 186) (listing a July 1, 2013 effective date). The Court uses the new numbering throughout this Order.

[10] Moreover, as the Court has found the conditions of that provision met, the applicability of the other provisions is irrelevant regardless.

Supreme Court's answer to its certified question, held that personal jurisdiction existed under the Florida long-arm statute as to the defendant in the case before it. *Internet Solutions Corp. v. Marshall*, 611 F.3d 1368, 1370–71 (11th Cir. 2010) (per curiam).

The situation in *Internet Solutions* is strikingly similar to that in the instant case. The *Internet Solutions* defendant, Tabatha Marshall, was a non-resident defendant, just like Defendant Novella. *See Internet Solutions Corp.*, 557 F.3d at 1294; Am. Compl. ¶ 5. Like Defendant Novella, Marshall posted allegedly defamatory statements on her noncommercial website. *See Internet Solutions Corp.*, 557 F.3d at 1297 (characterizing Marshall's website as "non-commercial" in its certified question); Novella Decl. ¶ 15 (declaring that the website on which the article was posted "does not engage in commercial activity through the sale of goods or services," a statement which is not contradicted by either the Amended Complaint or Plaintiff Tobinick's counter-affidavit). Like the article published by Defendant Novella, Marshall's article contained minimal references to the state of Florida. *See Internet Solutions Corp.*, 611 F3d. at 1369 ("The post included a listing of VeriResume's affiliates, including ISC, and included Florida addresses."); Am. Compl. Ex. 1 at 3 ("Tobinick has since moved his clinic to Florida, which is a very quack-friendly state."), 6 ("Florida in particular appears to be a haven for such activity."). At least one plaintiff in each case is a Florida resident. *Internet Solutions Corp.*, 557 F3d. at 1294; Am. Compl. ¶¶ 3–4. Finally, both Internet Solutions and Plaintiffs in the instant case have alleged that the website was both accessible, and accessed, in Florida. *Internet Solutions Corp.*, 557 F3d at 1369; Am. Compl. ¶ 12(a).

Applying *Internet Solutions*, this Court holds that Plaintiffs have satisfied the requirements of Florida Statute section 48.193(1)(a)(2). Like the defendant in *Internet Solutions*, Defendant Novella published allegedly defamatory statements on a noncommercial website that is accessible in and, as Plaintiffs have alleged, actually was accessed in Florida, allegedly

targeting at least one Florida resident. Accordingly, *Internet Solutions* controls and Plaintiffs have satisfied the requirements of Florida's long-arm statute.

ii.      *Due Process Clause of the Fourteenth Amendment*

The Plaintiffs must do more than satisfy the Florida long-arm statute, however; that inquiry is only the first of two this Court must conduct. *Sculptchair, Inc.*, 94 F.3d at 626. In addition to determining that the Plaintiffs have satisfied the Florida long-arm statute, this Court must also determine that its exercise of personal jurisdiction would satisfy "'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The additional, federal constitutional requirement serves to "protect[] an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Licciardello*, 544 F.3d at 1284 (quoting *Int'l Shoe*, 326 U.S. at 319). Defendants, in short, should have "fair warning" that they may be subject to suit in a given forum. *Id.*; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

This is a case of specific jurisdiction, in which jurisdiction "aris[es] out of a party's activities in the forum state that are related to the cause of action alleged in the complaint." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (internal quotation marks omitted). In such cases, the Court applies a "three-part due process test." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). The Court considers, first, "whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* This inquiry "focus[es] on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56 (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)). Second, the Court considers "whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the

forum state's laws." *Id.* at 1355. The Plaintiffs may satisfy this prong under the traditional purposeful availment inquiry (a minimum contacts analysis) or, alternatively, the *Calder* "effects" test. *Id.* at 1356.

