UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-CV-80781-ROSENBERG/BRANNON

EDWARD LEWIS TOBINICK, MD, et al.,

      Plaintiffs,

v.

M.D. STEVEN NOVELLA, et al.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANT STEVEN NOVELLA'S SPECIAL MOTION TO STRIKE (ANTI-SLAPP MOTION)

**THIS CAUSE** is before the Court upon Defendant Steven Novella's Special Motion to Strike (Anti-SLAPP Motion) [DE 93] ("the Motion"), filed herein on September 30, 2014. The Motion has been fully briefed by both sides and the Court heard oral argument on the Motion on November 20, 2014. The Court has reviewed the documents in the case file and is fully advised in the premises.

Plaintiffs have sued Defendant Steven Novella for making allegedly false and/or defamatory statements about Plaintiffs' medical practice in two blog posts. Novella has moved to strike Tobinick M.D.'s unfair competition, trade libel, and libel per se claims under California's "anti-SLAPP" statute, California Code of Civil Procedure section 425.16.[1] A "SLAPP" is a strategic lawsuit against public participation, i.e. a lawsuit "brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech." Cal. Civ. Proc. Code § 425.16(a).

---

[1] After Novella filed the Motion, Plaintiffs' tortious interference claim was dismissed. *See* DE 117. Count I, as a false advertising claim brought pursuant to the Lanham Act, is a federal claim to which the California statute does not apply. Although Plaintiffs' unfair competition claim was brought pursuant to 28 U.S.C. § 1338(b), the Court treats it as a state law claim for purposes of the Motion. *See Donald Frederick Evans & Assocs., Inc. v. Cont'l Homes, Inc.*, 785 F.2d 897, 900 (11th Cir. 1986). Plaintiffs, for their part, have not argued that it should be treated as a federal claim.

Novella contends that this was the driving intent behind Plaintiffs' suit, and argues that Tobinick M.D.'s claims should be stricken. The Court agrees and grants the Motion.

## I.     BACKGROUND

This case concerns two articles written by Dr. Steven Novella, the only defendant remaining in the instant suit.[2] Both articles address the practice of Plaintiff Edward Tobinick ("Tobinick"), a doctor who provides medical treatment to patients with "unmet medical needs" via two institutes—Edward Lewis Tobinick M.D., a California medical corporation ("Tobinick M.D."), and INR PLLC, a Florida professional limited liability company ("INR")—both doing business as the "Institute of Neurological Recovery" (collectively "Plaintiffs"). Am. Compl. ¶¶ 2–4, 12. Novella published the first article, "Enbrel for Stroke and Alzheimer's" ("the first article"), on May 8, 2013 in response to a piece published in the *Los Angeles Times*. Am. Compl. Ex. 1 at 1. As Novella described it,

> The [*Times*] story revolves around Dr. Edward Tobinick and his practice of perispinal etanercept (Enbrel) for a long and apparently growing list of conditions. Enbrel is an FDA-approved drug for the treatment of severe rheumatoid arthritis. It works by inhibiting tumor necrosis factor (TNF), which is a group of cytokines that are part of the immune system and cause cell death. Enbrel, therefore, can be a powerful anti-inflammatory drug. Tobinick is using Enbrel for many off-label indications, one of which is Alzheimer's disease (the focus of the LA Times story).

*Id.* The allegedly false statements in the first article concern the viability of Dr. Tobinick's treatments, the scientific literature discussing those treatments, the size and locations of Dr. Tobinick's Institutes, and, by implication, the categorization of Dr. Tobinick's practice as "health fraud." *See* Am. Compl. ¶¶ 54–56, 60–61, 63–64, 69–70, 71–72. Novella published the second

---

[2] Plaintiffs also filed suit against the Society for Science-Based Medicine, Inc., SGU Productions, LLC, and Yale University for providing links on the internet to the article or otherwise promoting it. Am. Compl. ¶ 26. In two previous Orders, this Court dismissed Defendants SGU Productions, LLC and Defendant Yale University. DE 91, 92. Plaintiffs' Motion for Reconsideration as to the Court's dismissal of Defendant SGU Productions, LLC was denied. DE 115. The Court later dismissed Defendant Society for Science-Based Medicine, Inc. from the suit. DE 157.

