## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

EDWARD LEWIS TOBINICK M.D., et al.,          Case No:  9:14-cv-80781-RLR

        Plaintiffs.

v.

STEVEN NOVELLA, M.D., et al.,

        Defendants.

_____/

### DEFENDANT STEVEN NOVELLA, M.D.'s MOTION FOR PROTECTIVE ORDER

Defendant, Dr. Steven Novella, moves under Fed. R. Civ. P. 26(c) for a protective order relative to discovery requests issued by Plaintiffs Edward Lewis Tobinick, M.D., a Medical Corporation, INR PLLC, and Edward Tobinick, M.D. (collectively "Tobinick" or "Plaintiffs") on June 26, 2015.[1]

**1.0   INTRODUCTION AND BACKGROUND**

Dr. Novella generally refers to Section 1.0 of his Motion for Summary Judgment, DE 206, incorporated herein by reference. Briefly, Plaintiffs brought a series of unsupportable claims against multiple defendants in this matter arising from Dr. Novella's critique of Tobinick's purported use of the drug Enbrel to treat Alzheimer's disease. The critique was largely based on public documents, including a Los Angeles Times exposé on Tobinick's clinic and practices. See, Alan Zarembo, "A Wife's Alzheimer's, a Husband's Obsession," L.A. TIMES (May 5,

---

[1] As this Court is aware, such requests formed the putative foundation for Plaintiffs' motion for relief pursuant to Rule 56(d). (See, DE 209).  Due to the time frame involved, it is understandable why the Court acted before Dr. Novella had the opportunity to respond. However, Dr. Novella would have demonstrated, and will do so herein, that such discovery requests are generally improper and/or irrelevant, undermining Plaintiffs' claim of need for additional time.

2013) available at <http://www.latimes.com/science/la-me-chiate-20130505-dto-story.html>. After an Anti-SLAPP motion and multiple rulings against Tobinick's claim that the articles at issue were "commercial speech," only two claims remain:  Count I for false advertising under the Lanham Act and Count II for Unfair Competition. (*See*, Amended Complaint, DE 55). However, the second count is only maintained by the two Florida plaintiffs – the California Plaintiff's unfair competition claim was stricken by this Court in response to Defendant's Anti-SLAPP motion. (*See,* DE 193, Order granting Anti-SLAPP motion).

On June 18, 2015, this Court held a status conference during which an August 3, 2015, discovery deadline was set, with Dr. Novella agreeing to respond to written discovery by July 13, 2015. (*See*, DE 202). On June 26, 2015, Plaintiffs served their written requests for production ("RPDs"), requests for admission ("RFAs"), and interrogatories. (*See*, DEs 209-4, 209-5 & 209-6). Upon review of the discovery requests, it was made abundantly clear that they were objectionable and/or not directed to essential facts and thus a motion for summary judgment was appropriate without further delay. (*See*, DE 206). Defendant's response deadline was set at July 13, 2015, and he has served timely objections and responses.  (*See*, responses to RPDs, RFAs, and interrogatories, attached as **Exhibits 1-3**, respectively, and incorporated by reference). To avoid unnecessary further delays, awaiting a likely motion to compel, Defendant hereby seeks a protective order.

Defendant is filing this motion in an abundance of caution. As set forth in his Motion for Extension of Time to File Motion for Protective Order, DE 217, the parties conducted a Rule 26(c)(1) conference on July 21, 2015, to narrow the issues.[2] The parties agreed that Plaintiffs would propose keywords for various objectionable requests for production, which would serve to narrow the scope of documents Defendant would have to review and produce, to which

---

[2] The conference was also conducted pursuant to Rule 37 relative to Plaintiffs' potential motion to compel.

Defendant would assent or further confer. Once the keywords were agreed, Defendant would search his e-mails accordingly and a determination would thereupon be made whether the search results would be produced. Local Rule 26.1(i)(1) provides that a party wishing to file a motion for protective order must do so "within thirty (30) days of the occurrence of grounds for the motion." As Plaintiffs' discovery requests were served on June 26, 2015, Dr. Novella's deadline to move for a protective order was fast approaching when he filed his Motion for Extension. In light of the productive conversations counsel for the parties have had on these discovery issues, Dr. Novella felt it would be more efficient not to burden the Court with a premature and potentially unnecessary discovery motion. Unfortunately, Plaintiffs did not consent to an extension, frustrating the very purpose of the Rule 26(c)(1) conference. Thus, to preserve his rights, Dr. Novella has been forced to file this motion, notwithstanding the hope that the Court will not need to intervene.

