UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-cv-80781-RLR

EDWARD TOBINICK, M.D., an individual, et al.,

      Plaintiffs,

 vs.

STEVEN NOVELLA, M.D., an individual,

      Defendant.

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR RULE 60(B) MOTION FOR SANCTIONS**[1]

---

[1] Plaintiffs Edward Lewis Tobinick, M.D., A Medical Corporation d/b/a The Institute of Neurological Recovery, INR PLLC d/b/a Institute of Neurological Recovery, and Edward Tobinick, M.D. ("Plaintiffs") submit this reply memorandum in support of their motion for Rule 60(b) relief and for sanctions ("Rule 60 motion"), [Dkt. No. 261], using the same abbreviations in the motion.

**TABLE OF CONTENTS**

                              **Page**

I.     REPLY MEMORANDUM ................................................................................................. 1

        A.     There Is Clear and Convincing Evidence that Novella Lied About his Knowledge Base for the May 2013 Article ............................................................... 2

        B.     The Grave Implications of Novella's Lie ................................................................. 4

               1.     The Court's "Actual Malice" Analysis Could Have Been Different Had the Court Known that Novella Lied ........................................................ 4

               2.     The Court's "Actual Malice" Analysis Could Have Been Different Had the Court Known that Novella Was Impacting Dr. Tobinick's Privacy Rights ................................................................................................. 5

               3.     The Changes to Novella's Testimony Over Time Regarding His Knowledge Base Are Mendacious ................................................................. 7

        C.     Novella's New Declaration Provides Further Evidence of His Intent to Mislead the Court ..................................................................................................... 8

II.    CONCLUSION ............................................................................................................... 9

**I.     REPLY MEMORANDUM**

Plaintiffs seek to overturn the Anti-SLAPP order and obtains sanctions, because Novella misled the Court.

In Novella's hit piece, "Enbrel for Stroke and Alzheimer's" ("ESA Webpage" or "May 2013 article") [Dkt. No. 261, Ex. 16], he accused Dr. Tobinick of "health fraud," among other things. In Novella's September 29, 2014 Declaration [Dkt. No. 93-3], Novella testified that he had read the November 12, 2004 MBC Accusation against Dr. Tobinick ("2004 Accusation") while "researching Dr. Tobinick's practices," in order to justify his use of the words, "health fraud" and other false, defamatory statements against Dr. Tobinick in the May 2013 article. In his March 2015 deposition, Novella specified that he read the 2004 Accusation between May 5 and May 8, 2013:

> Q.   **When did you read this 2004 accusation?**
> A.   **While researching my article.** So it would have been --
> Q.   So you read it before May 8, 2013?
> A.   Yes.
> Q.   But after May 5, 2013?
> A.   Yes.

Novella Depo., [Dkt. No. 261, at Ex. 9, pp. 271-272 (emphasis added)].

In assessing the Anti-SLAPP motion based on Novella's September 2014 Declaration, this Court concluded that Novella read the 2004 Accusation to establish his knowledge base for the May 2013 article, [Dkt. No. 261, Ex. 16], and that Novella's reading of the 2004 Accusation was "pivotal" on the issue of exonerating Novella of "actual malice". *Tobinick v. Novella*, --- F.Supp.3d ----, 2015 WL 3540053, at *8 (S.D. Fla. June 4, 2015). New discovery reveals that this was error.

Novella lied about reading the 2004 Accusation between May 5 and May 8, 2013 as a knowledge base for his ESA Webpage. There are e-mails (detailed herein) showing that the 2004 Accusation would not have been accessible on the California Medical Board website between May 5 and May 8, 2013 and, moreover, that Novella and his cohort, Barrett, were not even aware of the existence of the 2004 Accusation until weeks after Novella published the May 2013 article. Thus, had this Court known that Novella lied about his knowledge base, this Court could have found that Novella had "actual malice" in accusing Dr. Tobinick of "health fraud."

