UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-cv-80781-RLR

EDWARD TOBINICK, M.D., an individual, et al.,

                Plaintiffs,

vs.

STEVEN NOVELLA, M.D., an individual,

                Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT STEVEN NOVELLA, M.D.'S MOTION FOR SUMMARY JUDGMENT**[1]

---

[1] Plaintiffs Edward Lewis Tobinick, M.D., A Medical Corporation d/b/a The Institute of Neurological Recovery, INR PLLC d/b/a Institute of Neurological Recovery, and Edward Tobinick, M.D. ("Plaintiffs") hereby file the following response in opposition to the motion for summary judgment filed by Defendant Steven Novella, M.D. [Dkt. No. 251]. Certain evidentiary citations refer to the evidence detailed in the corresponding Counter-Statement of Material Fact (herein after cited to as "SMF ¶_"), and the evidence is attached to the Declaration of Cullin O'Brien also filed contemporaneously herewith. "Falsity Tables" are Exhibits O – S referred to in SMF, ¶3.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

  A. This Court Should Deny Novella's Motion for Summary Judgment Under Rule 56(d), Given Novella's Litigation Misconduct ................................1

  B. This Court Could Deny Novella's Motion for Summary Judgment on the Merits As Well .....................................................................................................1

II. STANDARDS OF REVIEW UNDER RULE 56 ..................................................3

  A. Rule 56(d) .................................................................................................3

  B. Summary Judgment ...................................................................................3

III. ARGUMENT ..........................................................................................................4

  A. Summary Judgment Is Inappropriate on Plaintiffs' Lanham Act Claim, As There Is Material Evidence Supporting the Claim at Trial .....................4

    1. For Assessing the Claims and the "Commercial Speech" Issue, this Court Should View the Full Context of the Interconnections and Links of Novella's Money "Funnel" ..........................................................4

      a. Novella Misconduct Is False and Misleading .................................6

        (1) The Lies and Misleading Statements in the ESA .................6

        (2) The Lies and Misleading Statements in the April 1, 2015 Update .......................................................................7

        (3) The Lies and Misleading Statements on the Legal Defense Page ........................................................................8

        (4) The Lies and Misleading Statements in Podcast 472 ...........8

        (5) Novella Deceives the Public .................................................8

          (i) "Donations" to a For-Profit Company ....................9

          (ii) "We Are Being Sued" .............................................9

          (iii) Membership Types .................................................9

    2. There Is Record Evidence Illustrating the Other Elements, that Novella's Misconduct Deceived or Had the Capacity to Deceive,

      Caused Damages to Plaintiffs, and Was Done in Interstate Commerce ....................................................................................... 10

    3. Novella's Misconduct Is Commercial Speech ........................................... 10

  B. Summary Judgment Is Inappropriate on Plaintiffs' Claim for Unfair Competition, As there Is Material Evidence Supporting the Claim at Trial .......... 14

  C. Alternatively, this Court Should Deny Summary Judgment Until the Remedies Sought in Plaintiffs' Motions for Sanctions and Other Relief Under Rule 60(b) and Rule 37 Are Carried Through ............................................ 15

IV. CONCLUSION ............................................................................................................. 17

**I.      INTRODUCTION**

Novella's motion for summary judgment fails for many reasons summarized immediately below and further detailed herein.

    **A.      This Court Should Deny Novella's Motion for Summary Judgment Under Rule 56(d), Given Novella's Litigation Misconduct**

Novella's motion for summary judgment fails procedurally and equitably.  As is explained in Plaintiffs' motions for Rule 60(b) and Rule 37 relief, [Dkt. Nos. 260-261, 269], Novella has, *inter alia*: (1) lied to this Court in obtaining a ruling on the Anti-SLAPP motion; and, (2) made false and misleading statements in his deposition about his ties to key witnesses so as to misdirect Plaintiffs' prosecution of this case, including Plaintiffs' discovery efforts.  The only just remedy for Novella's misconduct is: (1) vacatur of this Court's ruling on the Anti-SLAPP motion, [Dkt. No. 193]; (2) an extension of the discovery deadlines; (3) the allowance of Plaintiffs to file an amended complaint; (4) the allowance of Plaintiffs to re-depose Novella on his connections with the cabal seeking to discredit Dr. Tobinick; (5) an independent forensic search of Novella's computers and emails; (6) an extension of the dispositive motion deadline; (7) attorneys' fees and costs; (8) injunctive relief; (9) a default judgment, including punitive damages; and, (10) any other relief this Court determines.

Thus, Plaintiffs move this Court to grant the relief sought in Plaintiffs' Rule 60(b) and Rule 37 motions through Rule 56(d) and, accordingly, deny summary judgment.  In other words, Plaintiffs ask this Court to grant Rule 56(d) relief and deny Novella's motion for summary judgment because Novella's misconduct renders his motion inequitable and procedurally improper, as this Court should instead institute the remedies Plaintiffs seek in the Rule 60(b) and Rule 37 motions.  Among these remedies are allowing Plaintiffs to conduct discovery that goes directly to the elements of falsity, deception, causation, and damages.

