UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-CV-80781 ROSENBERG/BRANNON

EDWARD LEWIS TOBINICK, M.D., *et al*,

    Plaintiffs,

v.

STEVEN NOVELLA, M.D.,

    Defendant.

_____/

### ORDER GRANTING DEFENDANT DR. STEVEN NOVELLA M.D.'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendant Dr. Steven Novella M.D.'s Renewed Motion for Summary Judgment [DE 251]. The Court has reviewed the motion, the response [DE 272], the reply [DE 277], and the attached exhibits. The Court has also reviewed the record and is otherwise fully advised in the premises. For the reasons set forth below, the Motion [DE 251] is **GRANTED**. The speech at issue is not actionable under the Lanham Act because it is not commercial speech, and Plaintiffs' unfair competition claims fail as well because they rely on a similar theory of liability.

### I.   BACKGROUND

Plaintiffs' Amended Complaint, filed on August 1, 2014, brought five counts against four defendants. *See* DE 55. Many claims and defendants have been disposed of earlier in this litigation. The only remaining claims are: Count I for violation of the Lanham Act, 15 U.S.C. §

1

1125(a), and Count II for unfair competition.[1] The only remaining Defendant is Dr. Steven Novella, M.D.[2]

Counts I and II of the Amended Complaint are based on two articles written by Defendant Novella and published online at sciencebasedmedicine.org. DE 55 at ¶¶ 24, 101. Both articles address the practice of Plaintiff Edward Tobinick ("Plaintiff Tobinick"), a doctor who provides medical treatment to patients with "unmet medical needs" via two institutes—"Edward Lewis Tobinick M.D.," a California medical corporation, and "INR PLLC," a Florida professional limited liability company—both doing business as the "Institute of Neurological Recovery" (collectively "Plaintiffs"). DE 55 at ¶¶ 2–4, 12. Novella published the first article, "Enbrel for Stroke and Alzheimer's" ("the First Article"), on May 8, 2013 in response to a piece published in the *Los Angeles Times*. DE 55-1 at 1. As Novella described it,

> The [*Times*] story revolves around Dr. Edward Tobinick and his practice of perispinal etanercept (Enbrel) for a long and apparently growing list of conditions. Enbrel is an FDA-approved drug for the treatment of severe rheumatoid arthritis. It works by inhibiting tumor necrosis factor (TNF), which is a group of cytokines that are part of the immune system and cause cell death. Enbrel, therefore, can be a powerful anti-inflammatory drug. Tobinick is using Enbrel for many off-label indications, one of which is Alzheimer's disease (the focus of the LA Times story).

*Id.* The allegedly false statements in the First Article concern the viability of Plaintiff Tobinick's treatments, the scientific literature discussing those treatments, the size and locations of Plaintiff Tobinick's Institutes, and the categorization of Plaintiff Tobinick's practice as "health fraud." *See* DE 55 ¶¶ 54–56, 60–61, 63–64, 69–70, 71–72. Novella published the second article, entitled "Another Lawsuit To Suppress Legitimate Criticism – This Time SBM" ("the Second Article"),

---

[1] The Court dismissed Count V on January 23, 2015. *See* DE 117. On June 4, 2015, the Court struck Counts II-IV, as brought by California Plaintiff Edward Lewis Tobinick, M.D., under California's Anti-SLAPP statute. *See* DE 193 at 16-17. The remaining Plaintiffs then voluntarily dismissed their claims under Counts II-IV. *See* DE 201-02.

[2] The Court dismissed SGU Productions and Yale University for lack of personal jurisdiction, *see* DE 91-92, and granted the Society for Science-Based Medicine, Inc.'s motion for summary judgment, *see* DE 157.

