**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

EDWARD LEWIS TOBINICK, M.D., *et al.*,

      Plaintiffs,

      v.

STEVEN NOVELLA, M.D., *et al.*,

      Defendants.

Case No: 9:14-cv-80781-RLR

**DEFENDANT'S OMNIBUS MOTION FOR ATTORNEYS' FEES AND COSTS**

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

  1.0   DR. NOVELLA IS ENTITLED TO FEES UNDER CAL. CIV. PROC. § 425.16 ...........................2

   1.1   Analysis.........................................................................................4

    1.1.1 California Lodestar Analysis Determines the
          Amount of the Mandatory Attorney Fee Award. ...................................4

    1.1.2 The Hourly Rates of Dr. Novella's Attorneys Are Reasonable...............7

    1.1.3 The Number of Hours Are Reasonable....................................................12

    1.1.4 California Law Supports Applying a Fee Enhancement
          Multiplier to the Entire base Lodestar Amount. ...................................14

    1.1.5 Alternatively, a Partial Fee Multiplier is Reasonable
          and Appropriate...................................................................................15

    1.1.6 Novella Is Also Entitled to an Award of Attorney Fees
          and Costs Associated with Bringing this Motion for Fees ...................17

  2.0   DR. NOVELLA IS ENTITLED TO FEES UNDER THE LANHAM ACT................................18

  3.0   SANCTIONS UNDER 28 U.S.C. § 1927 ARE PROPER .........................................26

  4.0   CONCLUSION ........................................................................................29

  5.0   COMPLIANCE WITH LOCAL RULE 7.1(A)(3) ............................................30

CERTIFICATE OF SERVICE ........................................................................32

# TABLE OF AUTHORITIES

## CASES

*America Online, Inc. v. Superior Court,*
    90 Cal. App. 4th 1 (Cal. App. 1st Dist. 2001) .........................................................15

*Amlong & Amlong, P.A. v. Denny's, Inc.,*
    457 F.3d 1180 (11th Cir. 2006) ............................................................................28

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003) ..............................................................................2

*Burger King Corp. v. Pilgrim's Pride Corp.,*
    15 F.3d 166 (11th Cir. 1994) ...............................................................................18

*Burlington v. Dague,*
    505 U.S. 557 (1992).............................................................................................6

*Cates v. Chiang,*
    213 Cal. App. 4th 791 (Cal. App. 4th Dist. 2013)..................................................14

*Chacon v. Litke,*
    181 Cal.App.4th 1234 (2010) ................................................................................7

*Citizens Against Rent Control v. City of Berkeley,*
    181 Cal. App. 3d 213, 233, n15 (Cal. App. 1st Dist. 1986) ...................................13

*Davis v. City of San Diego,*
    106 Cal. App. 4th 893 (Cal. App. 4th Dist. 2003).................................................7

*Davis v. Mutual Life Ins. Co. of New York,*
    6 F.3d 367, 382-83 (6th Cir. 1993), *cert. denied,* 114 S. Ct. 1298 (1994) ................5

*Diamond Aircraft v. Horowitch,*
    107 So. 3d 362 (Fla. 2013) ...........................................................................4, 23

*Federal Trade Commission v. Roca Labs, Inc.,*
    Case No. 8:15-cv-02231-MSS-TBM, United States District Court,
    Middle District of Florida, Docket #1, September 24, 2015 ..................................23

*Fox v. Vice,*
    563 U.S. 826, 131 S. Ct. 2205 (2011).................................................................13

RANDAZZA | LEGAL GROUP

*Freid v. Nat'l Action Fin. Servs.,*
  2011 U.S. Dist. LEXIS 149668, *28, 2011 WL 6934845 (D.N.J. Dec. 29, 2011) ..........26

*Gowen Oil Co. v. Abraham,*
  511 Fed. Appx. 930, 2013 U.S. App. LEXIS 4563,
  2013 WL 812264 (11th Cir. Ga. 2013) .......................................................................5

*Graham v. DaimlerChrysler Corp.,*
  34 Cal. 4th 553 (Cal. 2004) ...........................................................................7, 17, 18

*Harman v. City and County of San Francisco,*
  136 Cal. App. 4th 1279, 1310 (Cal. App. 1st Dist. 2006) ........................................12

*Humane Soc. of Broward County, Inc. v. Florida Humane Soc.,*
  951 So. 2d 966 (Fla. Dist. Ct. App. 2007) ...............................................................23

*Ingenuity 13 LLC v. Doe,*
  2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013) .............................................26

*Jallali v. USA Funds,*
  578 Fed. Appx. 965, 966, 2014 U.S. App. LEXIS 16593, *3 (11th Cir. Fla. 2014) .....27

*Johnson v. Conner,*
  754 F.3d 918 (11th Cir. 2014) ................................................................................23

*Kern Oil and Refining Co. v. Tenneco Oil Co.,*
  792 F.2d 1380 (9th Cir. 1986), *cert. denied,* 480 U.S. 906 (1987) ...........................5

*Ketchum v. Moses,*
  24 Cal. 4th 1122 (2001) ................................................................................passim

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
  523 U.S. 26 (1998)..................................................................................................23

*Lexmark Int'l, v. Static Control Components, Inc.,*
  572 U.S. ___, ___, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 406 (2014) ...........................24

*Lipscher v. LRP Publications, Inc.,*
  266 F.3d, 1305, 1320 (11th Cir. 2001).....................................................................22

*Lunada Biomedical v. Nunez,*
  230 Cal. App. 4th 459 (2014)..................................................................................16

RANDAZZA | LEGAL GROUP

*Malautea v. Suzuki Motor Co., Ltd.*,
   987 F.2d 1536 (11th Cir. 1993) ...............................................................................28

*Mangold v. PUC*,
   67 F.3d 1470 (9th Cir. 1995) .............................................................................5, 6

*Mann v. Quality Old Time Service, Inc.*,
   139 Cal. App. 4th 328 (2006) ................................................................................2

*Mathis v. Exxon Corp.*,
   302 F.3d 448 (5th Cir. 2002) .................................................................................5

*Meaux v. Springfield*,
   2014 Cal. App. Unpub. LEXIS 4969, *3,
   2014 WL 3509848 (Cal. App. 1st Dist. July 16, 2014)...............................16

*Murray v. Playmaker Servs., LLC*,
   548 F.Supp.2d 1378, 2008 U.S. Dist. LEXIS 51795 (S.D. Fla. 2008)...........................29

*Nemecek & Cole v. Horn*,
   208 Cal. App. 4th 641 (2012).............................................................................7, 9

*Norman v. Housing Authority of City of Montgomery*,
   836 F.2d 1292, 1301 (11th Cir. 1988) .................................................................12

*Northern Heel Corp. v. Compo Industries*,
   851 F.2d 456 (1st Cir. 1988) .................................................................................5

*Oden v. Vilsack*,
   2013 U.S. Dist. LEXIS 112464, *72 (S.D. Ala. Aug. 9, 2013) .........................5

*PLCM Group, Inc. v. Drexler*,
   22 Cal. 4th 1084 (Cal. 2000) ..............................................................................14

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
   977 F.2d 47 (2d Cir. 1992) ....................................................................................5

*Russell v. Foglio*,
   160 Cal. App. 4th 653, 73 Cal. Rptr. 3d 87,
   2008 Cal. App. LEXIS 302 (Cal. App. 2d Dist. 2008) ........................................3

*Samuels v. King Motor Co.*,
   782 So. 2d 489 (Fla. Dist. Ct. App. 4th Dist. 2001) .........................................23

Defendant's Omnibus Motion for Attorneys' Fees and Costs

*Sanders v. City of Orlando,*
997 So. 2d 1089 (Fla. 2008) ...................................................................23

*Schwartz v. Millon Air, Inc.,*
341 F.3d 1220 (11th Cir. 2003) .............................................................28

*Serrano v. Unruh (Serrano IV),*
32 Cal. 3d 621 (Cal. 1982) ....................................................................17

*Syers Properties III, Inc. v. Rankin,*
226 Cal. App. 4th 691 (Cal. App. 1st Dist. 2014) ..................................7, 9

*Thayer v. Wells Fargo Bank,*
92 Cal. App. 4th 819 (Cal. App. 1st Dist. 2001) .......................................6

