UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-cv-80781-RLR

EDWARD TOBINICK, M.D., an individual,        )
et al.,                                                              )
                                                                        )
                                        Plaintiffs,                )
                                                                        )
                vs.                                                  )
                                                                        )
STEVEN NOVELLA, M.D., an individual,          )
                                                                        )
                                        Defendant.              )
                                                                        )
_____ )

**PLAINTIFFS' ONMIBUS OPPOSITION TO DEFENDANT'S MOTION FOR
ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW[1]**

---

[1] Plaintiffs Edward Lewis Tobinick, M.D., A Medical Corporation d/b/a The Institute of Neurological Recovery, INR PLLC d/b/a Institute of Neurological Recovery, and Edward Tobinick, M.D. ("Plaintiffs") oppose the motion for attorneys' fees filed by Steven Novella, M.D. ("Novella") [Dkt. No. 292], and state as follows.  Plaintiffs combine their opposition into this brief for the sake of judicial economy.  Exhibits hereto as attached to the accompanying Declaration of Cullin O'Brien and are sequentially referenced starting with "Ex. 1."

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

    A. This Court Should Deny the Fee Motion for Violating the Local Rules ................1

    B. The Fee Motion Is Not Supported by Credible Evidence ........................................1

    C. There Is No Basis for Fees Under the Lanham Act or 28 U.S.C. §1927 ................3

    D. This Court Should Not Allow Fees Under the Anti-SLAPP Procedure .................4

II. ARGUMENT ........................................................................................................4

    A. Novella's Motion for Fees Is Procedurally Improper and Barred by the Local Rules, and Novella Is Estopped from Contending Otherwise ......................4

    B. Novella's Motion for Fees Should be Denied for Many Reasons ...........................4

        1. The Lack of a Fee Contract and Evidence of Fees Paid ............................5

        2. Improper Time Records ...............................................................................5

        3. Randazza's Testimony Warrants Denial of the Fee Motion .......................6

            a. The Excessive Fee Rates Requested ...............................................6

            b. Lawyers Without Appearances or Fee Rate Evidence ....................7

    C. Novella Fails to Show the Bad Faith Required to Support His Request for Fees Under the Lanham Act and 28 U.S.C. §1927 ................................................7

        1. This Court Already Ruled that this Was Not an "Exceptional Case" and Subsequent Evidence Supported Plaintiffs' Claims ............................8

            a. Commercial Speech .......................................................................8

            b. The Remaining Lanham Act Elements and FDUTPA..................10

        2. Novella Admits that this Is Not an Exceptional Case, "Respect[ing] the Fact" that Plaintiffs Wanted to Go to Trial ...........................................10

        3. This Court's July 2015 Deferment of Novella's (Later Withdrawn) Motion for Summary Judgment Heavily Mitigates Against Awarding Lanham Act or §1927 Fees .......................................................11

        4. Plaintiffs' Were Justified in Litigating this Case, Including in Seeking Relief from Novella's Challenged Testimony .............................11

5.     Plaintiffs' Counsel, Including Cahen and O'Brien, Are Not Liable Under the Lanham Act or 28 U.S.C. §1927................................................12

D.     The Anti-SLAPP Fee Procedure Cannot Be Enforced in this Court ....................17

    1.     Fundamental Unfairness to the California Plaintiff ....................................17

    2.     Fundamentally Unfairness to the Non-California Plaintiffs .....................18

E.     Novella Cannot Obtain Anti-SLAPP Fees Since the Case Continued .................18

F.     Novella's Anti-SLAPP Motion Was Improper .......................................................19

G.     Novella's Stance in the Pretrial Stipulation Bars Fees ...........................................19

H.     Unclean Hands and Fundamental Inequities Preclude Fees ..................................19

I.     Alternatively, this Court Should Dramatically Reduce Anti-SLAPP Fees............20

III.     CONCLUSION.............................................................................................................20

## I.      INTRODUCTION

There are many, independent reasons why this Court should deny Novella's fee motion.

### A.      This Court Should Deny the Fee Motion for Violating the Local Rules

Novella failed to comply with requirements of S.D. Fla. L.R. 7.3.  Novella did not provide a draft motion within 30 days of the Court's final judgment per S.D. Fla. L.R. 7.3(b).  The motion is not verified as mandated by S.D. Fla. L.R. 7.3(a)(7).  Each of these violations warrant denial of the motion. *See, e.g., J.B. Hunt Transp. v. S & D Transp.*, No. 13–14770, 2014 WL 5011135, at *3 (11th Cir. Oct. 8, 2014) (*per curiam*) ("[W]e hold that the district court's denial of J.B. Hunt's motions for attorney's fees, expenses, and costs for failure to comply with Local Rule 7.3 was not an abuse of discretion.").[2]  Indeed, Novella has sought denial of a motion based on an alleged violation of the local rules, [Dkt. No. 101], and is estopped from arguing against the denial of his motion here.  *See, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749-756 (2001) (judicial estoppel prevents "parties from deliberately changing positions according to the exigencies of the moment").

### B.      The Fee Motion Is Not Supported by Credible Evidence

Novella's own expert has previously testified for Novella's attorneys that "[w]ithout the fee contract it is impossible . . . to determine whether the hourly rate sought by [the party] is appropriate." **Ex. 1**, ¶9.  That testimony applies here since Novella fails to produce a fee contract.  Similarly, Novella has failed to offer any evidence that he has paid attorneys' fees.

Moreover, there are incurable credibility and reliability problems with the time records Novella uses as evidence to support the motion.  The records are fraught with severe and egregious overbilling, block billing, double-counting, and other improper account for attorney time and effort.  This overreaching and misrepresentation warrants denial of the fee motion, as a matter of law and as

---

[2] *See, e.g., Norych v. Admiral Ins. Co.*, No. 08–60330–CIV, 2010 WL 2557502, at *1-*2 (S.D. Fla. June 23, 2010) ("Thus, the Motion is denied because Admiral failed to comply with Local Rules 7.3(a)(1) and 7.3(b)."); *Sodikart USA v. Geodis Wilson USA*, No. 14–CV–22461, 2014 WL 6968073, at *7 ("[T]he undersigned RECOMMENDS that Defendant's Motion for Prevailing Party Attorney's Fees and Costs be DENIED for failure to comply with Local Rule 7.3."), *adopted by* [Dkt. No. 20], (Dec. 29, 2014).

many cases hold,[3] and as Plaintiffs' experts agree. **Ex. 2** (Heller Expert Decl., ¶¶3, 14-47); **Ex. 3** (Langer, J. Expert Decl., at pp. 2-8).

There are also credibility and reliability issues with the testimony of Attorney Randazza ("Randazza") used for the motion. He is the only defense counsel submitting testimony. The claims he makes for billing rates are unjustifiable, including in light of recent court decisions setting lower rates. Randazza seeks payment for lawyers who did not appear in the case and does not account for all the people who appear on the time records. The billing records do not reconcile Randazza's presence in Europe unrelated to the case. He also seeks payment for lawyers who did not appear in the case or who were not admitted to practice in the Southern District of Florida.

