UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EDWARD LEWIS TOBINICK M.D., et al.,

    Plaintiffs.

v.

STEVEN NOVELLA, M.D., et al.,

    Defendants.

Case No: 9:14-cv-80781-RLR

**DEFENDANT STEVEN NOVELLA, M.D.'s REPLY TO PLAINTIFFS' OMNIBUS OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS**

Dr. Novella is a scientific journalist. He wrote about Tobinick's claims that he could cure Alzheimer's disease through a controversial technique, in which Tobinick would inject an arthritis medication into the patient's neck, then turn the patient upside-down, with the "cure" taking place within minutes. It was well within Novella's rights to harshly criticize such claims, but his primary criticism was that Tobinick's commercial claims about the procedure were not supported by sufficient scientific evidence. Tobinick did not want anyone criticizing his technique, so he sued Novella to try and suppress scientific debate over his claims. That censorious desire manifested itself in this frivolous lawsuit.

At every juncture, Novella tried to end this case expeditiously. However, Tobinick would have none of it, and his attorneys failed to rein him in, although one after the other, most did withdraw. While they did not share their rationale in detail, the first two firms departed right about the time that it was beyond doubt that these claims were frivolous. Despite the weak nature of the claims, Tobinick found counsel willing do drag Dr. Novella through months of litigation and hundreds of thousands of dollars in attorneys' fees. The mission was clear: If Tobinick could not prevail on the merits, perhaps he could win a war of attrition.

After the Court and Plaintiffs themselves dismissed every single claim over the course of months, despite Defendant's efforts to expeditiously terminate the matter, Dr. Novella moved for fees and sanctions. DE 292. Plaintiffs' opposition (DE 304) yet again rehashes failed arguments and interposes additional spurious claims to attempt to prevent Dr. Novella from being made whole. Dr. Novella is entitled to fees for the rates and hours submitted.

## 1.0  Dr. Novella is Entitled to Fees

In submitting an omnibus motion, Dr. Novella included all bases for entitlement to fees. As set forth below, nothing in the opposition demonstrates why Dr. Novella should not be reimbursed his fees and costs under any of the bases.

### 1.1  Fees are Proper under the California Anti-SLAPP Law

Plaintiffs challenge the applicability of the California Anti-SLAPP Law, Cal. Civ. Proc. Code § 425.16, in this matter under the *Erie* doctrine. *See* DE 304 at p. 7. Plaintiffs can not argue this now, as they specifically conceded this issue at hearing, and failed to contest it in their opposition to the Anti-SLAPP motion (DE 105), or even the motion for reconsideration (DE 261).[1] *See* DE 304-

---

[1] Nothing in Defendant's billing entries, DE 292-3 at p. 10, gives credence to Plaintiffs' theory espoused in their motion for reconsideration, regurgitated at DE 304, p. 22. Defendant has never denied that his counsel obtained a certified

- 1 -
Reply to Plaintiffs' Opposition to Motion for Fees and Sanctions

25 at 26:7-14 & 27:8-21.[2] They waived this argument and are now estopped from arguing otherwise. The Plaintiffs act as if they found a new case, by citing to a dissent from the 9th Circuit as "authority" for their waived position.[3] Meanwhile, it was defense counsel who brought this authority to the Court's attention at oral argument. *See* DE 304-25 at 8:12-16. Moreover, *Intercon Solutions, Inc. v. Basel Action Network*, 791 F.3d 729 (7th Cir. 2015) was decided on June 29, 2015, two months prior to Tobinick's motion for reconsideration that made no mention of it. However, that case is inapplicable. The 7th Circuit simply adopted the Washington Supreme Court's own ruling that the *Washington* Anti-SLAPP statute was unconstitutional under the Washington Constitution. 791 F.3d at 732. It specifically held it was not resolving questions related to any other states' anti-SLAPP statutes. *Id.* Meanwhile, the infirmities in the Washington statute, even if they mattered in this case, are not present in the California statute. Even a perfunctory reading of the cases would show that they do not apply. Finally, "A motion for fees is not a motion to alter or amend the judgment." *Van Ooteghem v. Gray*, 628 F.2d 488, 497 (5th Cir. 1980). Thus, there is no basis to disturb the Court's finding that California law applies.[4]

