UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDWARD LEWIS TOBINICK M.D., et al., <br><br> Plaintiffs. <br><br> v. <br><br> STEVEN NOVELLA, M.D., et al., <br><br> Defendants. | Case No: 9:14-cv-80781-RLR |

**DEFENDANT STEVEN NOVELLA, M.D.'s REPLY TO GEOFFRY M. CAHEN, ESQ.'S AND CULLIN O'BRIEN, ESQ.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STEVEN NOVELLA, M.D.'S MOTION FOR ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927**

Defendant, Steven Novella, M.D., prevailed on the frivolous and vexatiously prosecuted claims in this case. All Dr. Novella did was write a piece of science journalism, protected by the First Amendment. The Plaintiffs sought to suppress this journalism, because Novella dared to state that Tobinick's claims were not supported by scientific evidence. No reasonable attorney should have brought the Lanham Act claims. Truly no reasonable attorney would have prosecuted these claims once they were turned back *twice* by this court.

Every single claim fell, one by one. The Defendant made great efforts to terminate this matter expeditiously. In fact, the Defendant declined to so much as take discovery, despite having every right to do so. Why? Because the defense team declined to engage in litigation tactics designed to primarily simply ratchet up the price of litigation. Some such moves would have been defensible in this case – after all, who could have criticized the Defense, had it sought to at least take written discovery from Plaintiffs or depose one of his small army of "experts?"[1] Nobody. Nevertheless, the Defense sought to litigate this matter narrowly, on its merits. This is in sharp contrast to the Plaintiffs, who sought at every turn to engage in waste and game playing.[2] While the first two law firms to represent the Plaintiffs did not provide reasons for their withdrawal, the manner in which this case was litigated changed sharply once the second team departed. This shows that the first two law firms exercised control, whether of themselves or of their clients, which the later teams failed to do. There should be a price for failure, and that is what § 1927 authorizes. Novella does not seek to profit from seeking § 1927 fees – he seeks only to be made whole. He is not the one who indulged Plaintiffs' litigiousness. He is not the one who brought unsupported claims. Meanwhile, Plaintiffs and their counsel seem to urge this court to place the costs of this abusive and frivolous case on the shoulders of an innocent party – and one who is ill-equipped to shoulder that financial burden. This court should not abide such an injustice. Doing so will embolden future abusive litigants to file similarly frivolous cases, with the smug confidence that there is no prices for doing so. Even worse, should there be no § 1927 fees in this case, attorneys in this district will point to that failure as license to duplicate such tactics.

---

[1] Novella's team even declined to fully depose the Plaintiff. The Defense took a sixty two minute deposition, over the phone, of Mr. Tobinick. Defendant could have subjected Tobinick to a full day deposition, especially in light of Tobinick's evasive answers, but in the interest of efficiency and expediency, the Defense refrained. Contrast this with the shenanigans engaged in by the Plaintiffs, all of which were calculated to do only one thing, to break Novella financially and to otherwise oppress, annoy, and harass him.

[2] For example, Plaintiffs sought a default despite the history of Defendant's vigorous defense. See DE 179. This was immediately denied. *See* DE 180.

If sanctions make Dr. Novella whole or they discourage similar future conduct, the outcome will be just. Novella was motivated by both goals when filing for sanctions and then renewing that motion upon the conclusion of the case. *See* DE 175 & 190. Attorneys Geoffrey M. Cahen and Cullin O'Brien filed a separate opposition to the motion, incorporating by reference Plaintiffs' opposition (DE 304).[3] *See* DE 305. To the extent applicable, therefore, Defendant incorporates by reference his response to Plaintiffs' opposition to the motion.

As a threshold matter, Attorneys Cahen and O'Brien object as the motion was not served pursuant to Local Rule 7.3. Defendant has otherwise addressed this issue in his motion for extension of time and reply thereto, DE 301 & 309, incorporated herein by reference. *See Latele TV, C.A. v. Telemundo Communs. Grp., LLC*, 2015 U.S. Dist. LEXIS 38478, *9 (S.D. Fla. Mar. 26, 2015) (local Rule 7.3 does not apply to motions for sanctions, but Rule 7.1 does). As set forth by Defendant at DE 309:

> The Court should recall that Defendant previously sought fees and sanctions pursuant to 28 U.S.C. § 1927. See DE 175. Nothing in Plaintiffs' then opposition or the Court's order suggested that Local Rule 7.3 would apply, as it was a motion for sanctions. See DE 184 & 190. In refiling their motion under § 1927, the prior having been denied without prejudice to refile at the end of the case, there was no reasonable expectation that the procedures of Local Rule 7.3 would be required. See *Girard v. Aztec RV Resort, Inc.*, 2012 U.S. Dist. LEXIS 187981, *8 (S.D. Fla. Sept. 20, 2012)(finding that Local Rule 7.3 did not apply to a motion pursuant to § 1927). See also *Latele TV, C.A. v. Telemundo Communs. Grp., LLC*, 2015 U.S. Dist. LEXIS 38478, *8 (S.D. Fla. Mar. 26, 2015).

