# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

EDWARD LEWIS TOBINICK, M.D., *et al.*,

    Plaintiffs,

v.

STEVEN NOVELLA, M.D., *et al.*,

    Defendants.

Case No: 9:14-cv-80781-RLR

## DEFENDANT STEVEN NOVELLA, M.D.'s REPLY TO RESPONSE OF JAROD BONA AND AARON GOTT TO DEFENDANT'S RENEWED MOTION FOR SANCTIONS AGAINST COUNSEL

Attorneys Bona and Gott acknowledge in their very first substantive sentence that the charges presented against Plaintiffs and their counsel in the motion for fees and sanctions (DE 292) are "damning". See DE 317, at p. 1. Yet, they decline to accept any responsibility for the fact that they were lead counsel for five of the six and a half months at issue. Though Defendant expressed a desire to "focus his attention upon Dr. Tobinick and Mr. O'Brien (who took this from terribly abusive to cartoonishly vituperative)" (DE 317 at p. 16 & Ex. B), nothing was intended to excuse or otherwise relieve Attorneys Bona and Gott from their responsibilities. Instead, Defendant desired an efficient resolution with them, on the belief that the wounds they inflicted were on the orders of Plaintiffs, rather than their own ingenuity, as compared with the vituperative, unprofessional, and simply bizarre pleadings that emerged once Attorney O'Brien appeared. Despite the contrast, the fact is that this case was unnecessarily multiplied on their watch, and thus fees remain appropriate under 28 U.S.C. § 1927. The fact that Bona and Gott did not wholly set aside their honor in unnecessarily multiplying the proceedings ought to count for *something*, but that something should be the maintenance of their reputations. There is no "polite gentleman" exception to § 1927.

As discussed at length in the reply to Plaintiff (DE 315) and the reply to Attorneys Cahen & O'Brien (DE 316), both of which are incorporated herein by reference,[1] this Court made clear on March 16, 2015, that Dr. Novella's speech was not commercial in nature. Yet, Plaintiffs, under the counsel of Attorneys Bona and Gott, persisted in prosecuting a meritless claim, multiplying proceedings rather than doing what they should have.

### 1.0    Counsel Should have Withdrawn the Claims or Withdrawn their Appearance

Attorneys Bona and Gott claim they should not be sanctioned for failing to "read[] tea leaves". DE 317, p. 13. They then curiously blame Defendant for not winning fast enough, while at the same time stating the initial summary judgment motion was filed prematurely.[2] See DE 317,

---

[1] As Attorneys Gott and Bona also incorporate by reference their original response (DE 184) to Defendant's original motion (DE 175), Defendant incorporates by reference the said underlying motion (DE 175), to the extent applicable herein. The Court ruled that such a motion should be brought at the conclusion of the case (DE 190), prior to a reply memorandum from Defendant having been due, thus no reply was filed at that time.

[2] Back in May 2015, Attorneys Bona and Gott argued that they could not be subject to sanctions because the Lanham Act claims had not been subject to a dispositive motion by Dr. Novella. DE 184, at pp. 2, 7, 11-12, & 15. This seems to be the continued *motif*; that they cannot know their claim is frivolous until they lost. By that logic, no sanctions could ever be proper under § 1927 because no claim is frivolous until judgment enters.

pp. 3, 14 & 20.  They improperly seek to shift their burden to refuse to maintain a frivolous action to the Defendant's shoulders.

Counsel is not governed solely by the duty of zealous advocacy; there is a duty to advise a client when pursuing a matter is frivolous and prosecution is no longer supportable.  *See, e.g., McCoy v. Court of Appeals, Dist. 1*, 486 U.S. 429, 437 (1988) ("When retained counsel concludes that an appeal would be **frivolous**, he or she has a **duty to advise** the client that it would be a waste of money to prosecute the appeal and that it would be unethical for the lawyer to go forward with it").  An attorney's job is to tell a client "what the law is," not "what he wants to hear." *Moore v. Baenen*, 2013 U.S. Dist. LEXIS 74582, *12-13 (E.D. Wis. May 28, 2013).  Though Attorneys Bona and Gott seemed to have finally internalized this when they withdrew, the opposition calls that charitable conclusion into question.

