## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  9:14-cv-80781-ROSENBERG/BRANNON

EDWARD LEWIS TOBINICK, M.D., *et al*.,

     Plaintiffs,

v.

STEVEN NOVELLA, M.D. *et al*,

     Defendants.

_____/

### ORDER GRANTING IN PART DEFENDANT NOVELLA'S OMNIBUS MOTION FOR ATTORNEYS' FEES AND COSTS AND DENYING BONA AND GOTT'S MOTION FOR SANCTIONS

**THIS CAUSE** comes before the Court on Defendant Steven Novella, M.D.'s Omnibus Motion for Attorneys' Fees and Costs [DE 292] and Jarod M. Bona and Aaron R. Gott's Motion for Sanctions under Federal Rule of Civil Procedure 11 [DE 320]. The Court has reviewed the motions, the responses and replies thereto, and all other relevant portions of the record. As more fully explained below, the Court finds that Novella is entitled to sanctions under the Anti-SLAPP statute and the Lanham Act. However, the Court reduces the amount of the fees sought under the Anti-SLAPP statute. The Court also finds that Novella is not entitled to sanctions under 28 U.S.C. § 1927.

## I.     PROCEDURAL HISTORY

### A.    Initial Claims and Parties

This lawsuit was initially filed in June 2014. The claims arose from two internet articles written by Defendant Dr. Steven Novella, which criticized Plaintiff Dr. Edward Lewis Tobinick's use of a drug known as Enbrel to treat Alzheimer's disease. Plaintiff Tobinick contended that these articles made false statements concerning the viability of the treatments, the scientific literature and testing that had been conducted as to those treatments, the size and

1

locations of Plaintiff Tobinick's Institutes, and, by implication, the categorization of Plaintiff Tobinick's practice as "health fraud." These articles were published on a website called sciencebasedmedicine.org.

The initial complaint brought claims under: (1) the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition; (3) trade libel; (4) libel per se; and (5) tortious interference with business relationships. *See* DE 1 (Complaint); DE 55 (Amended Complaint). The listed Plaintiffs were Tobinick and related professional entities, and Defendants were Novella and the Society for Science-Based Medicine, Inc. ("the Society"), an organization owned by Novella that produces content for the sciencebasedmedicine.org website.[1]

Both sides aggressively litigated this case from the outset. On June 11, 2014, Plaintiffs moved for a preliminary injunction. *See* DE 6. On August 18, 2014, the Society filed a motion to dismiss, which the Court later converted into a motion for summary judgment. *See* DE 74, 120. On September 30, 2014, Novella filed a special motion to strike the claims brought by Edward Lewis Tobinick, M.D., a California medical corporation, pursuant to California's Anti-SLAPP Statute, California Code § 425.16. *See* DE 93.

**B.** **Substitution of Counsel: Attorneys Cahen, Bona, and Gott begin representing Plaintiffs.**

On January 28, 2015, shortly after the Court converted the Society's motion to dismiss into a motion for summary judgment, Plaintiffs' counsel withdrew and were replaced by attorneys from the law firm Broad and Cassel. *See* DE 126. In late February and early March 2015, counsel from Broad and Cassel withdrew and were replaced by Geoffrey M. Cahen of Cahen Law. P.A., Jarod Bona of Bona Law, P.C., and Aaron R. Gott of Bona Law, P.C. *See* DE 148, 149, 156.

---

[1] Plaintiffs also sued Yale University, where Novella participates in a healthcare clinic, and SGU Productions, an entity associated with the website; however, the Court dismissed these Defendants for lack of personal jurisdiction. *See* DE 91, 92.

C.      **Order Granting Summary Judgment for the Society: The Court finds that Novella's articles are not commercial speech under the Lanham Act.**

On March 16, 2015, following a hearing, the Court granted summary judgment for the Society. *See* DE 157. The Court found that the articles were not actionable under the Lanham Act or as unfair competition because "no reasonable jury could find the articles constitute commercial speech, at least with respect to the Society." *Id.* at 12. The Court also noted: "[T]he targeted entity, the Society, is a not-for-profit corporation. Like nearly every not-for-profit corporation, it seeks to support itself by soliciting donations and offering products for sale. That does not render its speech commercial, particularly where, as here, there is nothing in the record to indicate that the articles containing the allegedly false and/or defamatory statements do not remain free to view online." *Id.* at 13.[2]

D.      **Order Denying Plaintiffs' Motion for a Preliminary Injunction: The Court finds they are unlikely to prevail on the Lanham Act claims because the speech at issue is not commercial.**