It falls on the Plaintiffs to establish the first two prongs of the test as described above. Even if the first two prongs are met, however, the *defendant* may still show that the exercise of personal jurisdiction over him is inappropriate if he makes "a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). The Court discusses each prong of the test below, and for the reasons discussed, concludes that the exercise of personal jurisdiction over Defendant Novella is proper.

      a.    Relatedness of Plaintiffs' Claims to Defendant Novella's Contacts with the Forum

First, the Plaintiffs must establish that their claims "'arise out of or relate to' at least one of the defendant's contacts with the forum." *Louis Vuitton Malletier*, 736 F.3d at 1355 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). As noted above, the focus is on "the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56 (quoting *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010)). Determining whether a "direct causal relationship" exists is a slightly more challenging task in cases where website activity is the basis for jurisdiction.

Plaintiffs cite to *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008),[11] one such website case, in support of their argument that this Court's exercise of personal jurisdiction over

---

[11] In *Licciardello* itself, the Eleventh Circuit stated that its "holding, as always, is limited to the facts before us." 544 F.3d at 1288 n.8. When *Internet Solutions* was remanded for a determination of whether exercising personal jurisdiction over the defendant would comply with federal due process, *see Internet Solutions Corp.*, 611 F.3d at 1371 & n.1, the district court relied in part on the limited nature of *Licciardello*'s holding in determining that federal due process was satisfied, *see Internet Solutions Corp. v. Marshall*, No. 6:07-cv-01740-ACC-KRS, DE 32, at 9 n.2 (M.D. Fla. Sept. 30, 2010). However, the Eleventh Circuit has subsequently applied *Licciardello* under different circumstances and found it dispositive, indicating that *Licciardello*'s holding is not so limited as the Middle District

Defendant Novella would satisfy federal Due Process requirements. *See* Pls.' Resp. at 6–9. *Licciardello* was issued before *Louis Vuitton Malletier*, however, which is the most recent Eleventh Circuit opinion addressing personal jurisdiction in the context of a website. A recent Southern District of Florida case, *Roof & Rack Products, Inc. v. GYB Investors, LLC*, No. 13-80575-CV, 2014 WL 3116413, at *3 (S.D. Fla. July 8, 2014), interpreted *Licciardello* in light of *Louis Vuitton Malletier*. *Roof & Rack Products* read *Licciardello* as holding, in light of *Louis Vuitton*'s framework, that "when a plaintiff claims a defendant infringes its trademark by posting the infringing marks on the defendant's website, and the defendant's contacts with the forum state are that its website is accessible there, the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state." *Roof & Rack Prods.*, 2014 WL 3116413, at *3 (citing *Licciardello*, 544 F.3d at 1285 n.4).

Each of Plaintiffs' claims against Defendant Novella involves statements made by him in two articles posted on the www.sciencebasedmedicine.org website, of which Defendant Novella is an editor and contributor. Novella Decl. ¶ 14. The second article contains no references to the state of Florida, while the first article mentions it twice; in the first article, Defendant Novella states that "Tobinick has since moved his clinic to Florida, which is a very quack-friendly state," and that "Florida in particular appears to be a haven for such [dubious medical] activity." Am. Compl. Ex. 1 at 3, 6. Plaintiffs target the former statement in their Amended Complaint, alleging that it is false because "the California offices of the Institute were open at the time the [article] was published, and remain in operation today," and "Florida is not a 'quack-friendly state.'" Am. Compl. ¶ 72–73.

The Court finds that Plaintiffs have established that their claims "arise out of or relate to at least one of the defendant's contacts with the forum." *Louis Vuitton Malletier*, 736 F.3d at

---

decision might suggest. *See, e.g.*, *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852, 855–56 (11th Cir. 2009) (per curiam). *Brennan* is discussed in greater detail *infra*.