article, entitled "Another Lawsuit To Suppress Legitimate Criticism – This Time SBM" ("the second article"), on July 23, 2014, after Plaintiffs filed their suit. Am. Compl. Ex. 5 at 1. In large part, the second article simply restates the content of the first, and Plaintiffs incorporated it into an Amended Complaint. *See generally id.*; Am. Compl. ¶¶ 102–03. The only statement in the second article which Plaintiffs allege is false and misleading is Novella's statement, as characterized by Plaintiffs, that "there have been no double-blind placebo-controlled clinical trials of the treatment provided by the Plaintiffs."[3] *Id.*

## II.   CHOICE OF LAW

A genuine conflict of law exists, as Florida has no equivalent to California's anti-SLAPP statute. *See Ranbaxy Labs., Inc. v. First Databank, Inc.*, No. 3:13–cv–859–J–32MCR, 2014 WL 982742, at *5 (M.D. Fla. Mar. 12, 2014). Because of this conflict, a choice of law analysis is necessary. Novella contends that California law applies, at least as to the claims of the California plaintiff, Tobinick M.D. Tobinick M.D. argues that California law does not apply, and that this Court should apply Florida law instead.

A federal court sitting in diversity applies the conflict of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Florida's conflict of law test utilizes the "significant relationship" test for torts. *See Bishop v. Fla Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980). The significant relationship test utilizes the following framework:

(1) A court, subject to constitutional restriction, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

---

[3] In the second article, Novella actually states that "*I* [Novella] *could not find* a single double-blind placebo-controlled trial establishing the efficacy of [Tobinick's] treatment for any of the conditions I listed above. (There are small studies for disc herniation showing conflicting results.)." Am. Compl. Ex. 5 at 3 (emphasis added).

      (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

      (d) the protection of justified expectation,

      (e) the basic policies underlying the particular field of law,

      (f) certainty, predictability and uniformity of result, and

      (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Many of the above-referenced factors do not apply in the context of torts. A court applying these principles in the context of tort claims therefore should consider the following:

      (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

      (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

         (a) the place where the injury occurred,

         (b) the place where the conduct causing the injury occurred,

         (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

         (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971). The presumption of the significant relationship test is that generally, the law of the forum where the injury occurred determines the substantive issues unless another state has a more compelling interest. *See Bishop*, 389 So. 2d at 1001.

      Here, California has the most significant relationship to the California plaintiff's claims. Novella's anti-SLAPP motion is brought solely against the California entity, Tobinick M.D. Tobinick M.D. is a California corporation with its principal place of business in California. To the extent that Tobinick M.D. was injured, most—if not all—of its injury undoubtedly occurred

4

in California, given that the corporation is based in that state. *See* § 145(2)(a), (c). Novella published the allegedly false and/or defamatory statements online, from his domicile in Connecticut. *See* § 145(2)(b); Am. Compl. ¶ 5. Any relationship that exists between the parties is not centered in a particular state, given that the statements at issue were made on the internet. *See* § 145(2)(d) (listing the center of the parties' relationship as a factor to be "evaluated according to [its] relative importance with respect to the particular issue"). California's interest in limiting frivolous litigation filed by its residents outweighs any interest Florida has in the dispute, where that dispute is between a California corporation and a Connecticut resident. *See generally* § 6(2). Under the significant relationship test, then, the Court must apply the anti-SLAPP statute under California law.

### III.    CALIFORNIA'S ANTI-SLAPP STATUTE

Although framed as a rule of state procedure, California's anti-SLAPP statute protects substantive rights and thus applies in federal court. *United States* ex rel. *Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999).[4] The statute is designed to discourage actions that "masquerade as ordinary lawsuits but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (internal quotation marks omitted). The Legislature declared "that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial

---

[4] The Court recognizes that as of April 24, 2015, there exists a circuit split on whether or not states' anti-SLAPP acts' pretrial dismissal provisions apply in federal court notwithstanding Federal Rules of Civil Procedure 12 and 56. *Compare Abbas v. Foreign Policy Grp., LLC*, No. 13–7171, 2015 WL 1873140, at *6 (D.C. Cir. Apr. 24, 2015) (finding that Rules 12 and 56, as opposed to the anti-SLAPP's special motion to dismiss provision, apply in federal courts exercising diversity jurisdiction), *with Godin v. Schencks*, 629 F.3d 79, 81 (1st Cir. 2010) (applying Maine anti-SLAPP); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 168 (5th Cir. 2009) (applying Louisiana anti-SLAPP); *Newsham*, *supra*. Because the majority of circuit courts have found anti-SLAPP special motions to strike permissible, and because the specific anti-SLAPP statute at issue has previously been allowed in federal court, the Court follows *Newsham* and applies state law.

process." Cal. Civ. Proc. Code § 425.16(a). The legislature amended the statute in 1997 to ensure that it "shall be construed broadly." *Id.*

Under the statute, "[a] cause of action against a person arising from any act . . . in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). The statute explicitly defines four categories of activities "in furtherance of . . . free speech," including "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of . . . free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3)–(4).

In assessing motions to strike under the anti-SLAPP statute, the court takes a two-step approach. *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002). First, the court determines whether the defendant has met his burden of proof that the challenged cause of action arises from protected activity. *Id.* If the court is satisfied that the claim falls within the scope of the statute, then the burden shifts to the plaintiff to establish "a probability that [he or she] will prevail on the claim[s]." Cal. Civ. Proc. Code § 425.16(b)(1); *see Navellier*, 52 P.3d at 708. "Since an Anti-SLAPP motion is brought at an early stage of proceedings, the plaintiff's burden of establishing a probability of success is not high." *Browne v. McCain*, 611 F. Supp. 2d 1062, 1068 (C.D. Cal. 2009) (citing *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 61 Cal. Rptr. 3d 29, 38 (Cal. Ct. App. 2007)). If the plaintiff cannot meet this burden, then the anti-SLAPP motion is granted and the plaintiff's lawsuit is dismissed.

6

# IV.    DISCUSSION

Subsection A addresses Tobinick M.D.'s argument that the anti-SLAPP statute does not apply to its claims. For the reasons discussed therein, the Court finds that argument unavailing. In Subsection B, the Court explains why Novella's conduct constitutes protected activity under section 425.16. In Subsection C, the Court concludes Tobinick M.D. has not established a probability that it will prevail on its claims. Subsection D briefly addresses the issue of attorney's fees.

## A.    Applicability of the Anti-SLAPP Statute

Tobinick M.D. argues that the anti-SLAPP statute should not apply to its claims for two reasons. First, Tobinick M.D. argues that the Novella cannot move to strike its unfair competition claim, Count II, because that Count contains a request for injunctive relief and the anti-SLAPP statute applies to causes of action, not remedies. Second, Tobinick M.D. argues that because the anti-SLAPP statute applies to causes of action, as opposed to parties, the Court cannot strike the claims of a single plaintiff. Tobinick M.D. does not succeed on either ground.

Tobinick M.D.'s unfair competition claim is a cause of action subject to the anti-SLAPP statute. The claim is undoubtedly a cause of action, one for which Tobinick M.D. has requested damages as well as injunctive relief. *See* Am. Compl. at 21–23. Although some California courts have held that *remedies* are not subject to the anti-SLAPP statute—*see, e.g.*, *Marlin v. Aimco Venezia, LLC*, 64 Cal. Rptr. 3d 488 (Cal. Ct. App. 2007) (holding that the anti-SLAPP statute did not apply to a prayer for injunctive relief); *Guessous v. Chrome Hearts, LLC*, 102 Cal. Rptr. 3d 214 (Cal. Ct. App. 2009) (holding that a cause of action for prospective declaratory and injunctive relief was not subject to the anti-SLAPP statute)—those cases are distinguishable, because Tobinick M.D.'s unfair competition claim is not simply a request for a remedy. It is a

cause of action for which damages, too, are requested. If the Court were to accept Tobinick M.D.'s argument, plaintiffs would be able to effectively exempt their claims for damages from California's anti-SLAPP statute simply by adding a request for injunctive relief. The Court rejects Tobinick M.D.'s argument, concluding that Tobinick M.D.'s claim for injunctive relief, in addition to damages, does not exempt it from the anti-SLAPP statute.