Dr. Novella expects Plaintiffs in opposition to cite to *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 221 (N.D. W.Va. 2007), for the proposition that a motion for a protective order must be made before discovery is due. However, that case involved a five-month discovery window, whereas this case involved but a two-week period. Moreover, the *Ayers* court acknowledged that Fed. R. Civ. P. 26(c) does not contain a time limit. Local Rule 26.1(i)(1), however, does contain a time limit: 30 days. This Court's June 18, 2015 Order, DE 202, setting the deadline for discovery responses did not alter this deadline, nor did its July 8, 2015 Omnibus Order, DE 212. Moreover, given the two-week time span to respond and lodge objections, and then conduct a Rule 26(c)(1) conference, such a limitation would be unreasonable. The *Ayers* court similarly recognized that a motion for protective order could be filed later if there was no opportunity to move earlier. *See, id*. In effect, Dr. Novella had no opportunity to move earlier, and to have done so would frustrate the very purpose of a Rule 26(c)(1) conference.

Moreover, the *Ayers* matter relied upon *United States v. IBM Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976) for the timing proposition. Rule 26 of the Federal Rules of Civil Procedure did not include a pre-filing meet and confer requirement until 1993. The *Ayers* court did not contemplate the purpose and effect of the meet and confer requirement on the timing of a motion for protective order. Instead of following up on the conference with counsel to narrow issues, in order to minimize the issues before the Court, as the parties here actually did on July 21, 2015, Plaintiffs have forced Defendant file a broad, potentially unnecessary, motion for protective order. The local rules permitted 30 days in which to move for a protective order, and there is no basis to shorten that window.

**2.0 LEGAL STANDARD**

Under Rule 26(c)(1), "any person from whom discovery is sought may move for a protective order . . . to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. Fed. R. Civ. P. 26(c)(1). For good cause, a court may issue a protective order providing a variety of remedies, such as precluding the discovery altogether or "specifying terms . . . for the disclosure of discovery." Fed. R. Civ. P. 26(c)(1)(A)—(B). The party seeking a protective order must demonstrate "'good cause' for the protection sought." *Wrangen v. Pa. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008) "'Good cause' has been defined as a 'sound basis or legitimate need to take judicial action.'" *Id.* (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th 1987)). "The party requesting a protective order must make a specific demonstration of facts in support of the request. A court must then balance the competing factors involved in determining whether good cause has been shown." *Id.* As set forth below, there is good cause to issue a protective order precluding discovery beyond that already provided.

//

//

**3.0   ANALYSIS**

With respect to the Requests for Production, Dr. Novella seeks a protective order, *inter alia*, on the following issues:

1) That he not be required to produce records of non-party SGU Productions, LLC (RPD 1, 7, 8, 10, and any other request where it might be claimed that the scope of the response includes SGU Productions, LLC, or any other entity)

2) That tax returns not be required (RPD 8 & 9); and

3) That documents between and among Dr. Novella and nine persons or entities not be required (RPD 19).

Additionally, Dr. Novella seeks to be relieved from any and all discovery that is not directly targeted to refuting arguments that the speech at issue is not "commercial speech," and that he be relieved from the obvious "fishing expedition" and voluminous discovery requests and discovery practice that was clearly engaged in by Tobinick as an exercise in delay and waste, and not in order to seek relevant discovery. Pursuant to Local Rule 26.1(i)(3), Dr. Novella sets forth below each request for production for which a protective order is sought, the type of protection requested, and the reasons therefor. For ease of analysis, they are grouped by the categories stated above, with Dr. Novella's responses also provided as well.

**3.1   Information about SGU Productions, LLC**

The first basis for the issuance of a protective order relates to information sought relative to non-party SGU Productions, LLC. On September 25, 2014, this Court granted then-defendant SGU Productions, LLC's motion to dismiss. (*See*, DE 91). On December 30, 2014, this Court denied Plaintiffs' motion for reconsideration. (*See*, DE 115). Rather than simply accept that the case against SGU Productions is over, Plaintiffs are trying to evade this limitation and the Court's orders by seeking impermissible discovery about SGU Productions through Dr. Novella. As *Moore's* notes, "a party to an action who is an officer,

director, or majority shareholder of a corporation may be required to produce documents in the possession of the corporation. However, when an action is against an officer individually, and not also against the corporation, production may be denied." 7 James Wm. Moore et al., Moore's Federal Practice § 34.14 (Matthew Bender 3d ed. 2010). Dr. Novella is not the alter ego of SGU Productions, LLC. Thus, for Requests for Production 1, 7, 8, & 10, and any others[3] that Plaintiffs may assert call for information belonging to SGU Productions, LLC,[4] a protective order should issue barring such discovery requests.