1

Furthermore, as detailed herein and in the opening papers, the allegations Novella used from the 2004 Accusation had been superseded and, in effect, withdrawn for many years[2] and, moreover, Novella's use of the 2004 Accusation without corrective disclosure violated Dr. Tobinick's privacy rights under California law.  Thus, the 2004 Accusation was not a source that Novella could have relied upon to defeat the defamation claim regarding "health fraud" anyway.

As detailed herein and in the opening papers, Novella was motivated to lie about having read the 2004 Accusation between May 5, 2013 and May 8, 2013 in order to try to gain a victory on the "actual malice" aspect of the Anti-SLAPP motion. Novella's morphing testimony shows this.  In July 2014, Novella submitted three sworn declarations regarding his knowledge base for the May 2013 article, none of which mention the November 2004 Accusation. [Dkt. No. 26-1, ¶10; Dkt. No. 30, ¶10; Dkt. No. 36-1, ¶29]. As further explained herein, Novella later divined using the 2004 Accusation as his knowledge base in his August and September 2014 Declarations in order to try to gain an advantage, which worked.  Again, this Court found Novella's use of the 2004 Accusation "pivotal" on the issue of exonerating Novella of "actual malice." *Novella*, 2015 WL 3540053, at *8.

As explained below, the following is undeniable from this Rule 60(b) motion: (1) There is clear and convincing evidence that Novella lied about using the 2004 Accusation as a knowledge base for the May 2013 article; and, (2) A drastic remedy is required to address the facts (a) this Court unknowingly issued its Anti-SLAPP order based on Novella's lie, (b) Novella had "actual malice" in accusing Dr. Tobinick of "health fraud," and, (c) Novella still proceeds with actual malice by continuing to publish withdrawn allegations against Dr. Tobinick.

Plaintiffs submit that what Novella has done to deceive the Court and stain the proceedings cannot be tolerated within the American system of justice.

### A.   There Is Clear and Convincing Evidence that Novella Lied About his Knowledge Base for the May 2013 Article

In response to the Rule 60(b) motion, Novella now states, "I am reasonably certain that I did see it [the 2004 Accusation] prior to writing my first article about Mr. Tobinick." [Dkt. No. 262-1, ¶4.f].[3]  But many emails between Novella and Barrett show that this testimony is a lie, [Dkt. No.

---

[2] *See* Osinoff Decl., **Ex. 32**. A copy of the document that is referred to as exhibit 1 therein has been previously submitted [Dkt. 261, at Ex. 29].
[3] Novella has not provided any proof that the 2004 document can be found online.

260, Exs. 34-38], given the unavailability of the 2004 Accusation and given how Barrett and Novella did not know it even existed until weeks after May 8, 2013.

Barrett and Novella had been working in concert[4] to attack Dr. Tobinick. In response, Dan Gendler, the INR PLLC general manager, requested that Barrett immediately retract his Casewatch page on June 12, 2013 (**Ex. 33**), with follow-up letters on June 20 (**Ex. 34**) and 21, 2013(**Ex. 35**)[5]. Barrett and Novella then e-mailed each other, with Barrett saying ("Subject: Tobinick harassment") "I need to discuss Tobinick with you ASAP" (Dkt. No. 260, Ex 34). Novella responded, "I'll call you tomorrow" (Dkt. No. 260, Ex 35). On June 23, 2013 (presumably after speaking on the telephone) Barrett emailed, "I have posted the disciplinary documents and with a brief summary at http://www.casewatch.org/board/med/tobinick/Accusation.shtml" [Dkt. No. 261, Ex 15, Casewatch webpage posted on May 9, 2013, downloaded on June 20, 2013]. On June 24, 2013, Barrett e-mailed Novella ("Subject: Disciplinary documents – chilling"), "…I suspect there was a matching complaint against Dr. Tobinick but as part of the settlement the board filed an amended complaint and thereby removed the <u>original accusation</u> from public view. <u>I wonder whether it is still available.</u>" [Dkt. No. 260, Ex 38, emphasis added][6]. The "original accusation" reference in this e-mail refers to the 2004 Accusation against Dr. Tobinick. Neither Novella nor Barrett produced in their discovery responses any answer to Barrett's email query, "I wonder whether it [,the 2004 Accusation,] is still available."