    **B.      This Court Could Deny Novella's Motion for Summary Judgment on the Merits As Well**

Notwithstanding Novella's egregious misconduct in thwarting Plaintiffs from prosecuting their claims, Novella's motion for summary judgment fails on the merits.  There are triable issues of fact regarding Novella's violation of the Lanham Act, 15 U.S.C. §1125(a), Count I of Plaintiffs' operative complaint, [Dkt. No. 55, at pp. 18-20], and regarding Novella's unfair competition under common law, Count II of Plaintiffs' operative complaint, [Dkt. No. 55, at pp. 21-23].

1

Plaintiffs employ a group of physicians pioneering an emerging treatment for patients with selected neuroinflammatory conditions. SMF, ¶4. This group of board-certified Internal Medicine physicians currently includes Edward Tobinick MD, Nancy Kim MD, and Arthur Levine D.O., working at the medical offices of the Institute of Neurological Recovery ("INR") in California and Florida, and formerly also included Gary Reyzin MD. Dr. Tobinick, the founder of this physician group, discovered, invented and created this new treatment method, "perispinal etanercept" ("PSE"), for people suffering from the effects of intractable spinal pain, chronic intractable neurological dysfunction after stroke, and Alzheimer's disease. SMF, ¶4. PSE for these neuroinflammatory conditions is an emerging treatment that has been cited and recognized in the medical literature by physicians and scientists from around the world during the past decade. SMF, ¶4. Dr. Tobinick and the INR physicians have trained physicians from multiple continents in the use of this new treatment modality. SMF, ¶4. This treatment promises to benefit the human race for decades to come. SMF, ¶4.

This case is about Novella's materially false and misleading statements about Dr. Tobinick and Plaintiffs' treatment and unfair and deceptive acts. SMF, ¶3, and Falsity Tables. Novella and a cabal of Dr. Tobinick's competitors have decided on a multi-faceted turf war against Dr. Tobinick. SMF, ¶¶2-3, and Falsity Tables. While Plaintiffs' treatment will benefit humanity, Novella and other economically-vested and competing physicians stand to have significant aspects left in the dust the more widespread Plaintiffs' treatment becomes. SMF, ¶¶2-3, and Falsity Tables.

This case has nothing to do with "American journalism." This case is not about a "scientific debate." Novella has advanced an concerted attack against Plaintiffs' commercial activities, including false and misleading statements directed at Plaintiffs' pricing policies, Plaintiffs' patents, staffing, geographic location, regulatory (medical board interactions), that even goes so far as to use the terms, "Health Fraud" and "exploitation," with specifics detailed, implying the commission of illegal or violative activities. SMF, ¶¶3, 9 and Falsity Tables. At the same time, Novella has repeatedly and misleadingly misrepresented his own services. SMF, ¶3, and Falsity Tables. Novella's tactics are maliciously calculated to generate profit for Novella and harm Dr. Tobinick. SMF¶3, and Falsity Tables. The effects are tracked by Novella and his cohorts as the "Streisand effect." SMF¶3, and Falsity Tables. Novella's brother, Jay Novella, calls Novella's tactics "monetization." SMF¶3, and Falsity Tables. Novella, through his brother and other underlings, use false and misleading statements about Plaintiffs deception to extract and draw money from the public, masquerading as "non-profit" skeptics. SMF¶3, and Falsity Tables. They have a

2

sophisticated set of interlocking websites that, as Jay Novella testified, "funnel" the public to ultimately buy memberships from Novella's for-profit company or, in some cases, "donate" directly to the for-profit company. SMF¶3, and Falsity Tables.

The record evidence establishes that Novella's misconduct is "commercial speech" no matter how hard Novella may try to obfuscate the facts. As stated herein, Novella's misconduct is part and parcel of a money-making conspiracy against Dr. Tobinick. Novella's "speech" has every single hallmark of a commercial enterprise, including under the criteria this Court previously articulated, *Tobinick v. Novella*, No. 9:14-cv-80781, 2015 WL 1191267, at *4-*5 (S.D. Fla. Mar. 16, 2015). Indeed, Novella's deception of the public about the nature of his own is exactly the sort of consumer confusion the common law of unfair competition means to punish.

There are triable issues of material fact. Novella is not entitled to judgment as a matter of law. The preliminary injunction ruling does not somehow create estoppel. *See*, *e.g.*, *Kuzinich v. Santa Clara County*, 689 F.2d 1345, 1350-1351 (9th Cir. 1982) ("[I]ssues litigated in a preliminary injunction action are not res judicata and do not form a basis for collateral estoppel."). That is particularly true in light of the new evidence developed since then, including on the issues of commercial speech through emails and deposition testimony. SMF¶3, and Falsity Tables.