2

on July 23, 2014, after Plaintiffs filed the instant lawsuit. DE 55-5 at 1. In large part, the Second Article simply restates the content of the first. DE 55-1 ¶¶ 102–03. The only statement in the Second Article which Plaintiffs allege is false and misleading is Novella's statement, as characterized by Plaintiffs, that "there have been no double-blind placebo-controlled clinical trials of the treatment provided by the Plaintiffs."[3] *Id.*

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.*

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

## III.   DISCUSSION

**A. The Lanham Act (Count I)**

Defendant Novella argues that summary judgment should be granted in his favor on Count I, the Lanham Act claim, because the statements in the First and Second Articles are not commercial speech. *See* DE 251 at 4. The Lanham Act provides in relevant part:

---

[3] In the second article, Novella actually states that "*I* [Novella] *could not find* a single double-blind placebo-controlled trial establishing the efficacy of [Tobinick's] treatment for any of the conditions I listed above. (There are small studies for disc herniation showing conflicting results.)." DE 55-5 at 3 (emphasis added).

3

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> . . .
>
> **(B)** *in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added). The Eleventh Circuit has adopted "[t]he most widely-accepted test for determining whether something is 'commercial advertising or promotion,'" *Suntree*, 693 F.3d at 1349, which was set forth in *Gordon and Breach Science Publishers S.A. v. American Institute of Physics*, 859 F. Supp. 1521 (S.D.N.Y. 1994):

> In order for representations to constitute "commercial advertising or promotion" under [15 U.S.C. § 1125(a)(1)(B)], they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* at 1535–36.

Regarding the second prong of this test, the Supreme Court recently ruled that a plaintiff does not need to show defendant was in commercial competition with plaintiff to have standing under the Lanham Act. *See LexMark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1394 (U.S. 2014) ("[W]hen a party claims reputational injury from disparagement, competition is not required for proximate cause; and that is true even if the defendant's aim was to harm its immediate competitors, and the plaintiff merely suffered collateral damage."); *see also Educ. Impact, Inc. v. Danielson*, No. CIVA 14-937 FLW LHG, 2015 WL 381332, at *13–14 (D.N.J. Jan. 28, 2015) (defendant's "assertion that because [defendant] is not in 'commercial

4

competition with plaintiff" there can be no violation of the Lanham Act is incorrect" under *Lexmark*). Thus, to the extent the parties dispute whether Plaintiffs and Defendant Novella are competitors, *see* DE 272 at 10 and DE 277 at 3, this issue is not dispositive of whether the speech at issue constituted "commercial advertising or promotion" within the meaning of 15 U.S.C. § 1125(a)(1)(B).

Regarding the first prong of this test, speech regulated by the Lanham Act "must at least fall within the meaning of 'commercial speech' pursuant to First Amendment jurisprudence." *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1286 (M.D. Fla. 2011) (collecting cases), *aff'd*, 693 F. 3d at 1338. This is because the Act "was not intended to apply, and cannot constitutionally be applied, to representations other than those determined to be commercial speech." *Gordon & Breach*, 859 F. Supp. at 1533. Under the "'commercial speech' doctrine developed by the United States Supreme Court," commercial speech "is entitled to a lesser degree of protection than other forms of constitutionally guaranteed expression." *Id.* at 1536.

"Speech that does *no more than* propose a commercial transaction falls within the core notion of commercial speech, but other communications also may constitute commercial speech notwithstanding the fact that they contain discussions of important public issues[.]" *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014) (internal citations omitted). In *Central Hudson Gas and Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980), the Supreme Court described commercial speech as "expression related solely to the economic interests of the speaker and its audience." In *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), which involved informational pamphlets addressing "important public issues such as venereal disease and family planning," the Supreme Court took an even more nuanced

5

approach. *Id.* at 68 (internal footnote omitted). In determining whether these pamphlets constituted commercial speech, the Supreme Court found it relevant that the communications were conceded to be advertisements, that they referred to specific products sold by the defendant, and that the defendant had an economic motivation for the speech. *Id.* at 66 & n.13, 67. It was "[t]he combination of *all* these characteristics" that led the Supreme Court in *Bolger* to conclude that the informational pamphlets constituted commercial speech. *Id.* at 67. Thus, *Bolger* "suggest[s] certain guideposts for classifying speech that contains both commercial and noncommercial elements; relevant considerations include whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech." *Jordan*, 743 F.3d at 517; *see, e.g., Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 n.22 (11th Cir. 1985) (relying on *Bolger* and holding, "[t]aken together, the defense of the Bank's business conduct, the underlying profit motive, and the invitation to opt out branded the telephone canvass as speech of commercial nature).