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,*
253 F.3d 1332 (11th Cir. 2001) ..........................................................18, 22

*Trans Coastal Roofing Co. v. David Boland, Inc.,*
309 F.3d 758, 2002 U.S. App. LEXIS 21228, *1,
15 Fla. L. Weekly Fed. C 1117 (11th Cir. Fla. 2002) ................................4

*Trope v. Katz,*
11 Cal. 4th 274 (Cal. 1995) ..................................................................18

*Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.,*
2009 U.S. Dist. LEXIS 57263 (S.D. Fla. July 7, 2009) ...........................23

*Wynn v. Chanos,*
2015 U.S. Dist. LEXIS 80062, *6 (N.D. Cal. June 19, 2015) .............10, 11, 13

**STATUTES**

15 U. S. C. §1127 .................................................................................24

15 U.S.C. § 1117 .................................................................................18

60 Stat. 427 (1946) .............................................................................24

Cal. Civ. Proc. Code § 425.16 ...........................................................2, 6

Fla. Stat. § 501.204 ............................................................................23

Fla. Stat. § 768.295 ............................................................................22

RANDAZZA | LEGAL GROUP

Defendant's Omnibus Motion for Attorneys' Fees and Costs

**OTHER AUTHORITIES**

Black's Law Dictionary (Eighth Ed. 2004) .................................................................23

*Moore's Federal Practice* § 124.07 (2008) ..............................................................5

*Pearl, Cal. Attorney Fee Awards* (Cont.Ed.Bar 3d ed. 2014 supp.) § 9.109 ............7

**RULES**

Cal. Civ. Proc. Code § 425.16 ...................................................................................29

RANDAZZA | LEGAL GROUP

Defendant's Omnibus Motion for Attorneys' Fees and Costs

Defendant STEVEN NOVELLA, M.D. hereby moves this Court for entry of an order awarding attorneys' fees and costs against Plaintiff, EDWARD LEWIS TOBINICK, M.D., a Medical Corporation d/b/a THE INSTITUTE OF NEUROLOGICAL RECOVERY, Edward Tobinick, M.D., individually, (collectively called "Plaintiffs" or "Tobinick" herein) and his counsel. Defendant submits this motion based on the following Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any oral argument permitted by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

Tobinick filed a SLAPP suit on June 9, 2014, against Dr. Novella for allegedly violating 15 U.S.C. §1125(a), unfair competition, trade libel, libel per se, and tortious interference with business relationships. The case was filed due to Dr. Novella's science journalism regarding regarding Tobinick's off-label use of the drug etanercept for stroke victims. *See* DE 1. Attorney Marc J. Randazza of the Randazza Legal Group, a litigator with extensive experience representing individuals and companies involved in defamation suits and Anti-SLAPP motions, and other experienced attorneys with Randazza Legal Group represented Dr. Novella. *See* Declaration of Judge James C. Hauser ["Hauser Decl.] at ¶¶ 4-6 attached as **Exhibit 1**; *see also* Declaration of Marc J. Randazza ["Randazza Decl."] at ¶¶ 1-5, attached as **Exhibit 2**. Dr. Novella's counsel filed the Anti-SLAPP Motion on September 30, 2014 (DE 93), and then a Reply in Support of the Anti-SLAPP Motion on October 24, 2014. DE 106. On June 4, 2015 the Court ordered all of the California Plaintiff's state law claims stricken under the California Anti-SLAPP statute. DE 193. However, this was not to be the end—Dr. Novella was also forced to respond to a spurious motion for reconsideration that was quickly denied by the Court on September 15, 2015. DE 275.

Before, during, and after the pendency of the Anti-SLAPP motion, Dr. Novella was also forced to litigate an unsupportable Lanham Act claim. On

October 2, 2015, this Court awarded Dr. Novella summary judgment on all remaining claims, with focus on the Lanham Act, by all three Plaintiffs. *See* DE 288. This order also dispensed of the remaining state law claims, including a state unfair competition claim, which the Plaintiffs characterize as a FDUTPA claim. *See* DE 272 at p. 17 (internal page 14).

## 1.0    Dr. Novella is Entitled to Fees Under Cal. Civ. Proc. § 425.16

Dr. Steven Novella prevailed against the California plaintiff in his Special Motion to Strike under Cal. Civ. Proc. Code § 425.16 (DE 93) ("Anti-SLAPP Motion") and now requests fees and costs he is entitled to under Cal. Civ. Proc. Code § 425.16(c)(1). *See* DE 193, Order Granting Defendant Steven Novella's Special Motion to Strike (Anti-SLAPP Motion); *see also* DE 275, Order Denying Motion to Vacate Anti-SLAPP Order under Rule 60(b). SLAPP (strategic lawsuit against public participation) suits are designed to punish parties for (or deter them from) exercising their First Amendment rights. *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003). Under the California Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, attorneys' fees and costs are mandatory for a prevailing defendant. *See* Cal. Civ. Proc. Code § 425.16(c)(1); *see also Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-1132 (2001) ("[a]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees."). This requirement serves to "discourage meritless SLAPP claims by compelling a SLAPP plaintiff to bear a defendant's litigation costs incurred to eliminate the claim from the lawsuit." *Mann v. Quality Old Time Service, Inc.*, 139 Cal. App. 4th 328, 344 (2006) (citing Cal. Civ. Proc. Code §§ 425.16, 425.17 and *Ketchum*, 24 Cal.4th at 1131). In conformance therewith, this Court has already ruled that Novella is entitled to his fees. *See* DE 193 at p. 16.

The hourly rates charged by Dr. Novella's counsel while defending this action were reasonable because of the expertise of the attorneys, the novelty

of the issue, and the results obtained. The number of hours Dr. Novella's counsel spent defending this action were also reasonable. *See generally* Hauser Decl.

For researching, drafting and presenting only the Anti-SLAPP Motion and Reply before the Court, Dr. Novella was charged $52,694.55 ($61,571.00 total anti-SLAPP fees - $9,147.50 motion for reconsideration + $271.05 costs = $52,694.55) in costs and fees. *See* Randazza Decl. at ¶24; *see also* Attorney Timesheet, attached as **Exhibit 3**; *and see* Billing Summary, attached as **Exhibit 5**. Dr. Novella would have been charged $73,993.55 ($84,717.50 anti-SLAPP fees at standard rates - $10,995.00 motion for reconsideration fees at standard rates + $271.05 costs = $73,993.55), but was provided a partial contingency fee discount out of respect for the fundamental First Amendment issues at hand. This deduction was provided with the understanding that if Dr. Novella prevailed, counsel would have the right to collect the entirety of their fees, based on their full and customary rates. *See* Randazza Decl. at ¶23; *see also* **Exhibit 3**, *and see* **Exhibit 5**. Dr. Novella's counsel therefore risked, and Dr. Novella saved, $23,146.50 ($84,717.50 - $61,571.00 = $23,146.50). *See* Randazza Decl. at ¶24; *see also* **Exhibit 5**.

Further, Defendant accrued $9,147.50 in fees for defending the Anti-SLAPP motion against a baseless motion for reconsideration. *See* DE 275; *see also Russell v. Foglio*, 160 Cal. App. 4th 653, 73 Cal. Rptr. 3d 87, 2008 Cal. App. LEXIS 302 (Cal. App. 2d Dist. 2008) (awarding fees for work defending against a reconsideration motion). Dr. Novella would have been charged $10,995.00, but was provided the same partial contingency fee discount outlined above. Dr. Novella's counsel therefore risked, and Dr. Novella saved, $1,847.50 ($10,995.00 - $9,147.50 = $1,847.50). *See* **Exhibit 5**.

In addition to the fee awards for bringing and defending the Anti-SLAPP motion and order, Dr. Novella is entitled, without question, to recover the fees

associated with bringing this motion and the amount intertwined with it in the amount of $31,980.50.[1] These fees were unfortunately necessary, because despite numerous attempts to resolve the fee liability, none of the Plaintiffs were willing to engage in serious discussions to resolve this matter. *See* Emails documenting fee settlement attempts, attached as **Composite Exhibit 6**.