Further, Randazza's claim for a fee rate of $650 per hour should be measured against the findings in an interim arbitration award issued against Randazza by arbitrator and retired U.S. Magistrate Judge Stephen E. Haberfeld on June 3, 2015. **Ex. 4**. The interim arbitration award against Randazza concerns allegations regarding Randazza's "violations of fiduciary duty in connection with his negotiating for a $75,000 'bribe,'" **Ex. 4** at p. 7, n. 4 ("The Arbitrator has determined, based on the evidence, that Mr. Randazza solicited the bribe . . ."). The former client with the interim arbitration award suggests that Randazza filed for bankruptcy to avoid further proceedings. **Ex. 5** (*In re Randazza*, No. 15-14956-abl, [Dkt. No. 60, at pp. 1-3] (D. Nev. Bkr. Oct. 28, 2015). These data points undermine Randazza's testimony, including the $650 per hour fee rate he claims. **Ex. 3**, at p. 6 (discussing effect of data points on hourly rate calculus).

---

[3] *See, e.g.*, *Ellis v. Toshiba Am. Info. Sys.*, 218 Cal.App.4th 853, 854 (Cal. Ct. App. 2013) ("A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.") (internal citations and quotations omitted); *Vocca v. Playboy Hotel of Chicago, Inc*. 519 F. Supp. 900, 901–902 (N.D. Ill. 1981) ("For these and other reasons plainly evident in the record before this court, the request for fees must be denied in its entirety."); *Pistoresi v. Madera Irrigation Dist.*, No. CV–F–08–843–LJO–DLB, 2009 WL 910867, at *7-*8 (E.D. Cal. Apr. 2, 2009) ("[M]ost of the factors justifying a denial of an anti-SLAPP attorneys' fees award are present in the instant action. For disobeying this Court's order, failing to provide adequate documentation, requesting an excessive amount, and claiming unearned fees, this Court denies in full the Stoel Rives attorneys' fees request."); *Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981) ("The present situation is an appropriate occasion for the court to exercise its discretion and deny all fees relating to work on the fee petition because the request here represents a grossly inflated bill.").

### C.     There Is No Basis for Fees Under the Lanham Act or 28 U.S.C. §1927

Novella fails to show the bad faith required to support a fee request under the Lanham Act and 28 U.S.C. §1927.  In good faith, Plaintiffs filed their complaint and amended complaint because of the false factual statements made by Novella that misrepresented the nature, characteristics, qualities and geographic origin of their services and commercial activities.  *See, e.g.*, Dkt. No. 272, *et seq.*; *see also Lexmark Int'l v. Static Control Components*, 134 S.Ct. 1377, 1391 (2014) ("When a defendant harms a plaintiff's reputation by casting dispersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements. . . To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations.").   On August 6, 2015, this Court determined that this was not an exceptional case under the Lanham Act. The limited docket activity with respect to Novella that occurred after this Court made that ruling was done with this Court's permission.  In fact, Novella filed but then withdrew a motion for summary judgment. Plaintiffs' subsequent attempt to reopen discovery and reexamine this Court's anti-SLAPP order based on Novella's false and misleading testimony was legitimate, reasonable and necessary.  Novella's lawyer admitted this, assuming *arguendo* that Novella's testimony was false and deceptive.  Novella's blame on his memory and understanding of English grammar supports the Rule 37 and 60 motions. [Dkt. No. 262-1, ¶4.f; 263-1, ¶10].

Overall, moreover, Plaintiffs were modest in their litigation efforts.  This case lasted little over a year.  Plaintiffs did not file a motion for summary judgment, *Daubert* trial motions, a motion directed at Novella's answer, and the like.  Indeed, Plaintiffs were criticized for their lack of aggression in the preliminary injunction phase.  The discovery hearings toward the end of the case were necessitated by Novella's actions.

Further, Plaintiffs were justified in pursuing their claims, as agreed by Novella's lawyer himself in the confidential settlement discussions he filed along with his fee motion.   Plaintiff's expert, Judge Langer, also opines that Plaintiffs did not pursue their claims vexatiously. **Ex. 3**, at pp. 2-3.   Plaintiff's expert John Heller also opines that Plaintiffs had a good faith basis to pursue their claims.  **Ex. 2**, ¶¶48-55. This Court's ruling on summary judgment was narrowly limited to the issue of commercial speech.  Plaintiffs are taking an appeal because, *inter alia*, they maintain that there is record evidence showing that the *Bolger* factors are met, when looking at Novella's websites in full

context, including evidence that Novella made a salary and significant money from his speech, highlighting his economic motivation, which is evidence that supports commercial speech.

>    **D.    This Court Should Not Allow Fees Under the Anti-SLAPP Procedure**

The California anti-SLAPP procedure violates the *Erie* doctrine, which has been exemplified by a recent 7th Circuit case regarding other state law decided after this Court's June 2015 anti-SLAPP ruling. *Intercon Solutions v. Basel Action Network*, 791 F.3d 729, 731 (7th Cir. 2015). The procedure would not allow for fees anyway because the anti-SLAPP motion had no practical benefit, as Plaintiffs' case continued after the motion was granted. Alternatively, as shown by Plaintiffs' expert Heller, even though there are grounds to award Novella nothing, Novella should also not be entitled to any more than $36,186 in fees, if there had been no overbilling. **Ex. 2**, ¶38.

## II.    ARGUMENT

>    **A.    Novella's Motion for Fees Is Procedurally Improper and Barred by the Local Rules, and Novella Is Estopped from Contending Otherwise**

Novella failed to comply with the pre-filing requirements of S.D. Fla. L.R. 7.3. Novella did not serve "a draft motion compliant with Local Rule 7.3(a)(1)–(8)" within 30 days of this Court's final judgment entered on October 2, 2015, [Dkt. No. 288], as required by S.D. Fla. L.R. 7.3(b). Novella simply filed his motion. Moreover, contrary to the requirements of S.D. Fla. L.R. 7.3(a), Novella fails to "disclose the terms of any applicable fee agreement." If there is a contingency fee agreement with Novella, it would have to comply with Fla. Bar R. 4-1.5(f). The motion is not verified as mandated by S.D. Fla. L.R. 7.3(a)(7). Each of these violations of the local rules militate in favor of denial of Novella's motion for fees as many courts hold. *See*, *e.g.*, *J.B. Hunt*, 2014 WL 5011135, at *3; (*and see footnote 2 supra*); *see also* Fed. R. Civ. P. 83.

Novella has affirmatively argued in this case that violations of local rules require denial of motions and, in fact, sanctions. [Dkt. No. 101]. Novella is estopped from arguing against the denial of his motion based on a violation of the local rules. *See*, *e.g.*, *New Hampshire*, 532 U.S. at 749-756.

>    **B.    Novella's Motion for Fees Should be Denied for Many Reasons**

Novella has the evidentiary burden of establishing his request for fees, *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988), and fails. Randazza is seeking fees for himself. [Dkt. No. 292-2, ¶23]. The motion is grounded on Randazza's testimony which does not withstand scrutiny. Novella does not verify the motion or submissions.

## 1.        The Lack of a Fee Contract and Evidence of Fees Paid

Recently, Novella's own expert testified for Novella's attorneys that "[w]ithout the fee contract it is impossible . . . to determine whether the hourly rate sought by [the party] is appropriate." **Ex. 1**, ¶9. Because Novella fails to produce a fee contract here, the motion should be denied, as Novella's own expert states. *See also* **Ex. 3**, at pp. 3-8. Similarly, Novella offers no evidence that he has paid attorneys' fees. This further undermines his exorbitant fee claim.