      Plaintiffs discuss *Brown v. Elec. Arts, Inc.*, 722 F. Supp. 2d 1148, 1155 (C.D. Cal. 2010) and *Moran v. Endres*, 135 Cal.App.4th 952 (Cal. Ct. App. 2006), where successful Anti-SLAPP movants did not receive their fees due to lack of a practical benefit. That is not the case here. This matter is more akin to *Shepard v. Miler*, 2011 U.S. Dist. LEXIS 48369, *5 (E.D. Cal. May 4, 2011), which distinguished *Brown* and *Moran*. In *Shepard,* fees were awarded where all of the plaintiff's state law claims were struck, as was the case here. That result "undeniably narrowed the scope of the lawsuit, limiting discovery, reducing potential recoverable damages, and altering the settlement posture of the case." *Id.* (internal citation and quotation marks omitted). The striking of the defamation case specifically eliminated punitive damages, reducing "potential recoverable damages" as in *Shepard. See, e.g., Tingley v. Times Mirror Co.*, 151 Cal. 1 (1907) (authorizing exemplary damages in defamation cases). And, as in *Shepard,* though the California Plaintiff's federal statutory claim remained, this

---

copy of the California Medical Board records; this does not conflict with Defendant's recollection of reviewing such documents prior to his counsel obtaining a certified copy. *See* DE 262 at pp. 4-5.

[2] To avoid confusion between the internal numbering in the transcript and the ECF system pagination, Defendant will only use the internal numbering for DE 304-25.

[3] *Makaeff v. Trump University, LLC,* 763 F. 3d 1180, 1189 (9th Cir. 2013)

[4] The Florida Plaintiffs suffered no prejudice. They had every opportunity to take discovery and voluntarily dismissed most of their analogous state law claims in the wake of the amendments to Fla. Stat. § 768.295, Florida's Anti-SLAPP statute, which went into effect on July 1, 2015. It is further notable that Plaintiffs' opposition is silent as to the fact that Dr. Novella is entitled to fees on the Florida Plaintiffs' state law claims under that statute, as noted in his motion. *See* DE 292 at p. 29, n. 12.

was "not indicative of defendant['s] success on [his] anti-SLAPP motion because that claim is not subject to the state anti-SLAPP statute."[5] *Shepard* at \*6-7.  California's Anti-SLAPP statute is meant to protect fundamental First Amendment rights; that Plaintiffs would seek to further punish Dr. Novella for his exercise of these rights (DE 304 at p. 22 (claiming "unclean hands" by reporting on the SLAPP suit)) is beyond the pale.  Dr. Novella is entitled to fees under California law.[6]  Enough is enough.

### 1.2   Dr. Novella is Entitled to Fees Under the Lanham Act

Plaintiffs appear to lump together Defendant's claim for fees under the Lanham Act with his request for sanctions under 28 U.S.C. § 1927.  Though there are certainly similarities, one is not dispositive of the other.  Both, however, should be awarded.

Defendant recognizes that this Court previously decided that Plaintiffs' prosecution of the Lanham Act claims was not "exceptional" through March 16, 2015, at least as to Defendant Society for Science-Based Medicine ("SfSBM").  *See* DE 227.  Perhaps that is the case, but if so, it is certainly so thereafter.  Further, this defendant is different than SfSBM, and how the Plaintiffs prosecuted the case against Novella is different.

Against Novella, unlike SfSBM, Plaintiffs prosecuted a preliminary injunction seeking an unlawful prior restraint, they sought to amend their complaint twice more, take a second deposition, take expert depositions, seek voluminous written discovery (necessitating multiple interventions by the Magistrate Judge), delay summary judgment, make multiple motions based on wild conspiracy theories, and force pretrial preparations, after already having learned that this was not commercial speech.[7]  This litigation conduct evidences that not only were the post-March 16, 2015 actions exceptional, but informs that the pre-March 16, 2015, actions were part of the same pattern and practice of exceptionality, which included amendment of the complaint to delay dispositive motion practice.  Meanwhile, Tobinick has the unmitigated chutzpah to claim that "Plaintiffs were modest in their litigation efforts." DE 304 at p.6.  This would be laughable if it had not come at Defendant's

---

[5] Plaintiffs misread DE 93 and DE 106; neither sought to strike Count I of the Amended Complaint.  The only counts actually discussed in the motion were Counts 2-5.  To suggest otherwise, as Plaintiffs do in DE 304 at p. 22, is spurious and not worthy of further comment.