Thus, there is no procedural barrier to the consideration of the motion.[4]

While the case was frivolous from the outset, it became clearly vexatious as of March 16, 2015 under 28 U.S.C. § 1927.[5] Contrary to Plaintiffs and their counsel's assertions, Defendant does not rely on the mere outcome to show bad faith. *See* DE 304 at p. 16. Rather, it was Plaintiffs' counsel's underlying actions that demonstrate the bad faith required under § 1927. For example, the attorneys subject to sanctions not only prosecuted clear SLAPP claims, but also (1) engaged in excessive efforts to amend to include additional parties and post-hoc events that had no likelihood of success, (2) engaged in actions solely to harass Novella's family (DE 177), (3) pressed absurdly overbroad and unnecessary discovery requests (DE 219), and (4) engaged in downright

---

[3] Although Attorneys Cahen and O'Brien request the Court not sanction other counsel, they lack standing to advocate for them. Defendant has consented to an extended briefing schedule for Attorneys Gott and Bona.
[4] It is notable that Attorney Cahen was counsel to Plaintiffs during the pendency of the earlier motion.
[5] Though Plaintiffs note that the initial motion under § 1927 was denied, this denial was only related to timing, and not to the merits of the motion. Compare DE 304 at p. 16 with DE 190.

pathologically improper motion practice based on wild conspiracy theories (DE 260 & 261), complete with flow-charts that would be at home in a lunar landing denial screed, but which have no place in litigation. It is this behavior, not the mere loss, that warrants § 1927 sanctions.

"A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) quoting *Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997). Direct evidence of bad faith is not required; circumstantial evidence suffices. *See Calixto v. Watson Bowman Acme Corp.*, 2009 U.S. Dist. LEXIS 111659, *44 (S.D. Fla. Nov. 16, 2009). Where claims themselves are frivolous and groundless, without merit or foundation, repeated notification by the defendant of this frivolity evidences bad faith and vexatious multiplication that warrant sanctions under § 1927. *See, e.g., Eisenberg Dev. Corp. v. City of Miami Beach*, 95 F. Supp. 3d 1376 (S.D. Fla. 2015). Plaintiffs' and their counsels' arguments of violation of the Lanham Act and unfair competition were knowingly frivolous, and Plaintiffs' counsel delayed the closure of the litigation with their Rule 56(d) motion, schedule postponements, and conspiratorial opposition to summary judgment. Despite being informed over and over again by both the Court and Defendant's counsel, Plaintiffs and their counsel maintained these claims and engaged in this wasteful litigation conduct. This warrants sanctions.

At a time when this case should have been tapering down, we were then treated to even more vexatious conduct. For example, the utterly frivolous motion for default. *See* DE 179. And even worse, the second attempt at amendment, which sought to turn this litigation into a complete circus. *See* DE 177. Although the Court ultimately denied this attempted amendment on timing grounds (as the timing was itself abusive), it did not find anything lacking in Defendant's substantive opposition. *See* DE 188 & 202. Additionally, an express claim under FDUTPA would have further been futile, as noncommercial speech is protected from liability under FDUTPA. *See Gorran v. Atkins Nutritionals, Inc.*, 279 Fed. Appx. 40, 42, 2008 U.S. App. LEXIS 11146, *4 (2d Cir. 2008). It is not FDUTPA or the Lanham Act that distinguishes commercial and noncommercial speech; it is the First Amendment that informs the level of protection of speech, regardless of which statute a claim is brought under. *See, e.g., Dana's R.R. Supply v. AG*, 2015 U.S. App. LEXIS 19201 (11th Cir. Nov. 4, 2015) (finding a Florida no-surcharge law failed to withstand First Amendment scrutiny). Defendant opposed overbroad discovery requests and successfully obtained significant limitations on them.

The discovery behavior was as abusive as the substantive claims and pleadings. Plaintiffs sought discovery in an abusive manner, demanding such broad production that it resulted in 27,000 documents. Rather than belabor the Court yet again, when Plaintiffs refused to limit their requests further, Defendant simply produced those documents, save a few that were identified as privileged, the privilege of which was never invaded. *See* DE 250. Rather than learning from their mistakes, the Plaintiffs team then doubled down on the vexatious with Rule 37 and Rule 60 motions that were facially in bad faith, raising fantastical conspiracy claims, claiming sanctionable conduct based on minor human errors, and seeking exaggerated relief for easily answered questions.[6] Plaintiff's counsel did not simply "pound on the table," as the metaphor goes. They flipped the table over, and threw it down the stairs, all the time complaining that someone spilled their drinks.