"A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) quoting *Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997).  Direct evidence of bad faith is not required; circumstantial evidence suffices.  *See Calixto v. Watson Bowman Acme Corp.*, 2009 U.S. Dist. LEXIS 111659, *44 (S.D. Fla. Nov. 16, 2009).  Where claims themselves are frivolous and groundless, without merit or foundation, the standard is met. Repeated notification by the defendant of this frivolity is evidence of the kind of circumstantial evidence supporting fees under § 1927.  *See, e.g., Eisenberg Dev. Corp. v. City of Miami Beach*, 95 F. Supp. 3d 1376 (S.D. Fla. 2015).  The nearly pathological insistence upon pressing the Lanham Act and unfair competition claims were knowingly (or at least recklessly) frivolous, and Plaintiffs' counsel delayed the closure of the litigation with their Rule 56(d) motion, schedule postponements, and the unfounded (and unhinged) conspiracy theories employed in order to attempt to stave off summary judgment.  Despite being informed over and over again by both the Court and Defendant's counsel, Plaintiffs and their counsel maintained these claims and engaged in this wasteful litigation conduct.

Defendant agrees with Bona and Gott that the decision on an injunction is not *per se* subsequently *binding*.  That does not mean it should be ignored.  Neither should the decision two

weeks prior awarding summary judgment to another defendant have been ignored.[3] And neither should the Anti-SLAPP decision have been ignored. A lawyer is not merely "reading tea leaves" when he sees that his theory of the case struck down again and again. At that point, the guesswork is over, and he should counsel his client to withdraw the theory or he should withdraw his appearance. Neither counseling withdrawal of the action nor withdrawing an appearance is "malpractice"; it is good lawyering. In fact, Section § 1927 "impose[s] a continuing duty upon attorneys to dismiss claims that are no longer viable." *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720, (7th Cir. 2006); see also *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 809 (7th Cir. 2003) ("Pressing a claim even after its emptiness became pellucid must be described as vexatious."). Attorneys Bona and Gott seem to misunderstand *Peterson v. BMI Refractories*, 124 F.3d 1386, 1397 (11th Cir. 1997); though they were not required to advocate for Defendant, *Peterson* does not instruct them to advocate for Plaintiffs claims after they are no longer viable. They seemed to have known of this duty, having convinced the Florida defendants to dismiss some claims following the Anti-SLAPP ruling, but they refused to do what they should have -- ended the entire case.

This case was not about a novel theory;[4] it was about a frivolous theory. Defendant does not seek sanctions merely for failing to read tea leaves; sanctions are sought because Attorneys Bona and Gott drank their client's Kool-Aid and attempted to drown Defendant in it.

---

[3] Although Attorneys Bona and Gott note that the March 16 summary judgment decision stated "the Motion is granted only insofar as Plaintiffs' claims against the Society [for Science Based Medicine]", (DE 317, p. 4, quoting DE 157, p. 19), that quote only related to the dismissal of counts 3 and 4 being without prejudice for failure to give proper statutory notice. See DE 157, pp. 19-20. Even if Attorneys Bona and Gott quoted page 13 of the order, "[t]he articles simply do not constitute commercial speech, at least with respect to the Society", it was always evident that Dr. Novella was publishing on the non-profit sciencebasedmedicine.org website in writing the articles. It would be quixotic to suggest that the very same article, published in the same publication, could simultaneously be both commercial and non-commercial speech. The March decision only directly applied to SfSBM because SfSBM was the only movant. Though a court may properly award summary judgment *sua sponte*, such is not a requirement and a court may prudently choose to require a separate motion. *See Cox Nuclear Pharm., Inc. v. CTI, Inc.*, 478 F.3d 1303, 1313 (11th Cir. 2007). Such does not relieve Attorneys Bona and Gott from recognizing that the claims against Defendant were based on the same faulty theory and facts obligating them to withdraw the claims or seek to withdraw their appearance.

[4] Although Attorneys Bona and Gott argue they are permitted to bring novel theories, they immediately thereafter admit that there were no novel legal arguments or issues of first impression. See DE 317 at pp. 5-6.

**2.0     Attorneys Bona and Gott Acted in Bad Faith**

In their response, Attorneys Bona and Gott suggest that Defendant did not point "specifically [to] what it was about their conduct in this case [that] was unreasonable or vexatious." DE 317 at p. 4. This is incorrect; Defendant was clear that prosecuting the case after March 16, 2015, constituted vexatious litigation. *Nisenbaum, supra*. They are the ones who pressed forward with the meritless preliminary injunction hearing. During that very hearing, the claims themselves were conclusively disproven.