On April 2, 2016, following an evidentiary hearing, the Court denied Plaintiffs' motion for preliminary injunction. *See* DE 172. The Court reasoned that Plaintiffs had failed to demonstrate a substantial likelihood of prevailing on the merits with respect to their Lanham Act claim, again finding that the speech at issue was not commercial. *Id.* at ¶¶ 3-13. The Court found that Plaintiffs had "failed to demonstrate that Dr. Novella has an economic motivation for the speech," rejecting Plaintiffs' contention that income from courses and podcasts related to the Society or from a legal defense fund set up in response to the lawsuit transformed the speech into commercial speech. *Id.* at ¶¶ 10-11. The Court noted, "[S]cience communication is Dr. Novella's passion, interest and hobby. No evidence was introduced to indicate that it is his primary source of income (or even, with respect to the Society and www.sciencebasedmedicine.org, a source of

---

[2] The Court also dismissed Plaintiffs' libel claims without prejudice, finding Plaintiffs had failed to give the Society pre-suit notice as required by Florida law. *See* DE 157 at 13-19.

income at all), and the Court accordingly concludes that his motivation for authoring the articles was not economic in nature." *Id.* at ¶ 12.[3]

**E.    Plaintiffs Seek Leave to File a Second Amended Complaint**

About a month later, Plaintiffs moved for leave to file a second amended complaint. *See* DE 173, 177. The amendment sought to add a claim for civil conspiracy under Florida common law, alleging that Defendants "agreed to embark on a campaign under which Defendants would act in concert to republish false statements alleged herein "in order to "promote the original ESA webpage, to raise the Defendants' profiles within the skeptic community, and to drive web traffic, membership, and sale of merchandise on Defendants' websites." *See* DE 177-1 at ¶¶ 155-56 (Proposed Second Amended Complaint). The amendment also sought to add three Defendants: two new parties, Jay Novella and Paul Ingraham, and one previously-dismissed party, SGU Productions, LLC. *Id.* at 1.

Defendant Steven Novella opposed the amendment, *see* DE 188, and also moved for sanctions against Plaintiffs' counsel under 28 U.S.C. § 1927, arguing counsel was unreasonably and vexatiously multiplying the proceedings. *See* DE 175. The Court denied the § 1927 motion without prejudice, finding the issues would be more suitably decided after the conclusion of the case. *See* DE 190.

**F.    Order Granting Defendant Novella's Anti-SLAPP Motion: The Court finds no evidence that the statements were made with actual malice and that Novella is entitled to attorney's fees and costs.**

On June 4, 2015, while the motion to amend was pending, the Court issued an order granting Defendant Novella's Anti-SLAPP motion. *See* DE 193. The Court ruled: (1) that Plaintiff Tobinick M.D., the California medical corporation, was a limited public figure, meaning that, in order to prevail on their libel claims, Plaintiffs were required to demonstrate that

---

[3] Alternatively, the Court found that Plaintiffs had not demonstrated a threat of irreparable injury. *See* DE 172 at ¶ 14.

4

Defendant Novella made the speech at issue with actual malice; and (2) that Plaintiffs had failed to establish a probability of demonstrating, by clear and convincing evidence, that Defendant Novella made the statements with actual malice. *Id.* at 12. Regarding the lack of actual malice, the Court found that Defendant Novella had conducted a thorough investigation of the scientific issues prior to publishing the articles, and that the tone and content of the articles themselves did not indicate actual malice. *Id.* at 14-17. The Court found that, as the prevailing Defendant, Novella was entitled to recover his attorney's fees and costs under the anti-SLAPP statute, and stated he could seek such fees and costs by separate motion. *Id.* at 16.

Several weeks later, on June 18, 2015, the Court held a status conference with the parties to discuss Plaintiffs' motion for leave to file a second amended complaint. *See* DE 201. Following the hearing, the Court issued an order denying the motion, finding:

> When the Court pressed Plaintiffs to identify facts in the proposed Second Amended Complaint which were unknown to Plaintiffs at the time the First Amended Complaint, the operative complaint, was filed on August 1, 2014, Plaintiffs' counsel, while noting that they were not counsel for Plaintiffs when the First Amended Complaint was filed, could only identify a limited number of *recent* statements incorporated into the proposed Second Amended Complaint. Specifically, Plaintiffs pointed to statements allegedly made by Jay Novella at a recent conference in New York that went to the commercial nature of Defendant's blogging activities. Although leave to amend should be freely given, the Court does not believe that the addition of three parties and a civil conspiracy claim— which would essentially reset the case—is justified where, as here, the case is over one year old and has been aggressively litigated from its outset.