1355 (internal quotation marks omitted). Like the defendant in *Licciardello*, Defendant Novella is alleged to have committed intentional torts against Plaintiffs. *See Licciardello*, 544 F.3d at 1287; Am. Compl. Plaintiffs' claims, like those of the plaintiff in *Licciardello*, stem from content posted by Defendant Novella on a website accessible in the forum state. *See Licciardello*, 544 F.3d at 1287; Am. Compl.[12] Finally, one of the allegedly false statements at issue specifically mentions Plaintiffs' Florida practice. Am. Compl. Ex. 1 at 3.

In light of the above, the Court concludes that the Plaintiffs have established that the Plaintiffs' claims "arise out of or relate to" at least of Defendant Novella's contacts with the forum state.

### b.    Purposeful Availment

Second, the Plaintiffs must establish that Defendant Novella "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws." *Louis Vuitton Malletier*, 736 F.3d at 1355. "Purposeful availment" in an intentional tort case may be established under the traditional minimum contacts analysis or, alternatively, the *Calder* "effects" test. *Id.* at 1356. Where an intentional tort is alleged, the latter test is generally considered the more appropriate measure of purposeful availment. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1221 (11th Cir. 2009) ("[The traditional] formulation of the minimum contacts test is applicable to cases involving claims of negligence— such as the case here. A different test, however, applies in cases involving intentional torts. In those instances, the applicable test is the "effects" test utilized in *Calder v. Jones* . . . ."); *see also Licciardello*, 544 F.3d at 1286 ("Many courts have employed the *Calder* 'effects' test when the plaintiff's claim involves an intentional tort. . . . [courts have] recognized that the defendant's

---

[12] It is not entirely clear from Defendant Novella's Declaration whether he is an owner of the website, as the defendant in *Licciardello* was. *See Licciardello*, 544 F.3d at 1282–83. However, nothing in *Licciardello* indicates that the Eleventh Circuit considered that relevant to their decision. Moreover, even if Defendant Novella is not the owner of the website, he is certainly an editor and regular contributor. *See* Novella Decl. ¶ 14.

connection with the forum in an intentional tort case should be evaluated under the *Calder* 'effects' test, rather than the contracts-oriented 'minimum contacts' test." (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995))). Thus, the Court first considers whether Plaintiffs have satisfied the *Calder* "effects" test.

"Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton Malletier*, 736 F.3d at 1356; *see also Licciardello*, 544 F.3d at 1285 ("Intentional torts . . . may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum"). The *Calder* "effects" test is satisfied where the tort was intentional; aimed at the forum state; and caused harm that the defendant should have anticipated would be suffered in that state. *Louis Vuitton Malletier*, 736 F.3d at 1356.

In *Licciardello*, the Eleventh Circuit held that *Calder* was satisfied where the defendant used the plaintiff's trademarked name and picture on a website accessible in Florida. 544 F.3d at 1287–88. That act constituted "the commission of an intentional tort aimed at a specific individual in the forum whose effects were suffered in the forum," satisfying the *Calder* "effects" test. *Id.* at 1288. The Supreme Court case that was the genesis of the test, *Calder v. Jones*, 465 U.S. 783 (1984), considered an "allegedly libelous story" published by a Florida resident, for a Florida company, that "concerned the California activities of a California resident." *Id.* at 788. That article allegedly "impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788–89. Moreover, the petitioner-defendant "knew that the brunt of that injury would be felt by respondent in the State

in which she lives and works . . . ." *Id.* at 789–90. In light of those facts, the Court held that jurisdiction was "proper in California based on the 'effects' of the [petitioners'] Florida conduct in California." *Id.* at 789. Applying *Calder*, *Licciardello* reasoned that just as California was the "focal point" of the tort in *Calder*, so was Florida, the plaintiff's residence, at the center of its case. *See Licciardello*, 544 F.3d at 1285–86, 1288.

Plaintiffs argue that *Licciardello* decides the issue, and this Court agrees. The facts in *Licciardello* are largely identical to the facts of this case. To the extent the cases are distinguishable, the differences between the two ultimately do not affect the outcome.[13] The Middle District of Florida court that decided *Internet Solutions Corp. v. Marshall*, No. 6:07-cv-01740-ACC-KRS, DE 32, at 7 (M.D. Fla. Sept. 30, 2010), on remand reached a different conclusion, but this Court declines to follow its lead for two reasons.