Tobinick M.D.'s second argument is based on the fact that each cause of action in the Amended Complaint is pled jointly by the three Plaintiffs, and that Novella has moved to strike the claims of only one plaintiff, Tobinick M.D. Tobinick M.D. argues that because the anti-SLAPP statute applies only to causes of action, each cause of action must be stricken in its entirety or not at all. Because Novella has moved to strike the claims of a single plaintiff, Tobinick M.D. argues that the Court cannot apply the anti-SLAPP statute. Tobinick M.D. relies on *M.G. v. Time Warner, Inc.*, 107 Cal. Rptr. 2d 504 (Cal. Ct. App. 2001), which was a suit for invasion of privacy, in support of this proposition. *M.G.* involved the use of a Little League team photograph in a print publication and television program to illustrate stories about adult coaches who sexually molest players on youth sports teams. *Id.* at 506. The plaintiffs, all of whom appeared in the photograph, were formerly players or coaches on the Little League team. *Id.* Time Warner moved to strike the complaint under California's anti-SLAPP statute, and in the court's preface to its discussion of the motion, it stated in passing:

> [W]hile the anti-SLAPP statute is meant to be interpreted broadly, its purpose is to curb meritless lawsuits, not to prohibit bona fide claims. Although we recognize that the two coach-plaintiffs probably have a weaker case than the player-plaintiffs, the anti-SLAPP statute allows a motion to strike to be made against only a cause of action, not a cause of action as it applies to an individual plaintiff. For that reason, because we hold the cause of action for invasion of privacy is valid as to some plaintiffs, for purposes of the anti-SLAPP motion, we deem it sound as to all plaintiffs.

*Id.* at 507–08 (footnotes omitted).[5] Novella does not squarely address Tobinick M.D.'s argument, but argues instead that *M.G.* is a case about the single publication rule. Reply at 4.[6]

    *M.G.* does not preclude Novella from moving to strike Tobinick M.D.'s claims. Subsequent decisions indicate that *M.G.*'s holding is limited to the first prong of the anti-SLAPP analysis, which assesses whether the conduct was protected activity. *City of Colton v. Singletary*, 142 Cal. Rptr. 3d 74 (Cal. Ct. App. 2012), characterizes *M.G.* and another decision, *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625 (Cal. Ct. App. 2001), as decisions pertaining to a specific situation: the instance where some of a plaintiff's claims are based on protected activity and others are not, what is referred to as a "mixed" cause of action. In *M.G.*, the claims were not mixed—that is, they all involved the same underlying conduct. That was not the case in *ComputerXpress*:

> In *M.G.*, this court concluded it was not necessary to consider "individual causes of action" for an anti-SLAPP motion. However, the City does not reconcile this legal principle with this court's conclusion in *ComputerXpress*, . . . in which we distinguished *M.G.*, and concluded it was proper to consider individual causes of action for purposes of an anti-SLAPP motion.
>
> In *ComputerXpress*, we explained it was proper to consider individual causes of action when the different causes of action are not based on the same underlying conduct. We explained the individual causes of action in *M.G.* did not need to be considered separately because they were all based on the same underlying conduct, and four of the six causes of action were "in reality, the same two causes of action, based on four different legal theories."

*City of Colton*, 142 Cal. Rptr. 3d at 89–90 (citations omitted). As the quoted discussion occurred in the section of the opinion entitled "Protected Activity," the Court reads *M.G.* and its progeny as standing for the following proposition: courts may determine that some claims—but not others—are premised on protected activity, where those causes of action are based on different

---

[5] Although Tobinick M.D. neither quoted the relevant language nor provided the Court with a page cite, the Court believes this is the only portion of the *M.G.* opinion to which Tobinick M.D. can be referring.

[6] There is support for this proposition. The quoted text above is the only part of the *M.G.* opinion that this Court believes supports Tobinick M.D.'s position, and this text came from the preface to the discussion. The analysis of the single publication rule is far more extensive.

underlying conduct. In this case, however, each of Tobinick M.D.'s claims is based on the same underlying conduct, so the Court may assess whether Novella's activities were protected for the claims as a group.