Specifically, Dr. Novella notes as follows:

**Request for Production No. 1**
Any and all documents relating to the ownership of SGU Productions, LLC over the last year.
**Response to Request No. 1**
Objection: this request is overbroad and unduly burdensome, as it is not limited to any relevant time period. Similarly, it is vague as to the meaning of "relating to the ownership." This request is directed at a third party, and should be directed to that third party through a subpoena *duces tecum*.

---

[3] To the extent applicable, this motion should also include parallel interrogatories, such as Interrogatories 5 & 10. Defendant otherwise did not respond beyond interrogatory 3 due to numerosity. Rule 33(a) limits a party to 25 interrogatories "including all subparts." Leave of court, which Plaintiffs did not seek, is required before serving a 26th interrogatory. *Id.* As set forth in the objections to the interrogatories, by Defendant's counting, Plaintiffs exceeded twenty-five. Interrogatory 1 constituted 6 interrogatories. As to each denial of a request for admission, the number of which approach 50, interrogatory 3 sought a statement of supporting facts relative thereto, each being a separate interrogatory within the meaning of Fed. R. Civ. P. 33(a). *See,* Safeco Ins. Co. of Am. v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998) ("Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based . . . essentially transforms each request for admission into an interrogatory."). *See also,* Perez v. Aircom Mgmt. Corp., 2012 U.S. Dist. LEXIS 136140, *2 (S.D. Fla. Sept. 24, 2012) (citing Rawstron, *supra*).

[4] Plaintiffs have indicated that they would seek to compel documents from Dr. Novella as to Requests 2-6 and 20-23 also on the same grounds that he controls SGU Productions. They are not explicitly addressed herein as they do not on their face mention SGU Productions. To the extent applicable, however, this motion should also serve as seeking a protective order relative thereto.

> Notwithstanding the foregoing objections, Defendant responds that SGU Productions, LLC, did not file an annual report with the Connecticut Secretary of State between July 13, 2014, and today. Defendant reserves the right to supplement this response in a timely manner before trial.

In addition to the vagueness, breadth and scope, as many documents could theoretically "relate" to the ownership of SGU Productions over its entire existence, this request seeks corporate documentation explicitly. Such a request should be directed to SGU Productions, LLC, which is independently represented by counsel, who could assert all appropriate objections or otherwise respond. In fact, following the service of Defendant's objections and responses, and presumably on account thereof, Plaintiffs served a subpoena upon SGU Productions for the very same information. (*See*, subpoena *duces tecum* issued to SGU Productions, attached as **Exhibit 4**). Thus, there is no reason for Defendant to be required to obtain the documents and produce them himself – except for the fact that Tobinick seeks (as he has consistently through this litigation) to multiply the proceedings and to inflict through defense costs what he cannot gain through a judgment in his favor.

**Request for Production No. 7**
Any and all documents that concern, discuss, or report the revenues of SGU Productions, LLC since May 1, 2013.

**Response to Request No. 7**
Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence; SGU Productions is not a party to this case and its revenues are not at issue. This request is overbroad and unduly burdensome, as it is not limited in scope or subject to disputed issues in this case. This request is directed at a third party, and should be directed to that third party through a subpoena *duces tecum*.

Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession.

In addition to the vagueness, breadth and scope, as many documents could theoretically "concern" to the revenues of SGU Productions over its

RANDAZZA | LEGAL GROUP

entire existence, this request seeks corporate financial disclosures explicitly. Such a request, frequently the subject of trade-secret confidentiality limitations, should be directed to SGU Productions, LLC, which is independently represented by counsel, who could assert all appropriate objections or otherwise respond. As noted, following the service of the Defendant's objections and responses, and presumably on account thereof, Plaintiffs have served a subpoena upon SGU Productions for the very same information. (*See*, **Exhibit 4**). Thus, there is no reason for Defendant to be required to obtain the documents and produce them himself.

> **Request for Production No. 8**
> Any and all income reporting and tax filings by SGU Productions, LLC since May 1, 2013.
> **Response to Request No. 8**
>     Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence; SGU Productions is not a party to this case and its income reporting and/or tax filings are not at issue. "A party seeking the production of tax returns must demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) a compelling need for the tax returns exists because the information contained therein is not otherwise readily obtainable." *Pendlebury v. Starbucks Coffee Co.*, 2005 U.S. Dist. LEXIS 36748, *5 (S.D. Fla. Aug. 29, 2005). Plaintiffs lack such relevance or compelling need. This request is overbroad, unduly burdensome, and harassing, as it is not limited in scope or subject to disputed issues in this case. This request is vague as to the terms "income reporting" and "tax filings." This request is directed at a third party, and should be directed to that third party through a subpoena *duces tecum*.
>     Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession.