These emails reveal many things. First, there was no access to the 2004 Accusation on the California Medical Board website when Novella "researched" his May 8, 2013 article. The reason is simple. Once the board files an amended complaint the original complaint is, as Barrett stated,

---

[4] Zarembo ran the LA Times hit piece [Dkt. No. 26-2] on May 5, 2013, which does not mention the 2004 Accusation. Novella ran his ESA hit piece on May 8, 2013 [Dkt. No. 261, Ex. 16]. Barrett ran his Casewatch hit piece on May 9, 2013 [Dkt. No. 261, Ex. 15]. Barrett's Casewatch page references and hyperlinks to Novella's ESA Webpage [Dkt. No. 261, Ex. 16]. Neither the ESA or Casewatch hit pieces mention the 2004 Accusation.

[5] Rather than retracting his webpage Barrett responded, without Plaintiffs' knowledge, by filing a formal complaint with the MBC regarding Plaintiffs' California medical practice [Dkt. No. 261, Ex. 24]. Barrett's complaint resulted in the 2014 Accusation against Tobinick <u>that was later withdrawn in its entirety</u> [Dkt. No. 261, Ex. 30].

[6] The materiality of these June 22-24, 2013 e-mails between Novella and Barrett is underscored by the fact that Barrett, in violation of his discovery obligations, failed to disclose these five emails to Plaintiffs.

3

"removed from public view". **Ex. 36** (September 2, 2015 Osinoff declaration); **Ex. 37** (MBC "Public Disclosure Information").

Second, the emails reveal that Novella and Barrett were not even aware of the 2004 Accusation until weeks after May 8, 2013. Indeed, neither Novella's ESA webpage nor Barrett's Casewatch webpage mentioned the 2004 Accusation at that time because when they were written, on May 8 and 9, 2013, respectively, they were both unaware of its existence[7]. Again, the LA Times article, that was allegedly the catalyst for Novella's May 8, 2013 article, does not mention the 2004 Accusation [Dkt. No. 26-2].

Thus, there is conclusive evidence that, contrary to his testimony, Novella did not read the 2004 Accusation in "researching" his May 8, 2013 article and, worse, that Novella was not aware of the existence of the 2004 Accusation when he wrote the article.

### B. The Grave Implications of Novella's Lie

Novella scoffs at the 2004 Accusation being a "keystone" aspect of this Court's Anti-SLAPP ruling. [Dkt. No. 262, at pp. 1-2]. Novella is making a mockery of this litigation. The Court's ruling on the Anti-SLAPP motion is available on Westlaw for litigants to cite in this and future cases. *Novella*, 2015 WL 3540053, at *1. As it stands, this Court unknowingly based part of its analysis of the "actual malice" element of the Anti-SLAPP motion on Novella's lie. *Id*. at *8. As shown below, this Court's Anti-SLAPP order could have been fundamentally different without Novella's lie.

#### 1. The Court's "Actual Malice" Analysis Could Have Been Different Had the Court Known that Novella Lied

In his September 2014 Declaration, Novella used the 2004 Accusation as a vehicle to provide a list of allegations against Dr. Tobinick directly related to Novella's false, defamatory assertions published in his May 8, 2013 article including that Dr. Tobinick was committing "health fraud" and "unprofessional conduct." However, the 2004 Accusation was superseded by a Second Amended Complaint on September 18, 2006 (**Ex. 38**). The Second Amended Complaint contained none of the allegations that Novella had listed in his September 2014 Declaration, as those allegations had been

---

[7] On July 10, 2013, Barrett e-mailed the MBC to obtain the 2004 Accusation, copying Zarembo (Dkt. No. 261, Ex. 12). Novella has not provided any evidence that he obtained or sought to obtain the 2004 Accusation prior to June 2013.