## II.   STANDARDS OF REVIEW UNDER RULE 56

### A.   Rule 56(d)

Summary judgment rulings may be deferred "if a nonmovant provides a reason why facts essential to justify an opposition to the motion cannot be presented, a court may defer considering the motion or deny it; allow time to obtain affidavits or declarations or to take discovery; or issue any other appropriate order." *Palkovich v. Israel*, No. 12–61681–CIV, 2014 WL 129275, at *1 (S.D. Fla. Jan. 13, 2014) (Marra, J.). Besides explaining why summary judgment for Novella on the merits is unwarranted, Plaintiffs alternatively show how Novella's litigation misconduct has deprived Plaintiffs of the ability to obtain facts essential to justifying an opposition to the motion. Thus, it is appropriate for this Court to defer ruling on Novella's motion for summary judgment until the relief sought in Plaintiffs' Rule 60(b) and Rule 37 motions, [Dkt. Nos. 260-261, 269], is carried out.

### B.   Summary Judgment

This Court previously articulated the standards for summary judgment. *Tobinick v. Novella*, No. 9:14-cv-80781-RLR, 2015 WL 1191267, at *3-*4 (S.D. Fla. Mar. 16, 2015) (internal citations

3

and quotations omitted). For efficiency, Plaintiffs incorporate them by reference. As detailed below, Novella's motion for summary judgment fails the standards and this Court should deny the motion.

### III. ARGUMENT

#### A. Summary Judgment Is Inappropriate on Plaintiffs' Lanham Act Claim, As There Is Material Evidence Supporting the Claim at Trial

In Count I, Plaintiffs assert a violation of the Lanham Act for false advertising, which requires Plaintiffs to show that Novella's misconduct: (a) is false or misleading; (b) deceived or had the capacity to deceive; (c) had a material effect; (d) impacted Interstate commerce; and, (e) damaged or are likely to damage Plaintiffs. *Duty Free Am., Inc. v. Estee Lauder Cos.*,--- F.3d ----, 2015 WL 4709573, at *22 (11th Cir. Aug. 7, 2015). As explained below, there is substantial material evidence supporting the elements of this claim.

##### 1. For Assessing the Claims and the "Commercial Speech" Issue, this Court Should View the Full Context of the Interconnections and Links of Novella's Money "Funnel"

This Court should assess the "full context" of Novella's misconduct in analyzing the elements of the Lanham Act claims. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308-1309 (11th Cir. 2010). This full context includes all of the interrelated websites, promotion and links that funnel money directly to Novella.[2]

Novella makes false and misleading statements about Plaintiffs and otherwise deceive the public in at least six ways: (1) the ESA webpage; (2) the Update webpage; (3) the SGU Legal

---

[2] *Aristotle Intern., Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 12 (D.D.C. 2010) ("The Court cannot find this webpage to be false or misleading, but notes that this website may constitute evidence relevant to a fact-finder considering the overall context of Aristotle's advertisements for purposes of the Lanham Act."); *Broadspring, Inc. v. Congoo, LLC*, No. 13–CV–1866 (JMF), 2014 WL 7392905, at *2 (S.D.N.Y. 2010) ("[W]ith respect to any documents or materials to which the allegedly defamatory statements include a hyperlink, as they are relevant to the jury's consideration of the allegedly defamatory statements in context."); *L.A. Taxi Cooperative, Inc. v. Independent Taxi Owners Ass'n of Los Angeles*, --- Cal.Rptr.3d ----, 2015 WL 4970092, at*6 (Cal. Ct. App. Aug. 20, 2015) ("Similarly here, the subject advertisements did not constitute participation in any public dialogue about public transportation via taxicabs, the taxicab industry, or taxicab licensing and regulation. Rather, the advertisements on their face were designed to further defendants' private interest in increasing the use of their taxicab services."); *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 366 (4th Cir. 2001) (page that hyperlinks to pages that offer goods and services is "in connection with goods and services").

Defense webpage; (4) the SGU Support webpage; (5) the SGU homepage; and, (6) the Podcast 472 webpage, transcript and audio. SMF, ¶3, and Falsity Tables. All of these website pages are part of a "funnel" that directly vectors to money into Novella's pocket through website links, solicitations and advertisements for "donations" to SGU, Novella's instructional videos, "membership" at SGU, SGU's advertisers, e-books, the SGU store, and various social media. SMF, ¶3, and Falsity Tables.

Further herein, Plaintiffs describe how Novella's misconduct is, *inter alia*, false, deceptive, misleads the public, and has caused harm to Plaintiffs. However, each of these website pages and solicitations to the public have something critical in common: they all drive money to Novella, or as his brother, Jay Novella, put it, "monetization." SMF, ¶3, and Falsity Tables. It is marketing "101." SMF, ¶3, and Falsity Tables. Indeed, Jay Novella testified that the websites were specifically designed to have as many places to extract money from the public as possible. SMF, ¶3, and Falsity Tables. The flow of money to Novella is detailed in SMF, ¶3, and Falsity Tables, of the corresponding SMF and depicted below:



The money is significant, as Novella testified to over $200,000 last year. SMF, ¶3, and Falsity Tables. As detailed herein, Novella's unlawful statements about Dr. Tobinick are not somehow "protected" speech. Rather, the statements about Dr. Tobinick and Plaintiffs' treatment are maliciously calculated to generate profit for Novella and harm Dr. Tobinick.