Considering the above-cited case law, the Court finds that the speech at issue here—that is, the First and Second Articles, published on www.sciencebasedmedicine.org[4]—is not commercial speech. The Articles proposed no commercial transaction, and consequently do not fall within the "core notion" of protected speech. *See Bolger*, 463 U.S. at 66. Furthermore, the Articles do not fall within the scope of the definition expounded in *Central Hudson*, "expression related solely to the economic interests of the speaker and its audience." 447 U.S. at 561. Both articles clearly state their intent to raise public awareness about issues pertaining to Plaintiffs'

---

[4] In their response to Defendant Novella's summary judgment motion, Plaintiffs argue that other statements made by Novella are "[l]ies and [m]isleading." DE 272 at 7-9. To the extent Plaintiffs are attempting to argue that statements other than those made in the First and Second Articles are violations of the Lanham Act, this is improper because these statements were not pled in Plaintiffs' complaint. *See Dantzler, Inc. v. PNC Bank, Nat'l Ass'n*, 946 F. Supp. 2d 1344, 1361-62 (S.D. Fla. 2013) (a party may not raise a new theory for the first time in response to a summary judgment motion; the proper procedure for a plaintiff is to amend its complaint in accordance with Rule 15(a)). The Court previously denied Plaintiffs' motions to amend their complaint. *See* DE 202, 245.

treatments.

Thus, the First and Second Articles can only potentially qualify as commercial speech under *Bolger*. Yet the Articles differ from the pamphlets at issue in *Bolger* in a number of ways. First, the Articles are not conceded to be advertisements. Second, the only products referenced in the First Article are Plaintiffs' treatments. To the extent that the Second Article mentions Defendant Novella's practice, it is in direct response to the instant litigation as opposed to an independent plug for that practice.

The third and final factor from *Bolger*, whether there was an "economic motivation" for the speech, is the primary basis for Plaintiffs' opposition to summary judgment. *See* DE 272. Essentially, Plaintiffs contend that the Articles are commercial speech because SGU Productions, a for-profit company controlled by Defendant Novella, earns money by selling advertisements on its website (skepticsguide.net), advertisements in a podcast, memberships, and goods such as t-shirts. *See* DE 272 at 5; DE 272-1 at ¶ 3. The website on which the Articles were published (sciencebasedmedicine.org) is registered to SGU, although Defendant Novella's brother, Jay Novella, testified the website is actually owned by the New England Skeptical Society ("NESS"), a separate non-profit organization also controlled by the Novellas. DE 261-10 at 18-20. Plaintiffs contend that SGU Productions, NESS, and the Articles are all part of an interrelated scheme to "funnel" money to Defendant Novella personally, and that the Articles are commercial speech in furtherance of this scheme. *See* DE 272 at 4-6, 13.

It is "settled or beyond serious dispute" that "[s]peech . . . is protected even though it is carried in a form that is 'sold' for profit, . . . and even though it may involve a solicitation to purchase or otherwise pay or contribute money." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976) (emphasizing, that "[i]f there is a kind of