Dr. Novella requests that a x2.0 fee enhancement multiplier be applied to the base lodestar amount in recognition of the novelty and complexity of the issues, the level of expertise of counsel, the contingency nature of a portion of the fees, and in recognition of the stated public policy of discouraging meritless lawsuits. This approach would result in a fee award of $169,435.00 (2 x $84,717.50 = $169,435.00) including the work on the motion for reconsideration, and $147,445.00 ($169,435.00 − (2 x $10,995.00) = $147,445.00) excluding such work. Dr. Novella alternatively requests a reasonable partial fee multiplier (enhancement) be applied to only the contingency portion of the fees, for a fee award of $107,864.00 ($61,571.00 + (2 x $23,146.50) = $107,864.00) including the work on the motion for reconsideration, and $95,021.50 ($52,423.50 + (2 x $21,299.00) excluding such work. *See* **Exhibit 5.**

## 1.1   Analysis

### 1.1.1  California Lodestar Analysis Determines the Amount of the Mandatory Attorney Fee Award.

When federal courts rule on state law claims with attorney fee provisions, the state law fee provisions apply. *See Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760, (11th Cir. 2002); *see also Diamond Aircraft v. Horowitch*, 107 So. 3d 362 (Fla. 2013). When determining the amount of fees,

---

[1] Although this motion addresses other bases for fee recovery, the work thereon is intertwined with that for the Anti-SLAPP.

federal courts apply fee allocation procedures of the corresponding state. *Mangold v. PUC*, 67 F.3d 1470, 1478 (9th Cir. 1995).[2]

District courts in this Circuit apply state reasonableness standards. *Oden v. Vilsack*, 2013 U.S. Dist. LEXIS 112464, *72 (S.D. Ala. Aug. 9, 2013). Similarly, the other circuits that have addressed the issue have been consistent in applying state reasonableness standards. *See Northern Heel Corp. v. Compo Industries*, 851 F.2d 456, 475 (1st Cir. 1988); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision").[3]

Commentators agree. According to *Moore's Federal Practice*, "[s]tate law generally governs a litigant's entitlement to an award of attorney's fees because attorney fee statutes are substantive state law." *Moore's Federal Practice* § 124.07[3][b] (2008). "Stated differently, a federal court sitting in diversity applies state law in determining whether to allow attorney's fees when those fees are connected to the substance of the case." *Id*. And, according to Moore's, state

---

[2] There is limited direction from the Eleventh Circuit on this issue. In one unreported case, the Eleventh Circuit applied federal law to determine the reasonableness of attorney fees awarded under a Georgia law in a diversity action. *See Gowen Oil Co. v. Abraham*, 511 Fed. Appx. 930, 934, 2013 U.S. App. LEXIS 4563, 2013 WL 812264 (11th Cir. Ga. 2013). However, the question of whether to apply state or Federal law was not before the Court of Appeals as neither party objected to the trial court's application of federal standards for evaluating reasonableness. *See id*. Further, as the "district court noted, the outcome would be the same under Georgia law." *Id*. at *6, n.5. By even considering state law, the Eleventh Circuit indicated that application of state law may otherwise have been the appropriate standard, but application of Federal standards was harmless error.

[3] The Supreme Court has at least twice declined to review the issue. *See Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 382-83 (6th Cir. 1993), *cert. denied*, 114 S. Ct. 1298 (1994); *see also Kern Oil and Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380 (9th Cir. 1986), *cert. denied*, 480 U.S. 906 (1987).

law respecting the method of calculating and determining the reasonableness of the fees is a matter of substantive law. "When state law controls, state law governs not only the right to fees, but also the method of calculating the fees. The method of calculating a fee is an inherent part of the substantive right to the fee itself and reflects substantive state policy." *Id*. at § 124.07[3][b] (2008) (citing *Mangold v. California PUC*, 67 F.3d 1470, 1478-79 (9th Cir. 1995) (state law formula used to calculate fees because otherwise it would result in forum shopping). Thus, the overwhelming authority establishes that California state law determines the amount of attorney fees to award relating to the Court's striking of Tobinick's SLAPP suit under Cal. Civ. Proc. Code § 425.16.

California, like the federal courts and many state courts, uses the lodestar method to determine reasonable attorney fees in most situations, including fee awards under Cal. Civ. Proc. Code § 425.16. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("by its terms, Code of Civil Procedure section 425.16 permits the use of the so-called lodestar adjustment method under our long-standing precedents"). In a lodestar analysis, the court takes the number of hours the attorney should have reasonably spent working on the case and multiplies it by a reasonable hourly rate to determine the value of that attorney's services. *Id*. at 1132. Once the court has fixed the lodestar amount, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and any contingent risk presented. *See Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 833 (Cal. App. 1st Dist. 2001).

California rejects the limitations on lodestar fee enhancements that the Supreme Court imposed upon the federal courts analyzing fees available under federal law in *Burlington v. Dague* 505 U.S. 557 (1992). *See Ketchum v. Moses*, 24

Cal. 4th at 1137. ("Ketchum urges that we should adopt the policy arguments in the United States Supreme Court decision in [*Burlington v. Dague*] which barred the use of fee enhancements in certain types of cases in the federal courts. After careful consideration we decline to do so."); *see also Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 568-569 (Cal. 2004) ("United States Supreme Court interpretation of federal statutes does not bind us to similarly interpret similar state statutes. Indeed, in the realm of attorney fees for private attorneys general, this court has markedly diverged from United States Supreme Court precedent."); *and see Davis v. City of San Diego*, 106 Cal. App. 4th 893, 903 (Cal. App. 4th Dist. 2003) (California courts apply a method "well established in a large body of California precedent" and are not bound by federal law determining reasonableness of fees.) Accordingly, California courts allow for greater use of lodestar fee enhancements than federal or Florida courts, and given that the Anti-SLAPP entitlement is under California law, this court should engage in dépeçage and analyze the Anti-SLAPP portion under California law.

### 1.1.2  The Hourly Rates of Dr. Novella's Attorneys Are Reasonable

To determine the reasonable hourly rates, a court looks at the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skill, experience, and reputation. "The determination of the 'market rate' is generally based on the rates prevalent in the community where the court is located." *Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 700 (Cal. App. 1st Dist. 2014), citing *Pearl, Cal. Attorney Fee Awards* (Cont.Ed.Bar 3d ed. 2014 supp.) § 9.109, p. 9-93. The market rate is applied even if the attorneys "charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel." *Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 651 (2012); *see Chacon v. Litke* 181 Cal.App.4th 1234, 1260 (2010). For purposes of a

RANDAZZA | LEGAL GROUP

lodestar analysis, the relevant market is where the case was filed, which in the instant case is the Southern District of Florida.

The hourly rates sought by Dr. Novella's counsel are within the range approved for attorneys of similar experience, skill, and reputation in the Southern District of Florida. *See* Hauser Decl. at ¶¶8-11; *see also* Randazza Decl. at ¶¶11-16. Mr. Randazza is a nationally accomplished attorney in the areas of First Amendment and free speech law, having litigated dozens of First Amendment cases and taught First Amendment and free speech law in law schools in the United States and abroad, and in various other legal settings, including testifying before legislative bodies drafting and enacting Anti-SLAPP statutes. *See* Hauser Decl. at ¶4-6; *see also* Randazza Decl. at ¶¶9-10; *and see curriculum vitae* of Marc J. Randazza, attached as **Exhibit 4**. Over his 13 years of First Amendment litigation experience (plus a two year communications law fellowship after graduation from law school), Mr. Randazza has developed a special facility in the area of Anti-SLAPP litigation. *See* Hauser Decl. at ¶¶4-6; *see also* Randazza Decl. at ¶10; *and see* **Exhibit 4**.[4]

Dr. Novella's Anti-SLAPP litigation involved a complicated choice of law analysis and a rare instance of California's Anti-SLAPP statute being applied outside the State of California. *See* Hauser Decl. at ¶6; *see also* Randazza Decl. at ¶20. The motion, therefore, required an experienced attorney possessing Mr. Randazza's expertise and legal acumen, who is also admitted to practice in both California and Florida, to effectively litigate it. *See* Hauser Decl. at ¶6; *see also* Randazza Decl. at ¶1.