## 2.        Improper Time Records

The time records Novella uses as evidence to support the motion are manifestly improper. Plaintiffs' expert John G. Heller ("Heller") details, including with demonstrative charts, the impermissible billing for the anti-SLAPP motion, including double-counting and improper accounting for attorney time and effort. **Ex. 2**, ¶¶14-47, and **Exs**. **A**-**F** (detailed charts). Heller is a certified specialist in Legal Malpractice Law, California Board of Legal Specialization, and has prevailed on anti-SLAPP motions. Among other things, Heller states:

> 2.        Defendant's omnibus motion, which seeks roughly $624,640 in fees and costs, is plagued by double-counting of time entries, rendering defense counsel's methodology unreliable and impermissibly inflating the total amount sought.
> 3.        This double-counting is manifested in two ways. First, where counsel has designated a time entry as applicable to more than one category of services, they have sought to recover compensation for that service twice. Over one hundred timed entries appear to suffer from this defect, resulting in defense counsel claiming compensation for more hours than they actually performed services. Second, defense counsel have in many instances included the identical time entry twice, and have charged for these duplicative entries both in this motion and in its invoices to Dr. Novella. When combined with defendant's request for a 2x multiplier, this double-counting inflates defendants' omnibus request such that counsel are effectively seeking to recover three times—and in some cases six times—the amount they actually worked on a particular service. Under California law, this defective billing provides the basis for denying the fee application outright. . . . .
> 26.        The fact that Dr. Novella was double-charged for these services directly affects the present fee application where such double billing has been included in the present motion. As to those instances in which the flaw has not been imported into this motion, they are relevant for another purpose. Analysis of a fee application often requires taking on faith the assurances of the party seeking fees, and putting trust in the reliability of its calculations. Errors of the sort identified above compromise that reliability. **Ex. 2**, ¶¶2-3, 26.

Similarly, Plaintiffs' expert, Judge Lester Langer, also testifies about the egregious amount of overbilling, block billing, and other inappropriate recording practices evidenced in Novella's fee motion and records. **Ex. 3**. For instance, Judge Langer states,

vi. Defendant's counsel had hundreds of hours of egregious billing in terms of block billing, overbilling, unnecessary research, editing and proofreading, the multiple memos, interoffice memos and revisions to the interoffice memos.

vii. Based on the foregoing reasons and analysis, the Defendant's counsel's billing to Defendant was excessive which appears to be in violation of the Rules Governing Florida Lawyers. This is another additional factor undermining the credibility of the fee petition and constitutes grounds for denial of the motion. **Ex. 3**, at pp. 6-7.

The morass of inappropriate time records imposes an undue burden on Plaintiffs and this Court to appropriately parse. As Plaintiffs' experts testify, the sheer amount of billing inflation and unwarranted bills warrant denial of the motion. **Ex. 2**, ¶3, 37; **Ex. 3**, at pp. 2-8; *see also Ellis,* 218 Cal.App.4th at 854; *Vocca*, 519 F. Supp. at 901–902 (N.D. Ill. 1981); *Pistoresi,* 2009 WL 910867, at *7-*8 (E.D. Cal. Apr. 2, 2009); *Farris,* 508 F. Supp. at 227.

Unconscionable client billing is also unethical. *Bushman v. State Bar of Cal*., 522 P.2d 312, 314 (Cal. 1974) ("It is settled that gross overcharge of a fee by an attorney may warrant discipline."). Plaintiffs attach objections to time entries that impose an undue burden to review. **Ex. 6**. Moreover, Novella fails to reconcile Randazza's time records with Randazza's presence in Europe, as claimed in Randazza's July 1, 2015 request for a hearing continuance, [Dkt. No. 208], and his July 14, 2015 request extension of time for expert depositions, [Dkt. No. 213].

### 3. Randazza's Testimony Warrants Denial of the Fee Motion

Testimony supporting fee motions must be credible. *See*, *e.g.*, *Ellis*, 218 Cal.App.4th 853, 882-885. Reputation is also at issue in the fee motion. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983); [Dkt. No. 292-2, ¶9]. Randazza's testimony lacks credibility.

#### a. The Excessive Fee Rates Requested

Novella misplaces reliance on the Laffey matrix. *Cf. Cook v. Law Offices of Forster & Garbus*, No. 6:10–cv–934–Orl–28KRS, 2010 WL 4941439, at *3 (M.D. Fla. Nov. 3, 2010) ("[T]he Laffey Matrix is not reflective of prevailing market rates in the Middle District of Florida.").

While Novella seeks $650 per hour fee rate for Randazza, that rate should be reduced given the interim arbitration award against him and his pending bankruptcy proceeding. **Ex. 3**, at p. 6 (discussing effect on hourly rate calculus); *cf. Fla. Bd. of Bar Examiners v. G. W. L*., 364 So. 2d 454, 455-460 (1978) (discussing "circumstances surrounding [] bankruptcy application"). Likewise, Novella seeks $400/hour for Attorney Wolman despite the fact that he was awarded $200/hour months ago in *E. Point Sys. v. Steven Maxim, S2K*, No. 3:13–cv–00215–VAB, 2015 WL 2381079, at *1-*2 (D. Conn. May 18, 2015), and awarded $100/hour in *Gardner v. Simpson Fin. Ltd. P'hip*, 963

6

F. Supp. 2d 89, 95 (D. Mass. 2013). Similarly, Randazza testified to a rate for Attorney Haar of $360 per hour, [Dkt. No. 292-2, ¶13], but contradicts that testimony with a claimed rate of $325 per hour for her in the brief. [Dkt. No. 292, at p. 10]. The testimony is unreliable and not credible.

There is also no evidence of rates charged and collected by Novella's counsel in other matters. He does not even offer evidence that Novella has paid any of his counsel's invoices. Indeed, Novella has improperly redacted the section of the invoices which would reveal this information. Without credible testimony on the claimed fee rates from Novella, this Court should reject the entire fee petition. *See*, *e.g.*, *See*, *e.g.*, *Ellis*, 218 Cal.App.4th at 854; *Vocca*, 519 F. Supp. at 901–902; *Pistoresi,* 2009 WL 910867, at *7-*8; *Farris,* 508 F. Supp. at 227; **Ex**. **1**, ¶9.

### b.      Lawyers Without Appearances or Fee Rate Evidence

Novella seeks fees for lawyers who did not appear in this case or were not admitted to practice law in the Southern District of Florida: D. Gill Sperlein, Alex Shepard, Jeremy Robbins, and Ronald Green. These timekeepers, however, appear over and over again in the dozens of pages of timesheets, including doing "final" work. [Dkt. No. 292-3]. It would violate the local rules to award fees for these timekeepers and would otherwise be inequitable. *Gsell v. Rubin and Yates,* 41 F. Supp. 3d 443, 452 (E.D. Pa. 2014) ("The Court finds that because Mr. Lee was not admitted to practice in Pennsylvania or the E.D. Pa. and yet actively participated in the case without obtaining *pro hac vice* admission, Mr. Lee violated Local Rule 83.5.2(b) and therefore may not receive attorney's fees."). Moreover, Novella does not present testimony at to the fee rates of Ronald Green, which precludes recovery. *Hensley*, 461 U.S. at 437 ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."). This egregious conduct warrants denial of the fee motion. *See*, *e.g.*, *Ellis*, 218 Cal.App.4th at 854; *Vocca*, 519 F. Supp. at 901–902; *Pistoresi,* 2009 WL 910867, at *7-*8; *Farris,* 508 F. Supp. at 227.