[6] The pretrial stipulation and the summary judgment order do not bar fees as Plaintiffs suggest.  *See* DE 304 at p. 22 (discussing DE 286 and 288).  The potential motions identified were not then "pending," as they had not been filed.  *See Swartz v. Meyers*, 204 F.3d 417, 421 (3d Cir. Pa. 2000) (quoting Black's Law Dictionary, 6th ed. P. 1134 (1990)) (the definition of "pending" is described as something "begun, but not yet completed," such as an action commenced by filing or service).  If they had been foreclosed, why would the Court have permitted the filing of any, let alone a 30-page, motion?  *See* DE 290.

[7] Although Plaintiffs' expert, Mr. Heller, says this is not an exceptional case (DE 304-3, pp. 3 & 21), he provides no basis for his opinion on the Lanham Act and his testimony is inadmissible under Fed. R. Evid. 702.

significant expense.  That they did not file further frivolous summary judgment, *Daubert*, or pleadings motions is not to be commended; the absence of additional elephants doesn't make these proceedings less of a circus.

Plaintiffs spend three pages attempting to reargue the merits of the summary judgment order, *yet again*.[8]  DE 304 at pp. 11-13.  Defendant will rebut whatever arguments Plaintiffs make to the 11th Circuit, but it is notable that the tens of thousands of e-mails Dr. Novella was forced to produce, less than 1% of which were offered as evidence, did not make the evidence "stronger." Plaintiffs could have sought to file additional confidential matter under seal, but chose not to. However much Dr. Novella made by speaking could never convert the speech to commercial speech.  Just like SfSBM was not selling any services, Dr. Novella was not selling his own.[9] *See* DE 157.  Nothing in the text or evidence suggested otherwise; instead, Plaintiffs pursued a ludicrous conspiracy theory that because Dr. Novella might receive income due to his speech-related activities, all of his speech became commercial.  Someone writing an ad for free is engaged in commercial speech; a salaried journalist writing an article is not, even if the newspaper is supported by subscriptions and ads that pay her salary.  Plaintiffs pathological refusal to accept the reality of this situation is truly exceptional.[10]  And blaming Defendant for opposing overbroad discovery requests (which were successfully narrowed), for opposing improper motions under Rule 37 & 60 filled with irrelevant accusations (which Defendant succeeded on), and for objecting to unethically recorded evidence (unnecessarily raised by motion), is preposterous.[11]  Therefore, fees under the

---

[8] That Defendant's counsel was polite and treated Dr. Tobinick with respect, even as to his exceptionally misguided beliefs, should be commended and in no way represents any agreement that Plaintiffs ever had anything but a frivolous case.  Plaintiffs' argument to the contrary (DE 304 at pp. 13-14) would only encourage disrespect and incivility, an outcome Defendant does not wish to foster.
[9] Although the summary judgment and preliminary injunction orders were not technically dispositive of the claims against Dr. Novella, any reasonable litigant and his counsel should have realized that they faced significant hurdles. None of the discovery or pleadings were calculated to overcome these hurdles and instead focused on a highly erroneous understanding of commercial speech.
[10] As otherwise set forth in his pleadings, Defendant disputes the other elements of Plaintiffs' claims.  *See* DE 251 & 277.
[11] The opinion of Plaintiffs' expert, Mr. Langer, that the litigation was not "vexatious" is unconvincing.  First, Mr. Langer only reviewed the motion and the docket, not the actual pleadings or discovery taken.  *See* DE 304-10 at p. 3. Second, Mr. Langer, unfortunately, has a history of not properly reviewing the record before him or following governing legal requirements.  *See, e.g., B.M. v. Dobuler*, 979 So. 2d 308, 313-314 (Fla. 3d DCA 2008); *A.K. v. Dobuler*, 951 So. 2d 989, 991 (Fla. 3d DCA 2008); *A.R. v. Dobuler*, 960 So. 2d 793 (Fla. 3d DCA 2007).  Mr. Langer was specifically reprimanded for those three and nine other decisions where he acted "contrary to law."  *C.B. v. Dobuler*, 997 So. 2d 463, 463 (Fla. 3d DCA 2008).  Neither has he set forth any expertise entitling him to comment on fees due under the Lanham Act or § 1927, rendering such portion of his testimony inadmissible under Fed. R. Evid. 702.  It appears after being reprimanded by the 3d DCA more than a dozen times, Mr. Langer finally has a position where he is not subject to appellate scrutiny.  Given his history, Mr. Langer's expertise is questionable at best, and thus it is unsurprising that he in large part relies simply upon unfounded personal attacks upon counsel. .