Contrary to Plaintiffs' arguments, it was not simply the preliminary injunction loss, but the summary judgment loss on March 16, 2015, that put them on clear notice of the frivolous nature of their claims. Compare DE 304 at p. 19. How many times did they need this Court to tell them what they should have known all along? This court frankly declined to adopt the Plaintiffs' narrative of trying to call Novella's articles "advertisements." DE 157, p. 13.

Nothing Plaintiffs did following the summary judgment order was calculated to demonstrate commercial speech. As discussed in the reply to Plaintiffs' opposition, Plaintiffs and their counsel simply refuse to accept the law. Certainly, Tobinick is driving the case. But, counsel is not governed solely by the duty of zealous advocacy; there is a duty to advise a client when pursuing a matter is frivolous and prosecution is unethical. *See, e.g., McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429, 437 (1988) ("When retained counsel concludes that an appeal would be **frivolous**, he or she has a **duty to advise** the client that it would be a waste of money to prosecute the appeal and that it would be unethical for the lawyer to go forward with it").[7] An attorney's job is to tell a client "what the law is," not "what he wants to hear." *Moore v. Baenen*, 2013 U.S. Dist. LEXIS 74582, *12-13 (E.D. Wis. May 28, 2013). Two sets of attorneys were wise enough to withdraw before March 16, 2015, and even Attorneys Bona and Gott ultimately withdrew when the chorus of vexatiousness reached such

---

[6] That defense counsel spent many hours drafting responses in a single day does not make the proceedings any less multiplied than if the same pleadings were drafted in the same amount of time over the course of a week.

[7] Although Mr. Heller claims the March 16, 2015, order did not require abandonment (DE 304-3, pp. 3-4), he did not appear to consider the impact of *McCoy*. He offers no insight into whether counsel properly advised Plaintiffs of the futility and hurdles resulting from that order, and ignores that Plaintiffs' actions afterward were not calculated to overcome those hurdles.

a crescendo that one would have to be literally and metaphorically tone deaf to miss it. *See* DE 124, 126, 148, 276 & 280.

Ultimately, this conduct has not even ended now. Counsel has decided to focus on personal attacks, rather than deal with the issues. *See* DE 304, p. 5. And, in what is simply outrageous, they now blame Novella for improperly extending the life of this case. We will consider it sufficient to euphemistically say that it is downright bizarre to blame the Defendant for not filing a dispositive motion on the Lanham Act and unfair competition claims sooner. It almost appears as if the Plaintiffs are agreeing that the matter should have been dismissed sooner, if only Novella had moved to put the case out of its misery. If Dr. Novella could have, he would have. This case did not go on this long because Novella had a secret desire to continue to go into debt and to continue to be abused. Novella respectfully pleads with this Court to not only put an end to this behavior in this case, but to place the costs where they belong – and to make it clear that "zealous" and "vexatious" are not synonymous.

Plaintiffs' counsel were derelict in their duties and caused the near doubling of docket entries with only ¼ the defendants. This was vexatious multiplication, done in bad faith, and merits sanctions. Presently, Dr. Novella is left holding the bag for a frivolous case. Between the possible parties to be taxed with the costs of this frivolous claim, the blame lies with the Plaintiffs and their counsel, not Dr. Novella.

Dated November 23, 2015.                                       Respectfully Submitted,

                                                               */s/ Marc J. Randazza*
                                                               Marc J. Randazza, Esq.
                                                               Florida Bar No. 625566
                                                               California Bar No. 269535
                                                               Jay M. Wolman, Esq.
                                                               *Admitted Pro Hac Vice*
                                                               RANDAZZA LEGAL GROUP, PLLC
                                                               3625 S. Town Center Drive
                                                               Las Vegas, Nevada 89135
                                                               Tele: 702-420-2001
                                                               Fax: 305-437-7662
                                                               Email: ecf@randazza.com

CASE NO.: 9:14-cv-80781-RLR

## CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that on November 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF. Additionally, the foregoing is being served via U.S. Mail and electronic mail to:

Jarod M. Bona, Esq.
Aaron R. Gott, Esq.
BONA LAW, P.C.
4275 Executive Square, Suite 200
La Jolla, CA 92037
Jarod.Bona@bonalawpc.com
Aaron.Gott@bonalawpc.com

              Respectfully Submitted,

              _____
              Employee
              Randazza Legal Group, PLLC