After losing that, they are the ones who sought to amend, even in the face of two sanctions motions. They are the ones who sought entry of default, despite Defendant's vigorous defense. They are the ones who demanded an answer to the complaint even after losing the Anti-SLAPP motion. They are the ones who delayed summary judgment by suggesting discovery would miraculously lead to material that would distinguish the summary judgment ruling. They are the ones who propounded onerous discovery requests that, even after judicial intervention, required the production of nearly 27,000 documents. They are the ones who sought to depose Plaintiff a second time (in addition to having him on the stand during the preliminary injunction hearing). They are the ones who conducted meaningless expert depositions. They are the ones who made a third attempt to amend the complaint, even after the Court expressed a clear desire to adhere to deadlines. And, finally, they permitted their names to be affixed to the utterly baseless Rule 37 & Rule 60 motions and the opposition to summary judgment.[5]

These actions drove up the costs of Defendant without purpose.[6] With unbelievable gall, they then argue that Defendant is the one who multiplied proceedings. See DE 317, p. 14. How? By deposing Dr. Tobinick for **only one hour**, by telephone, to prepare for the preliminary injunction hearing? By winning the preliminary injunction hearing? By successfully opposing

---

[5] Attorneys Bona and Gott place the blame for these pleadings at the feet of Attorney O'Brien. See DE 317 at p. 20. However, beyond providing mere "knowledge and assistance", they caused their names to be affixed to the pleadings, thereby retaining the full impact of Fed. R. Civ. P. 11(b). That said, if the Court would like to apportion the responsibility for these pleadings in an equitable manner, Dr. Novella takes no particular joy in taxing the costs to Bona or Gott. Novella's position is simply that *he* is the innocent party here, and those who violated § 1927 should be responsible for the fees.

[6] Though they claim that "Novella does not point to any specific fees or costs that were proximately caused by" their misconduct (DE 317, at p. 14), Attorneys Bona and Gott seem to have ignored the itemization and invoices submitted. All of the expenses and fees sought following March 16, 2015, were proximately caused by their unreasonable and vexatious conduct.

amendment? By waiving the right to take any written discovery? By seeking summary judgment immediately upon answering? By withdrawing and refiling the summary judgment motion to streamline the matter once intervening discovery was permitted? By narrowing discovery and reducing the amount of materials required to be produced? By not taking additional fact or expert depositions? By opposing baseless sanctions motions and attempts to relitigate the preliminary injunction? Each and every step was a successful effort to *reduce* the proceedings.[7] The same firm that opposed a continuance of the injunction hearing necessitated by Attorney Randazza's wife's surgery now has the audacity to claim "gamesmanship". *Id.*

Attorneys Bona and Gott claim that the request by Defendant that they place their insurer on notice, noting potential further litigation, is a "shakedown". DE 317, p. 15. Yet, it was they who sought to "shake down" Defendant in excess of $1.5 million. See DE 272-33, p. 3.[8] Our judiciary exists so that those who have been harmed may seek recompense and justice. Attorneys Bona and Gott were paid to unreasonably prosecute Plaintiffs' claims. Defendant had to pay, and beg for help paying, and he will continue suffer the financial costs of this litigation if those responsible are not held accountable for their misdeeds. Attorneys Bona and Gott seem to forget that they pressed this case, seeking a small fortune to be paid to Tobinick for his absurd claim. Apparently, it is only a "shakedown" if they are on the side receiving a demand. Novella is seeking to hold everyone to the law and with quantifiable damages. To call this a "shakedown" is as strange as any other action taken in this case.

### 3.0    Re-litigating the Case Does Not Extinguish its Frivolity

Attorneys Bona and Gott spend much of their opposition attempting to relitigate the merits of the case *again*. See DE 317, pp. 6-14. In an attempt to claim the matter was not frivolous, they argue that Defendant's actions fell "within the ambit of § 1125(a)". DE 317, at p. 7. They argue

---

[7] Attorneys Bona and Gott blatantly mischaracterize Judge Brannon's order at DE 239 as an order to produce documents. More accurately, the record shows that the requests were overbroad, prompting a motion for protective order, and it was upon Defendant's instigation that certain requests for production were stricken and others converted to a keyword search, based upon Plaintiffs' keywords, that resulted in the so-called "document dump". Had Attorneys Bona and Gott issued reasonable discovery requests, none of which were calculated to demonstrate commercial speech, both Plaintiffs and Defendant would have avoided "a significant amount of unnecessary billings". DE 317, p. 20. It bears reminder, further, that Attorneys Bona and Gott were the ones unnecessarily *paid*.