> The Court finds the denial of the motion for leave to amend especially warranted given that by Plaintiffs' own admission, and in light of the anti-SLAPP Order, the proposed Second Amended Complaint would need additional editing before it could serve as the operative complaint. Plaintiffs requested leave to withdraw the pending motion for leave to amend and an extension of the amended pleadings deadline by an additional sixty to ninety days in order to rework the proposed Second Amended Complaint. The pre-trial scheduling order gave Plaintiffs eleven months to amend their pleadings, and the Court will not allow Plaintiffs additional time to amend.

DE 202.

**G.**      **Order Denying the Society's Motion for Fees under the Lanham Act: The Court finds that, prior to March 2015, Plaintiffs had no reason to know how the Court would rule on the "commercial speech" issue.**

Meanwhile, Defendant the Society, for whom the Court had granted summary judgment in March 2015, moved for attorney's fees and costs under the Lanham Act. *See* DE 176. On August 6, 2015, the Court denied the motion, finding that Plaintiffs had not pursued their Lanham Act claim in a malicious, fraudulent, deliberate, or willful manner, such that the case could be considered the "exceptional" case to merit an award of attorney fees. *See* DE 227. The Court noted that resolving the Lanham Act question with regard to the Society had involved converting its motion to dismiss to one for summary judgment, considering dozens of exhibits, hearing oral argument, and issuing a lengthy and detailed ruling on the issue. *Id.* at 3. The Court noted that the ruling as to the Society "was the first substantive ruling on a Lanham Act claim" and it was "not as if, prior to the Court's ruling on the Society's motion, Plaintiffs had reason to know how the Court would rule." *Id.* Accordingly, the Court found that the Society was not entitled to fees under the Lanham Act.

**H.**      **After Defendant Novella indicates he plans to seek summary judgment, Plaintiffs ramp up discovery, again request leave to amend their complaint, and move for sanctions, accusing Defendant Novella of perjury.**

On June 26, 2015, Defendant Novella, now the only remaining defendant, moved for summary judgment. *See* DE 206. At Plaintiffs' request, the Court extended discovery deadlines to allow further written discovery, expert depositions, and a deposition of Defendant Novella's brother. *See* DE 212. Defendant Novella withdrew his summary judgment motion until this discovery was completed. *See* DE 215. This led to discovery motion practice and hearings before Magistrate Judge Brannon. *See* DE 219 (Novella's Motion for Protective Order); DE 222 (Order Setting Discovery Hearing); DE 232 (Order Setting Discovery Hearing).

On August 18, 2015, Plaintiffs again requested leave to amend their complaint, this time

to add a claim against Novella for violation of the Florida Deceptive and Unfair Trade Practices Act. *See* DE 241. This new claim would rest, Plaintiffs asserted, on statements Defendant Novella had posted on his website since the filing of the complaint, including statements about the present lawsuit. *Id.* at 3-4. In a brief order, the Court denied leave to amend "for all of the reasons previously stated on the record at the Court's Status Conference on June 18, 2015, as well as the timing of the Motion in relation to the dispositive motion deadline, which is imminent, and trial, which is two months hence." DE 245.

On August 25, 2015, Defendant Novella re-filed his motion for summary judgment. *See* DE 251. On August 31, 2015, Plaintiffs filed a motion for relief from judgment under Rule 60(b) and moved for sanctions against Defendant Novella under Florida Rule of Civil Procedure 37. *See* DE 258, 259.[4] These motions accused Defendant Novella of offering false testimony to the Court, and asked the Court to vacate its June 4, 2015 Order granting Defendant Novella's Anti-SLAPP motion, grant Plaintiffs leave to amend their complaint, extend discovery, and enter sanctions against Defendant Novella, including a default judgment and attorney's fees. This Court denied these motions on September 15, 2015. *See* DE 275.

## I.     Substitution of Counsel: O'Brien Enters the Case

On September 18, 2016, Jarod M. Bona and Aaron R. Gott of Bona Law, P.C. withdrew as counsel. *See* DE 276. Cullin O'Brien of O'Brien Law, P.A. was substituted as counsel for Plaintiffs. *Id.* Counsel Geoffrey Michael Cahen also remained on the case.