First, the cases are distinguishable. In *Internet Solutions*, the defendant's references to Florida were largely irrelevant to the plaintiff's claims; the sole reference to Florida within the posting at issue in that case was the inclusion of three Florida addresses associated with the plaintiff. *See Internet Solutions Corp.*, No. 6:07-cv-01740-ACC-KRS, DE 32, at 11 ("Aside from the addresses, the article contains no other connection to Florida."). Here, Plaintiffs allege that one of Defendant Novella's references to Florida is a false statement, and thus it serves as a premise for Plaintiffs' claims. Am. Compl. ¶¶ 71–73. Florida is consequently relevant to Plaintiffs' claims in the instant case, whereas it was not in *Internet Solutions*. Additionally, the court in *Internet Solutions* found that the defendant's article targeted a national, as opposed to a

---

[13] For example, Defendant Novella's website is arguably not fully interactive. *See* Novella Decl. ¶ 15 ("On Science-Based Medicine, readers have the ability to view articles and engage in discussion with other readers in the comments section of each article. Readers also have the ability to make donations to the website to help fund the continued publication of articles. However, Science-Based Medicine does not engage in commercial activity through the sale of goods or services."); *but see Internet Solutions Corp. v. Marshall*, No. 6:07-cv-01740-ACC-KRS, DE 32, at 7 (M.D. Fla. Sept. 30, 2010) (characterizing a similar website, which allowed users to post comments but did not allow users to donate, as "an interactive site in the middle of the spectrum"). However, the interactivity of the website is relevant under *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (E.D. Pa. 1997), which this Court need not consider for the reasons discussed *infra* in footnote 14.

Florida-specific, audience because the plaintiff's business was an "online recruiting business," which "residents of any state are equally capable of utilizing." *Internet Solutions Corp.*, No. 6:07-cv-01740-ACC-KRS, DE 32, at 10–11. Here, Plaintiffs do not run a national business, but instead provide treatment in two states, Florida and California, where the Institutes are located. *See* Am. Compl. ¶¶ 2–3. The location of Plaintiffs' business is thus relevant to the harm allegedly occasioned by Defendant Novella's conduct in a way it was not in *Internet Solutions*.

Second, to the extent that *Internet Solutions* discounted *Licciardello* due to the limited nature of its holding, this Court finds that *Licciardello* is not so limited. In *Licciardello*, the Eleventh Circuit stated that "[o]ur holding, as always, is limited to the facts before us." 544 F.3d at 1288 n.8. However, subsequent Eleventh Circuit decisions have applied *Licciardello* more broadly. For example, in *Brennan v. Roman Catholic Diocese of Syracuse N.Y., Inc.*, 322 F. App'x 852 (11th Cir. 2009) (per curiam), which did not involve the Internet, the Eleventh Circuit applied *Licciardello* and held that the exercise of personal jurisdiction over the defendant was proper. *Brennan* took *Licciardello* to stand broadly for the proposition that "the commission of an intentional tort by a nonresident expressly aimed at a resident, the effects of which were suffered by the resident in the forum, satisfied the 'effects' test established in *Calder* . . . ." *Brennan*, 322 F. App'x at 856. That is, in fact, the exact situation presently before the Court, and the Court accordingly finds that Plaintiffs have established purposeful availment under the *Calder* "effects" test following *Licciardello* and *Brennan*.