Even if the Court were to read *M.G.* without the benefit of *City of Colton* and *ComputerXpress*, the Court believes it is factually distinguishable from the instant case. As California law applies to Tobinick M.D.'s claims and does *not* apply to the Florida plaintiffs' claims, there is effectively only *one* plaintiff to whom the anti-SLAPP statute applies. As such, the Court does not encounter the situation that arose in *M.G.* where multiple plaintiffs' claims were subject to the anti-SLAPP motion to strike, and the Court finds that the anti-SLAPP statute applies to Tobinick M.D.'s claims.

**B.      Protected Activity Under Section 425.16**

For California's anti-SLAPP statute to apply, the Court first must determine that Novella's allegedly false and/or defamatory statements were made in furtherance of free speech. Novella's statements undoubtedly qualify as protected activity under the statute, as they were made on a public forum and in connection with an issue of public interest. Cal. Civ. Proc. Code § 425.16(e)(3). Novella's two blog posts were published on the www.sciencebasedmedicine.org website, and "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006). His posts clearly concern an area of public interest: the efficacy of treatments for, *inter alia*, stroke and Alzheimer's disease. Even Tobinick M.D. does not appear to contest the point. The first prong of the anti-SLAPP inquiry therefore is met.

### C.     Tobinick M.D.'s Claims[7]

Under the second prong of the anti-SLAPP inquiry, the plaintiff bears the burden of establishing "a probability that [he or she] will prevail on the claim[s]." Cal. Civ. Proc. Code § 425.16(b)(1); *see Navellier*, 52 P.3d at 708. Novella and Tobinick M.D. address the merits of each claim individually. However, the Court finds that looking at the gravamen of the complaint, as the California Supreme Court did in *Blatty v. New York Times Co.*, 728 P.2d 1177 (Cal. 1986) (en banc), is the more appropriate course of action.

In *Blatty*, William Peter Blatty sued the New York Times Company for failing to include his novel, *Legion*, on its bestseller list. *Id.* at 1178–79. He asserted causes of action including negligent interference with prospective economic advantage, intentional interference with prospective economic advantage, negligence, and trade libel; a later complaint asserted additional causes of action including unfair competition in violation of California's Unfair Competition Law ("UCL") and false and misleading advertising under California law. *Id.* at 1178, 1180. Notably absent was a claim for defamation.

Although Blatty's complaint did not allege defamation, the Court held that Blatty's claims were nonetheless subject to the same constitutional limitations:

> Although the limitations that define the First Amendment's zone of protection for the press were established in defamation actions, they are not peculiar to such actions but apply to all claims whose gravamen is the alleged injurious falsehood of a statement: that constitutional protection does not depend on the label given the stated cause of action, and no cause of action can claim talismanic immunity from constitutional limitations . . . .

> The fundamental reason that the various limitations rooted in the First Amendment are applicable to all injurious falsehood claims and not solely to those labeled "defamation" is plain: although such limitations happen to have arisen in defamation actions, they do not concern matters peculiar to such actions but broadly protect free-expression and free-press values.

---

[7] The Court applies California law to each of the claims for the same reasons discussed *supra* in Part II.

*Id.* at 1182–83 (internal quotation marks and citations omitted) (citing, *inter alia*, *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964)).

*Blatty*'s holding—that constitutional protection does not depend on the label given the stated cause of action—governs the instant case.[8] The allegedly false and/or defamatory statements made by Novella in his two blog posts constitute the gravamen of Tobinick M.D.'s remaining state law claims against Novella, including the unfair competition claim. Thus, each of these claims is subject to the First Amendment defamation rules. *See id.* at 1182; *see also Vogel v. Felice*, 26 Cal. Rptr. 3d 350, 359 (Cal. Ct. App. 2005) (applying *Blatty* to the actual malice requirement). The Court concludes that (1) Tobinick M.D. is a limited public figure subject to the actual malice requirement, and (2) Tobinick M.D. has failed to establish a probability of demonstrating, by clear and convincing evidence, that Novella made the statements at issue with actual malice. Therefore, Tobinick M.D.'s unfair competition, trade libel, and libel per se claims must be stricken.