In addition to the vagueness, breadth and scope, as many documents could theoretically "report" the income of SGU Productions over its entire existence, this request seeks corporate financial information explicitly. Further, as noted below, it is otherwise not appropriate to require

disclosure of tax filings. Such a request, usually the subject of trade-secret confidentiality restrictions, should be directed to SGU Productions, LLC, which is independently represented by counsel, who could assert all appropriate objections or otherwise respond. And, as noted, following the service of the Defendant's objections and responses, and presumably on account thereof, Plaintiffs have served a subpoena upon SGU Productions for the very same information. (*See*, **Exhibit 4**). Thus, there is no reason for Defendant to be required to obtain the documents and produce them himself.

> **Request for Production No. 10**
> Any and all documents that concern, discuss, or report the expenses of SGU Productions, LLC since May 1, 2013.
> **Response to Request No. 10**
>      Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence; SGU Productions is not a party to this case and its expenses are not at issue. This request is overbroad, unduly burdensome, and harassing, as it is not limited in scope or subject to disputed issues in this case. This request is directed at a third party, and should be directed to that third party through a subpoena *duces tecum*.
>      Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession.

In addition to the vagueness, breadth and scope, as many documents could theoretically "concern" the expenses of SGU Productions over its entire existence, this request seeks trade-secret corporate financial disclosures explicitly. Such a request, frequently the subject of confidentiality limitations, should be directed to SGU Productions, LLC, which is independently represented by counsel, who could assert all appropriate objections or otherwise respond. Further, as noted, following the service of the Defendant's objections and responses, and presumably on account thereof, Plaintiffs have served a subpoena upon SGU Productions for the very same information. (*See*, **Exhibit 4**). Thus, there is no

reason for Defendant to be required to obtain the documents and produce them himself.

### 3.2    Plaintiffs Impermissibly Seek Tax Information

Requests for Production 8 & 9 are directed to state and federal income tax filings.[5] As noted in the objections, "[a] party seeking the production of tax returns must demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) a compelling need for the tax returns exists because the information contained therein is not otherwise readily obtainable." *Pendlebury v. Starbucks Coffee Co.*, 2005 U.S. Dist. LEXIS 36748, *5 (S.D. Fla. Aug. 29, 2005); *see also, Ruskin Co. v. Greenheck Fan Corp.*, 2009 U.S. Dist. LEXIS 15855, *4 (S.D. Fla. Feb. 12, 2009). Admittedly, there is a split in this district as to whether *Maddow v. Proctor & Gamble, Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997) rejected the "compelling need" requirement. The Maddow Court did not rule on the "compelling need" issue. Instead, the question before the 11th Circuit was whether a party was substantially justified in refusing discovery of tax returns such that sanctions were inappropriate, where the lower court otherwise ordered their production. *Id*. The 11th Circuit found that the out-of-circuit caselaw justified the refusal. If presented directly with the question, then, the 11th Circuit may well be expected to side with the requirement of a "compelling need."

Rule 26 does not give a plaintiff carte blanche to invade a defendant's life merely because the plaintiff pays the filing fee for a SLAPP suit. Requiring a "compelling need" saves a Defendant from annoyance, embarrassment and/or oppression relative to the sensitive content contained within a tax return. This District recognizes the sensitive nature of such information. Local Rule 5.1(b)

---

[5] Interrogatory 4 is also directed to tax filings. However, as the parties did not discuss the clear issue of excess interrogatories, it would not appear a protective order is required. To the extent applicable, however, this motion should also serve to preclude Defendant from being required to respond to Interrogatory 4 on the merits.

incorporates the CM/ECF Administrative Procedures, Section 6 of which gives special attention and protection to the very types of information contained in Defendant's tax returns.   If the public at large is not entitled to Defendant's tax returns, there is no cause to grant Plaintiffs access to them either.

Plaintiffs are otherwise expected to argue that equitable considerations require such disclosure, where a party places his income at issue. See, *United States v. Certain Real Prop. Known as & Located at 6469 Polo Pointe Way, Delray Beach, Fla*, 444 F. Supp. 2d 1258, 1264 (S.D. Fla. 2006). Dr. Novella did not place his income at issue. The amended complaint speaks only to Yale's income, not Dr. Novella's, and none of the affirmative defenses address income. As set forth in DE 157 and 172, the articles do not constitute commercial speech and nothing in the Amended Complaint alleges any actual income received by Dr. Novella on account of the articles. Simply put, whether or not the articles at issue constitute commercial speech or unfair competition is a different question from the amount and sources of Dr. Novella's income. It is an unduly invasive request, serving only to oppress him and to punish him for his refusal to forego his First Amendment rights.