4

superseded and, in effect, withdrawn years prior[8]. For example, the allegation present in the 2004 Accusation that included "corrupt and dishonest acts" is nowhere to be found in the Second Amended Accusation, because "the California Attorney General's office concluded that the facts and charges alleged in the original Accusation of November 12, 2004 lacked sufficient evidentiary basis", because the 2004 Accusation was superseded and none of the allegations in the 2004 Accusation remained in the case.[8] Table 1 reflects this by including "Allegation Did Not Remain in the Case" in Table 1 in the Column under "Second Amended Accusation".

| Table 1. Sworn Allegations by Novella in his September 2014 Declaration [Dkt. No. 93-3, ¶8] | Second Amended Accusation September 2006 [Ex. 38] |
|---|---|
| Corrupt and dishonest acts | Allegation Did Not Remain in the Case |
| Over-promising | Allegation Did Not Remain in the Case |
| Unjustified expectations of his patients | Allegation Did Not Remain in the Case |
| Financial fraud | Allegation Did Not Remain in the Case |
| Repeated acts of negligence | Allegation Did Not Remain in the Case |
| Inadequate evaluation or examination of patients | Allegation Did Not Remain in the Case |
| Falsifying documents | Allegation Did Not Remain in the Case |
| Excessive treatment of patients by injecting patients with etanercept without scientific support | Allegation Did Not Remain in the Case |
| Holding the medical practice out as specializing in neurology | Allegation Did Not Remain in the Case |

Novella asserted in his September 2014 Declaration [Dkt. No. 93-3] that he had read the 2004 Accusation in researching Dr. Tobinick's practices. Novella did this for the Anti-SLAPP motion, in order to provide support for "fraud" allegations in the ESA hit piece. An allegation of health fraud against a physician is a devastating event that must be based upon reliable facts. Novella's misleading testimony unquestionably impacted the Court's holding exonerating him of "actual malice" [Dkt. No. 193 at pp. 13-14], and this Court's analysis could have been fundamentally different had this Court known that Novella did not use the 2004 Accusation as a knowledge base for the May 2013 article.

### 2. The Court's "Actual Malice" Analysis Could Have Been Different Had the Court Known that Novella Was Impacting Dr. Tobinick's Privacy Rights

Dr. Tobinick practices medicine in California, as a California licensed physician. Because Novella did not inform the Court that the November 2004 allegations had been superseded and, in

---

[8] Osinoff Declaration, attached hereto as **Ex. 32.**

5

effect, withdrawn more than eight years earlier, he was making "improper use of information properly obtained," and he was using "incomplete and inaccurate information," both of which violate Tobinick's Constitutional Right to Privacy under the California Constitution.[9]  Superseded allegations, like the allegations in the 2004 Accusation, are inherently unreliable,[10] as their validity has not been confirmed by facts found by a neutral fact-finder or by a verdict by a court or any administrative law judge. Disclosure of such unreliable allegations accomplishes no compelling State interest and may be profoundly misleading, as it was here.

If this Court had determined that Novella was lying about relying on sources known to be unreliable, that he was violating California law by not informing the public or this Court that the November 2004 Accusation had been superseded, and that the allegations Novella used had been superseded and, in effect, withdrawn years earlier and had no legal force, then this Court could have had a different analysis in the Anti-SLAPP order.  For example, this Court could have found that Novella had "actual malice" in accusing Dr. Tobinick of "health fraud," even if that term appears in the 2004 Accusation, since he lied about relying upon it and since, moreover, it was insufficiently reliable anyway to overcome Dr. Tobinick's charges of "actual malice." *Novella*, 2015 WL 3540053, at *8-*9.  This Court may had had other equitable considerations as well.  *See id*. at *2-*3.

Further, Novella's continuing publication of other withdrawn governmental allegations against Dr. Tobinick (those instigated by Barrett) on Novella's Update Webpage[11] [*see* Dkt. No. 261, Ex. 20], despite Novella's actual knowledge that they have been withdrawn[12], is further conclusive evidence of Novella's actual malice.