### a.  Novella Misconduct Is False and Misleading

The first element, "false or misleading," is met when the conduct contains "either (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

In summary, Novella's misconduct is a commercial, non-scientific attack against Plaintiffs and misrepresentations of Novella's own services.

**Gravamen of Novella attack: A Commercial, Non-Scientific Attack against Plaintiffs and Misrepresentations of Novella's own services**

| Statements Directed to Plaintiffs' Commercial Activities: | ESA[3] | Another Lawsuit[1] | Podcast 472[1] | Legal Defense[1] | Update[1] |
|---|---|---|---|---|---|
| Plaintiffs' Pricing Policies | + | +* | + | +* | +* |
| Plaintiffs' Patents | + | + | +* | +* | + |
| Medical Board Actions | + | + | + | +* | + |
| Health Fraud/Exploitation | + | + | + | + | + |
| Staffing: "one-man institute" | + | +* | +* | +* | +* |
| Geographic Location: moved his clinic to Florida | + | +* | +* | +* | +* |
| Misrepresentation of Novella's own Services: "non-profit" confusion, etc. | + | + | + | + | + |
| Solicitation of Paid Membership | + | + | + | + | + |
| Solicitation of Open Donations | + | + | + | + | + |

\* via hyperlink to one of these other webpages
_____

[1] Webpages: "Enbrel for Stroke and Alzheimer's"; "Another Lawsuit to Suppress Legitimate Criticism – This Time SBM"; Podcast #472 Webpage and Transcript Webpage; Legal Defense Support/ The Skeptics Guide to the Universe"; and, "Update on the Tobinick Lawsuit"

There is record evidence that Novella's misconduct is false and misleading in many ways.

### (1)  The Lies and Misleading Statements in the ESA

In the ESA article, Novella makes many claims about Plaintiffs, including phrases like "Health Fraud." SMF, ¶3, and Falsity Tables. There is record evidence showing that the claims are

---

[3] Webpages: "Enbrel for Stroke and Alzheimer's"; "Another Lawsuit to Suppress Legitimate Criticism – This Time SBM"; Podcast #472 Webpage and Transcript Webpage; Legal Defense Support/ The Skeptics Guide to the Universe"; and, "Update on the Tobinick Lawsuit"

false and misleading, including Dr. Tobinick's testimony and medical school transcript, the findings of fact adopted by the Medical Board of California that Dr. Tobinick's treatment is within the standard of care, the Reyes decision, multiple scientific studies, and expert testimony. SMF, ¶3, and Falsity Tables.

Novella's defense to the falsity and deception of these claims is incomplete and, moreover, unavailing. Most egregious is Novella claim that the term "Health Fraud" is not actionable because it appears as a simple "metatag." That is absurd. Metatags are invisible to the end-user. *Multifab, Inc. v. ArlanaGreen.com*, No. ----2015 WL 4748309, at *7 (E.D. Wash. Aug. 11, 2015) ("A metatag is Hypertext Markup Language code (HTML), invisible to a human reader . . ."). Novella's use of the term "Health Fraud" is visible, prominent on the page (visible on archive.org) and maliciously used to characterize Plaintiffs and Dr. Tobinick." SMF, ¶3, and Falsity Tables. There is record evidence showing that accusing Dr. Tobinick of health fraud is false and deceptive, including the Medical Board of California's findings that Dr. Tobinick's treatment is within the standard of care and the Reyes decision. SMF, ¶3, and Falsity Tables.

Also exemplary on the ESA page are terms like, "exploitation," "quack clinic," "dubious clinic," and "worthless." SMF, ¶3, and Falsity Tables. These are statements of fact. *See*, *e.g.*, *Nasr v. Connecticut Gen. Life Ins. Co.*, 632 F. Supp. 1024, 1027-1028 (E.D. IL 1986) ("[T]his court cannot conclude that its assertion that Dr. Nasr was a quack was simply an honest opinion; it was an assertion of fact, capable of disproof, actionable for defamation."). These statements, like the others that appear on the ESA page, are manifestly false given the, *inter alia*, the Medical Board of California's findings that Dr. Tobinick's treatment is within the standard of care and the Reyes decision. SMF, ¶3, and Falsity Tables.

### (2) The Lies and Misleading Statements in the April 1, 2015 Update

In the Update Page, Novella makes many claims about Plaintiffs. SMF, ¶3, and Falsity Tables. There is record evidence showing that the claims are false and misleading, including Dr. Tobinick's testimony and medical school transcript, the findings of fact adopted by the Medical Board of California that Dr. Tobinick's treatment is within the standard of care, the Reyes decision, multiple scientific studies, and expert testimony. SMF, ¶3, and Falsity Tables. Indeed, Novella is aware that the California Medical Board withdrew its 2014 Accusation against Dr. Tobinick and of the Reyes decision. These are significant developments, even according to Jay Novella. SMF, ¶3,

and Falsity Tables. Novella promises to provide updates of "significant" events, but fails to do so with respect to the withdrawal of the 2014 Accusation against Dr. Tobinick and the Reyes decision. SMF, ¶3, and Falsity Tables. Among other things, on the Update Page, Novella deceives and lies to the public about the status of "significant" issues regarding Dr. Tobinick.