commercial speech that lacks all First Amendment protection, . . . it must be distinguished by its content."); *see also Maverick Boat Co., Inc. v. Am. Marine Holdings, Inc.*, Case No. 02-14102-CIV, 02-14283-CIV, 2004 WL 1093035 (S.D. Fla. Feb. 10, 2004) ("[T]he Court assumes [the speaker], president and CEO of Maverick Boat Company, a private business enterprise, is also interested in making a profit from his products. The Court finds that this existence of an economic interest alone should not deprive the speech of constitutional protection."). Thus, even if Defendant Novella directly earns money from an organization sponsoring or producing the speech, this alone would not make the speech commercial. Furthermore, the specific evidence elicited in this case regarding SGU does not point to a strong economic motivation for the speech. Although Plaintiffs argue that "[t]he flow of money to Novella . . . is significant, as [Jay] Novella testified to over $200,000 last year," DE 272 at 5-6 (citing DE 260-10 at 127-28), Jay Novella also testified that, despite this profit, SGU "made no profit after expenses" because "we reinvest the vast majority of the money back into the company when we have a positive cash flow." DE 261-10 at 154. Plaintiffs have failed to point the Court to any evidence that Defendant Novella is actually paid a salary or otherwise earns any personal income from SGU. Moreover, Jay Novella testified that the goal of SGU is "to educate people in science and critical thinking," DE 260-10 at 131-32, 154, which is consistent with the Court's prior observation that the content of the Articles is directed towards raising public awareness of scientific issues, rather than promoting an economic interest.[5]

The Court therefore finds that Defendant Novella's speech in the First and Second

---

[5] While the present motion for summary judgment was pending, the parties filed motions contesting the admissibility of certain evidence cited by Plaintiffs in opposition to summary judgment: namely, audio recordings of Jay Novella discussing SGU's marketing practices at a conference [DE 283, 287]. To the extent the parties are contesting the evidence's admissibility in relation to summary judgment, the Court declines to rule on this issue because it finds the evidence duplicative of admissible deposition testimony by Jay Novella regarding SGU's marketing practices, and otherwise irrelevant. To the extent the parties seek a ruling as to this evidence's admissibility at trial, this issue is moot due to the grant of summary judgment for Defendant Novella.

Articles does not qualify as commercial speech, such that the Articles can form the basis of a Lanham Act claim. Accordingly, Defendant Novella is entitled to summary judgment on Count I.

### B. Unfair Competition (Count II)

"Under Florida common law, unfair competition is an 'umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters.'" *Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-CV-775-T-24-TBM, 2012 WL 33155, at *4 (M.D. Fla. Jan. 6, 2012) (quoting *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1325 (M.D. Fla. 2007)). "[A] party may claim unfair competition under a variety of theories, including trademark infringement, . . . and tortious interference with business relations . . . . Therefore, there is no single set of 'elements that apply uniformly to all claims of unfair competition.'" *Id.* (quoting *Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 432 F. Supp. 2d 1319, 1353 (S.D. Fla. 2006)). "Accordingly, courts have applied elements from other established claims to unfair competition claims, where appropriate, on a case-by-case basis." *Id.*

In their Amended Complaint, Plaintiffs allege that Defendant Novella "published [the Articles], and the false and misleading statements contained therein, in furtherance of promoting his own interests," that this conduct was "willful and intentional," and that the statements caused "substantial injury to their goodwill and reputation." DE 55 at ¶¶ 120, 124-25. Plaintiffs are therefore "bas[ing] [their] common law unfair competition claim on a theory of false advertising." *Ameritox*, 2012 WL 33155 at *5. The Court has evaluated Plaintiffs' common law unfair competition claims through the lens of the Lanham Act, and based on the Court's conclusion that Defendant Novella is entitled to summary judgment on that claim, the Court finds Defendant Novella is likewise entitled to summary judgment on Count II for unfair

9

competition. *See id.*; *Natural Answers, Inc. v. SmithKline Beecham Corp.,* 529 F.3d 1325, 1332–33 (11th Cir. 2008) ("Since Natural Answers is unable to bring an unfair competition claim under the Lanham Act under the theory of either false advertising or trademark infringement, it follows that the common law claims based on unfair competition and trademark infringement must fail as well."); *see also Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition.").

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant Dr. Steven Novella, M.D.'s Motion for Summary Judgment [DE 251] is **GRANTED**. All pending motions are **DENIED AS MOOT**, all deadlines are **TERMINATED**, and the Clerk of the Court is directed to **CLOSE THIS CASE**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 30th day of September, 2015.

Copies furnished to:  
Counsel of record

ROBIN L. ROSENBERG  
UNITED STATES DISTRICT JUDGE