---

[4] In fact, Mr. Randazza was instrumental in the passage of Nevada's Anti-SLAPP statute. *See* Hauser Decl. at ¶4; *see also* Randazza Decl. at ¶10; **Exhibit 4**; *and see* Minutes: Assemb. Comm. on Judiciary, 77th Sess. (Nev. May 6, 2013) (Senator Jones describing Randazza as "one of the preeminent experts on the issue" of Anti-SLAPP litigation.)

During the period that Mr. Randazza worked on this matter, his customary hourly rate was $650.00. *See* Hauser Decl. at ¶8; *see also* Randazza Decl. at ¶11. According to the Civil Division for the United States Attorney's Office's Laffey Matrix, which reflects rates for attorneys trying federal cases, the standard acceptable billing rate for such an experienced attorney is $655 per hour.[5] *See* Laffey Matrix, attached as **Exhibit 7**. As of 2012, the average hourly rate for partners and senior counsel nationwide was $671. *See* Mary Smith Judd, "Hourly Rates In A Time Of Moderation," DAILY REPORT (Mar. 27, 2013), attached as **Exhibit 8**. Again, Mr. Randazza's hourly rate is reasonable, as he has over thirteen years of legal experience and his fees are lower than the customary hourly rate of $655 for partners and senior counsel.

Multiple courts have found Mr. Randazza's attorney fees reasonable and have awarded such fees. For example:

a.  *Liberty Media Holdings LLC v. FF Magnat Limited et al.*, 2012 WL 3834744 at *5 (D. Nev. Sept. 4, 2012) (approving a 2012 hourly rate of $500);

b.  *Liberty Media Holdings, LLC v. Albert*, Civil Case No. 11-cv-00573-BEN-MDD (S.D. Cal. Jan. 3, 2012) (approving a 2011 hourly rate of $450);

c.  *Liberty Media Holdings, LLC v. Vinigay.com*, U.S. Dist. LEXIS 153615 (D. Ariz. Dec. 28, 2011) (approving 2011 hourly rates of $450);

d.  *Righthaven, LLC v. Wolf*, Civil Case No. 11-cv-00830 (D. Colo. Nov. 10, 2011) (approving 2011 hourly rates of $425);

---

[5] California courts routinely look to the Laffey Matrix for guidance on reasonable hourly rates and find rates to be consistent with the Laffey Matrix even when the actual fee charged was less. *See Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th at 700; *see also Nemecek & Cole v. Horn*, 208 Cal. App. 4th 641, 650 (Cal. App. 2d Dist. 2012).

e.    *Righthaven, LLC v. Hoehn*, Civil Case No. 11-cv-00050 (D. Nev. Aug. 15, 2011) (approving 2011 hourly rates of $425).

Mr. Randazza's rate increases over the past four years are consistent with the Laffey Matrix increases over the same time. *See* **Exhibit 6**.

As a further point of reference, in a similar 2015 case, a federal court in California reviewed hourly rates awarded for prevailing in an Anti-SLAPP motion. *See Wynn v. Chanos*, 2015 U.S. Dist. LEXIS 80062, *6 (N.D. Cal. June 19, 2015). In that case, the defendant's attorneys sought an hourly rate of between $1,035 and $1,085. The defendant's counsel had experience in the financial industry, but had limited experience on First Amendment and defamation law. *Id*. at *2. The plaintiff in that case argued that a rate of $650 would be reasonable for this same attorney. *Id*. In holding for the defendant, the court ruled that the rates "are reasonable rates for attorneys in the Bay Area." *Id*. In comparison, Mr. Randazza, who is an expert in First Amendment and Anti-SLAPP law, seeks only **$650.00** per hour, as compared to the $1,085 found reasonable in the *Wynn* case. In light of this precedent, a $650.00 rate is reasonable.

During the period that Mrs. Haar worked on this matter, her customary hourly rate was $325.00. *See* Randazza Decl. ¶13. Mrs. Haar is licensed to practice in both New York and Nevada, and she has five years of experience in both criminal and civil law with a focus on First Amendment litigation, including defamation, false advertising, and Anti-SLAPP motions. *Id*. According to the Laffey Matrix, the standard acceptable billing rate for such an experienced attorney is $402 per hour. *See* **Exhibit 7**. By comparison, the average hourly rate for associates in Atlanta, Georgia (also in the Eleventh Circuit) was $310 in 2012. *See* **Exhibit 8**. Fees of $325.00 are therefore reasonable for an attorney of Mrs. Haar's experience, given the customary rates in and around Florida. *See* Hauser Decl. at ¶11.

Similarly, Attorney Alex Shepard, an associate attorney admitted to practice in California and Nevada, who has been practicing for two years billed at the rate of $325 per hour. *See* Randazza Decl. at ¶14. Pursuant to the Laffey Matrix, his acceptable billing rate is $331 per hour. *See* **Exhibit 7**. Attorney Jay Wolman, Counsel at Randazza Legal Group, who is admitted to practice in Connecticut, New York, Massachusetts, and the District of Columbia, has been practicing for fourteen years and billed at the rate of $400 per hour. Pursuant to the Laffey Matrix, his acceptable billing rate is $661 per hour. *See* **Exhibit 7**. Finally, D. Gill Sperlein, a partner with Randazza Legal Group, admitted to practice in California since 1994, billed at the rate of $475; under the Laffey Matrix his acceptable rate is also $661 per hour. *See* **Exhibit 7**. Paralegal/Law Clerk time under the Laffey Matrix is $180 per hour. *See* **Exhibit 7**.

Again, comparing *Wynn v. Chanos*, the defendant sought an hourly rate of between $570 and $710 for two associates working on the case, with four and six years experience, respectively. *See Wynn*, 2015 U.S. Dist. LEXIS 80062 at *2. The plaintiff in that case argued that rates of $355 and $395 would be reasonable for these two attorneys. *See id*. Though the court thought the defendant's counsel's rates were the higher end of "reasonable," it still awarded the defendant his attorneys' fees of $710 for the associate time. In comparison, the rates of Randazza Legal Group attorneys are far lower than $710 amount the court found reasonable for an associate and lower than $395 amount the adverse party deemed reasonable as well.

The requested fees for Mr. Randazza and Randazza Legal Group are within the norm, or below, for attorneys in both Florida and California. This case required a litigator and law firm with exceptional and specialized experience in defamation to address many novel aspects not found in typical defamation

cases. Therefore, Dr. Novella's anti-SLAPP lodestar fee basis of $84,717.50 is reasonable.

### 1.1.3  The Number of Hours Are Reasonable

Attorneys are required to use "billing judgment" to determine appropriate billable hours. "In the private sector, billing judgment is an important component in fee setting. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Harman v. City and County of San Francisco*, 136 Cal. App. 4th 1279, 1310 (Cal. App. 1st Dist. 2006). "[C]ounsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter." *Id.* (citing *Norman v. Housing Authority of City of Montgomery* 836 F.2d 1292, 1301 (11th Cir. 1988).

Dr. Novella's counsel spent 178.35 hours litigating the Anti-SLAPP motion, including 24 hours spent on the motion for reconsideration, and have carefully documented all of their time in a detailed spreadsheet.[6] *See* **Exhibit 3**; *see also* **Exhibit 5**. To maximize cost efficiency, Mr. Randazza had Mrs. Haar take primary responsibility for any functions that a lower-level associate could handle at a lower rate, including investigation, research, and drafting memoranda, while Mr. Randazza provided litigation strategy and made the ultimate decisions as to the motions and pleadings. *See* Randazza Decl. ¶19. Similarly, Messrs. Wolman and Shepard were utilized in opposing reconsideration. Dr. Novella's counsel made every effort to avoid duplication of work and otherwise minimize the fees and costs incurred. *See* Randazza Decl. at ¶20.

---

[6] The spreadsheet is provided to assist the Court as some tasks relate both to fees that may be awarded under the Lanham Act and those under the California Anti-SLAPP law, to avoid double recovery. The actual corresponding invoices to the client appear at **Exhibit 9**.