### C.      Novella Fails to Show the Bad Faith Required to Support His Request for Fees Under the Lanham Act and 28 U.S.C. §1927

This Court previously articulated the standard for obtaining fees under the Lanham Act, [Dkt. No. 227, at p. 2]. The standard for obtaining fees under 28 U.S.C. §1927 is similar, but "high." *Scott v. K.W. Max Inv.*, Nos. 6:05-cv-683-Orl-18UAM, 2007 WL  2947446, at *3 (M.D. Fla. Oct. 4, 2007). Novella cannot impose §1927 fees against Plaintiffs. Regardless, fees under the Lanham Act and §1927 require bad faith by Plaintiffs and their counsel, which Novella does not and cannot show.

> **1.**     **This Court Already Ruled that this Was Not an "Exceptional Case" and Subsequent Evidence Supported Plaintiffs' Claims**

The Lanham Act elements are: "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been-or is likely to be-injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

On August 6, 2015, this Court denied the Society's "exceptional case" motion for fees under the Lanham Act. After that order, Plaintiffs obtained tens of thousands of documents from Novella and other parties, [Dkt. No. 272, at Ex. 2, ¶2], making the evidence supporting the elements of Plaintiffs case against Novella even stronger. [Dkt. No. 272, *et seq.*]. This is in addition to expert and other testimony supporting Plaintiffs' case. [Dkt. No. 272, *et seq.*; *see, e.g.*, Dkt. No. 272 at Exs. 1, 3]. Indeed, in granting Novella' motion for summary judgment, this Court focused on the issue of "commercial speech," not specifically finding in Novella's favor on other aspects of Plaintiffs' claims. [Dkt. No. 288]. As explained below, Plaintiffs had a good faith basis to bring their claims, including as it relates to the issue of "commercial speech." Plaintiff's expert John Heller opines that Plaintiffs had a good faith basis to proceed on the issues of commercial speech. **Ex. 2**, ¶¶48-55.

> **a.**     **Commercial Speech**

In its summary judgment order, this Court found that there was not sufficient economic motivation by Novella for the statements in the ESA and Novella 2 webpages to be considered "commercial speech." [Dkt. No. 288, at pp. 3-8]. However, as will be articulated in the pending appeal, this Court overlooked record evidence that SGU grossed $25,000 a month, netted $10,000 a month, and that Novella paid himself $3,500 a month. [Dkt. No. 261-9 (Tr. at 85:20-86:17)]. Moreover, Novella sealed evidence regarding SGU's gross in 2014 and personal income from SGU for 2014. [**Ex. 7** (Dep. Tr. of S. Novella at 79:13-21, 94:16-95:4, and Exs. 35, 37 (under seal)]. Novella knew of this evidence but did not inform the Court. Thus, respectfully, Plaintiffs will show the 11th Circuit Court of Appeals under a *de novo* standard of review this evidence above, *inter alia*.

In its summary judgment order, this Court also found against Plaintiffs on the *Bolger* guideposts of advertising and specific product reference. [Dkt. No. 288, at p. 7]. In the pending appeal, respectfully, Plaintiffs will show that this Court overlooked the necessary context for these *Bolger* guideposts, *inter alia*. "Full context" is essential in analyzing the elements of the Lanham Act claims. *Osmose v. Viance,* 612 F.3d 1298, 1308-1309 (11th Cir. 2010); *Gordon and Breach*

*Science Pubs. S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1544 (S.D.N.Y. 1994) (discussing Lanham Act's application to "subsequent (or, occasionally, prior) promotional uses" of speech). Although this Court denied the motion for leave to amend the complaint to add in more than the ESA and Novella 2 webpages (an order also on appeal), the other webpages Novella began publishing after publication of the ESA and Novella 2 webpages were part of the full context because these new webpages hyperlinked back to the ESA and Novella 2 webpages. [Dkt. No. 272, at p. 4, n. 2 (collecting cases)]. Thus, the content of the webpages that hyperlinked back to the ESA and Novella 2 webpages were at issue.

Specifically, this included the content of the Update Page, the Legal Defense Page, the SGU Home Page, and Podcast 472. Had this Court examined *Bolger*'s guideposts of advertising and specific product reference on these webpages, it should have concluded that the ESA and Novella 2 webpages were commercial speech. For instance, the Legal Defense Page, the SGU Home Page, and Podcast 472 contained a bevy of SGU membership links, "donation" links for money to SGU, store links, advertiser links, and social media links that funnels the public to memberships to SGU. [Dkt. No. 272, *et seq*.]. Podcast 472 had specific references to Novella's "Great Courses." [Dkt. No. 272, *et seq*]. Likewise, the Update Page hyperlinked to both the Legal Defense Page and a webpage for "donation" to SGU. [Dkt. No. 272, *et seq*.].

More context is the fact that Novella is an actual or prospective competitor of Plaintiffs. [Dkt. No. 105-1, ¶58]. Comparing what Novella does to Plaintiffs shows this [Dkt. No. 272, *et seq*.]:

|  | Treat Stroke Patients? | Treat Alzheimer's Disease? | Treat Neuropathic Pain and Radiculopathy Patients? | Treat Neurological Back Pain Patients? | Prescribe Off-Label Treatments? | Solicit Clients from New England? |
|---|---|---|---|---|---|---|
| Novella | √ | √ | √ | √ | √ | √ |
| Plaintiffs | √ | √ | √ | √ | √ | √ |

Novella's economic interest has two main focuses. [Dkt. No. 272, *et seq*.]. One is work with his for-profit skeptic company, SGU. *Id*. One of the vehicles is a paid advertisement promoting his paid skeptic video courses. *Id*. Novella deceives the public through non-profit monikers. *Id*. Novella also works as a neurologist. *Id*. Novella generates more revenue from his for-profit skeptic company then he does from his work as a neurologist. [Dkt. No. 272, *et seq*.]. The lawsuit threatens his skeptic livelihood. *Id*. On July 23, 2013, Novella moved his attack against Dr. Tobinick from his non-profit to his for-profit, SGU website. *Id*. In short, Novella does not "lobby for scientific education." [*Id*.].

In the full context of these and other things, Plaintiffs will argue on appeal that, *inter alia*, Novella should not be entitled to summary judgment on the issue of commercial speech under *Bogler* guideposts of advertising and specific product reference.  Here, this Court should not find that fees are warranted under the Lanham Act or §1927, as Plaintiffs are proceeding in good faith.

### b.    The Remaining Lanham Act Elements and FDUTPA

In its summary judgment order, this Court did not specifically find against Plaintiffs on the elements of falsity and deception, causation, interstate commerce, and damages.  [*See also* Dkt. No. 172, at n.2 (declining to rule on the issue of falsity)].  For that and other reasons, it would be illogical for this Court to find that fees are warranted under the Lanham Act or §1927 as it relates to these elements of the Lanham Act.  There was ample record evidence to support each of these elements, including expert testimony.  [Dkt. No. 272, *et seq.*; *see*, *e.g.*, Dkt. No. 272, at pp. 6-9 and exhibits cited (falsity and deception); Dkt. No. 272, at pp. 10-15 and exhibits cited (causation, interstate commerce, and damages)]. In *Lexmark*, the USCT held that a plaintiff suing under the Lanham Act "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." 134 S.Ct. at 1391.  Plaintiffs relied on *Lexmark* in good faith.