Lanham Act are warranted.[12] They are warranted because the case itself is exceptional, and the utterly vexatious way in which Plaintiffs prosecuted it makes it even more so. *See Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 687 (9th Cir. 2012) (A Lanham Act case may be considered exceptional where a plaintiff's case is "groundless, unreasonable, vexatious, or pursued in bad faith.") As it was vexatious for § 1927 purposes, it is exceptional under the Lanham Act, even in the absence of bad faith. *Id.* Therefore, fees should be awarded.

### 1.3 Plaintiffs' Counsel May be Sanctioned per 28 U.S.C. § 1927

In their opposition, Plaintiffs address sanctions against their counsel pursuant to 28 U.S.C. § 1927. Attorneys Cahen and O'Brien filed a separate opposition (DE 305), incorporating such arguments by reference. As such sanctions are more properly addressed in direct response to Attorneys Cahen and O'Brien, Defendant has filed a separate reply to DE 305, filed herewith. To the extent applicable in response to Plaintiffs' opposition, that separate reply is incorporated herein by reference. Fees and sanctions against counsel per 28 U.S.C. § 1927 are proper for their bad faith and vexatious prosecution of this case.

### 1.4 The Motion was Properly Filed

Plaintiffs challenge the motion for alleged failure to conform with Local Rule 7.3. *See* DE 304 at pp. 4 & 7. Defendant has otherwise addressed this issue in his motion for extension of time and reply thereto, DE 301 & 309, incorporated herein by reference. As set forth therein, the draft service, then filing requirement would not appear to apply to the motion under the California Anti-SLAPP law or section 1927, and this Court's order (DE 290) suggested filing, not service, was required.[16] Plaintiffs suffered no prejudice, and Defendant is not opposed to a briefing schedule that would conform with the rule if the Court finds it to be applicable. There is no requirement that this

---

Contrary to Plaintiffs' assertion (DE 304 at p. 14), the Court did not criticize them "for their lack of aggression in the preliminary injunction phase." Rather, the Court found that the delay in initiating suit and seeking injunctive relief demonstrated a lack of substantial threat of irreparable harm. *See* DE 172 at p. 13, paragraph 17. This does not mean Plaintiffs should have then aggressively prosecuted a claim when they did not possess "a substantial likelihood that they will prevail on the merits." *Id.* at p. 8, ¶ 3. Moreover, the Court has already disagreed with Plaintiffs and found that their prosecution was "aggressive." DE 202 at p. 2.

[12] Plaintiffs also oppose fees under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 510.2105. *See* DE 304 at p. 13. However, they ignored *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 368-369 (Fla. 2013). *See* DE 292 at p. 30. Plaintiffs argued that their common law unfair competition claim was a FDUTPA claim. *See* DE 272 at p. 17. Under *Diamond Aircraft Indus.*, the invocation of FDUTPA by Plaintiffs in that pleading entitles Defendant to fees under FDUTPA for defeating it.

[16] Because Defendant did not need to follow those procedures, certification per Local Rule 7.3(a)(8) would have been inappropriate. The motion was otherwise properly certified per Local Rule 7.1(a)(3).

Court deny the motion for lack of strict conformance.  *See Maale v.Kirchgessner*, 2011 U.S. Dist. LEXIS 43792, *18 (S.D.Fla. Apr. 21, 2011).

Additionally, Defendant did not fail to "disclose the terms of any applicable fee agreement," as Plaintiffs claim.[17]  The motion and its exhibits set forth the basis on which Defendant was required to pay his counsel.  Local Rule 7.3(a)(4) speaks to the disclosure of terms; it does not mandate attaching the actual fee agreement as an exhibit.  This is in contrast with Local Rule 7.3(a)(6), which requires documenting the actual invoices themselves, which Defendant did.[18]  The motion is also verified per Local Rule 7.3(a)(4).  Attorney Randazza's declaration (DE 292-2), conforming with 28 U.S.C. § 1746, constitutes such verification.[19]  Compare 28 U.S.C. § 1924 (entitled "Verification of bill of costs" with such verification made by affidavit); see also *United States v. Miles*, 546 Fed. Appx. 730, 734 n.2 (10th Cir. 2012) (noting the difference between a sworn application and a "separate affidavit" is "a distinction without a difference.  An affidavit is simply a formally verified statement and that is what we have here.").  Thus, unlike the plaintiff in *J.B. Hunt Transp., Inc. v. S & D Transp., Inc.*, 589 Fed. Appx. 930, 934 (11th Cir. 2014), Defendant fulfilled all of the applicable portions of Local Rule 7.3.