[8] This report was originally served by Bona and Gott on July 23, 2015. Mr. Cass's report, though subject to a *Daubert* challenge, claimed Plaintiffs suffered harm of $1,520,438, in 2014 alone. See DE 272-33.

that because Defendant criticized Plaintiffs' business and made money doing so,[9] such subjected him to potential liability. See DE 317, at p. 9. They make a fantastical argument that the "post-advertising world" distinguished this case from its predecessors. See DE 317, at p. 10.

Nobel Laureate Paul Krugman writes opinion pieces for the New York Times; just because someone reads a piece of his in support of the Affordable Care Act[10] or for single-payer,[11] and likes it so much she decides to subscribe to the Times, buy his books, and attend his classes, such would never convert the original piece into commercial speech, even though the Times makes much of that readily possible. The case against Dr. Novella was never any different. Dr. Krugman's pieces do not propose commercial transactions merely by advocating for mandatory insurance or against purchasing health insurance policies directly from insurers and Dr. Novella did not propose a commercial transaction merely by dissuading consumers from using Plaintiffs' treatment. Compare DE 317 at p. 11.

For the first time since entering this case in February, Attorneys Bona and Gott claim that they were justified in pursuing the case as it was analogous to *World Wrestling Federation Entertainment, Inc. v. Bozell,* 142 F. Supp. 2d 514 (S.D.N.Y. 2001). See DE 317 at p. 11. Such is inapplicable and has been misrepresented. First, in the fourteen years since that case, no decisions citing that case adopted its factual rulings on commercial speech. Second, and more important, in that case, the defendants specifically were alleged to have used their attacks on the WWFE *specifically* to raise their profile and solicit revenue. See 142 F. Supp. 2d at 525-526. Such was enough to survive a motion to dismiss. See *id.* at 534. To rely on an out-of-circuit decision, from 14 years ago, that merely held that a claim was properly *pled*, is more of the same that we have seen thus far. Here, there was never any evidence or allegation that Dr. Novella ever said "Look at how well I'm doing keeping patients from Dr. Tobinick; please give me money to help me continue to fight perispinal etanercept and INR!" or words to that effect. And the WWFE matter was merely at the Rule

---

[9] Other than donations to the legal defense fund, there has been no evidence Defendant made any money directly related to the articles at issue, and the legal defense fund existed because Plaintiffs sued him, and he could not afford to support the entire defense—not because of any particular statement in the articles themselves.

[10] See, e.g., Krugman, Paul, *Hooray for the A.C.A.*, N.Y. TIMES, p. A27 (Jun. 26, 2015), available at <http://www.nytimes.com/2015/06/26/opinion/paul-krugman-hooray-for-the-aca.html?_r=0>.

[11] See, e.g., Krugman, Paul, *Why Not Single-Payer*, N.Y. TIMES (Oct. 7, 2007), available at <http://krugman.blogs.nytimes.com/2007/10/07/why-not-single-payer/>.

12(b)(6) stage;[12] here, after Plaintiffs lost on summary judgment, and then after depositions and a two-day evidentiary hearing, they continued to press forward. Attorneys Bona and Gott had no reasonable basis to continue to believe Dr. Novella engaged in commercial speech and their *post hoc* discovery of the WWFE case does not excuse their behavior.[13]

### 4.0   Bona and Gott Present No Reason Not to Award Sanctions

Attorneys Bona and Gott claim that Local Rule 7.1(a)(3) was not followed. See DE 317 at p. 14. As they are aware, Defendant originally certified compliance on May 13, 2015. See DE 175, at p. 5. In fact, Attorneys Bona and Gott confirmed that the parties met and conferred. See DE 184, at p. 6 ("While meeting and conferring on this motion…."). The sanctions motion is not a new motion; it is a renewed motion, based upon the determination by the Court that it would be better brought at this juncture. They cannot now claim that Defendant failed to comply with Local Rule 7.1(a)(3). Neither, six months ago, did they suggest that Defendant failed to comply with any other local or federal rule at that time, and they waived any such arguments. To the extent Attorneys Bona and Gott join in the arguments of Plaintiffs and their current counsel, they are additionally improper for the reasons set forth in Defendant's responses thereto, incorporated by reference.