## J.     Order Granting Novella's Motion for Summary Judgment: The Court again rules that the articles at issue are not commercial speech under the Lanham Act.

On September 30, 2015, nine days after the motion became ripe, the Court granted Defendant Novella's motion for summary judgment. *See* DE 288. The Court again found that the articles published by Defendant Novella were not commercial speech under the Lanham Act or

---

[4] Corrected motions were filed the following day. *See* DE 260, 261.

for purposes of an unfair competition claim. *Id.* at 1. After noting that Plaintiffs' primary opposition to summary judgment was their contention that Defendant Novella had an "economic motivation" for the speech at issue, the Court held:

> It is "settled or beyond serious dispute" that "[s]peech . . . is protected even though it is carried in a form that is 'sold' for profit, . . . and even though it may involve a solicitation to purchase or otherwise pay or contribute money." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,* 425 U.S. 748, 761 (1976) . . . Thus, even if Defendant Novella directly earns money from an organization sponsoring or producing the speech, this alone would not make the speech commercial. Furthermore, the specific evidence elicited in this case regarding SGU does not point to a strong economic motivation for the speech. Although Plaintiffs argue that "[t]he flow of money to Novella . . . is significant, as [Jay] Novella testified to over $200,000 last year," DE 272 at 5-6 (citing DE 260-10 at 127-28), Jay Novella also testified that, despite this profit, SGU "made no profit after expenses" because "we reinvest the vast majority of the money back into the company when we have a positive cash flow." DE 261-10 at 154. Plaintiffs have failed to point the Court to any evidence that Defendant Novella is actually paid a salary or otherwise earns any personal income from SGU. Moreover, Jay Novella testified that the goal of SGU is "to educate people in science and critical thinking," DE 260-10 at 131-32, 154, which is consistent with the Court's prior observation that the content of the Articles is directed towards raising public awareness of scientific issues, rather than promoting an economic interest.

*Id.* at 7-8.

## K.     The Present Motions for Attorneys' Fees and Sanctions

Following the Court's grant of summary judgment for Defendant Novella, Novella filed the present Omnibus Motion for Attorneys' Fees and Costs. *See* DE 292. He seeks fees and costs under the California Anti-SLAPP Statute, the Lanham Act, and 28 U.S.C. § 1927. Insofar as the motion is under 28 U.S.C. § 1927, Novella seeks fees against Plaintiffs' counsel Cullin O'Brien, Geoffrey M. Cahen, Jarod M. Bona, and Aaron R. Gott. All Plaintiffs have opposed the motion. Plaintiffs' Counsel Bona and Gott have also filed a motion for sanctions under Federal Rule of Civil Procedure 11, alleging that the relief sought against them is frivolous.

## II.    DISCUSSION

### A.    Defendant Novella's Motion for Fees

The Court will first address Plaintiffs' general objections to an award of fees and costs under any of these statutes. The Court will then discuss Novella's entitlement to fees and costs under each of the statutes and, to the extent entitlement is found, the amount of those fees and costs.

#### 1.    Plaintiffs' General Objections to Recovery of Fees

Plaintiffs argue, first, that the motion for fees and costs should be denied because Novella has not produced his fee contract with his counsel, or produced evidence that Novella actually paid the attorney's fees to his counsel. *See* DE 304 at 8. The only authority Plaintiffs cite for this proposition is an opinion by Novella's expert, in an unrelated case involving fees under Florida law, where Novella's expert opined: "Without a fee contract it is impossible for the undersigned attorney to determine whether the hourly rate sought by Roca Labs is appropriate, *Miami Children's Hospital v. Tamayo*, 529 So. 2d 667 (Fla. 1988); *Perez-Borroto v. Brea*, 544 So. 2d 1022 (Fla. 1989)[.]" DE 304-2 at ¶ 9 (Affidavit of James C. Hauser). The Court does not find this persuasive, because the cited cases concern fee awards under Florida's medical malpractice statute, and the present motion seeks fees under California and federal law.

Second, Plaintiffs argue that the hourly rate sought by Novella's lead counsel, Marc Randazza, should be reduced because Randazza's affidavit in support of fees lacks credibility. *See* DE 304 at 9-10 (Response to Motion for Fees). Plaintiffs point to two legal proceedings unrelated to the present case: (1) a bankruptcy proceeding initiated by Randazza, *see* DE 304-10 at 15-28 (Bankruptcy Petition); and (2) an arbitration award finding that Randazza breached an employment agreement with a former employer, *see* DE 304-10 at 30-56. Plaintiffs also submit an affidavit from a representative of Randazza's same former employer, noting that Randazza

omitted that employer from his curriculum vitae and noting that the employer had alleged—in yet another case unrelated to the present one—that Randazza made inaccurate statements in a motion for attorney's fees filed on that employer's behalf. *See* DE 329-1 (Declaration of Jason Gibson).[5] Upon a careful review of these materials, the Court does not find them relevant to assessing the credibility of Randazza's affidavit in support of fees. The materials concern litigation wholly unrelated to the instant case and do not cast doubt on the reliability of the records and statements at issue here.