Moreover, even upon a straightforward application of *Calder*, the Court finds that Plaintiffs have satisfied the "effects" test. The torts alleged are certainly intentional. Nor can Defendant Novella contest that Plaintiffs suffered harm in Florida, or that he knew they would suffer harm here; it is clear from Defendant Novella's first article that he was aware Plaintiff Tobinick maintained a practice in the State. Instead, Defendant Novella contends that the "focal

15

point" of this case is California, citing the *Los Angeles Times* article that prompted his own research into Plaintiffs' practice, and the location (California) of Plaintiff Tobinick's original clinic. *See* Mot. to Dismiss at 1–2, 14.

The Court is not persuaded by this argument. One of the allegedly false statements made by Defendant Novella indicates not only that he knew Plaintiff Tobinick maintained a practice in Florida, but that he (Novella) believed the *entirety* of Plaintiffs' practice was there. In the first article, Defendant Novella stated, "Tobinick has since moved his clinic to Florida, which is a very quack-friendly state. Its 'health care freedom' law effectively shields dubious practitioners from pesky medical boards." *See* Am. Compl. Ex. 1 at 3. It is apparent from this statement that Defendant Novella believed Plaintiff Tobinick no longer maintained a practice in California. Defendant Novella's conduct was thus sufficiently aimed at Florida to satisfy the *Calder* "effects" test.

Accordingly, the Court finds that the Plaintiffs have established the "purposeful availment" prong of the three-part due process test, as set forth in *Louis Vuitton Malletier*, under the *Calder* "effects" test. Because the Court finds that Plaintiffs have established purposeful availment under *Calder*, it need not undertake a traditional minimum contacts analysis.[14]

c.    Fair Play and Substantial Justice

Having established that Defendant Novella has constitutionally sufficient contacts with the State of Florida, the Court must still determine that the exercise of jurisdiction over him will

---

[14] *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), is only relevant in the context of a minimum contacts analysis. *See id.* (mentioning neither *Calder* nor the "effects" test, but instead discussing its sliding-scale analysis in the context of a minimum contacts inquiry); *see also Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1139 (S.D. Fla. 2009) ("This [*Zippo*] sliding-scale analysis assesses the sufficiency of the minimum contacts by measuring the degree of activity or passivity of the website."). Because the Court finds that the "purposeful availment" prong of the inquiry is satisfied by the *Calder* "effects" test, it need not conduct a minimum contacts analysis. Moreover, as the Court noted in its prior Orders, the Eleventh Circuit expressed reluctance to adopt the *Zippo* line of cases, determining that "the traditional, three-prong test works just fine in this Internet case where the website was commercial and fully interactive." *Louis Vuitton Malletier*, 736 F.3d at 1355 n.10.

not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello*, 544 F.3d at 1288.

Defendant Novella argues that given his limited contacts with the State of Florida (discussed *supra*), this Court's exercise of jurisdiction over him "will impose a significant burden." Mot. to Dismiss at 15; *see also* Novella Decl. ("I do not have any contacts with Florida and would suffer great hardship if forced to defendant a lawsuit in the Southern District of Florida."). He argues additionally that Florida courts have "no interest in adjudicating a dispute over whether a doctor in Connecticut wrote and published an article in Connecticut, thereby allegedly engaging in false advertising in Connecticut, as related to his business in Connecticut, while discussing a disreputable medical practice that took place in California." Mot. to Dismiss at 15. Although Defendant Novella concedes that Plaintiffs have an interest in obtaining convenient and effective relief in Florida, he contends that Plaintiffs could just as easily have filed the suit in California, where one of the Institutes is located. *Id.* Finally, he argues that while the judicial system has an interest in resolving the dispute, the Southern District of Florida does not. *Id.* Plaintiffs rely primarily on *Licciardello* in their response, but argue additionally that the Court's exercise of jurisdiction is proper because "Novella conducts systematic and continuous business within the State of Florida," and "maintains a business," the Society for Science-Based Medicine, within the State. Pls.' Resp. at 8–9.