i.     **Tobinick M.D.'s Status as a Limited Public Figure**

Public figures must prove by clear and convincing evidence that allegedly defamatory statements were made with actual malice. The first issue for the Court's determination is whether Tobinick M.D. is a public figure. *New York Times Co.*, 376 U.S. at 279–80; *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 133–34 (1967). Tobinick M.D. appears to have conceded that it is, at the least, a limited purpose public figure—that is, one who has "voluntarily inject[ed] himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited

---

[8] Some case law indicates that *Blatty* is only applicable to media defendants. *See, e.g.*, *A.H.D.C. v. City of Fresno, Cal.*, No. CV-F-97-5498 OWW SMS, 2000 WL 35810722, at *6 (E.D. Cal. Aug. 31, 2000) (distinguishing *Blatty* on this basis). However, it is unnecessary for Novella to be a member of the institutional press for the First Amendment defamation rules to apply to him. *See Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1290–91 (9th Cir. 2014) (collecting cases).

range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 351 (1974). Tobinick M.D. does not make any argument relating to its status as a public figure, nor does it address the negligence standard that would apply if it were not. Accordingly, the Court considers Tobinick M.D. a public figure, at least for the limited purpose of treating, *inter alia*, stroke and Alzheimer's disease with perispinal etanercept/Enbrel.

### ii.   Actual Malice

Public figures are required to prove actual malice to recover for defamation. A plaintiff must demonstrate "actual malice" by clear and convincing evidence, a requirement that presents "a heavy burden, far in excess of the preponderance sufficient for most civil litigation." *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1186–87 (9th Cir. 2001) (internal quotation marks omitted). "The burden of proof by clear and convincing evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind." *Copp v. Paxton*, 52 Cal. Rptr. 2d 831, 846 (Cal. Ct. App. 1996) (internal quotation marks omitted).

To show actual malice, a plaintiff must demonstrate that the defendant speaker either knew his statement was false or subjectively entertained serious doubt that his statement was truthful. *Bose*, 466 U.S. at 511 n.30. The question is not "whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *Reader's Digest Assn. v. Superior Court*, 690 P.2d 610, 617–18 (Cal. 1984) (emphasis added). Moreover, "[a] publisher does not have to investigate personally, but may rely on the investigation and conclusions of reputable sources." *Id.* at 619.

A defamation plaintiff may rely on inferences drawn from circumstantial evidence to show actual malice. *See id.* at 618. "A failure to investigate, anger and hostility toward the plaintiff, reliance upon sources known to be unreliable, or known to be biased against the plaintiff—such factors may, in an appropriate case, indicate that the publisher himself had serious doubts regarding the truth of his publication." *Id.* at 618–19 (internal quotation marks, citations, and footnote omitted). An inference of malice may be drawn "when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation," or "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Conversely, "[t]he failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice, nor even necessarily raise a triable issue of fact on that controversy. Similarly, mere proof of ill will on the part of the publisher may likewise be insufficient." *Reader's Digest*, 690 P.2d at 619 (citations omitted).

Here, Tobinick M.D. has put forth insufficient evidence to establish a probability that he will be able to demonstrate by clear and convincing evidence that Novella acted with actual malice.[9] First, with respect to Novella's investigation of Plaintiffs' practice prior to publishing the articles, nothing in Tobinick's affidavit directly contradicts the pivotal statements made in Novella's: that he relied on the *Los Angeles Times* for some points in the articles, feeling that extensive fact-checking of the *Times*, which is a reputable source, was not necessary; and that for others he conducted his own research, consulting a number of Tobinick's case studies, the California Medical Board's November 12, 2004 Accusation, and Tobinick's own website. Mot.

---

[9] The Court notes that many of the statements that Plaintiffs target as false and/or defamatory in their Amended Complaint are statements of opinion. Rather than parse the statements one by one and separating fact statements from opinion statements, however, the Court chooses a more targeted route that addresses the underlying problem— Tobinick M.D.'s insufficient evidence of actual malice.

14

Ex. 3, Declaration of Dr. Steven Novella ("Novella Decl."), ¶¶ 5–12. In short, although Novella's investigation may not have amounted to the kind of rigorous inquiry in which one would engage prior to publishing in a peer-reviewed scientific journal, it was not so deficient as to constitute actual malice. *See St. Amant*, 390 U.S. at 732; *Reader's Digest*, 690 P.2d at 618–19.