**Request for Production No. 8**
Any and all income reporting and tax filings by SGU Productions, LLC since May 1, 2013.

**Response to Request No. 8**
Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence; SGU Productions is not a party to this case and its income reporting and/or tax filings are not at issue. "A party seeking the production of tax returns must demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) a compelling need for the tax returns exists because the information contained therein is not otherwise readily obtainable." *Pendlebury v. Starbucks Coffee Co.*, 2005 U.S. Dist. LEXIS 36748, *5 (S.D. Fla. Aug. 29, 2005).  Plaintiffs lack such relevance or compelling need.   This request is overbroad, unduly burdensome, and harassing, as it is not limited in scope or subject to disputed issues in this case. This request is vague as to the terms "income reporting" and "tax filings."  This request is directed

at a third party, and should be directed to that third party through a subpoena *duces tecum*.

Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession.

As generally noted above, Defendant cannot be required to produce information belonging to SGU Productions. Further, just as Dr. Novella's own tax records enjoy a qualified privilege, so too do those of SGU Productions. And, the tax returns of a non-party are even less relevant or compelling than those of Defendant himself.

> **Request for Production No. 9**
> Any and all income reporting and tax filings by Steven Novella since May 1, 2013.
>
> **Response to Request No. 9**
> Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence. "A party seeking the production of tax returns must demonstrate (1) the relevance of the tax returns to the subject matter of the dispute and (2) a compelling need for the tax returns exists because the information contained therein is not otherwise readily obtainable." *Pendlebury v. Starbucks Coffee Co.*, 2005 U.S. Dist. LEXIS 36748, *5 (S.D. Fla. Aug. 29, 2005). Plaintiffs lack such relevance or compelling need. This request is vague as to the terms "income reporting" and "tax filings." This request is overbroad, unduly burdensome, and harassing, as it is not limited in scope or subject to disputed issues in this case.
>
> In light of the foregoing objections, Defendant will not produce his 2013 or 2014 State or Federal Income Tax returns unless ordered to do so by the Court.

There is no need for these documents. Plaintiffs twice failed to show that the articles constitute commercial speech. (*See*, DE 157 & 172). Their only allegation on this point is that Dr. Novella was "promoting his own interests." (*See*, DE 55 at ¶¶110, 120). The Amended Complaint does not even allege the promotion of financial interests.[6] His income is not at issue, only his vague "interests." There is

---

[6] Recognizing these deficiencies, Plaintiffs sought to file a Second Amended Complaint. (*See*, DE 177-1). This request was denied. (*See*, DE 202). Moreover,

no assertion of any fact in his tax returns that would tend to support Plaintiffs' claims beyond what is already in the record, such that full disclosure is warranted. A protective order should issue.

### 3.3    Broad Interpersonal Communications

Plaintiffs seek an unrestricted set of communications between and among Dr. Novella and numerous persons. Such requests are unduly burdensome. Plaintiffs are expected to refer to *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D. Mass. 1976) for the proposition that Defendant must make a herculean effort to comb through all of his records, wherever kept, that might possibly be responsive. However, Dr. Novella is not Sears. The *Kozlowski* court was concerned with a massive business such as Sears and its record keeping. Dr. Novella is a normal human being and normal people do not keep records as a business might be expected to. Further, if Plaintiffs are reaching back to a Carter-administration case from another district for their authority, the support for it in the 11th Circuit must be as the Defense finds it – nonexistent.

**Request for Production No. 19**
Any and all documents between or among you and any of the following persons or representatives of the following entities: David Gorski, Stephen Barrett, Reams Freedman, Dr. Jeffrey Saver, Bruce Dobkin, Ralph Sacco, University of California Los Angeles, the Los Angeles Times, and/or Amgen, Inc.

**Response to Request No. 19**
Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence. This request is overbroad and unduly burdensome, as it is not limited in time, scope, or subject to disputed issues in this case. Defendant keeps documents in multiple places and in multiple formats and cannot begin to estimate the amount of time it would take to locate every document from the beginning of time between Defendant and the said persons or entities, let alone determine whether such documents may contain privileged or confidential matter protected by law from disclosure.  This request seeks documents in

not even the new allegations would make the articles "commercial speech." (*See*, DE 188, incorporated herein by reference).