---

[9] *See Central Valley Ch. 7th Step Foundation, Inc. v. Younger*, 214 Cal.App.3d 145, 152- 164 (Cal. Ct. App. 1989) ("[D]efendants may not disseminate incomplete information as to an arrest or detention without first making a genuine attempt to determine if the arrestee successfully completed a diversion program, or was exonerated."); *White v. Davis,* 13 Cal.3d 757, 775 (Cal. 1975) (discussing the right to privacy as it relates to the "improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party….").

[10] Dr. Tobinick testified [Dkt. No. 105-1¶55] that Novella improperly used the 2004 Accusation.

[11] Novella also misuses the false content of the Update Webpage to support (provide context for) his commercial solicitation of membership sales through the Legal Defense Webpage [*See* Dkt. No. 261, at pp. 14-15 (discussing same)].

[12] Novella Aug. 24, 2015 Depo. pp. 25-26 (Dkt. No. 261, Ex. 23 referencing Dkt. No. 261, Ex. 30).

| Table 2. Withdrawn allegations included in Novella's "Update" Webpage[13] as of Aug. 2015 | Order Withdrawing Accusation[14] June 16, 2015 |
|---|---|
| False and/or misleading advertising | Allegation withdrawn |
| Deceptive advertising | Allegation withdrawn |
| Unprofessional conduct | Allegation withdrawn |
| Gross negligence | Allegation withdrawn |

3. **The Changes to Novella's Testimony Over Time Regarding His Knowledge Base Are Mendacious**

In July 2014 Novella submitted three sworn declarations. [Dkt. No. 26-1, ¶10; Dkt. No. 30, ¶10; Dkt. No. 36-1, ¶29]. Each included a paragraph that used a particular phrase, "Also in researching Dr. Tobinick's practices, I read the California Medical Board's Second Amended Accusation, dated September 18, 2006." None mentioned the 2004 Accusation.

Suddenly, in Novella's August 11, 2014 declaration [Dkt. No. 65-1], he states that he read the 2004 Accusation as part of his research. This was 10 days after the November 2004 Accusation Novella introduced to this Court was obtained by Novella's counsel. In his September 2014 Declaration, Novella repeats this new assertion. This sequence of events exposes many things.

First, having seen both the 2004 Accusation and the Second Amended Accusation at the time of his September 2014 Declaration, he had constructive knowledge that the allegations in the 2004 Accusation that he listed in his September 2014 Declaration (¶8) were unreliable, because none were present in the Second Amended Complaint.[15]

Second, the many declarations underscore Novella's strong incentive to lie that he had read the 2004 Accusation. It was his way to counter Plaintiffs' allegation of defamation with "actual malice" with respect to Novella's use of the term "Health Fraud" in Novella's May 8, 2013 article. In other words, as the many iterations of Novella's declarations show, Novella ultimately replaced "Also, in researching Dr. Tobinick's practices, I read the California Medical Board's Second Amended Complaint" with "Also, in researching Dr. Tobinick's practices, I read the California Medical Board's Accusation, dated November 12, 2004." *See* [Dkt. No. 26-1; Dkt. No. 30; Dkt. No. 36-1; Dkt. No 65-1; Dkt. No. 93-3]. Stating that he read the allegations of the 2004 Accusation, including "fraud," allowed Novella to assert the same thing in his September 2014 Declaration,

---

[13] Dkt. No. 261, Ex. 20.
[14] Dkt. No. 261-30, at p. 4.
[15] Osinoff declaration, **Ex. 32**.

which was "pivotal" to this Court analysis of "actual malice" in the Anti-SLAPP ruling. *Novella*, 2015 WL 3540053, at *8.

### C. Novella's New Declaration Provides Further Evidence of His Intent to Mislead the Court

Novella states, "Any accusation that I fabricated my testimony with respect to seeing some version of the accusation against Tobinick before writing the article is false." [Dkt. No. 262-1, ¶10]. That is more deception.