### (3) The Lies and Misleading Statements on the Legal Defense Page

In the Legal Defense Page, Novella makes many claims about Plaintiffs. SMF, ¶3, and Falsity Tables. There is record evidence showing that the claims are false and misleading, including Dr. Tobinick's testimony and medical school transcript, the findings of fact adopted by the Medical Board of California that Dr. Tobinick's treatment is within the standard of care, the Reyes decision, multiple scientific studies, and expert testimony. SMF, ¶3, and Falsity Tables.

For instance, Novella misrepresents his own services when he claims to do an "objective analysis;" and that the "claims and practice of Dr. Tobinick have many of the red flags of a dubious medical practice." SMF, ¶3, and Falsity Tables. But these and other statements are manifestly false, including Novella's failure to recognize, much less reconcile, the findings of fact adopted by the Medical Board of California that Dr. Tobinick's treatment is within the standard of care and the Reyes decision. SMF, ¶3, and Falsity Tables. Novella, using the Legal Defense Page misleadingly solicits donations to SGU, which is his for-profit company, under the guise of a ".org" non-profit.

### (4) The Lies and Misleading Statements in Podcast 472

In Podcast 472, Novella misrepresents his own services when he stated, "We are not spreading misinformation or misleading information," and Novella makes many claims about Plaintiffs. SMF, ¶3, and Falsity Tables. There is record evidence showing that the claims in Podcast 472 are false and misleading, including Dr. Tobinick's testimony and medical school transcript, the findings of fact adopted by the Medical Board of California that Dr. Tobinick's treatment is within the standard of care, the Reyes decision, multiple scientific studies, and expert testimony. SMF, ¶3, and Falsity Tables.

### (5) Novella Deceives the Public

As described below and detailed in the SMF, there is record evidence supporting Plaintiffs' claims that Novella deceives the public by masquerading as a non-profit. *See*, *e.g.*, *Zimmerman v. Puccio*, 613 F.3d 60, 73 (1st Cir. 2010) (defendants were "misleading consumers into thinking they

8

were doing business with a non-profit corporation, when, in fact, their accounts were being wholly serviced by a for-profit."); *cf. Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 459-460 (2010) ("'It underscores that for- profit corporations associated with electioneering communications will often prefer to use nonprofit conduits with "misleading names,' such as And For The Sake Of The Kids, 'to conceal their identity' as the sponsor of those communications, thereby frustrating the utility of disclosure laws.") (Stevens, J., concurring and dissenting).

### (i) "Donations" to a For-Profit Company

SGU is for-profit company. SMF, ¶3, and Falsity Tables. However, SGU maintains a ".org" web address. SGU solicits "donations" for itself, which is misleading to the public. SMF, ¶3, and Falsity Tables. The public is confused about whether the money it gives in the entanglement of websites and entities described above is tax deductible and otherwise for non-profit purposes. SMF, ¶3, and Falsity Tables. SGU is not registered as a non-profit such that it can solicit donations in Florida. SMF, ¶3, and Falsity Tables.

Even SGU's own staff, Joel Belluci, is confused about the tax consequences of donations. SMF, ¶3, and Falsity Tables. Jay Novella doesn't count the time he spends on the "non-profit" and "for profit" aspects of the entities. SMF, ¶3, and Falsity Tables. Jay Novella himself agrees that the public is confused about whether it is giving money to a non-profit. SMF, ¶3, and Falsity Tables.

### (ii) "We Are Being Sued"

The SGU homepage has a banner stating, "We Are Being Sued." SMF, ¶3, and Falsity Tables. Jay Novella testified that the moniker "We are being sued" is misleading because just Novella is a current defendant in the case, not SGU, as the moniker gives the public the wrong impression about the nature of the legal defense. SMF, ¶3, and Falsity Tables.

### (iii) Membership Types

SGU has a recurring membership default. SMF, ¶3, and Falsity Tables. SGU does not provide any premium content for free. SMF, ¶3, and Falsity Tables. SGU does not provide premium content to the lowest membership fee of $4 per month. SMF, ¶3, and Falsity Tables. The public is confused about the recurring nature of the memberships and what a $4 membership provides. SMF, ¶3, and Falsity Tables.