In California, the novelty of the factual and legal issues presented may be considered in determining the reasonableness of both the hourly rate charged and the number of hours spent. *See Citizens Against Rent Control v. City of Berkeley*, 181 Cal. App. 3d 213, 233, n15 (Cal. App. 1st Dist. 1986). Owing to the unusual scientific factual questions involved, and the novel choice of law issues involved, along with a rare and convoluted reconsideration motion, this case was far more complicated than a normal defamation action. As this case is essentially a dispute as to the state of scientific evidence on the basis of Tobinick's treatment methods, Dr. Novella's attorneys had to translate a great deal of medical literature and terminology in order to assist the Court in differentiating statements of fact from statements of opinion. *See* Randazza Decl. at ¶21. Dr. Novella's counsel artfully presented these complex constitutional issues to the Court, resulting in a victory not only for Dr. Novella, but for public health and scientific discourse in general. *See* Randazza Declaration at ¶22.

Referring again to *Wynn v. Chanos*, the court held that 582.65 was a reasonable number of hours to spend on an Anti-SLAPP motion. *Wynn*, 2015 U.S. Dist. LEXIS 80062 at *5. In comparison, 154.35 hours (178.35 hrs – 24 hrs = 154.35 hrs) spent by Dr. Novella's attorneys was far more economical.

Moreover, Dr. Novella's attorneys' time is well documented. In comparison, the Supreme Court has noted, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 131 S. Ct. 2205, 2216 (2011). Dr. Novella's attorneys have provided the Court with thorough documentation, which should give the Court little trouble in calculating reasonable fees within the standard of "rough justice." This

calculation can reasonably lead the court to a lodestar amount of $84,717.50, as requested by Dr. Novella. This amount plus the costs actually paid by Dr. Novella, $271.05, would total $84,988.55.

### 1.1.4 California Law Supports Applying a Fee Enhancement Multiplier to the Entire base Lodestar Amount.

Applying California law, the Court may apply a x2.0 fee enhancement multiplier to the base lodestar amount in recognition of the novelty and complexity of the issues, the level of expertise of counsel, the contingency nature of a portion of the fees, and in recognition of California's stated public policy of discouraging meritless lawsuits. As noted, the lodestar basis is $84,717.50. Thus, doubling the base lodestar amount would result in a fee award of $169,435.00 ($84,717.50 x 2 = $169,435.00).

Alternatively, Dr. Novella requests that the Court apply a contingency fee multiplier of x2.0 to the amount deducted from Dr. Novella's fees, $23,146.50 ($84,717.50 anti-SLAPP fees at standard rates - $61,571.00 amount billed to Dr. Novella = $23,146.50), which would result in a fee of $107,864.00 ($61,571.00 + ($23,146.50 x 2) = $107,864.00).

California courts liberally apply fee enhancement multipliers to base lodestar amounts. "The trial court has broad authority to determine the amount of a reasonable fee." *PLCM Group, Inc. v. Drexler,* 22 Cal. 4th 1084, 1095 (Cal. 2000). "In determining whether to apply a multiplier… a court should consider all relevant factors, including '(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.'" *Cates v. Chiang*, 213 Cal. App. 4th 791, 822 (Cal. App. 4th Dist. 2013) (citing *Ketchum*, 24 Cal.4th at 1132).

Defendant notes that courts may not rely on a factor to both support the reasonableness of the lodestar amount and as a basis for a fee enhancement multiplier. However, the hourly rate requested by the attorneys and the number of hours spent preparing the Anti-SLAPP motion were reasonable even without consideration of the novelty and complexity of the case. Therefore, those considerations, along with the partial contingency consideration, can and should be applied to support a fee enhancement multiplier of X2.0 to be applied to the entire loadstar amount of $84,717.50 for a total fee award, excluding the fee motion preparation discussed below, of $169,435.00.

### 1.1.5  Alternatively, a Partial Fee Multiplier is Reasonable and Appropriate.

In the event the court prefers not to apply a multiplier to the full lodestar fee, a partial multiplier is appropriate. California courts have long recognized that when attorneys take risks in representing parties in Anti-SLAPP actions, their fee awards should be enhanced to recognize that risk. *See Ketchum*, 17 P.3d at 742. "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the Anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Id*; *see also America Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 18, n16 (Cal. App. 1st Dist. 2001). By adding a multiplier, the Court sends a clear signal to potential litigants that using the judicial system to suppress free speech will not be tolerated, and creates an environment where defendants who can not afford full-priced counsel are not denied access to justice.

Dr. Novella's counsel requests the Court grant a reasonable multiplier on the fees risked in successfully litigating this case. As Dr. Novella could not afford to defend himself at his counsel's customary rates, Dr. Novella's counsel offered

a partial contingency agreement in which they gave Dr. Novella an overall discount with the understanding that if Dr. Novella's attorneys were successful they would have the right to collect full fees, based on their full and customary rates. *See* Randazza Decl. at ¶23. Dr. Novella's counsel was willing to take this risk due to the potential for a multiplier. *See* Randazza Decl. at ¶23. As a result, Dr. Novella was only charged $61,571.00 in fees on all work relating to the anti-SLAPP motion including the motion for reconsideration, and $52,423.50 excluding the motion for reconsideration. Without the partial contingency discount, Dr. Novella would have been charged $84,717.50 including the motion for reconsideration, and $73,722.50 excluding the motion for reconsideration. *See* **Exhibit 3**; *see also* **Exhibit 5**. Dr. Novella's counsel therefore risked $23,146.50 ($84,717.50 - $61,571.00 = $23,146.50), inclusive of the motion for reconsideration, and therefore requests a multiplier of twice the amount risked ($23,146.50 x 2 = $46,293.00) added to the amount Dr. Novella actually incurred in cost and fees ($61,571.00 in fees + $271.05 in costs = $61,842.05 actually incurred + $46,293.00) for a total amount of **$108,135.05**, as is consistent with Anti-SLAPP fee award jurisprudence. [7] Although a 2.0 multiplier is reasonable, should the Court finds this amount too great, Dr. Novella's counsel requests either a different multiplier to serve the Anti-SLAPP statute's purpose of discouraging SLAPP suits or, at a minimum, the lodestar amount of $84,717.50.

---

[7] In *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459 (2014), two SLAPP defendants prevailed on an Anti-SLAPP motion and were awarded over $162,000 in fees (which included a 1.25 multiplier) against the plaintiff. In *Meaux v. Springfield*, 2014 Cal. App. Unpub. LEXIS 4969, *3, 2014 WL 3509848 (Cal. App. 1st Dist. July 16, 2014), the prevailing defendants on a SLAPP motion requested $39,104.58 in fees/costs (inclusive of a 2.0 multiplier, but not for "fees on fees" work). The requested hourly rate was $400 for the San Francisco legal community. The lower court awarded the defense $18,456.58 in fees/costs, reducing for excessive hours but granting the lodestar request augmented by a 1.5 multiplier at the $400 hourly rate.

### 1.1.6  Novella Is Also Entitled to an Award of Attorney Fees and Costs Associated with Bringing this Motion for Fees.

In addition to the fees calculated above, Novella is entitled to recover the fees associated with preparing this Fee Motion. *See Serrano v. Unruh* (*Serrano IV*), 32 Cal. 3d 621, 624 (Cal. 1982); *see also Ketchum*, 24 Cal. 4th at 1133; *and see Graham*, 34 Cal. 4th at 578-579. Defendant did not desire to burden the Court with this motion and made multiple efforts to settle his claim for fees. *See* **Composite Exhibit 6**. However, Plaintiffs were unwilling to make any reasonable offer and, therefore, recourse to the Court was required. *See id*. Mr. Randazza billed a total of 16.3 hours relating to the bringing of Dr. Novella's Motion for Fees at his full current rate of $650 per hour. *See* Randazza Decl. at ¶27; *see also* **Exhibit 3**; *and see* **Exhibit 5**. D. Gill Sperlein, spent 18.5 hours preparing this Motion and bills at $475 per hour. *See* **Exhibit 3**; *see also* **Exhibit 5**. Mr. Sperlein also supervised Alex J. Shepard and Jeremy Robbins, associate attorneys at the Randazza Legal Group, who performed the initial research and prepared the initial draft. Mr. Shepard spent 9.6 hours and currently bills at $325 per hour. *See* **Exhibit 3**; *see also* **Exhibit 5**. Jeremy Robbins spent 20.1 hours and billed at $360 per hour. *See* **Exhibit 3**; *see also* **Exhibit 5**. Mr. Sperlein also obtained assistance from Jay Wolman, who spent 16 hours on this motion and bills at $400 per hour. *See* **Exhibit 3**; *see also* **Exhibit 5**. Paralegals and interns billed minor amounts. *See* **Exhibit 3**; *see also* **Exhibit 5**. In addition, counsel engaged Judge James C. Hauser to serve as an expert. Judge Hauser's fees totaled $5,000. *See* Randazza Decl. ¶28. Because '"attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation," the cost paid to a legal fee expert should be compensable. *Trope v. Katz,* 11 Cal. 4th 274, 280

(Cal. 1995).[8] Therefore, the total fees for bringing this motion and other matters relating to the collection of the fee are $36,980.50 ($31,980.50 fees + $5,000.00 expert fee = $36,980.50).