Further, fees are not available to Novella under Florida Unfair and Deceptive Trade Practices Act ("FDUTPA").  This Court did not hold that FDUTPA applied in its summary judgment order, [Dkt. No. 288], and, in fact, this Court denied Plaintiffs' request to add claims under FDUTPA.  This Court's summary judgment order, which was focused on commercial speech, should not be read as implicitly adopting FDUTPA.  The commercial speech doctrine does not bar FDUTPA claims. *Caribbean Cruise Line v. BBB of Palm Beach Cnty.*, 169 So.3d 164, 169-170 (Fla. 4th DCA 2015).

### 2.    Novella Admits that this Is Not an Exceptional Case, "Respect[ing] the Fact" that Plaintiffs Wanted to Go to Trial

Novella's counsel has acknowledged Plaintiffs' good faith in seeking to pursue their claims. [Dkt. No. 292-6, at p.7].  Novella wanted Plaintiffs to deposit that money into an account for a settlement of the anti-SLAPP fee motion while the parties proceed to trial and any appeals.  [*Id.*]. Under Novella's proposal, Plaintiffs would actually get money from Novella if Plaintiffs won at trial and/or appeal. [*Id.*].  Novella's counsel stated: "I also respect the fact that he believes that he will prevail on his remaining claims."  [*Id.*]. Thus, this Court should not find Plaintiffs or their counsel liable for fees under the Lanham Act or §1927.   Novella's "respect" for Plaintiffs trying to fight

their claims through trial and an appeal (with the prospect of potential success) is fundamentally incompatible with a finding that Plaintiffs or their counsel were somehow operating in bad faith.

### 3. This Court's July 2015 Deferment of Novella's (Later Withdrawn) Motion for Summary Judgment Heavily Mitigates Against Awarding Lanham Act or §1927 Fees

On July 8, 2015, this Court deferred resolution of Novella's (then) pending motion for summary judgment. [Dkt. No. 212]. Afterwards, Novella withdrew the motion. [Dkt. Nos. 214, 215]. This Court's order allowed Plaintiffs to conduct discovery. [Dkt. No. 212]. It is illogical to hold Plaintiffs or their counsel liable for fees under the Lanham Act or §1927 where the Court itself allowed for Plaintiffs to conduct discovery and pursue their claims as of July 8, 2015. Further, the fact that Novella withdrew the motion for summary judgment also contradicts against any entitlement to fees. *See*, *e.g.*, *Brooks v. Cook*, 938 F.2d 1048, 1055 (9th Cir. 1991).

### 4. Plaintiffs' Were Justified in Litigating this Case, Including in Seeking Relief from Novella's Challenged Testimony

Plaintiffs had a modest amount of material docket activity. **Ex**. **8**. This case lasted little over a year. Plaintiffs did not file a motion for summary judgment, a motion directed at Novella's answer, and the like. This Court criticized Plaintiffs for their lack of aggression in the preliminary injunction phase. *Tobinick v. Novella*, No. 14-cv-80781, 2015 WL 1526196, at *7 (S.D. Fla. Apr. 2, 2015). Plaintiffs were efficient in their litigation efforts, as some docket entries were in response to Novella's filings, conduct and unsubstantiated objections, particularly after this Court's August 6, 2015 determination that this was not an exceptional case. **Ex**. **8**. Indeed, Novella's actions resulted in the discovery hearings toward the end of the case.

Re the Rule 60 and Rule 37 motions, Novella's lawyer agreed that if Novella submitted false testimony and mislead Plaintiffs in his deposition (both of which Novella did), Novella's lawyer would need to have a "conversation" with Novella. **Ex**. **9**. Novella's response to these motions further validated Plaintiffs desire for the relief. As far as Novella's testimony about reconciling the false statements about relying on the superseded, unavailable 2004 iteration of the Medical Board of California ("MBC") accusation against Dr. Tobinick in MBC case number 06-2001-127668, Novella essentially claimed to have forgotten exactly what it was he read. [Dkt. No. 262-1, ¶4.f ("I cannot pinpoint exactly where or when I saw this 2004 document.")].

As far as Novella's dubious testimony about the extent of his connections to key players attacking Plaintiffs' and their treatment, including Alan Zarembo (the author of an LA Times article

about Dr. Tobinick), Steven Barrett (Novella's close cohort and instigator of the (failed) November 2014 MBC Accusation against Dr. Tobinick), and Paul Ingraham (Novella's close cohort who helped Novella launch "Tobinick Day" in order to harm Plaintiffs' business, as recounted by Ingraham himself: "I doubt Tobinick has a clue just how much of a Streisand Effect he's in for.  If he thought Google's search results were unkind to him before, he hasn't seen anything yet."), [Dkt. No. 173-5, at p. 9], Novella essentially blamed his memory and otherwise claimed that he misunderstood the questions. [Dkt. No.263-1, ¶10 ("I understood the deposition question to mean, for it to be a discussion, that I would have had to have responded to any such e-mail.")]. Novella's time records filed with the motion show the connections with the cabal that Novella has assiduously attempted to deny exists. *See*, *e.g.*, [Dkt. No. 262, at p. 9 (dismissing cabal as akin "illuminati" and alien life theories); Dkt. No. 277, at p. 3].  For instance, Novella's lawyers were in discussions with Zarembo, the LA Times author as early as July 2014. [Dkt. No. 292-3, at p. 8]. Novella's reaction to the Rule 60 and Rule 37 motions highlights why the motion practice advocacy was in good faith.

In granting summary judgment for the Society for Science-Based Medicine, Inc., the Court stated twice that there was no commercial speech "at least as regards the Society." [Dkt. No. 157, at pp. 9, 12].  Novella is wrong that the subsequent preliminary injunction order should have ended the case.  Preliminary injunction orders do not have preclusive effects on subsequent litigation.  *See*, *e.g.*, *Kuzinich v. Santa Clara County*, 689 F.2d 1345, 1350-1351 (9th Cir. 1982) ("[I]ssues litigated in a preliminary injunction action are not res judicata and do not form a basis for collateral estoppel.").  Moreover, for the preliminary injunction, Plaintiffs were limited in discovery.  [Dkt. No. 128].  After the preliminary injunction stage, Plaintiffs obtained additional evidence supporting their claims pursuant to Court order. [Dkt. No. 212], including as it relates to commercial speech.

Plaintiffs acted responsibly in, on their own, bringing Defendant's objection to Jay Novella's recording to this Court's attention and asking for a ruling.  Defendant did not support their position.  *Cf. Ellis*, 218 Cal.App.4th at 872 ("Sklar's numerous accusations of unethical behavior against other participants (including the trial court) were inappropriate and unprofessional behavior, which also justified a denial of fees.").  Judge Langer opines that there were no vexatious acts. **Ex. 3**, at pp. 2-3.

### 5.    Plaintiffs' Counsel, Including Cahen and O'Brien, Are Not Liable Under the Lanham Act or 28 U.S.C. §1927

Novella's position is that Plaintiffs pursued the litigation in bad faith after they lost the preliminary injunction motion. Dkt. No. 172; Motion for Fees at p. 35. Critically, Novella does not assert that Plaintiffs' claims were frivolous *ab initio*. He also fails to explain why a particular filing

was maintained in bad faith.  Novella generally identifies the following events as evidence that the case was pursued in bad faith: (a) Novella obtained dismissal of the California Plaintiff's state law claims under the California anti-Slapp statute. Dkt. No. 193 (the "Anti-Slapp Order"); (b) The Court denied Plaintiffs' motions for leave to amend the complaint. Dkt. Nos. 202, 245; (c) Plaintiffs' pursued discovery requests and a privilege log that were limited in part by the Court. Dkt. Nos. 229, 250; and, (d) Plaintiffs lost motions for sanctions and reconsideration. Dkt. No. 275. Yet Novella fails to explain why or how those efforts were soured by bad faith – nor could he.