**2.0  The Rates and Hours Submitted are Appropriate**

Plaintiffs contest the timekeepers, rates, and hours claimed in Dr. Novella's motion.  *See* DE 304 at pp. 4-5 & 8-10.  These arguments, as with those regarding entitlement to fees generally, lack substance.

**2.1  Dr. Novella Should Receive All His Attorneys' Fees**

In this complex matter, Defendant's counsel utilized the resources of other attorneys of Randazza Legal Group, namely Attorneys Sperlein, Shepard, Robbins, and Green.  Plaintiffs cite to *Gsell v. Rubin & Yates, LLC*, 41 F. Supp. 3d 443, 445 (E.D. Pa. 2014), in which a *pro se* Plaintiff

---

[17] The distinction in *Opinion Corp., et al. v. Roca Labs, Inc.,* 8:15-cv-00811 [Dkt. No. 53-7] (M.D. Fla. Sept. 10, 2015) (DE 304-10, Ex. 1), was that Roca Labs completely failed to set forth any terms of the fee agreement, unlike the rates and terms disclosed by Dr. Novella.  In fact, Roca Labs failed to provide any documentation whatsoever to substantiate the rates of its attorneys or their hours worked.

[18] Plaintiffs argue that Dr. Novella did not provide evidence of how much he has actually paid.  See DE 304 at p. 8.  Such is not required by the rules, and it makes no difference whether a fee award will repay him for fees paid or provide him the means to pay a balance owed, if any.  *See Zuniga v. United Can Co.*, 812 F.2d 443, 453 (9th Cir. 1987) ("The amount of attorney fees actually paid is not one of the factors to be specifically considered in the balancing process required in a determination of reasonable attorney fees.")

[19] The spurious attack on the integrity of Attorney Randazza has no place in these proceedings.  An employment dispute resulting in an unconfirmed arbitration decision has no precedential value and is utterly divorced from his candor toward this tribunal.  Such attack and related exhibits should be stricken from the record.  To the extent Mr. Langer relied upon it (DE 304-10), such further undermines his credibility.

sought fees for the attorney who ghost wrote pleadings. The situation here is more akin to *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 823-826 (9th Cir. 2009) and *Dietrich Corp. v. King Resources, Co.*, 596 F.2d 422, 426 (10th Cir. 1979), in which fees were allowed for consulting attorneys where all work was filtered through lead counsel (here, Attorney Randazza), or other appearing counsel (such as Attorneys Haar and Wolman). The consulting attorneys did not appear in court, they were not the exclusive contact for the client or opposing counsel, nor did they sign pleadings; thus, the Court "need not apply the [*pro hac vice*] rule in a draconian fashion when the attorney has not 'appeared' in front of the court, thus denying [Defendant his] statutory right to recover fees." *Winterrowd*, 556 F.3d at 825-826.

### 2.2   All Rates are Proper

Plaintiffs contest the $650 hourly rate for Attorney Randazza based almost entirely upon unprofessional personal attacks. DE 304 at p. 9. Even with the opprobrious mud-slinging, Plaintiffs' expert still agrees that Attorney Randazza could charge as high as $600 per hour. DE 304-10 at p. 7. However, without explaining why, he simply states that he would reduce it to $500 per hour. *Id.* Judge Langer's *ipse dixit* carries no weight, and his personal attacks say more about him than they do about anyone else.

Plaintiffs appear to contest the $400 hourly rate of Attorney Wolman based on factually distinguishable cases (DE 304 at p. 9), yet Mr. Langer agrees with the $400 rate. *See* DE 304-10 at p. 8. Thus, $400 per hour for Attorney Wolman is proper. Judge Langer even finds that Attorney Green should be compensated at $400 per hour, notwithstanding the unintended omission of him from Judge Hauser's affidavit. *See id.* Although Defendant was billed $450 per hour for Attorney Green (DE 292-9), as he is a partner at Randazza Legal Group, Defendant will agree to Judge Langer's determination of Attorney Green's rate. As to Attorney Haar, the affidavit of Attorney Randazza and the invoices demonstrate her actual rate of $360 per hour, rather than $325, a scrivener's error in the brief. As Judge Hauser's opinion agreeing with the invoiced rate of $360 per hour is more credible than that of Judge Langer, it should be adopted.[20]