Contrary to the assertion of Attorneys Bona and Gott, the reason for referencing tender to their insurer in a proposed stipulation was to demonstrate the good cause required for extensions under Fed. R. Civ. P. 6(b). It is true that Dr. Novella hopes that the legal expenses Attorneys Bona and Gott forced him to incur will be awarded and, if awarded, paid. Though, certainly, sanctions are more meaningful if paid by the person causing the harm, Dr. Novella will be made whole if their insurer satisfies the award, and he seeks to be made whole – not to inflict pain on Bona or Gott. Not knowing the financial position of counsel, it is only proper that he ensure that if there is applicable insurance, the carrier should properly be placed on notice and given the opportunity to resolve the matter without further judicial intervention. Further, if Novella's intent was simply to lash out at Gott and Bona, he would not have afforded such an opportunity to seek coverage. Dr. Novella understands that tendering to a carrier is not an admission of liability, and no suggestion

---

[12] *World Wrestling Federation Entertainment, Inc. v. Bozell* never reached trial or a judgment on the merits.
[13] In fact, their footnote citation to *Gordon & Breach Sci. Publrs. S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1544-1545 (S.D.N.Y. 1994) undermines their entire argument. See DE 317 at p. 13, n. 4. Dr. Novella was sued over the original article, not any republication, the exact distinction made in *Gordon & Breach*.

has been made to the contrary.  Attorneys Bona and Gott were specifically approached because, rather than simply respond, they threatened to **further multiply proceedings** with their referenced Rule 11 motion (claiming that the motion for fees and sanctions was frivolous).  Under no circumstances could it be frivolous to file a motion that this Court specifically said could be filed at the conclusion of this case.  See DE 190.

This tactic suggested that they had not sought counsel or conferred with their insurer, warranting Dr. Novella's request that the carrier be placed on notice.  It also evidences that the vexatious multiplication of proceedings that they participated in may well have originated with them, despite their desire to lay responsibility at the feet of Attorneys Cahen and O'Brien.  Nothing in these post-judgment proceedings dispels the notion that Attorneys Bona and Gott are not liable to be sanctioned under Section 1927.

**5.0     Conclusion**

Two sets of attorneys were wise enough to withdraw before March 16, 2015, and even Attorneys Bona and Gott ultimately withdrew when the chorus of vexatiousness reached such a pitch that even the most casual observer would have heeded their rising voices.  *See* DE 124, 126, 148, 276 & 280.  However, their ultimate withdrawal does not insulate them from their liability under § 1927 for anything that happened before that, neither does it make Dr. Novella whole for the harms they inflicted on him. While the first two law firms to represent the Plaintiffs did not provide reasons for their withdrawal, the manner in which this case was litigated changed sharply once the second team departed.  This shows that the first two law firms ethically and properly exercised control, whether of themselves or of their clients, which the later teams failed to do.  This is why neither Tripp Scott nor Broad and Cassel are named to this motion for sanctions. There should be a price for failing to do the right thing, when doing the wrong thing harms someone else – namely Novella.  That is what § 1927 authorizes.  In light of the foregoing, the motion should be granted and Attorneys Bona and Gott sanctioned for the costs and fees incurred by Dr. Novella from March 16, 2015, until the time of their withdrawal, jointly and severally, or as apportioned with Attorneys O'Brien and Cahen as this court deems just and equitable.

//

//

//

Dated December 10, 2015.                    Respectfully Submitted,

                                            */s/ Marc J. Randazza*
                                            Marc J. Randazza, Esq.
                                            Florida Bar No. 625566
                                            California Bar No. 269535
                                            Jay M. Wolman, Esq.
                                            *Admitted Pro Hac Vice*
                                            RANDAZZA LEGAL GROUP, PLLC
                                            3625 S. Town Center Drive
                                            Las Vegas, Nevada 89135
                                            Tele: 702-420-2001
                                            Fax: 305-437-7662
                                            Email: ecf@randazza.com


                                                        CASE NO.: 9:14-cv-80781-RLR

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 10, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF. Additionally, the foregoing is being served via U.S. Mail and electronic mail to:

Jarod M. Bona, Esq.
Aaron R. Gott, Esq.
BONA LAW, P.C.
4275 Executive Square, Suite 200
La Jolla, CA 92037
Jarod.Bona@bonalawpc.com
Aaron.Gott@bonalawpc.com

                                            Respectfully Submitted,

                                            Employee
                                            Randazza Legal Group, PLLC