Lastly, to the extent Plaintiffs argue that there has been block-billing, over-billing, or other inappropriate billing practices, *see* DE 304 at 8-10 (Response to Motion for Fees), the Court finds that these allegations do not warrant an outright denial of Novella's motion for fees. The Court has reviewed the relevant records and the opinions of Plaintiffs' experts, *see* DE 304-3 (Declaration of John G. Heller); DE 304-10 (Declaration of Lester Langer), and has taken those opinions into account in determining the amount of fees to be awarded to Novella.

Accordingly, the Court now turns to the three statutes under which Novella seeks fees.

2. **The California Anti-SLAPP Statute**

    i. **Entitlement to Fees: The Court has previously ruled that Novella is entitled to recover fees from the California Plaintiff under California's Anti-SLAPP statute.**

When the Court granted Novella's Anti-SLAPP motion on June 4, 2015, the Court also ruled that Novella was entitled to fees and costs under California's Anti-SLAPP Statute, Cal. Civ. Proc. Code § 425.16(c)(1). *See* DE 193 at 16. Plaintiffs nevertheless attempt to re-argue the

---

[5] The employer raised this issue in an appeal of the award gained by that motion. *See* DE 329-1 at 28-41. The employer argued that Randazza had mischaracterized the employer as "incurring" or being "charged" the fees, even though Randazza was serving as the employer's general counsel at the time. DE 329-1 at 36. However, the employer did not actually seek to vacate the award; it noted that, despite the alleged mischaracterization, "the legal services rendered on [the employer's] behalf were 'worth' [the amount] maintained in [the employer's] motion[.]" *Id.*

issue of entitlement.[6] The arguments Plaintiffs now raise were either explicitly rejected by the Court in ruling on the Anti-SLAPP motion, or have not been previously raised at any point during this litigation. The Court declines to allow Plaintiffs to re-argue the issue of entitlement now, many months after the Court's ruling on the issue.

The Court does note that the Anti-SLAPP order was directed solely to Plaintiff Edward Lewis Tobinick, M.D., a California Medical Corporation, and not to the other Plaintiffs. *See* DE 193 at 4-5 (Order); DE 93 at 2-3 (Anti-SLAPP Motion). Accordingly, fees and costs under this statute can be recovered only against Plaintiff Edward Lewis Tobinick, M.D.

**ii. Amount of Fees: The Court finds that the fees sought by Novella's counsel should be reduced due to duplicative time entries and to reflect only time spent on the Anti-SLAPP motion; the Court also finds that a fee multiplier is not warranted.**

"A defendant prevailing on a special motion to strike [that is, an Anti-SLAPP motion] is entitled to recover its attorney fees and costs." *City of Industry v. City of Fillmore*, 129 Cal. Rptr. 3d 433, 456 (Cal. Ct. App. 2011). However, "[t]he defendant can recover only its fees and costs in connection with the motion, not the entire action." *Id.* "[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'" *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001) (quoting *Serrano v. Priest*, 569 P. 2d 1303 (Cal. 1977)). "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Id.* Additionally, the lodestar amount "may be adjusted by the court based on

---

[6] Plaintiffs argue that fees should not be awarded because: (1) the California Anti-SLAPP statute is unenforceable in federal courts under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); (2) the Anti-SLAPP procedure was fundamentally unfair to the non-California Plaintiffs because they had limited access to discovery; (3) the Anti-SLAPP motion achieved "no practical benefit" because the case continued even after the Court granted the motion; (4) the claims stricken under the Anti-SLAPP procedure were not frivolous; (5) the Anti-SLAPP motion improperly sought to strike the Lanham Act claims; (6) the Court implicitly denied this motion in an order denying all pending motions; and (7) Dr. Novella engaged in unconscionable litigation tactics and pretrial publicity. *See* DE 304 at 20-23.

factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Id.* "In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Id.*