The Court concludes that exercising jurisdiction over Defendant Novella would not violate traditional notions of fair play and substantial justice. First, the Court largely agrees with Defendant Novella's assessment of his contacts with the State. Membership on a board hardly

qualifies as "maintain[ing] a business," as Plaintiffs contend. Plaintiffs do not contest that personally, Defendant Novella has essentially no contact with Florida.[15] To the extent that Defendant Novella is "active" in states outside his home state of Connecticut (Plaintiffs cite his contributions to the www.sciencebasedmedicine.org website, his podcast, and the fact that his "books and other items" are available for purchase outside of Connecticut), the Court finds that Defendant Novella's activities have a national, as opposed to a Florida-specific focus. *See* Novella Decl. ¶¶ 18–22, 24–26, 43, 44.

However, the other three factors weigh in favor of exercising jurisdiction over Defendant Novella. "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Licciardello*, 544 F.3d at 1288 (citing *Allerton v. State Dep't of Ins.*, 635 So. 2d 36, 40 (Fla. Dist. Ct. App. 1994); *Sculptchair, Inc.*, 94 F.3d at 632). Defendant Novella admits that Plaintiffs have an interest in obtaining convenient and effective relief in this District. Although one of the Plaintiff Institutes is located in California, the other Institute is located in Florida, and Plaintiff Tobinick himself resides here. The judicial system has an interest in resolving the dispute, and to the extent that this District's citizens have allegedly been harmed, so does this District. Accordingly, it does not offend traditional notions of fair play and substantial justice to exercise jurisdiction over Defendant Novella. Defendant Novella's Motion to Dismiss the Amended Complaint for lack of personal jurisdiction is denied.

---

[15] Defendant Novella's assertions that he does not now, nor has ever, resided in Florida; that he has never paid taxes to the State of Florida; that he does not possess a Florida Driver's License; that he is not registered to vote in Florida; that he does not now, nor has ever, owned real property in Florida; that he does not own any businesses incorporated in Florida; and that he does not have any bank accounts held in Florida banks are uncontested by Plaintiffs. *See* Novella Decl. ¶¶ 5–11.

### C.      Florida's Pre-Suit Notice Requirement

Defendant Novella additionally argues that dismissal of Plaintiffs' suit is proper because

Plaintiffs have failed to comply with Florida's pre-suit notice requirements. Florida Statute

section 770.01 states as follows:

> Before any civil action is brought for publication or broadcast, in a newspaper,
> periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days
> before instituting such action, serve notice in writing on the defendant, specifying
> the article or broadcast and the statements therein which he or she alleges to be
> false and defamatory.

Fla. Stat. § 770.01.

The Court finds that Plaintiffs have sufficiently alleged compliance with Florida Statute

section 770.01. *See* Am. Compl. ¶ 89–90 ("On or about May 17, 2013, Plaintiffs notified

NOVELLA, via written correspondence, that the Advertisement was false and defamatory. . . .

At that time, Plaintiffs also demanded that NOVELLA retract the Advertisement, and

immediately cease and desist from disseminating the falsehoods any further."). Whether or not

the notice provided by Plaintiffs complies with Florida Statute section 770.01 as a matter of law

is a question properly resolved at the summary judgment stage. *See Ortega Trujillo v. Banco*

*Central Del Ecuador*, 17 F. Supp. 2d 1334, 1337 (S.D. Fla. 1998) ("Whether or not the Plaintiffs

demanded a retraction [as required by Florida Statute section 770.01] is an issue of fact left for

resolution at trial."); *Nelson v. Associated Press, Inc.*, 667 F. Supp. 1468, 1473–75 (S.D. Fla.