Second, the Court looks to the content of the articles themselves, which is at the heart of the dispute. Tobinick M.D. highlights a number of statements that he believes support his cause, while omitting statements more favorable to Novella. Tobinick M.D. characterizes the articles as little more than targeted vitriol and a complete rejection of Plaintiffs' methods and results. However, this is a mischaracterization of the articles, which contain a more nuanced discussion of the issues than Tobinick M.D.'s pleading admits. For example, the first article contains a section entitled "Plausibility and Evidence" which allows that it "is entirely plausible" that Enbrel, a TNF inhibit, would have a broad range of applications. Am. Compl. Ex. 1 at 3. Novella clarifies that his dispute is not primarily with the underlying viability of the treatment, but with Tobinick's use of a treatment that Novella considers "leaps and bounds ahead of the evidence." *Id.* at 4. Novella explains why he believes the studies cited on Plaintiffs' website and Plaintiffs' own case studies/series constitute "weak evidence." *Id.* at 4–5. His conclusion is not that Plaintiffs are wrong, or will never be proven right; it is that the current medical literature does not support clinical treatment of Alzheimer's and stroke with Enbrel. To the extent that Novella uses words like "quack," and "dubious," or makes minor misstatements relating to the size and location of Plaintiffs' practice, this is insufficient to demonstrate actual malice.

Plaintiffs take particular umbrage with Novella's statement that he (Novella) "could not find a single double-blind placebo-controlled trial establishing the efficacy of his treatment for any of the conditions" listed in the second article. Am. Compl. Ex. 5 at 3. These conditions

included Alzheimer's disease, "neurological deficits following stroke, [and] traumatic brain injury."[10] *Id.* at 2–3. After reviewing Tobinick's affidavit, it is clear that there is exactly one clinical trial that is relevant: a trial run by the University of Southampton which began in February of 2010. Resp. Ex. 1, Affidavit of Edward Lewis Tobinick, MD ("Tobinick Aff."), ¶¶ 30–34. That trial was not *completed* until July 16, 2014, however—over a year after the first article was written, and only days before Novella posted the second article. The trial results were not well-publicized in academic circles, as best the Court can discern; Tobinick points to a news release by the University and a conference presentation. He also cites to a news story published in the Daily Mail. The Court does not believe Novella's failure to account for this study in the second article constitutes the kind of investigatory failure that would support a prima facie case for actual malice.[11]

### D.   Attorney's Fees

As a prevailing defendant, Novella is entitled to recover his attorney's fees and costs under the anti-SLAPP statute. Cal. Civ. Proc. Code § 425.16(c)(1). He may seek to recover his fees and costs by separate motion.

## V.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Steven Novella's Special Motion to Strike (Anti-SLAPP Motion) [DE 93] is **GRANTED**. Plaintiff

---

[10] Novella did note that "[t]here are small studies for disc herniation showing conflicting results." Am. Compl. Ex. 5 at 3. Accordingly, the Court does not consider the trials for disc herniation to be relevant, as Novella admitted these trials had some success.

[11] Declarations, affidavits, and evidence which were not available at the time the anti-SLAPP motion was filed have since become available. Some of this evidence came before the Court in conjunction with other motions, while some came from discovery associated with the motion for preliminary injunction filed by Plaintiffs. The Court has discretion to consider this evidence. *See, e.g.*, *Slauson P'ship v. Ochoa*, 5 Cal. Rptr. 3d 668, 679–80 (Cal. Ct. App. 2003) ("[N]othing in the statute or case law suggests that the factual analysis for ruling on the motion must be frozen in time on the date the complaint is filed."). The Court believes that whether or not it were to consider the additional evidence, the result would be the same.

Tobinick M.D.'s claims for unfair competition under 28 U.S.C. § 1338(b) (Count II), trade libel

(Count III), and libel per se (Count IV) are **STRICKEN** from the Amended Complaint.

      **DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this <u>4th</u> day of June, 2015.

Copies furnished to:              ROBIN L. ROSENBERG
Counsel of record              UNITED STATES DISTRICT JUDGE