> the possession of third parties and not in the possession of Dr. Novella. This request is directed at third parties, and should be directed to those third parties through subpoenas *duces tecum*. This request is a transparent fishing expedition for information Tobinick plans to use in an unrelated lawsuit.

This is a broad request that could encompass a large swath of material. First, as noted above, to the extent it asks for SGU Productions' materials, that entity's reply should suffice. Second, if Plaintiffs were to *narrowly* tailor the request to a relevant time frame and the issues in this litigation, Defendant might be in a position to comply.[7] But to permit such an open-ended request regarding numerous persons/entities is to suffer harassment.[8] Plaintiffs should be required to specify what they hope to find regarding each person, such that Defendant might more readily locate the documents that might be discoverable.

### 3.4    Duplicative Reproduction of Documents

In Requests 11-18, Defendant responded in part that the responsive documents had already been produced to Plaintiffs and that he should otherwise be required to produce them a second time.[9] Plaintiffs are expected to argue that Rule 34(b) requires production as kept in the *usual course* or labelled according to request, without merely referring to previously produced documents. *See, DirectTV, Inc. v. Puccinelli*, 224 F.R.D. 677 (D.Kan. 2004). However, Rule 26(b)(2)(C) "directs the court to limit discovery when it finds that the discovery sought is, as relevant to the analysis in this case, unreasonably cumulative or duplicative." *Calixto v. Watson Bowman Acme Corp.*, 2009 U.S.

--------------------------------------------------

[7] Tobinick did offer to limit this to communications since January 1, 2013 – however, in light of the fact that Plaintiffs' request has no bearing on the remaining factual issues in this case, and is clearly only filed to punish Novella and to harass the other parties, even this limitation leaves the request as unduly burdensome and harassing and subject to a protective order. Moreover, as the Rule 26(c)(1) conference resulted in a plan of action, which plan has not yet been put into execution, Defendant must challenge the entirety of the request.

[8] To the extent applicable, Interrogatories 8 & 13 should also be precluded on this basis.

[9] As the specific requests are not relevant to the issue at hand, they have not been restated in the body of this memorandum.

Dist. LEXIS 111659, *31 (S.D. Fla. Nov. 16, 2009)(Rosenbaum, J.). These requests are cumulative and duplicative. Plaintiffs were otherwise provided responsive documents at the deposition and hearing and, at the time of production, there was full opportunity to cross-reference the documents by category. At this point, to require Defendant to make a duplicative production is unnecessary and Plaintiffs are simply trying to win their SLAPP suit by driving up costs of defense.

### 3.5    Relevance and Harassment in General

Dr. Novella further requests that he be relieved of the obligation to answer any of the discovery requests beyond the responses provided. Plaintiffs claimed that they were taking "discovery in order to gather the necessary facts to oppose Novella's motion." DE 209 at 6-7. However, Plaintiffs claim they need "to learn about the commercial aspects of Novella's activities as well as novella's [sic] knowledge of the falsity of the misstatements." *Id*. at 8. Finally, they state in the last paragraph that they "plan to conduct discovery in order to gather the necessary facts to oppose Novella's motion." *Id*. The discovery requests are generally irrelevant, as not one shred of the discovery requested can transform Dr. Novella's articles into "advertisements" as Tobinick insists. Accordingly, the discovery requests serve no purpose except to burden Dr. Novella and to cost him more in attorneys' fees in order to punish him for writing about Tobinick's dubious practices.

Plaintiffs are expected to claim that requests for production 20-23 are relevant.[10] This Court has, as noted, twice determined that the articles do not

---

[10] **Request for Production No. 20**
    Any and all documents that concern, reference, or discuss advertisings, promotions, or legal defense funds on the webpages.
 **Response to Request No. 20**
    Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence. This request is overbroad and unduly burdensome, as it is not limited in time, scope, or subject to disputed issues in this case. This request seeks documents in the possession of third parties and not in the possession of Dr. Novella.

constitute   commercial   speech.   Documents   1)   regarding   advertising,

Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession and/or have otherwise been produced to Plaintiffs.

**Request for Production No. 21**

Any and all documents relied upon in formulating, drafting, writing, publishing, and/or revising any of the webpages.

**Response to Request No. 21**

Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence. This request is overbroad and unduly burdensome, as it is not limited in time, scope, or subject to disputed issues in this case.

Notwithstanding the foregoing objections, Defendant refers Plaintiffs to the documents cited and/or linked in the Webpages.

**Request for Production No. 22**

Any and all documents that concern, reference, or discuss commercial products available on or through the webpages, including membership subscriptions.