Plaintiffs do not contend that Novella fabricated his testimony without seeing "*some version* of the accusation," but they instead contend that Novella fabricated his testimony when he claimed to have read the 2004 Accusation prior to writing his May 8, 2013 article. The evidence establishes that Novella claimed to have read the 2004 Accusation about six years after it became unavailable on the MBC website (**Ex. 36**), while objective evidence in their emails and webpages show that Novella and Barrett didn't have it or even know of its existence in May 2013. In addition, the MBC "Public Disclosure Information" policy statement[16] (**Ex. 37)** shows that superseded accusations are intentionally not available on the California Medical Board website[17]. That is consistent with California's Constitutional Right to Privacy discussed herein.

Novella's artful choice of words in his new Declaration [Dkt. No. 262-1] casts further light on his word choice in a key phrase common to the five Declarations discussed herein [Dkt. No. 26-1; Dkt. No. 30; Dkt. No. 36-1; Dkt. No 65-1; Dkt. No. 93-3], namely the sentence beginning with, "Also, in researching Dr. Tobinick's practices, I read the California Medical Board's …." The ambiguity as to time in this phrase could easily have been removed by changing the opening phrase to, "Also, in researching my May 8, 2013 article, I read ….", but this was not done by Novella, and this same word choice, "Also, in researching Dr. Tobinick's practices ….", was carried through five declarations. There can be little doubt that the word choice was deliberate.

---

[16] Available online at http://www.mbc.ca.gov/Consumers/Public_Disclosure.pdf

[17] At the time of filing of Novella's September 29, 2014 Declaration, Plaintiffs were unaware that the 2004 Accusation, although unavailable online, was available from the MBC by written request. In their efforts to determine if this was, in fact, the case, inquiry was made to the MBC to inquire about obtaining it. The initial response of the MBC was that the 2004 Accusation was not available to the public (**Ex. 39**, Sim Affidavit**).**

Novella has caused this Court to make a material mistake in its Anti-SLAPP order. With stakes as high as they come, Novella has doubled-down on his lie. Novella wants the Court to believe that it was correct in believing that Novella read the 2004 Accusation between May 5, 2013 and May 8, 2013, which research, again, this Court deemed to be "pivotal" on the issue of "actual malice." *Novella*, 2015 WL 3540053, at *8. But as shown by Plaintiffs, that is a lie.

## II. CONCLUSION

WHEREFORE, Plaintiffs ask this Court to grant the Rule 60(b) motion, overturning the Anti-SLAPP order and issuing sanctions against Novella.

Respectfully submitted,

| | |
|---|---|
| Geoffrey M. Cahen<br>Fla. Bar No. 0013319<br>CAHEN LAW, P.A.<br>1900 Glades Road, Suite 355<br>Boca Raton, Florida 33431<br>Telephone: (561) 922-0430<br>Fax: (561) 353-5455<br>E-Mail: geoff@cahenlaw.com | *s/ Cullin O'Brien*<br>Cullin O'Brien<br>Fla. Bar No. 0597341<br>CULLIN O'BRIEN LAW, P.A.<br>6541 NE 21st Way<br>Ft. Lauderdale, Florida 33308<br>Telephone: (561) 676-6370<br>Fax: (561) 320-0285<br>cullin@cullinobrienlaw.com<br><br>Jarod M. Bona<br>*Admitted Pro Hac Vice*<br>Aaron R. Gott<br>*Admitted Pro Hac Vice*<br>BONA LAW P.C.<br>4275 Executive Sq., Ste 200<br>La Jolla, CA 92037 (858) 964-4589<br>jarod.bona@bonalawpc.com<br>aaron.gott@bonalawpc.com |

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that he filed the foregoing and the accompanying exhibits with the ECF system and served same on defense counsel this September 8, 2015.

*/s/ Cullin O'Brien*
Cullin O'Brien

Defense counsel:
Marc John Randazza
Randazza Legal Group
3625 South Town Center Drive Las Vegas, NV 89135 Email: MJR@randazza.com