9

### 2. There Is Record Evidence Illustrating the Other Elements, that Novella's Misconduct Deceived or Had the Capacity to Deceive, Caused Damages to Plaintiffs, and Was Done in Interstate Commerce

Novella's misconduct occurs in interstate commerce, as the public from all around the U.S. and world are exposed to Novella's misconduct. SMF, ¶¶2-3, and Falsity Tables, ¶36. Plaintiffs' experts testify that Novella's misconduct is deceptive or had the capacity to deceive. SMF, ¶¶2-3, and Falsity Tables, ¶36. There is record and expert evidence illustrating that patients are diverted from Plaintiffs and their treatment as a result of Novella's misconduct. SMF, ¶¶2-3, and Falsity Tables, ¶36. There is record and expert evidence illustrating that Novella's misconduct caused damages. SMF, ¶¶2-3, and Falsity Tables, ¶36. Indeed, there is an organized cabal that literally came up with a "3 Step Plan" against Dr. Tobinick, counting how much website traffic is being exposed to Novella's statements about Plaintiffs, and characterizing the damage they are doing to Plaintiffs' business in terms of the "Streisand Effect," and celebrating "Tobinick Day." SMF, ¶¶2-3, and Falsity Tables, ¶36.

### 3. Novella's Misconduct Is Commercial Speech

Novella's "speech" has every single hallmark of a commercial enterprise, including under the criteria this Court previously articulated, *Novella*, 2015 WL 1191267, at *4-*5. In its analysis, this Court considered the following concepts: (a) "proposes a commercial transaction"; (b) "expression related solely to the economic interests of the speaker and its audience"; (c) "a goal in line with the […] educational mission"; (d) "a clear economic incentive"; (e) "products and brand [] referenced, both specifically and generically"; (f) "products . . . offered for sale . . . in the articles"; (g) "an independent plug for novella"; (i) not "free to view online"; (j) for-profit enterprise. *Id*. Novella's speech triggers each of these factors.

Novella is a competitor of Plaintiffs. SMF, ¶2. Like Plaintiffs, Novella treats patients with stroke, back pain and sciatica, and Alzheimer's disease, and the hospital where Novella works has a stroke clinic. SMF, ¶2. Like Plaintiffs, Novella prescribes drugs for off-label indications. SMF, ¶2. Plaintiffs solicit clients from the same geographical area as Novella, and Novella's attacks have had a devastating impact on Plaintiffs' practice which has suffered tremendously with a significant decline in income. SMF, ¶2. Novella is part of a cabal seeking to implement a "3 Step Plan" attack Dr. Tobinick and measure the deleterious effects it is having on Dr. Tobinick and his business, including celebrating "Tobinick Day." SMF, ¶¶2, 3, 36, and Falsity Tables.

**Figure 1: Parties Communicating in Concert About Plaintiffs**



| | |
|---|---|
| Sacco = Ralph Sacco MD, University of Miami<br>Saver = Jeffrey Saver MD, UCLA<br>Zarembo = Alan Zarembo, Los Angeles Times | Barrett = Stephen Barrett, Casewatch.org<br>Novella = Steven Novella MD<br>Ingraham = Paul Ingraham, painscience.com |

**Figure 2. Hyperlinked Webpages Demonstrating Interconnections Between and Among the Statements Made by the Cabal Against Plaintiffs, Which the Cabal "Monetizes" including Through Memberships**

**Legend**:
- CHD 13-18 Barrett Webpage = http://sfsbm.org/wiki2/index.php?title=CHD13-18 **(DE 261, Ex. 14)**.
- Casewatch Barrett Webpage = http://www.casewatch.org/board/med/tobinick/accusation.shtml **(DE 261, Ex. 15)**.
- ESA Webpage = www.sciencebasedmedicine.org/enbrel-for-stroke-and-alzheimers/ **(DE 261, Ex. 16)**.
- Legal Defense Webpage = http://www.theskepticsguide.org/legaldefense **(DE 261, Ex. 17)**.

11

- SGU 472 Transcript = http://www.sgutranscripts.org/wiki/SGU_Episode_472 **(DE 261, Ex. 18)**.
- Novella 2 Webpage = www.sciencebasedmedicine.org/another-lawsuit-to-suppress-legitimate-criticism-this-time-sbm/ **(DE 261, Ex. 19)**.
- Update Webpage = www.sciencebasedmedicine.org/update-on-the-tobinick-lawsuit/ **(DE 261, Ex. 20)**.
- Ingraham Webpage = http://saveyourself.ca/microblog/ringside-seats-for-a-legal-fight--sciencebasedmedicineorg-gets-sued.html **(DE 261, Ex. 21)**.



Novella attacks Plaintiffs and deceives the public on: (1) the ESA webpage; (2) the Update webpage; (3) the SGU Legal Defense webpage; (4) the SGU Support webpage; (5) the SGU homepage; and, (6) the Podcast 472 webpage, transcript and audio.  SMF, ¶3, and Falsity Tables.  Each time, the public is solicited to provide money to Novella.  SMF, ¶3, and Falsity Tables.

On the ESA page, the public is solicited to donate money to the non-profit, NESS, that operates as a feedback loop to funnel memberships to SGU (and, thus, money as there are no free memberships), Novella's for-profit company.  SMF, ¶3, and Falsity Tables.