## 2.0    Dr. Novella is Entitled to Fees under the Lanham Act

On October 2, 2015, this Court awarded Dr. Novella summary judgment on all remaining claims by all three Plaintiffs. *See* DE 288. Such was for alleged violation of the Lanham Act, 15 U.S.C. § 1125(a), claimed by all three Plaintiffs, and for alleged unfair competition, claimed by the Florida plaintiffs.[9] *Id.* Under the Lanham Act, a court may award a prevailing party reasonable attorney fees "in exceptional cases." 15 U.S.C. § 1117(a). "While Congress has not further defined 'exceptional,' the legislative history of the Act suggests that exceptional cases are those where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (internal quotation marks omitted). An "exceptional" case may also be one in which evidence of bad faith exists. *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (internal quotation marks omitted). The lodestar approach is properly applied to determine a fee award under the Lanham Act. *Tire Kingdom, Inc.*, 253 F.3d at 1336. The lodestar is "calculated by multiplying the number of hours

---

[8] Defendant does not seek a multiplier on the fees for preparing this motion. Under California law, fees associated with bringing a fee motion, although compensable, generally are not subject to a multiplier to the same extent as the fees associated with litigating the merits. Generally, the multipliers on contingent fees only apply to the fees themselves, not to attempts to collect fees, such as the present motion. *See Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579, 101 P.3d 140, 157 (Cal. 2004) ("We conclude that, while fees for attorney fee litigation under section 1021.5 may be enhanced under some circumstances, that enhancement should generally be lower than fees awarded in the underlying litigation.")

[9] The California Plaintiff's unfair competition claim under state law was dismissed as part of the Anti-SLAPP order.

reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). This "lodestar" may then be adjusted upward or downward based on other considerations, such as the results obtained and the quality of representation. See *id*.; see also *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). Given the frivolous nature of the claims, their censorious intent, and the multiple warnings received that the claims were unsupportable, Tobinick's prosecuted this case in bad faith, warranting a fee award.

This Court previously considered the motion of the Society for Science-Based Medicine (DE 176) for fees under the Lanham Act and denied them. DE 227. In that order, the Court found that Plaintiffs' claim against that defendant was not "exceptional" enough, at that time, to merit an award of attorney fees. DE 227 at p. 3. At that time, perhaps Tobinick could not have known, without a doubt, that his claims were unsupportable. However, once he read that Order, all doubt should have been dispelled.

In contrast, the claims against Dr. Novella were exceptional, if not from the outset, then certainly following the award of summary judgment to the Society for Science-Based Medicine. On March 16, 2015, this Court found that the speech at issue was not "commercial speech" under the Lanham Act. DE 157. From that moment on, Plaintiffs knew, or should have known, that their Lanham Act claims against the remaining defendant, Dr. Novella, lacked substance. Yet, Plaintiffs persisted.

After March 16, 2015, Plaintiffs continued to pursue preliminary injunctive relief, which they lost for failure to demonstrate any existence of commercial speech. DE 172. At that time, the bell tolled twice as loudly for the Lanham Act claims, but the Plaintiffs refused to heed the sound. They then sought to multiply the proceedings with a (1) motion to amend (DE 173); and (2) corrected

motion to amend (DE 177), which was denied. DE 202. In the interim, as noted above, the Court again found that the speech was protected under the First Amendment in dismissing the California Plaintiff's state-law claims under the California Anti-SLAPP law. DE 193. Despite these clear determinations that the speech was not commercial, Plaintiffs pressed onward.

Defendant knew the claims were meritless and initially sought summary judgment on June 26, 2015, after affirmatively foregoing discovery in order to limit the amount of expense for all parties involved. *See* DE 206. In contrast, Plaintiffs continued to multiply the proceedings by serving irrelevant written discovery and seeking to avoid summary judgment pending the conclusion of discovery. *See* DE 209 & 211. The court gave Plaintiffs the opportunity to take such discovery (DE 212), which Plaintiffs abused. Such forced Defendant to seek a protective order (DE 219) after Plaintiffs claimed discovery responses were insufficient. Defendant successfully obtained limitation after limitation (DE 229, 239, 250 & 256) on Plaintiffs' overbroad and improper requests. Notwithstanding these limitations, Defendant was nonetheless required to appear at three expert depositions, his own **second** deposition, and the deposition of Jay Novella, as well as produce over 27,000 documents responsive to keywords selected by Plaintiffs, requiring the logging by counsel of approximately 600 privileged documents. And then, once more, Plaintiffs sought to multiply the proceedings with another motion for leave to amend, which was summarily denied. DE 245.

Defendant filed a renewed motion for summary judgment on August 25, 2015. DE 251. Plaintiffs again sought an extension, which this Court allowed. DE 253. Rather than spend time responding to the motion for summary judgment, Plaintiffs brought new frivolous motions under Rule 60(b) and 37, based on wild conspiracy theories. DE 258, 259, 260 & 261. The Court properly denied these

motions. DE 275. Even after multiple decisions as to the speech being non-commercial, and discovery producing no evidence to the contrary, Plaintiffs opposed summary judgment (DE 272), which necessitated a reply (DE 277) due to the new theories and improper conclusions drawn by Plaintiffs. And, while discovery and summary judgment was pending, Defendant was required to move *in limine* for the preclusion of Plaintiffs' proffered experts (DE 238), prepare the pretrial stipulation (DE 283), and respond to a motion arising from the ethical failings of Plaintiffs' non-appearing counsel (DE 287).

Confirming its prior decisions, the Court once more found that the speech, notwithstanding argument and alleged evidence to the contrary, was still not commercial. DE 288. In the six and a half months following the summary judgment to the Society for Science-Based Medicine ("SfSBM"), there were 131 new docket entries,[10] the bulk of which arose from Plaintiffs' continued meritless prosecution of the Lanham Act claims.

In contrast to the six months between the filing of SfSBM's motion for summary judgment and decision, only five weeks passed between the filing of Defendant's motion for summary judgment and decision. And, unlike the decision relative to SfSBM's motion, the Court did not require a separate hearing on Defendant's motion for summary judgment. Thus, the decision was expeditious. Second, in its Order (DE 227), the Court wrote that prior to the issuance of the order on SfSBM's motion for summary judgment (DE 157), Plaintiffs had no reason to know how the Court might rule, as such was the first substantive ruling on a Lanham Act claim. As a result, the court did not grant SfSBM's motion for fees.

---

[10] In contrast, in the eight months prior, there were 156 docket entries, spread over four defendants, whereas the 131 new entries in six months involved, almost entirely, only Dr. Novella.

Here, however, Plaintiffs had a full opportunity to digest and understand how the Court viewed Defendant's speech under the Lanham Act, yet persisted for another six months, with substantially increased costs. Plaintiffs had reason to know, following March 16, 2015, that the Court would rule the speech was non-commercial. In fact, a comparison of the Court's decisions shows striking similarities, drawing from much of the same body of law, though certainly the Court took care to focus on the particular allegations as to each defendant. Thus, Plaintiffs' claims against defendant were obviously weak and in bad faith, entitling Defendant to fees under the Lahnham Act. *See Lipscher v. LRP Publications, Inc.*, 266 F.3d, 1305, 1320 (11th Cir. 2001); *see also Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1336 (11th Cir. 2001).