Randazza's declaration does not address 28 U.S.C. § 1927 sanctions. Similarly, Novella's expert, Robert Hauser, does not address these proposed sanctions either.  In contrast, both of Plaintiffs' experts testify that there is no conduct warranting sanctions against Plaintiffs or their counsel, including Cahen and O'Brien. **Ex. 2**, ¶¶48-55; **Ex. 3**, at pp. 2-3.  Additionally, because Randazza did not verify the Motion for Fees (contrary to S.D. Fla. L.R. 7.3(a)(7)), there is no sworn evidence of any bad faith multiplication of the proceedings.  Rather than relying upon admissible evidence, Novella merely points to the outcome of certain motions.

As Novella admits, the Court previously denied his §1927 motion. Dkt. No. 175, 190. That initial denial militates in favor of a denial of his second attempt here.  It is well-established that §1927 is not a catch-all provision for sanctioning objectionable conduct by counsel. *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997). Rather, to impose sanctions pursuant to §1927, the court must find three conditions: (1) the attorney must have engaged in unreasonable and vexatious conduct; (2) that conduct must have multiplied the proceedings, and (3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings. In other words, the sanction may not exceed the costs, expenses and attorneys' fees reasonably incurred because of the sanctionable conduct. *Hudson v. Int'l Comp. Neg..,* 499 F.3d 1252, 1262 (11th Cir. 2007). "[T]he provisions of §1927, being penal in nature, must be strictly construed." *Peterson,* 124 F.3d at 1395.

Bad faith is the touchstone for the imposition of sanctions under §1927 and it is measured by the attorneys' objective conduct. *Amlong & Amlong v. Denny's, Inc.,* 500 F.3d 1230, 1239–40 (11th Cir. 2007). An attorney litigates in an objective bad faith under §1927 when he knowingly or recklessly pursues a frivolous claim, delaying its dismissal by unreasonably and vexatiously multiplying the proceedings. *Amlong,* 500 F.3d at 1242; *Schwartz v. Millon Air,* 341 F.3d 1220, 1225 (11th Cir. 2003).  Under §1927, a court "may" impose excess costs, expenses, and attorneys' fees on any attorney "who so multiples the proceedings in any case unreasonably and vexatiously." *Id.*

13

Novella's motion for attorneys' fees pursuant to §1927 should be denied again because there is no evidence that Plaintiffs' counsel, including Cahen (who appeared on February 24, 2015 (Dkt. No. 148) and O'Brien (who appeared on August 21, 2015 (Dkt. No. 247)), pursued claims in bad faith or engaged in unreasonable or vexatious conduct that multiplied the proceedings.

Each of Novella's assertions of misconduct are addressed in turn. In the Anti-SLAPP Order, the Court dismissed the California Plaintiff's state law claims. In the fee motion, Novella does not assert that the claims were initially brought in bad faith. Soon after the Anti-SLAPP Order, the Florida Plaintiffs voluntarily dismissed their defamation claims. Dkt. No. 202 at p. 3. Plaintiffs' narrowing of their claims served to contract the litigation between the parties, not multiply it.

Next, Novella points to Plaintiffs' two motions for leave to amend their pleading, which were denied. Dkt. Nos. 202, 245. First, Plaintiffs sought to add additional publications, two new parties, one previously-dismissed party and a civil conspiracy claim. Dkt. No. 177. The Court denied the amendment because it was brought too late. Dkt. No. 202. It did not rule that the amendment was futile. Moreover, the majority of the proposed second amended complaint was directed at adding three additional parties. The proposed second amended complaint would have expanded the case for the additional parties, but not in any significant way for Novella. In any event, the Court denied the proposed amendment, thereby leaving the scope of the case static – not increasing its scope. Novella does not argue that the scope of the proposed new claims lacked any colorable basis. The Court decided not to allow the amendment due to timing, as opposed to substance.

The second proposed amendment was extremely narrow. Plaintiffs sought to add a FDUTPA claim based on the same nucleus of underlying facts as the existing Lanham Act claims. Dkt No. 241. Plaintiffs sought the proposed amendment because of a recent significant pronouncement of non-consumer standing under FDUTPA. Plaintiffs did not hide that a previous amendment was denied or that it was past the deadline to amend. Plaintiffs argued that they met the standard for a late amendment.   Again, the Court denied the amendment due to its timing, not futility. Similarly, Novella has not contended that the FDUTPA claim lacked any colorable basis. Rather, the reason that Plaintiffs ultimately lost the Lanham Act Claim (absence of commercial speech), would not have doomed a FDUTPA claim as commercial speech is not an element of FDUTPA. Neither amendment was brought in bad faith.

Additionally, Novella claims Plaintiffs pursued overbroad discovery requests and a privilege log. Dkt. Nos. 229, 250. Apparently, his position is that because Plaintiffs' discovery motions were

granted in part and denied in part, they were sought in bad faith. First, Novella moved for a protective order regarding certain financial records, email records and to prohibit his deposition. Dkt. No. 219. The Court compelled Novella to produce records of revenue received from SGU and emails with SGU regarding Google analytics. Dkt. No. 229. The Court also ordered the parties to work on search terms which ultimately led to Novella producing tens of thousands of emails. *Id.* Lastly, the Court ruled that Plaintiffs could depose Novella concerning his newly produced documents. *Id.*; Dkt. No. 239. This Order led to Plaintiffs' eliciting documents and testimony relevant to commercial speech (and other issues). *See* Dkt. No. 272, *et seq.*; *e.g.*, Dkt. No. 272 at pp. 15-17; Dkt. No. 272-1 at ¶3; *see also* Dep. Tr. of S. Novella at 79:13-21, 94:16-95:4, and Exs. 35, 37 (under seal).

Next, Novella contends that Plaintiffs should not have pursued a privilege log. The Court ordered him to produce a privilege log per the local rules. S.D. Fla. 26.1(g)(3); Dkt. No. 250. Plaintiffs did not seek a privilege log in bad faith.

The last specific complaints of Novella involve the motion for sanctions and motion for reconsideration, which were summarily denied by the Court. Dkt. No. 275. Specifically, Plaintiffs contended that Novella obtained the Anti-SLAPP Order through false testimony about his review of a 2004 MBC accusation against Dr. Tobinick and that Novella gave false testimony about his communications with L.A. Times writer Alan Zerembo, Dr. Stephen Barrett and pharmacist Paul Ingraham. In denying the motions, the Court did not rule that the testimony was not false. Dkt. No. 275. Indeed, rather than contending his earlier testimony was true, Novella claimed the testimony, if false, was due to faulty memory and misunderstanding of questions, not intentional lying. Apparently, the Court determined that the transgressions did not rise to the level warranting relief under Rules 37 or 60(b).  To claim, however, that bringing Novella's false testimony to the attention of the Court was wrongful would be completely inequitable and it would further reward Novella for his misdirection and misstatements. *Accord* **Ex. 3**, at p.3 ("Plaintiffs' attorneys would have been derelict in their duties if they had done nothing to pursue their clients' interests").