### 2.3   All Hours are Proper

The criticisms raised at DE 304 at pp. 8-9, are misguided, and appear to be based on the misunderstanding that Defendant may be awarded fees and sanctions for multiple reasons, some of

---

[20] Defendant does not rely on the *Laffey* matrix, but rather presents it as a comparator to show reasonableness.

which overlap and some of which do not.[21]  As noted above, and as affirmed by Judge Hauser, the billing entries were proper; Dr. Novella's counsel exercised billing discretion, avoided duplication, and made the motion in omnibus fashion precisely to ensure the same fees were not awarded twice. Dr. Novella was never double charged and Mr. Heller misread the spreadsheet and invoices, which show the differing calculations under the discounted contingent rates and the full lodestar rates. Mr. Heller seems to wish to penalize Defendant for showing his work.

Judge Langer's deductions at DE 304-10 pp. 7-8 reflect his unfamiliarity with the record. The motion for extension was only withdrawn because Plaintiffs ultimately agreed to the relief *after* forcing Defendants to file it in the first place.  *See* DE 189.  That does not mean the motion was improper.  Neither was the withdrawn motion for summary judgment improper, where it was only withdrawn in response to Plaintiffs' Rule 56(d) motion being allowed and it functionally represented a draft of the final motion as allowed.  Notably, Defendant sought summary judgment without incurring the expense of taking discovery, something Judge Langer avoided mentioning.  Similarly, he critiques nearly fifty hours of work (DE 304-10, p. 6), attributing it to a "learning curve," (without support) as opposed, properly, to effective research and preparation that led to successful outcomes.[22]  No "double-billing" occurred, where pleadings were improved with each iteration and revision.  Neither is there any basis for the claim of "block billing," where Judge Langer claims 378 non-compensable hours without explaining how any particular entry was not justified.  *See* DE 304-10, p. 5.  Unlike Defendant, he does not show his work; he only shows bias and an unwillingness to show his reasoning.

As to Mr. Heller, his opinion is plagued by a misunderstanding of the nature of the omnibus motion.  As the claims arose from the same sets of circumstances, numerous items are compensable for multiple reasons.  Though he and Plaintiffs call it double-counting, it is the exact opposite; Defendant set forth what he seeks under each basis, but put all records before the Court simultaneously in order to ensure that if a billing entry is compensable for three reasons, it is only

---

[21]  Plaintiffs ludicrous claims appear to be without any logical boundaries.  For example, they claim at DE 304, p. 9, that Attorney Randazza could not have worked on the matter while out of the country.  As a result,  Attorney Randazza only sought relief from in-person appearances due to his travel; there should be no question that Italy has telephone and Internet service.  See DE 208.  Meanwhile, the Court may recall that Tobinick's team tried to take unfair advantage of Attorney Randazza's foreign travel. See id.  For Plaintiffs to seek advantage a second time is truly laughable.  However, the court will also recall that at every juncture, Plaintiffs have behaved this way - including their attempts to take advantage of Randazza's wife's surgery, and refusing to consent to a continuance.  See DE 151.  Plaintiffs' incivility was not condoned then (DE 152 & 212) and it should not be condoned now.

[22]  Judge Langer evidences his misreadings of time entries with the 5/27/15 entry for Mr. Tuttle, in which it indicates in the entry itself that he spent 6.5 hours on the entire task, but only 2.2 hours were allocated to this case.  Compare DE 304-10, p. 6, with DE 292-3, p. 34.

awarded once. Although it may appear in the chart in DE 292, p. 37, that Defendant is seeking over $600,000 in fees, such was merely illustrative; Defendant agrees that if ever request was granted without double-counting, the actual mathematical total would be less.