Novella's counsel charged him $52,694.55 for researching, drafting, and presenting the Anti-SLAPP motion, and an additional $9,147.50 for responding to Plaintiffs' motion for reconsideration. *See* DE 292 at 10. Novella's counsel explains that these fees were discounted because the case was taken on a contingency basis; normally, Novella's counsel would have charged Novella $73,993.55 for work on the Anti-SLAPP motion and $10,995.00 for work on the motion for reconsideration. *Id.* Novella seeks a two-times fee enhancement multiplier due to the "novelty and complexity of the issues, the level of expertise of counsel, the contingency nature of a portion of the fees, and in recognition of the stated policy of discouraging meritless lawsuits." *Id.* at 11. Novella's counsel further seeks $31,980.50 for time spent bringing the instant fee motion. *Id.* Novella's counsel thus seeks a total fee award of $169,435.00 under the Anti-SLAPP Statute.

Plaintiffs raise several objections to the requested fees based on opinions from their experts, attorneys John Heller and Lester Langer. First, they contend that the fee records contain duplicate entries, *see* DE 304-5 (Heller's spreadsheet identifying duplicate entries), and that Novella's counsel is seeking recovery of time not related to litigating the Anti-SLAPP motion, *see* DE 304-4 (Heller spreadsheet identifying time entries not related to the Anti-SLAPP motion). Second, they contend that some of time records contain block billing. *See* DE 304-10 at 5-6 (Langer Declaration). Third, they contend that the hourly rates charged by Novella's counsel

are not reasonable. *See* DE 304 at 9-10 (Omnibus Opposition to Fee Motion). Last, they contend the fees should not be subject to a multiplier. *Id.* at 23.

With the exception of the challenge to Novella's counsel's hourly rates, the Court agrees with Plaintiffs. Novella's reply largely admits that his counsel's time records contain duplicative entries and that he sought recovery of time not related to litigation of the Anti-SLAPP motion. *See* DE 315 at 10 (Reply). Additionally, the Court does not find that this case contained novel issues or other factors that California courts have recognized as warranting a fee multiplier. The Court therefore agrees with Plaintiffs' expert, *see* DE 304-3 at 3 ¶ 4 (Heller Declaration), that Novella is entitled to recover **$36,186.00** in fees and costs under the California Anti-SLAPP statute.

### 3.  The Lanham Act

#### i.  Entitlement to Fees: The Court finds that this is an "exceptional" case warranting an award of fees under the Lanham Act.

Under the Lanham Act, a court may award a prevailing party reasonable attorney fees "in exceptional cases." 15 U.S.C. § 1117(a). "While Congress has not further defined 'exceptional,' the legislative history of the Act suggests that exceptional cases are those where the infringing party acts in a malicious, fraudulent, deliberate, or willful manner." *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (internal quotation marks omitted). An "exceptional" case may also be one in which "evidence of fraud or bad faith exists." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (internal quotation marks omitted). Based on *Burger King* and *Tire Kingdom*, it was previously understood that, in the Eleventh Circuit, "[b]ad faith or fraud [was] necessary for a case to be 'exceptional'" under the Lanham Act. *Cardinal Freight Carriers, Inc. v. Cardinal Logistics, Inc.*, 155 F. Supp. 2d 1352, 1354 (S.D. Fla. 2001).

Yet recently, in considering an identically worded fee provision in the Patent Act, the

13

Supreme Court rejected a standard from the Federal Circuit that required evidence of misconduct and subjective bad faith. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Supreme Court held that this standard was unduly rigid and not required by the common understanding of the word "exceptional":

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. . . .
>
> The Federal Circuit's formulation is overly rigid. Under the standard . . . a case is "exceptional" only if a district court either finds litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both "brought in subjective bad faith" and "objectively baseless." . . . This formulation superimposes an inflexible framework onto statutory text that is inherently flexible.

*Id.* Although the Eleventh Circuit has not yet considered the effect of *Octane Fitness* on its Lanham Act "exceptional case" jurisprudence, district courts in this circuit and other circuit courts have consistently held that a showing of subjective bad faith or fraud is no longer required. *See CarMax Auto Superstores, Inc. v. StarMax Fin., Inc.*, No. 615CV898ORL37TBS, 2016 WL 3406425, at *3 (M.D. Fla. June 21, 2016) (collecting cases); *Donut Joe's Inc. v. Interveston Food Servs., LLC*, 116 F. Supp. 3d 1290, 1292-93 (N.D. Ala. July 7, 2015) (same).