1987) (resolving the issue upon a motion for summary judgment, and "find[ing] as a matter of

law that § 770.01 has not been complied with").[16] Accordingly, Defendant Novella's Motion to

---

[16] The Court notes that its decision to allow the Amended Complaint to stand at this point in the litigation should not
be taken as a ruling on the sufficiency of the notice provided by Plaintiffs. Some courts have held notice letters
under Florida Statute section 770.01 to a fairly exacting standard. *See Nelson*, 667 F. Supp. at 1474 ("[T]he Court is
convinced that [Florida Statute section 770.01] requires the best possible notice. . . . The best possible notice in this
case would have been, at a minimum . . . to refer to the [articles] . . . and quote verbatim from them; because the fact
is that Plaintiff was capable of doing so."). The Court will entertain arguments pertaining to the sufficiency of the
notice as a matter of law upon a motion for summary judgment. The Court will also entertain arguments as to
whether or not notice was required as to the second article, which was published after the suit was brought.

Dismiss Plaintiffs' Amended Complaint for failure to comply with Florida Statute section 770.01 is denied.

###### D.      The Single Publication Rule

Finally, Defendant Novella contends that Florida's single publication/single action rule ("single action rule") bars Plaintiffs' tortious interference claim (Count V). For the reasons discussed below, this Court agrees.

"In Florida, a single publication gives rise to a single cause of action," and "[t]he various injuries resulting from it are merely items of damage arising from the same wrong." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. Dist. Ct. App. 2002) (citing *Orlando Sports Stadium, Inc. v. Sentinel Star Co.*, 316 So. 2d 607 (Fla. Dist. Ct. App. 1975)). The rule prohibits defamation claims from being "re-characterized in additional, separate counts for [*e.g.*] libel, slander, or the intentional infliction of emotional distress if the claim arises from the same publication." *Kamau v. Slate*, No. 4:11CV522-RH/CAS, 2012 WL 5390001, at *7 (N.D. Fla. Oct. 1, 2012), *report and recommendation adopted*, No. 4:11CV522-RH/CAS, 2012 WL 5389836 (N.D. Fla. Nov. 5, 2012). "When claims are based on analogous underlying facts and the causes of action are intended to compensate for the same alleged harm, a plaintiff may not proceed on multiple counts for what is essentially the same defamatory publication or event." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014). Under these circumstances, courts have dismissed the offending counts. *See id.* at 1255–57 (barring a tortious interference claim under the single action rule upon a motion for summary judgment); *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339–40 (S.D. Fla. 1998) (dismissing a false light invasion of privacy claim with prejudice under the single action rule).[17]

---

[17] The Court recognizes that other courts have interpreted the single action rule to bar claims premised upon the same defamatory statements only where the defamation claims fail. *See, e.g.*, *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1326 n.1 (S.D. Fla. 2012) ("Because the Court declines to dismiss the defamation claim for lack

Here, all of Plaintiffs' claims involve allegedly false and/or defamatory statements made in the two articles published by Defendant Novella. *See* Am. Compl. ¶¶ 52–78, 101–06. Accordingly, Plaintiffs' tortious interference claim (Count V) is barred by the single action rule, and Count V is dismissed without prejudice. Plaintiffs may retain the claim in an amended complaint, so long as they do not premise the claim upon the same allegedly false and/or defamatory statements which underlie Plaintiffs' libel claims. *See Kamau*, 2012 WL 5390001, at *8 ("However, to the degree Plaintiffs may present separate claims based on separate publications which fall within the two-year statute of limitations, they could proceed."). Defendant Novella's Motion to Dismiss Count V of Plaintiffs' Amended Complaint is granted.

### III.   CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant Novella's Motion to Dismiss [DE 65] is **GRANTED IN PART AND DENIED IN PART**. Defendant Novella's Motion to Dismiss is **GRANTED** in that Count V of Plaintiffs' Amended Complaint [DE 55] is **DISMISSED WITHOUT PREJUDICE**. In all other respects, Defendant Novella's Motion is **DENIED**. All pending motions in the docket are to remain pending.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 23rd day of January, 2015.

Copies furnished to:
Counsel of record

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

---

of § 770.01 notice, the Court need not discuss the single-action rule in depth here."). However, this Court agrees with *Klayman* and the analysis set forth therein. *See also Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992) ("In short, *regardless of privilege*, a plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'").