**Response to Request No. 22**

Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence. This request is overbroad and unduly burdensome, as it is not limited in time, scope, or subject to disputed issues in this case. This request seeks documents in the possession of third parties and not in the possession of Dr. Novella.

Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession and/or have otherwise been produced to Plaintiffs.

**Request for Production No. 23**

Any and all documents that concern, reference, or discuss the creation of content for the purpose of driving membership subscriptions and other revenues.

**Response to Request No. 23**

Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence. This request is vague and ambiguous in its entirety, such that it is unintelligible and impossible to respond to. This request is overbroad and unduly burdensome, as it is not limited in time, scope, or subject to disputed issues in this case. This request seeks documents in the possession of third parties and not in the possession of Dr. Novella.

Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession and/or have otherwise been produced to Plaintiffs.

promotions, or defense funds on the webpages; 2) relied upon in creating the pages; 3) concerning commercial products; or 4) concerning creation of content to drive revenues, therefore, are requests beyond the scope of the Amended Complaint. The two articles at issue, not being commercial speech, do not give rise to the foregoing requests. The Amended Complaint does not speak to advertising, promotions, or defense funds. It does not speak to commercial products. It does not speak to subscriptions or revenues. And, what Dr. Novella may have relied upon is not relevant to the question of whether or not the speech itself is a Lanham Act violation or constitutes unfair competition.

Additionally, as to requests 15[11] & 20, the inquiry into a legal defense fund is improper. It is absurd and circuitous to suggest that Defendant is engaged in commercial speech because Plaintiffs filed a SLAPP suit on account of that speech, deemed non-commercial, and one or more defendants noted what the non-commercial speech was when seeking funds to defend the SLAPP suit – which Novella could not have done without donations. By that definition, no SLAPP suit victim would be permitted to tell potential donors why he or she is being wrongly and unlawfully sued. There is no relevance to the inquiries as to any legal defense fund except as to find more victims to harass or to chill future

---

[11] **Request for Production No. 15**

Any and all documents that concern, reference, or discuss the SGU legal defense fund, including any and all donor lists with amount and date of donation.

**Response to Request No. 15**

Objection: this request is not reasonably calculated to lead to the discovery of admissible or relevant evidence. This request is overbroad and unduly burdensome, as it is not limited in scope or subject to disputed issues in this case. This request seeks constitutionally protected information of third parties. This request seeks documents in the possession of third parties and not in the possession of Dr. Novella. This request is directed at a third party, and should be directed to that third party through a subpoena *duces tecum*.

Notwithstanding the foregoing objections, Defendant responds that such documents are not generally in his individual possession and/or have otherwise been produced to Plaintiffs.

potential donors. Tobinick clearly wishes to harass donors and to scare third parties into failing to donate – because this is (as the court already ruled) a SLAPP suit. The ignobility of this request should be clear on its face.

Additionally, the entire discovery process by Plaintiffs has been rife with abuse. The discovery requests were held until the eleventh hour and fifty-seventh minute despite the fact that the undersigned had asked counsel what discovery Tobinick might want regularly before and after the June 18, 2015 status conference. (*See*, Declaration of Marc J. Randazza ["Randazza Decl."], attached as **Exhibit 5**, at ¶2). Further, Mr. Randazza offered (throughout the litigation) to provide Tobinick's counsel with any written documentation they wanted. *Id*. at ¶7. To compound the conduct, on at least five occasions, the undersigned conferred with Mr. Bona, each time discussing the filing of a Motion for Summary Judgment on the Lanham Act claims and asking Mr. Bona if there was any discovery that he wanted that would possibly change the outcome. (*See*, Randazza Decl. at ¶4). This began months ago. *Id*. at ¶¶2, 4). Mr. Bona, every time, stated, "We haven't really thought about it." (*Id*. at ¶6). Plaintiffs were permitted to engage in written discovery immediately following the status conference. One would think that Plaintiffs considered what written discovery they needed well before the status conference. After all, these claims have been pending for a year. At what point did they think that it was time to start thinking about discovery? Clearly, they still have not thought about it, as the discovery requests are improper and objectionable.

Plaintiffs had months to request discovery; that they also filed a futile motion to amend does not militate against their failure to serve proper written discovery. Even though discovery might not have opened formally, Novella opened his books to the Plaintiffs months ago. *See*, Randazza Decl. at ¶¶2-3. No fewer than five times prior to June 26, 2015, counsel for Dr. Novella contacted Mr. Bona and, in lengthy phone calls, Dr. Novella's counsel offered to provide evidence and discovery without even requiring formal written discovery

requests. (*See*, Randazza Decl. at ¶3). Each time, Attorney Bona refused to so much as suggest what discovery he needed. (*See*, *id.* at ¶5). During those conversations, Dr. Novella offered to stipulate to certain facts to streamline litigation, but Attorney Bona only sought stipulations as to legal conclusions. (*See*, *id.* at ¶6).