12

On the Update page, the public is not only solicited into that same feedback loop, but is also solicited to SGU's website pages which contain a bevy of SGU membership links, "donation" links for money to SGU, store links, advertiser links, and social media links that funnels the public to memberships to SGU. SMF, ¶3, and Falsity Tables.

On Podcast 472, the public is solicited to buy Novella's "Great Courses," SMF, ¶3, and Falsity Tables. Moreover, on podcast 472, the public is also solicited to SGU's website pages which contain a bevy of SGU membership links, "donation" links for money to SGU, store links, advertiser links, and social media links that funnels the public to memberships to SGU. SMF, ¶3, and Falsity Tables. SGU is not a registered charity in Florida. SMF, ¶3, and Falsity Tables.

The public is solicited to either the ESA page, the Update Page, or in Podcast 472 in various ways, including SGU's home page, SGU's "legal defense" page, and SGU's support page. SMF, ¶3, and Falsity Tables. On each of these pages, there is the same feedback loop to drive membership – a bevy of SGU membership links, "donation" links for money to SGU, store links, advertiser links, and social media links that funnels the public to memberships to SGU. SMF, ¶3, and Falsity Tables.

There are no free memberships to SGU. SMF, ¶3, and Falsity Tables. This is a "for profit" enterprise with feedback loops through masquerading .org websites and "non profits." SMF ¶3, and Falsity Tables. Jay Novella doesn't segregate his non-profit work time. SMF, ¶3, and Falsity Tables. Memberships, Novella's Great Courses, advertisers, and social media are plugged, specifically, including on podcast 472. SMF, ¶3, and Falsity Tables. Indeed, Jay Novella testified that there are so many places for the public to become SGU members on purpose. SMF, ¶3, and Falsity Tables. This is not "in line" with educational purposes. This is all about "monetarization," which Novella testified was a long time coming. SMF, ¶3, and Falsity Tables.

The First Amendment was never meant to serve as a barrier between Novella's misconduct and justice. To see this, and as depicted above, this Court should simply follow the money:

13



**B.  Summary Judgment Is Inappropriate on Plaintiffs' Claim for Unfair Competition, As there Is Material Evidence Supporting the Claim at Trial**

In Count II, Novella's asserts a unfair competition under common law, which the "the umbrella for all statutory and non-statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Am. Heritage Life In. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir.1974). By definition, Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. §501.201, *et seq.*, act falls within this umbrella. Thus, to show unfair competition, Plaintiffs must establish that Novella's misconduct: (a) is deceptive; (b) confuses or is likely to confuse consumers; (c) is contrary to honest practices; (d) caused and is likely to cause harm to Plaintiffs; and, (e) has damaged Plaintiffs. *Patheon Inc.*, 36 F. Supp. 3d 1332-1334.

Establishing a violation of the Lanham Act for false advertising establishes a violation of unfair competition under common law. *Tobinick v. Novella*, No. 9:14–CV–80781, 2015 WL 1191267, at *5, n.9 (S.D. Fla. Mar. 16, 2015). Thus, for the reasons detailed above with the Lanham Act violation in Count I, there is also record evidence establishing Plaintiffs' unfair competition claim at trial, such that Novella is not entitled to judgment as a matter of law. Moreover, as stated above, there is no First Amendment shield for Novella, as it is commercial speech.

However, because Plaintiffs' common law claim of unfair competition brings in FDUTPA, the claim is also established even though Plaintiffs are not consumers of Novella's services. *Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach Cnty.*, 169 So.3d 164, 169-170 (Fla. 4th DCA 2015). There is no commercial speech barrier or First Amendment shield to Plaintiffs' unfair competition claim under common law or the FDUTPA violation flowing therefrom.

### C. Alternatively, this Court Should Deny Summary Judgment Until the Remedies Sought in Plaintiffs' Motions for Sanctions and Other Relief Under Rule 60(b) and Rule 37 Are Carried Through

Novella has consistently derailed a straightforward case about his misdeeds into a cloudy vortex of *ad hominem* attacks against the victim, Dr. Tobinick, misdirection and lies. Plaintiffs have shown how Novella has misdirected this Court into unknowingly issuing an Anti-SLAPP order based on something that wasn't true. [Dkt. Nos. 261, 269]. Plaintiffs have also shown how Novella has misdirected and severely prejudiced Plaintiffs in their litigation efforts, by failing to disclose his links to key witnesses in this case. [Dkt. No. 260].

Novella is still scrambling with how to dodge repercussions for the lies he weaved in six sworn declarations and other testimony, through nervous, distracting, and improper filings, [Dkt. Nos. 266, 267, 270, 271]. The dust will soon settle and Novella will stand to account for his wrongs.