The Lanham Act claim was the core of Plaintiffs' claims. It was the basis for their motion for preliminary injunction. It was the foundation upon which the majority of discovery and motion practice occurred. In fact, the Florida Plaintiffs withdrew state-law defamation claims in order to focus on the Lanham Act claims.[11] *See* DE 202. As a result, the supplemental state law claims are so intertwined with the Lanham Act claims that no line-by-line separation can reasonably be made, and the facts needed to assert those claims are the same as alleged in the Lanham Act claim.[12] In fact, Plaintiffs argued that it was

---

[11] Although the Florida Plaintiffs did not withdraw their state-law unfair competition claim, the California Plaintiff's state-law unfair competition claim had been dismissed as violating the California Anti-SLAPP law (DE 193) and this Court viewed the Florida claim through the lens of the Lanham Act. DE 288.

[12] Moreover, Defendant may be awarded fees under the Florida unfair competition claim. The Court granted the summary judgment motion which was brought, as to state law claims, pursuant to the Florida Anti-SLAPP statute, Fla. Stat. § 768.295(3). *See* DE 251 at pp. 18-19; *see also* DE 288 at p. 10 (granting motion in whole, not in part). Florida law requires that "[t]he Court **shall** award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section." Fla. Stat. § 768.295(4). Defendant is the prevailing party. **As with the California counterpart,**

the "shall" language renders the award of fees mandatory. *See Sanders v. City of Orlando*, 997 So. 2d 1089, 1095 (Fla. 2008) ("The word 'shall' is mandatory in nature.") (citation omitted); *see also Johnson v. Conner*, 754 F.3d 918, 922 (11th Cir. 2014) citing Black's Law Dictionary 1407 (Eighth Ed. 2004)(defining "shall"); *and see Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (citation omitted) (the "mandatory 'shall[]' . . . normally creates an obligation impervious to judicial discretion."). Similarly, fees may be awarded under Fla. Stat. § 57.105(2), at least as of March 16, 2015, where the assertion of the continued claims under the Lanham Act and unfair competition law was for unreasonable delay.

Additionally, Defendant may be deemed a prevailing party under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 510.2105, entitling him to an award of reasonable attorneys' fees and costs. The Florida Plaintiffs argued that their common law unfair competition claim imported the entirety of the statute. *See* DE 272 at p. 17 (internal page 14). **Though Defendant does not concur that the statute is incorporated, Plaintiffs must be held to their own standards and admissions.** *See Diamond Aircraft Indus., Inc. v. Horowitch*, **107 So. 3d 362, 368-369 (Fla. 2013) (holding that even if FDUTPA is ultimately found inapplicable, fees are appropriate so long as the plaintiff invoked it)**. There are:

> seven factors that a court might consider in determining whether to exercise that discretion: (1) the scope and history of the litigation; (2) the ability of the opposing party to satisfy an award of **fees**; (3) whether an award of **fees** against the opposing party would deter others from acting in similar circumstances; (4) the merits of the respective positions -- including the degree of the opposing party's culpability or bad faith; (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless; (6) whether the defense raised a defense mainly to frustrate or stall; and (7) whether the claim brought was to resolve a significant legal question under **FDUTPA** law.

*Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*, 2009 U.S. Dist. LEXIS 57263 (S.D. Fla. July 7, 2009) citing *Humane Soc. of Broward County, Inc. v. Florida Humane Soc.*, 951 So. 2d 966, 971-972 (Fla. 4th DCA 2007). All seven either weigh in favor of Defendant or are neutral; none favor Plaintiffs. Under scope and history, such suggested over six months ago the claims were unfounded. Plaintiffs can satisfy the award. It would be a deterrent against suits to suppress legitimate criticism of a business practice, that otherwise violates the FTC Act. *See Federal Trade Commission v. Roca Labs, Inc.*, Case No. 8:15-cv-02231-MSS-TBM, United States District Court, Middle District of Florida, Docket #1, September 24, 2015; *see also Samuels v. King Motor Co.*, 782 So. 2d 489, 499 (Fla. 4th DCA 2001) ("great weight should be given to federal cases interpreting the federal counterpart of this Act") citing Fla. Stat. § 501.204(2)("It is the intent of the Legislature that, in

only the alleged Lanham Act violation that gave rise to the unfair competition claim. *See* DE 272 at p. 18 (internal page 15). Thus, fees and costs should be awarded to Defendant under the Lanham Act.

Congress enacted the Lanham Act nearly seven decades ago. *See* 60 Stat. 427 (1946). As the Supreme Court explained it "requires no guesswork" to ascertain Congress' intent regarding this federal law, for Congress included a "detailed statement of the statute's purposes." *Lexmark Int'l, v. Static Control Components, Inc.*, 572 U.S. ___, ___, 134 S. Ct. 1377, 188 L. Ed. 2d 392, 406 (2014). Section 45 of the Lanham Act provides:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide [2234] rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

15 U. S. C. §1127. This Court charitably noted in denying the Society's motion for fees that it was "not as straightforward" that the Lanham Act claims were destined to failure. DE 227 at p. 3. Novella respectfully requests that this Court tangentially reconsider that position, as it has become very apparent that Tobinick has attempted to pervert the Lanham Act into a means of censorship of scientific debate and a means to attempt to suppress legitimate journalism. In

---

construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2015.") Further, Plaintiffs' position had no merit and was in bad faith, at least as of March. The claim was mainly to frustrate and abuse and there was no significant legal question to be resolved by Plaintiffs' claim. Thus fees may be awarded.

doing so, he dragged Novella through over 14 months of litigation, two depositions, threatened to implicate his family, and created a chilling effect on speech whose damage may never be known. This cannot stand.

While one might say that Tobinick has paid the price of his poor judgment and ignoble acts by merely losing this case, Novella has clearly proven that he has done nothing wrong. Meanwhile, he has incurred $378,895.75 in attorneys' fees, $118,292.50 incurred in the final two months of this litigation, prior to the award of summary judgment. $61,571.00 were incurred in solely defending the defamation claims against the California corporation, and the Court has already found that those fees are properly awarded to Novella, and those fees are dealt with separately in this memo. However, in defending the Lanham Act claims, Novella incurred $289,802.75. While Novella believes that the abusive nature of the claims and their clear inapplicability should have been obvious from the start, at the very least, this Court made it clear in its Order Granting in Part Defendant's Converted Motion for Summary Judgment (DE 157) that it was time for Tobinick to abandon his crusade.

Below, Defendant sets forth his fees and expenses relative to the Lanham Act claims. Although, as noted, all fees should be awarded, based upon the Court's ruling on Defendant SfSBM's motion for fees, Defendant separates those fees and expenses incurred before and after the March 16, 2015, ruling was issued. Prior to and including March 16, 2015, expenses and fees were $66,204.00; subsequent to March 16, 2015, expenses and fees were $223,598.75. *See* **Exhibit 3**; *see also* **Exhibit 5**.

As set forth above, relative to the California Anti-SLAPP, Attorneys Randazza, Wolman, and Shepard are properly compensated at their respective rates. *See* Hauser Decl. The time spent preparing the instant petition for fees is compensable. *See, e.g., Freid v. Nat'l Action Fin. Servs.,* 2011 U.S. Dist.

LEXIS 149668, *28, 2011 WL 6934845 (D.N.J. Dec. 29, 2011). Therefore, Defendant is entitled to an award of fees and costs in the amount of $423,224.49 ($396,150.25 fees + $27,074.24 costs = $423,224.49) in defense of the Lanham Act claim based on the lodestar calculation using the rates outlined herein, or, alternatively, an award of fees in costs in the amount of $322,463.04 ($289,802.75 fees + $27,074.24 costs = $316,876.99) as actually billed to the client in total relating to the Lanham Act claim, or, alternatively, an award of fees and costs in the amount of $243,011.42 ($223,598.75 fees + $19,412.67 costs = $243,011.42) as billed to the client in total in defense of the Lanham Act claim subsequent to March 16, 2015. *See* **Exhibit 5**.