Again, Novella's Motion for Fees is void of specifics as to why the Rule 37 and 60 motions were brought in bad faith. Moreover, Novella filed his responses about 24 hours after Plaintiffs' motions were first filed. Novella fails to explain how motions to which it took him one day to formulate responses can possibly constitute bad faith multiplication of the proceedings.

Finally, Novella asserts generally that Plaintiffs' entire pursuit of the case after the preliminary injunction motion was denied is sanctionable as bad faith vexatious attorney misconduct.

In essence, he claims Plaintiff had to quit after they received an interlocutory ruling. Dkt. No. 292 at pp. 34-35.   Certainly, the preliminary injunction ruling put Plaintiffs on notice of the Court's position on commercial speech (economic motivation for writing articles) and causation (that Novella's articles caused Plaintiffs' damages) – the irreparable harm and delay at issue were inapplicable to the later proceedings. Yet Plaintiffs' subsequent efforts were directed at satisfying these hurdles.  Plaintiffs sought documents and deposition testimony concerning Novella's economic motivation for writing the articles. Indeed, Jay Novella produced documents explaining he and his brother's efforts to make money through the publication of controversial scientific materials. Similarly, Plaintiffs elicited evidence from Novella regarding his earnings derivative of writing the articles. Ultimately, the Court found that the evidence did not demonstrate "strong economic motivation" for writing the articles. It did not say that there was no economic motivation.

Furthermore, the Court previously ruled that the Lanham Act claims were not "exceptional." Dkt No. 227. In doing so, the Court related that it did not know how it was going to rule on the preliminary injunction until after the hearing.  Discovery was limited to one deposition of Novella prior to the preliminary injunction hearing. Surely, Plaintiffs' attorneys' responsibility to be zealous advocates include pursuing discovery of commercial speech and other critical elements.

Regarding causation, Novella retained an expert to testify about the impact of Novella's articles on Plaintiffs' medical practice. Through discovery, Plaintiffs also elicited documents regarding "Tobinick Day," the term used by Novella and his cohorts to describe the ruinous effects of Novella's conduct on Plaintiffs.  The Court did not grant summary judgment on causation.

Novella's position that Plaintiffs' claims were frivolous is contradicted by his own litigation strategy. Unlike Society for Science Based Medicine, Inc., Novella did not direct a dispositive motion to the Lanham Act claim until June 26, 2015. Dkt. No. 206.  Plaintiffs obtained relief pursuant to Fed. R. Civ. P. 56(d) to conduct discovery. Dkt. Nos. 209, 212. Rather than pursuing the summary judgment motion, Novella withdrew it. Dkt. Nos. 214, 215. On August 25, 2015, he refiled a summary judgment motion. Dkt. Nos. 251. Novella could have sought dismissal earlier.

As shown throughout this filing and the record, none of the conduct identified by Novella was pursued without any basis. Plaintiffs and their counsel had good reasons for each of the actions taken. Plaintiffs' efforts did not multiply the proceedings. They pursued reasonable amendments and discovery in an effort to enforce their rights. In fact, Cahen, O'Brien, and Plaintiffs' other attorneys' obligation to be zealous advocates absolutely required that they take each of the actions Novella now

16

complains about.  The Court should exercise its discretion to deny the Motion for Fees and find that no sanctions are warranted against Cahen or O'Brien, Plaintiffs' other counsel, or Plaintiffs.

### D.      The Anti-SLAPP Fee Procedure Cannot Be Enforced in this Court

In *Intercon*, the 7th Circuit found a Washington anti-SLAPP mechanism unenforceable in federal court because it "requires a judge to resolve factual disputes that properly belong to a jury." 791 F.3d at 731; *accord Makaeff v. Trump University, LLC*, 736 F.3d 1180, 1189-90 (9th Cir. 2013) ("California's anti-SLAPP statute creates the same conflicts with the Federal Rules that animated the Supreme Court's ruling in *Shady Grove*.") (WATFORD, Circuit Judge, joined by KOZINSKI, Chief Judge, and PAEZ and BEA, Circuit Judges, dissenting from the denial of rehearing *en banc*).

This Court did not examine the *Intercon* case in its anti-SLAPP order, as it was decided weeks later. [Dkt. No. 193, at p.5, n.4].  The California anti-SLAPP mechanism is a code of the California rules of civil procedure.  Thus, this Court cannot grant Novella's prayer for fees under California's anti-SLAPP procedure without violating the *Erie* doctrine.

### 1.      Fundamental Unfairness to the California Plaintiff

Application of the California anti-SLAPP procedure here violated, *inter alia*, federal rules of civil procedure 1, 7, 8, 11, 12, 15, 26, 38, 42, 54, 56, and 65 and the 1st, 5th, 7th, and 14th amendments to the U.S. Constitution.  For instance, this Court adopted California procedure. [Dkt. No. 108, n.1 (abiding by 30-day procedural rule)].  Novella treated the anti-SLAPP motion like a motion for summary judgment. [Dkt. No. 94].  And as if it was summary judgment, this Court weighed the evidence on the anti-SLAPP motion and came to conclusions about concepts like malice, [Dkt. No. 193, at pp. 14-16], without the California Plaintiff having the benefit of a full discovery record, [Dkt. No. 193, at p. 16, n. 11 (noting limited discovery)], or a jury trial, which all Plaintiffs demanded, [Dkt. No. 55, at p. 26].  *See*, *e.g.*, *Beacon Theatres v. Westover*, 359 U.S. 500, 510 (1959) ("In the Federal courts this (jury) right cannot be dispensed with, except by the assent of the parties entitled to it; nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action, or during its pendency.").

Indeed, the California plaintiff was unfairly locked into the anti-SLAPP procedure.  Prior to this Court granting the California anti-SLAPP motion, Plaintiffs (including the California Plaintiff) asked this Court for leave to file an amended complaint, which would have completely mooted and avoided Novella's California anti-SLAPP motion, by eliminating possible causes of action subject to

the motion. [Dkt. No. 177-1].  This Court subsequently granted the anti-SLAPP motion and then denied leave to amend, which forced Plaintiffs into a complaint they wanted to change.

**2.      Fundamentally Unfairness to the Non-California Plaintiffs**

The California anti-SLAPP procedure did not belong in a case where there were two non-California plaintiffs suing a non-California defendant, despite the California plaintiff.  The non-California plaintiffs were prejudiced by the imposition of the anti-SLAPP motion and procedure, through limited access to discovery.  [Dkt. No. 128 (limiting discovery)]; *compare*, *e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001).

**E.      Novella Cannot Obtain Anti-SLAPP Fees Since the Case Continued**

Novella would be not entitled to recover under the California anti-SLAPP statute.  Parties are not permitted to recover under the California anti-SLAPP statute where "the *results* of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010) (emphasis in the original and internal citations and quotations omitted).  As explained in *Moran v. Endres*, 135 Cal.App.4th 952 (Cal. Ct. App. 2006):

> To be blunt, defendants' motion accomplished nothing, except that plaintiffs were put to the cost of defending the motion. The possible recovery against defendants did not change. The factual allegations which defendants had to defend did not change. The work involved in trying the case did not change. . . .The case was essentially the same after the ruling on the special motion to strike as it was before. The results of the motion were minimal and insignificant, fully justifying the court's finding that defendants should not recover fees.