As a general proposition, Defendant agrees with Mr. Heller (DE 304-3, p. 14) that fees under the California Anti-SLAPP statute are only to be awarded from the California plaintiff.[23] As to whether travel time is compensable under California law, Mr. Heller provides no authority to exclude it (DE 304, p. 15); to the contrary, there are cases permitting it. *See United States v. San Francisco*, 748 F. Supp. 1416, 1422 (N.D. Cal. 1990) ("Reasonable attorneys' fees include reasonable travel time compensated at the full hourly rate"); *Gray v. Monterey Fin. Servs.*, 2010 Cal. App. Unpub. LEXIS 687, *14 (Cal. App. 4th Dist. Jan. 28, 2010) ("travel time may be recoverable in some instances"); *Ennis Commerical Props. v. Paregian*, 2010 Cal. App. Unpub. LEXIS 266, *21 (Cal. App. 5th Dist. Jan. 13, 2010) ("Plaintiffs cite no authority, and we know of none, according to which time traveling or preparing to travel cannot be awarded as attorneys' fees."). Further, Mr. Heller misapplies *Christian Research Institute v. Alnor*, 165 Cal. App. 4th 1315, 1325 (Cal. App. 4th Dist. 2008). *See* DE 304-3, p. 15 & 304-6, pp. 2-8. Here, only work directly related to the Anti-SLAPP proceedings is sought. Dr. Novella's counsel specifically omitted work on the personal jurisdiction defense and answering the complaint, but reviewing and analyzing the defamation claims and potential defenses is fundamentally part of preparing for the Anti-SLAPP motion, as well as the procedural parameters required for making the motion. Even a first-year law student would have the expertise to know this.

Dr. Novella's counsel did not engage in double counting as incorrectly alleged by Mr. Heller. *See* DE 304-3, pp. 5-10. To the extent the presentation of hours in the motion was confusing, the purpose of this arrangement was to set forth all categories under which a task was compensable, in the event the Court did not agree to all bases or might apply a multiplier if the task was also compensable under the Anti-SLAPP statute. Defendant only seeks the proper fee for each entry once. To the extent 13 entries across 67 pages of billing entries may have been erroneously duplicated (DE 304-3, p. 13), this represents an error rate of under 1%; Defendant is not seeking to be compensated twice for the same task. Mr. Heller otherwise misapprehends invoices showing reduced rates and those showing lodestar rates; Dr. Novella was not doubly billed. Billing was

---

[23] Mr. Heller also does not cite any legal basis to preclude fees for preparing the fee motion. *See* DE 304-3, p. 20.

otherwise appropriate and Defendant, if given the opportunity, would be willing to show the Court why he substantially disagrees with Plaintiffs' Exhibit 6. *See* DE 304-13 to -21.

Mr. Heller does not object to the use of the lodestar. *See* DE 304-3, p. 3. He is incorrect, however, in his opinion that a multiplier is inapplicable. *See* DE 304-3, pp. 17-20. Dr. Novella does not seek a multiplier for punitive purposes. *See Ramirez v. N.Y.C. Off-Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997) (rejecting argument that use of the phrase "send a message" amounts to *de facto* request for punitive damages). Furthermore, the cases he cites are not applicable. The court in *Save Our Uniquely Rural Community Environment v. County of San Bernardino*, 235 Cal. App. 4th 1179, 1188 (Cal. App. 4th Dist. 2015) disallowed a multiplier for partial contingency because there was no evidence the firm turned down other work by taking on a risk. Such a decision would unlawfully require breach of privilege regarding potential clients, a matter that the *San Bernardino* court failed to consider. Neither was a multiplier inherently improper in *Keep Our Mountains Quiet v. County of Santa Clara*, 236 Cal. App. 4th 714, 740-741 (Cal. App. 6th Dist. 2015); rather, the court found the alleged partial billing rate already reflected the lodestar rate, unlike here (even under Mr. Langer's rates). Thus, a multiplier may be used, if not the lodestar.

As the fees and sanctions requested were proper and reasonable, Defendant requests an award of all requested fees and sanctions.

Dated November 23, 2015.  Respectfully Submitted,

*/s/ Marc J. Randazza*
Marc J. Randazza, Esq.
Florida Bar No. 625566
California Bar No. 269535
Jay M. Wolman, Esq.
*Admitted Pro Hac Vice*
RANDAZZA LEGAL GROUP, PLLC
3625 S. Town Center Drive
Las Vegas, Nevada 89135
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

CASE NO.: 9:14-cv-80781-RLR

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF. Additionally, the foregoing is being served via U.S. Mail and electronic mail to:

Jarod M. Bona, Esq.
Aaron R. Gott, Esq.
BONA LAW, P.C.
4275 Executive Square, Suite 200
La Jolla, CA 92037
Jarod.Bona@bonalawpc.com
Aaron.Gott@bonalawpc.com

                                            Respectfully Submitted,

                                            _____
                                            Employee
                                            Randazza Legal Group, PLLC

RANDAZZA | LEGAL GROUP