In evaluating whether this is an exceptional case, the Court considers the procedural history described *supra*, at the beginning of this Order. Novella argues that once the Court had granted the Society's motion for summary judgment and found that the speech at issue was not commercial speech, Plaintiffs' continued pursuit of the Lanham Act claims made this case "exceptional" and sanctionable under the Lanham Act. *See* DE 292 at 26. Plaintiffs' expert John G. Heller opines that this is not an exceptional case, first, because the Court's order granting summary judgment for the Society specifically stated that its ruling was only "with respect to the

14

Society." DE 304-3 at 21 ¶ 54(b). Second, he opines that the Court's preliminary injunction ruling that the speech was not commercial did not "obligate[] [Plaintiffs] to abandon the Lanham Act claim" because "that ruling was made in a different context, with a much higher bar, than either summary judgment or trial" because "a preliminary injunction is a drastic remedy[.]" *Id.* at 21 ¶ 54(c). Third, he opines that, in opposition to Novella's motion for summary judgment, Plaintiffs "submitted evidence demonstrating a financial link [that is, a potential financial motivation for the speech] which, though it failed to carry the day, represent[ed] a plausible explanation as to why" the speech could be considered commercial. *Id.* at 21-22 ¶ 54(d).

It is true that the Court's earlier rulings on the commercial speech issue were made as to different Defendants and in different procedural postures. Yet, it is also true that the Court's analysis of the commercial speech issue in each of these orders—its March 16, 2015 order granting summary judgment for the Society, its April 2, 2016 order denying Plaintiffs' motion for preliminary injunction; and its September 30, 2015 order granting summary judgment for Novella—is strikingly consistent. Plaintiffs repeatedly failed to produce new arguments or evidence to distinguish the Court's prior rulings.

Furthermore, after the Court had twice ruled against Plaintiffs on the commercial speech issue, and more than eleven months after the litigation began, Plaintiffs repeatedly sought to multiply the proceedings by adding new parties and claims. *See* DE 202, 241. After this was unsuccessful, Defendant Novella moved for summary judgment on the commercial speech issue. Seeing the proverbial writing on the wall, Plaintiffs then attempted to salvage their case by moving for sanctions and accusing Defendant Novella of perjury, an accusation that the Court found no evidence to support. *See* DE 258, 259, 275.

It is true that the Court previously denied the Society's motion for fees under the Lanham Act. *See* DE 227. The Society's motion for fees is distinguishable from the present motion by

Novella, however, because of the very different procedural posture of the case. In the Court's order denying the Society's motion for fees, the Court noted that it had needed to consider dozens of exhibits, hear oral argument, and issue a lengthy and detailed ruling before deciding in the Society's favor. *Id.* at 3. Furthermore, the Court noted that the ruling in favor of the Society was the Court's "first substantive ruling on a Lanham Act claim" and "prior to the Court's ruling on the Society's motion, Plaintiffs had no reason to know how the Court would rule." *Id.* With regard to Novella's motion for summary judgment, in contrast, the Court ruled on the motion just nine days after it became ripe, without hearing oral argument. At that point, Plaintiffs *did* have reason to know how the Court would rule, because the Court had already ruled, twice, that the speech at issue was not commercial speech.

Based on the totality of the record, particularly the Court's repeated rulings that the speech at issue was not commercial speech and Plaintiffs' belated attempts to inject new issues into the proceedings by making unsupported allegations of perjury, the Court finds this case to be an "exceptional" one meriting an award of fees under the Lanham Act.

### ii. Amount of Fees

The Court finds it appropriate to award Novella fees that were incurred after the Court's March 16, 2015 ruling, in its order granting summary judgment for the Society, that the speech at issue was not commercial speech and thus not actionable under the Lanham Act. According to Novella, the fees incurred thereafter total **$223,598.75**. *See* DE 292 at 32 (Motion); DE 292-5 at 6 (chart of fees). Unlike the Anti-SLAPP fees, Plaintiffs' experts have not specifically pointed the Court to any duplicative time entries or double-billing in these portions of the time records. Based on this, and the Court's independent review of the time records, *see* DE 292-3 at 26-68, the Court finds that an award of the full amount sought is appropriate.