The issue of whether Dr. Novella engaged in commercial speech when addressing Tobinick's unscientific claims is absent from the vague statement in DE 209 that Dr. Novella "monetize[s his] activities." (DE 209-1 at ¶5). This is a whole new theory, apparently, that Novella is not engaged in commercial speech, but simply "monetizes" his non-commercial speech. Of course, there are no new theories.

> The First Amendment prevents the restriction of speech based on "its message, its ideas, its subject matter, or its content." <u>Bracco Diagnostics, Inc. v. Amersham Health, Inc.</u>, 627 F. Supp. 2d 384, 455 (D.N.J. 2009). This is especially true for "[s]cientific and academic speech [which] reside at the core of the First Amendment," <u>Washington Legal Found. v. Friedman</u>, 13 F. Supp. 2d 51, 62 (D.D.C. 1998), vacated in part on other grounds, 202 F.3d 331, 340 U.S. App. D.C. 108 (D.C.Cir. 2000), and are typically never subject to regulation.

*Pellegrini v. Northeastern Univ.*, 2013 U.S. Dist. LEXIS 150447, *12 (D. Mass. Aug. 23, 2013). Tobinick has already presented his arguments as to whether or not Novella's speech is commercial in nature. In fact, he presented them for two full days. They were as unavailing then as they are now. Dr. Novella's non-commerical, protected speech is simply not "explicitly promotional in nature." <u>Id</u>. at *18.

Similarly, counsel claimed that the 11th hour (and 57th minute) outstanding discovery requests[12] address "commercial purposes" and "financial gain

---

[12] The timestamp on the email attached as Exhibit A to the Randazza Decl. shows that the email transmitting the discovery requests was sent at 1:57 AM on Saturday, June 27. (*See*, Randazza Decl. at ¶9). This is because the computer Mr. Randazza used to print the email was set to Central European Time (where he

resulting from" the allegedly false statements. (DE 209-1 at ¶6). It is unspecified what essential facts Plaintiffs hoped to learn, as it is unclear which of the 23 Requests for Production, 15 numbered Interrogatories, and 86 Requests for Admission speak to these claimed issues.

As to the other information regarding "readership, website visitors, google analytics data, and other data" (DE 209-1 at ¶7), there is no indication that the data will be relevant, nor is there any reason why Plaintiffs have not procured it from third-party custodians. Notwithstanding, it *was already provided* at the preliminary injunction hearing![13] So what more do they want? They want simply to delay and waste. That is all.

Contrary to the naked assertion of Plaintiffs, Dr. Novella has done nothing to "thwart discovery," (DE 211 at ¶6) and it is factually incorrect that Plaintiffs have not "received any discovery from Novella." *Id*. at ¶11. Plaintiffs and the Court have already had significant discovery. There was a two-day mini trial on the preliminary injunction, with Dr. Novella testifying. This was after Dr. Novella was fully deposed by Plaintiffs, and a parade of experts testified, and thousands of pages of documents were dumped on the court.

## 4.0    CONCLUSION

Tobinick brought this case in bad faith. Tobinick refuses to come to grips with the reality that there is no commercial speech at issue, and he should have graciously withdrawn the claims and moved on. Nevertheless, his attorneys are working desperately to ensure that Dr. Novella has to pay as much in attorneys' fees as he can until the case is over. It should end now. A protective order is necessary to avoid any further undue expense, delay, or burden arising from this SLAPP suit.

Pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 7.1(a)(3), Defendant, by undersigned counsel, hereby certifies that he has conferred in good faith with

---

currently is). *Id*. The email was actually sent at 7:57 PM on Friday, June 26 Eastern Time / 4:57 PM Pacific Time. *Id*.
[13] It was submitted as Defense Exhibit 76.

Plaintiffs in an effort to resolve the dispute without court action. Plaintiffs do not consent to this motion.

WHEREFORE Defendant respectfully requests this Honorable Court issue a protective order consistent with the foregoing.

Dated July 27, 2015.

Respectfully Submitted,

/s/ Marc J. Randazza

_____
Marc J. Randazza, Esq.
Florida Bar No. 625566
California Bar No. 269535
RANDAZZA LEGAL GROUP
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele:  702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 9:14-cv-80781-RLR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

Employee
Randazza Legal Group