And although the truth will ultimately prevail, Novella's misconduct has deprived Plaintiffs of their day in court. Novella disclaimed his links to the cabal conspiring against Plaintiffs and seeking to implement the "3 Step Plan" of attack on Dr. Tobinick. By lying in discovery and to this Court, Novella shut doors in Plaintiffs' discovery efforts that, with the truth Plaintiffs would have otherwise blown wide open. As explained in their Rule 60(b) and Rule 37 filings, but for what Novella did, Plaintiffs would have fundamentally altered their litigation strategy, including in exposing the plans and interconnectivity of the establishment pushing Novella's false and deceptive misconduct and in demonstrating the detrimental economic effect upon Plaintiffs' medical practices.

15

The discovery that Plaintiffs would have otherwise obtained (and provided to Plaintiffs' experts) could have been the evidentiary basis this Court was seeking when it denied Plaintiffs' motion for leave to amend the operative complaint. This discovery goes directly to the elements of falsity, deception, causation, and damages described above.

Indeed, Novella is still playing games in discovery. Novella's privilege log doesn't comply with the rules as it fails to identify the parties to the emails. In the amended privilege log ordered by Magistrate Brannon, Novella still fails to provide a proper privilege log, as the amended log doesn't show the email addresses of the parties to the emails. This is key because in the tens of thousands of documents, Novella has produced only a small number of emails from his address as SNovella@theness.com. It is clear that there are many material emails from this email address, as evidenced by the production from Jay Novella, Novella's brother. These emails show links between Novella and the cabal, a conspiracy which Novella is still somehow contending does not exist. These emails were not produced by Novella and Plaintiffs reasonably expect that there are a legion more hiding material information in this case.

Furthermore, the same misconduct by Novella described in Plaintiffs' Rule 60(b) motion, [Dkt. Nos. 261, 269], is infecting the summary judgment motion. In paragraph 20 of Novella' statement of material facts in support of his motion for summary judgment, [Dkt. No. 251-20], he falsely states that he researched the November 2004 accusation filed against Dr. Tobinick in forming his knowledge base for the May 8, 2013 article about Dr. Tobinick. On pages 18-19 of Novella's summary judgment brief, [Dkt. No. 251], he continues by highlighting that his "research" justified the Court's finding regarding "actual malice," and, moreover, wants this Court to re-adopt the same order applying Florida Anti-SLAPP law. Novella already succeeding in baiting this Court into unknowingly making a ruling on the Anti-SLAPP motion based on Novella's false testimony, which this Court found "pivotal." *Tobinick v. Novella*, --- F.Supp.3d ----2015 WL 3540053, at *1 (S.D. Fla. June 4, 2015). Novella is inducing the same mistake by the Court here by perpetrating his deception. That is besides the fact that it would be fundamentally unfair for this Court to make a ruling on a Florida Anti-SLAPP statute, which statute was adopted after the filing of this lawsuit, without appropriate briefing and process, which has not occurred.

Thus, as explained in Plaintiffs' filings, [Dkt. No. 260, 261, 269], the only just remedy for Novella's misconduct is: (1) vacatur of this Court's ruling on the Anti-SLAPP motion, [Dkt. No. 193]; (2) an extension of the discovery deadlines; (3) the allowance of Plaintiffs to file an amended

16

complaint; (4) the allowance of Plaintiffs to re-depose Novella on his connections with the cabal seeking to discredit Dr. Tobinick; (5) an independent forensic search of Novella's computers and emails; (6) an extension of the dispositive motion deadline; (7) attorneys' fees and costs; (8) injunctive relief; (9) a default judgment, including punitive damages; and, (10) any other relief this Court determines.

Moreover, if this Court does not deny Novella's motion for summary judgment on the merits, it should deny it procedurally for refiling until after the remedies sought by Plaintiffs in the motions for sanctions and Rule 60(b) and Rule 37 relief have been carried through.

## IV. CONCLUSION

WHEREFORE, based on the foregoing, other materials to be submitted in, Plaintiffs respectfully ask this Court to deny Novella's motion for summary judgment either procedurally or on the merits.

Respectfully submitted,

| | |
|---|---|
| Jarod M. Bona<br>*Admitted Pro Hac Vice*<br>Aaron R. Gott<br>*Admitted Pro Hac Vice*<br>BONA LAW P.C.<br>4275 Executive Sq., Ste 200<br>La Jolla, CA 92037 (858) 964-4589<br>jarod.bona@bonalawpc.com<br>aaron.gott@bonalawpc.com | *s/ Cullin O'Brien*<br>Cullin O'Brien<br>Fla. Bar. No. 0597341<br>CULLIN O'BRIEN LAW, P.A.<br>6541 NE 21st Way<br>Ft. Lauderdale, Florida 33308<br>Telephone: (561) 676-6370<br>Fax: (561) 320-0285<br>E-Mail: cullin@cullinobrienlaw.com |

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that he filed the foregoing and the accompanying exhibits with the ECF system and served same on defense counsel this September 11, 2015.

*/s/ Cullin O'Brien*
Cullin O'Brien

Marc John Randazza
Randazza Legal Group
3625 South Town Center Drive
Las Vegas, NV 89135
Email: MJR@randazza.com