## 3.0    Sanctions Under 28 U.S.C. § 1927 are Proper

Novella renews his Motion for Sanctions Under 28 U.S.C. § 1927 (DE 175), incorporated herein by reference. Such motion was denied without prejudice. DE 190. The bases for the motion have expanded, including unnecessary discovery practice, further motion for leave to amend, and unsupportable motions under Rule 60(b) and 37, all of which required response. In addition, Attorney Cullin O'Brien, as well as Geoffrey M. Cahen, Jarod M. Bona, and Aaron R. Gott, should be liable subsequent to his appearance. As the nature of the pleadings significantly changed following his appearance, it seems he is the architect of the outlandish conspiracy theory driving many of these documents. Further, Attorney Robert Hahl, who did not appear, is liable for his actions in this litigation. *See* DE 287 (addressing Attorney Hahl's involvement in surreptitious recording and improper interrogation); *see also Ingenuity 13 LLC v. Doe*, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. May 6, 2013) (sanctioning non-appearing attorney John Steele for perpetrating fraud on the court).

Defendant Steven Novella, M.D. reluctantly requests this Court to impose sanctions against attorneys Cullin O'Brien, Robert Hahl Geoffrey M. Cahen,

Jarod M. Bona, and Aaron R. Gott,[13] counsel for Plaintiffs, for unreasonably and vexatiously multiplying the proceedings. While an attorney is expected to be a zealous advocate for his client, he also has an obligation to the Court not to abuse the litigation process. The original motion for sanctions appeared at DE 175; by the time this motion is filed, more than a hundred more docket entries will have appeared, yet with three fewer defendants. The California Plaintiff had its state law claims dismissed pursuant to the California Anti-SLAPP statute. DE 193. Plaintiffs moved to amend and lost. DE 202. Plaintiffs served overbroad discovery requests and had them narrowed by the Court to that sought by Defendant. DE 229. Plaintiffs moved to amend a second time and lost. DE 245. Plaintiffs' demands regarding a privilege log were substantially narrowed to that sought by Defendant. DE 250. Plaintiffs sought sanctions under Rule 37 and reconsideration under Rule 60(b) and lost. DE 275. Throughout the past four months, Plaintiffs, through their attorneys, continued to press argument and theory that the Court had already twice rejected. Plaintiffs' attorneys indulged their clients' desire to draw out this litigation. Their willingness to comply with their clients' abusive litigation strategy means that seeking sanctions against Plaintiffs' attorneys is a necessary recourse for Dr. Novella, who can himself ill afford to pay the ruinous amount of fees in this case. *See* **Exhibit 10**, Excerpt of Transcript of March 5, 2015 Deposition of Steven Novella, 265:10-21.

After undergoing exhaustive discovery and a two-day evidentiary hearing, this Court denied Plaintiff's motion for preliminary injunction on April 2, 2015. DE

---

[13] Although Attorneys Bona and Gott have withdrawn, former counsel remain subject to sanction. As the 11th Circuit has held, Section 1927 "plainly applies to 'any attorney . . . admitted to conduct cases,' and is not limited to the current attorney of record at the time a sanction is made." *Jallali v. USA Funds*, 578 Fed. Appx. 965, 966, 2014 U.S. App. LEXIS 16593, *3 (11th Cir. 2014) (upholding sanction against a withdrawn attorney).

172. The Court explained why Plaintiffs' claims were not legally tenable. Rather than taking the cue to narrow the issues, Plaintiffs doubled down. 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions are warranted where the effect of an attorney's unreasonable and vexatious conduct is to multiply the proceedings. *See id.* at 1396. The purpose of the statute is to "sanction attorneys who 'willfully abuse the judicial process by conduct tantamount to bad faith.'" *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (quoting *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993).) Recklessly pursuing a frivolous claim amounts to "bad faith" under this analysis. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1193 (11th Cir. 2006).

Plaintiffs' attorneys pursued the litigation following the order denying preliminary injunction (DE 172) in bad faith. None of the additional facts alleged in the subsequent pleadings cure any of the deficiencies that plagued each Complaint Plaintiffs filed. Rather, they merely expanded the scope of this case. Counsel for Dr. Novella has advised Plaintiffs' attorneys on multiple occasions that amendment at this time would be frivolous and only serve dilatory purposes.[14] Despite these admonitions, they continued on, despite the likelihood of summary judgment. Their actions served only to inflict additional pain on Dr. Novella, in the name of indulging Dr. Tobinick's desire for retribution, whether

---

[14] Dr. Novella's counsel advised and warned Plaintiffs' attorneys of this in writing multiple times. *See* April 6, 2015 letter from Marc J. Randazza, attached as **Exhibit 11**; *see also* May 10, 2015 letter from Marc J. Randazza, attached as **Exhibit 12**. Dr. Novella's counsel additionally sent Plaintiffs' attorneys multiple emails and made multiple phone calls to them advising of the frivolity of the amended complaint and that filing it would subject them to Section 1927 sanctions.

legally justified or not. Such conduct has been unreasonable and vexations; and it is appropriate for counsel to chip in to make Dr. Novella whole. Thus, counsel for Plaintiffs should be held jointly responsible for all fees and expenses incurred following March 16, 2015, which, as set forth above, is $258,341.75. *See Finley v. Publix Super Mkts., Inc.*, 1998 U.S. Dist. LEXIS 21241, *4 (S.D. Fla. Dec. 30, 1998) (finding counsel jointly and severally liable for fees calculated under the lodestar method as sanction under section 1927 for pursuing a frivolous complaint and reasonably multiplying proceedings); *see also Murray v. Playmaker Servs., LLC*, 548 F.Supp.2d 1378, 2008 U.S. Dist. LEXIS 51795 (S.D. Fla. 2008) (sanctioning counsel under section 1927 using the lodestar method from point where counsel should have concluded the suit was meritless).

**4.0   Conclusion**

Based on the foregoing, Dr. Novella is entitled to recover his attorneys' fees and costs. He respectfully requests that the Court grant his Motion for Attorneys' Fees pursuant to Cal. Civ. Proc. Code § 425.16(c)(1), the Lanham Act, the Florida Anti-SLAPP statute, and FDUTPA, and grant him reasonable attorneys' fees and costs.

As to the California Anti-SLAPP award, such should be with a x2.0 multiplier on the entire lodestar amount, for a total of $169,435.00. Alternately, Dr. Novella requests an award of $107,864.00 (representing his actual fees and costs incurred, plus a 2x multiplier on the amount of his partial contingency discount), or a lodestar amount of $84,717.50. In addition to either of these amounts, Dr. Novella also requests his attorneys' fees incurred in preparing this Motion, which amount to $31,980.50.

As to the Lanham Act (and derivative claims), Defendant seeks an award of $423,224.49 based on a lodestar calculation. This has been an

exceptional case, with Defendant having to defend against claims Plaintiffs have known for months were destined for failure.

Finally, all fees and expenses incurred following March 16, 2015, were the result of vexatious and improperly multiplied litigation, rendering sanctions warranted against counsel, per 28 U.S.C. § 1927 in the amount of $258,341.75.

    I.    Anti-SLAPP against the California Plaintiff Only

        a.  With x2.0 Multiplier           **$169,435.00**

        b.  With Partial Multiplier      *$107,864.00*

        c.  Base Lodestar          *$84,717.50*

    II.    Lanham Act Fees against All Plaintiffs    **$423,224.49**

    III.    Fees on Fee Motion          **$31,980.50**

    IV.    Total Requested           **$624,639.99**

    V.    28 U.S.C. § 1927 Fees        *$258,341.75*[15]

## 5.0    Compliance with Local Rule 7.1(a)(3)

Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to resolve the issues.

/ / /

/ / /

/ / /

---

[15] These are not additional fees; this is the apportionment of the fees to be jointly and severally liable against Plaintiffs' counsel under 28 U.S.C. § 1927.

Dated this 29th day of October 2015.      Respectfully Submitted,

/s/ Marc J. Randazza
Marc J. Randazza, Esq.
Florida Bar No.: 625566
California Bar No.: 269535
J. Marshall Wolman, Esq.
Admitted *Pro Hac Vice*
RANDAZZA LEGAL GROUP, PLLC
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

Case No: 9:14-cv-80781-RLR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 29, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF. Additionally, the foregoing is being served via U.S. Mail and electronic mail to:

Jarod M. Bona, Esq.
Aaron R. Gott, Esq.
BONA LAW, P.C.
4275 Executive Square, Suite 200
La Jolla, CA 92037
Jarod.Bona@bonalawpc.com
Aaron.Gott@bonalawpc.com

Respectfully Submitted,

Employee
Randazza Legal Group, PLLC

Defendant's Omnibus Motion for Attorneys' Fees and Costs