*Id*. at 955. As in *Moran*, the results of Novella's anti-SLAPP motion were insignificant here.  The case did not end after the motion.  There was no practical benefit as all Plaintiffs, including the California Plaintiff, proceeded on claims that mirrored the exact same facts as the claims this Court struck. Thus, Novella would not be entitled to recover under the California anti-SLAPP statute.

Correspondingly, Novella would also be barred from recovery because the legislative intent of the anti-SLAPP statute only means for it to cover frivolous cases.  *Metabolife Int'l*, 264 F.3d at 839-40.  This is not a frivolous case, as evidenced by the fact that Novella answered the complaint and the limited nature of this Court's order on summary judgment regarding "commercial speech" (discussed below), which Plaintiffs are appealing. Additionally, the legislative intent of the anti-SLAPP statute was to benefit the public, something which assessing fees against Plaintiffs will not accomplish, considering the facts of this case. Plaintiffs have provided expert testimony that

18

Novella's false factual statements and actions that serve to improperly divert the public from utilizing Plaintiffs' services is a detriment to the public. [Dkt. No. 272, Exs. V, DD].

### F. Novella's Anti-SLAPP Motion Was Improper

Novella's counsel admitted that it is "improper" to use the anti-SLAPP statute to try to strike Lanham act claims. [**Ex**. **10** (November 20, 2015 Tr. at 20:25-21:1)]. Yet Novella did just that. Novella directed the anti-SLAPP motion at the California Plaintiff's entire complaint [Dkt. No. 93, at p. 20; Dkt. No. 106, at p. 11], which had the Lanham Act claim. By Novella's own admission, the anti-SLAPP motion was improper and equity precludes this Court from awarding fees. *See*, *e.g.*, *Zero Down Supply Chain Solutions v. Global Transp. Solutions*, No. 2:07–cv–400 TC, 2012 WL 5194230, at *2-*3 (D. Utah Oct. 19, 2012) ("[T]he Court denies Defendants' motion for attorneys' fees under the doctrine of unclean hands."); *Precision Instrument Mfg. Co. v. Auto. Maintenance Machinery Co*., 324 U.S. 806, 814 (1945) (noting "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative.").

### G. Novella's Stance in the Pretrial Stipulation Bars Fees

Novella represented that his anti-SLAPP motion for fees and his motion for fees under §1927 were sufficient to fall under the category of "undisposed of motions or other matters requiring action by the Court" under S.D. Fla. L.R. 16.1(e)(4). [Dkt. No. 286, at p. 5]. This Court subsequently denied all pending motions. [Dkt. No. 288, at p. 10]. Thus, under Novella's position, Court has denied Novella's anti-SLAPP motion for fees and his motion for fees under 28 U.S.C. §1927.

### H. Unclean Hands and Fundamental Inequities Preclude Fees

Courts have the discretion to deny fees based on the equitable principles of unclean hands and the equities. *See*, *e.g.*, *Zero Down*, 2012 WL 5194230, at *2-*3; *Precision Instrument Mfg. Co.*, 324 U.S. at 814. This Court should exercise that discretion for several reasons. Novella engaged in impermissible pretrial publicity. This pretrial publicity could have prejudiced potential juror and harmed Plaintiffs. **Ex**. **11** (expert report of Professor Glassman); *Koch v. Koch Indus*., 2 F. Supp. 2d 1409, 1415 (D. Kan. 1998) ("[T]his case will tried in the courthouse; any attempt to try this matter in the media ends now."); *Brown v. Daniel*, 180 F.R.D. 298, 302 (D.S.C. 1998). The conduct is unconscionable, including hiding the status of the 2014 MBC accusation, and, thus, bars recovery.

Novella's fee motion provides new evidence supporting Plaintiffs' position regarding Novella's use of superseded, outdated iterations of MBC case number 06-2001-127668 to the Court

in Novella's declarations and motions [Dkt. No. 292-3, at p. 10]. Thus, it would be fundamentally inequitable and against the public interest to grant Novella's fee motion.

**I.     Alternatively, this Court Should Dramatically Reduce Anti-SLAPP Fees**

Novella only succeeded in striking some of the claims brought by the California Plaintiff, warranting a proportionate reduction. *Mann v. Quality Old Time Serv.*, 139 Cal.App.4th 328, 345 (Cal. App. 4th 2006) ("[W]e conclude the court erred in failing to reduce the attorney fees award for fees attributable to the causes of action that remained in the litigation."). There is no basis for any fee multiplier, as they are reserved for situations where the lawyers took the risk of recovering little to nothing without any victory. Novella's lawyers had nothing to lose by attempting to invoke the California anti-SLAPP procedure. The anti-SLAAP motion was not complex or difficult. As stated by Plaintiffs' expert, Judge Langer, a multiplier is not warranted. **Ex. 3**, at p. 3. Plaintiffs' expert Heller opines that fees should not be more than $36,186, if there had been no overbilling and if the Court awards nothing. **Ex**. **2**.

**III.    CONCLUSION**

This Court has many, independent reasons to deny Novella's fee motion. The motion violates the local rules. The motion also violates the tenets of Novella's own expert's requirements for fee motions. The fee motion is also unconscionable in terms of the severe and egregious overbilling, block billing, double-counting, and other improper account for attorney time and effort. Plaintiffs have provided testimony from two experts, Heller and Judge Langer, upon which this Court should rely to deny the fee motion as grossly inflated and unconscionable. Courts rightly deny motions that impose such a burden on the opposing party and the Court.

Novella fails to meet his high burden of demonstrating that this is an exceptional case under the Lanham Act or that relief is warranted under 28 U.S.C. §1927. There is no bad faith. The record illustrates that Plaintiffs were warranted in diligently pursuing their claims in the manner they did, particularly in light of Court orders allowing pursuit of their claims and Novella's own admissions. Plaintiffs' experts, Heller and Judge Langer, also testify that Plaintiffs were acting in good faith.

There is a constitutional bar to recovery, given the *Erie* problem, as evidenced by the *Intercon* case decided after this Court's anti-SLAPP ruling. The anti-SLAPP procedure would also bar recovery since the anti-SLAPP motion did not stop the progress of the case and since it would not be in the public interest. Plaintiffs' expert Heller opines that there are grounds for Novella to get no fees, and he would not be entitled to more than $36,186 if there had been no overbilling.

Respectfully submitted,

| Geoffrey M. Cahen | *s/ Cullin O'Brien* |
|---|---|
| Fla. Bar No. 0013319 | Cullin O'Brien |
| CAHEN LAW, P.A. | Fla. Bar. No. 0597341 |
| 1900 Glades Road, Suite 355 | CULLIN O'BRIEN LAW, P.A. |
| Boca Raton, Florida  33431 | 6541 NE 21st Way |
| Telephone: (561) 922-0430 | Ft. Lauderdale, Florida 33308 |
| Fax: (561) 353-5455 | Telephone: (561) 676-6370 |
| E-Mail: geoff@cahenlaw.com | Fax: (561) 320-0285 |
| | E-Mail: cullin@cullinobrienlaw.com |

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that he filed the foregoing and the accompanying exhibits with the ECF system and served same on defense counsel this November 16, 2015.

*/s/ Cullin O'Brien*
Cullin O'Brien

Defense counsel:
Marc John Randazza;
Randazza Legal Group;
3625 South Town Center Drive
Las Vegas, NV 89135
Email: MJR@randazza.com