### 4. Fees Against Plaintiffs' counsel under 28 U.S.C. § 1927

Novella seeks to hold Plaintiffs' current counsel—Cullin O'Brien and Geoffrey Cahen—and Plaintiffs' former[7] counsel—Jarod Bona, and Aaron Gott—jointly liable for fees incurred after this Court's March 16, 2015 ruling. Novella invokes 28 U.S.C. § 1927, which provides: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Eleventh Circuit has held that, three essential elements are necessary to award sanctions under this statute: (1) "the attorney must engage in 'unreasonable and vexatious' conduct"; (2) "that 'unreasonable and vexatious conduct' must be conduct that 'multiples the proceedings'"; and (3) "the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the 'costs, expenses and attorneys' fees reasonably incurred because of such conduct.'" *Peterson v. BMI Refractories*, 124 F. 3d 1386, 1396 (11th Cir. 1997). "An attorney's conduct meets the first of these conditions 'only when the attorney's conduct is so egregious that it is tantamount to bad faith.'" *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F. 3d 1252, 1262 (11th Cir. 2007). That is, "the attorney must *knowingly or recklessly* pursue a frivolous claim . . . Negligent conduct, standing alone, will not support a finding of bad faith under § 1927. . . . [S]omething more than lack of merit is required." *Id.* (finding district court did not abuse its discretion in awarding fees under § 1927).

Plaintiffs' counsel raise several arguments against sanctions under § 1927. First, they complain that Novella has not submitted any sworn evidence in favor of bad faith multiplication of proceedings, but "merely points to the outcome of certain motions." DE 304 at 16 (Omnibus Opposition to Fees Motion). Plaintiffs' counsel have not submitted any authority holding that

---

[7] Bona and Gott's withdrawal from the case does not preclude the imposition of sanctions against them under section 1927. *See Jallali v. U.S. Funds*, 578 F. App'x 965 (11th Cir. Aug. 28, 2014), *cert. denied sub nom. Bischoff v. USA Funds*, 135 S. Ct. 2313, 191 L. Ed. 2d 978 (2015).

this Court cannot consider the record and its own knowledge of the procedural history of this case when deciding whether to impose sanctions under § 1927. *Cf. Murray v. Playmaker Servs., LLC*, 548 F. Supp. 2d 1378, 1382 (S.D. Fla. 2008) ("Bad faith [for purposes of fees under § 1927] can be either objective or subjective.").

Second, Plaintiffs' counsel argue that the Court's previous denial of Novella's § 1927 motion mitigates against an award. The order counsel is referring to merely stated that the motion was denied without prejudice because "the issues raised therein would be more suitably decided after the conclusion of the case." DE 190. That Order in no way precludes Novella from seeking relief now. In fact, the Order explicitly invited Novella to "refile the Motion if he so chooses after a final judgment on the merits has been rendered." *Id.*

Finally, Plaintiffs' counsel argue, in short, that what Novella characterizes as multiplication of the proceedings were merely attempts to cure defects in Plaintiffs' case regarding the commercial speech issue, which the Court had identified in its previous orders. *See* DE 304 at 18-20. The Court is mindful that it should not punish counsel under § 1927 merely for zealous advocacy or for being on the losing side of a case. The Court also notes that Plaintiffs' counsel were not involved in this litigation from its inception to its conclusion, and is therefore inclined to offer them the benefit of the doubt. Accordingly, despite the Court's conclusion that Plaintiffs' conduct justifies an award of fees against them, the Court is unwilling to find that Plaintiffs' counsel's conduct is tantamount to bad faith. An award of fees against Plaintiffs' counsel under § 1927 is therefore inappropriate. *See Peterson*, 124 F. 3d at 1396; *Hudson*, 499 F. 3d at 1262.

**B.      Motion for Sanctions by Attorneys Bona and Gott**

Bona and Gott's motion for sanctions is based on their contention that Novella's motion for sanctions against them under 28 U.S.C. § 1927 is frivolous. *See* DE 317. As discussed *supra*, the Court disagrees. Accordingly, this motion is denied.

### III.      CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1.  Defendant's Omnibus Motion for Attorneys' Fees and Costs [DE 292] is **GRANTED IN PART and DENIED IN PART**.

2.  Jarod M. Bona and Aaron R. Gott's Motion for Sanctions under Fed. R. Civ. P. 11 [DE 320] is **DENIED**.

3.  On or before **Tuesday, September 13, 2016**, Defendant Novella shall submit a proposed final judgment of attorneys' fees and costs that is consistent with this Order. The proposed judgment shall be emailed in Word format to Rosenberg@flsd.uscourts.gov, with the email copied to all counsel of record.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 8th day of September, 2016.

Copies furnished to:                         ROBIN L. ROSENBERG
Counsel of Record                            UNITED STATES DISTRICT JUDGE