UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-80781-CV-Rosenberg/Hopkins

EDWARD LEWIS TOBINICK, M.D., et al.,

Plaintiffs,

v.

M.D. STEVEN NOVELLA, et al.,

Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR APPELLATE ATTORNEYS' FEES AND COSTS (DE 366, 367, 368)

**THIS CAUSE** is before this Court upon the District Court's Referral Order (DE 369). Presently before the Court are motions by Defendants Dr. Steven Novella and the Society for Science-Based Medicine, Inc. ("the Society") for reimbursement of their appellate fees and costs. (DE 366). Plaintiffs filed response papers and Defendants filed replies. (DE 368). On August 22, 2017, the Eleventh Circuit Court of Appeals granted the Society's motion as to entitlement and transferred the motion to the District Court to determine the reasonable amount of fees and costs to be awarded. (DE 366 at pgs. 2-3). The Eleventh Circuit also transferred Dr. Novella's motion to this Court to consider the issues of both entitlement and a reasonable fee amount, if any. *Id.*[1]  For the reasons that follow, this Court **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Dr. Novella's motion for appellate

_____

[1]  The Eleventh Circuit denied Plaintiffs' cross-motions for attorneys' fees and costs. (DE 366).

attorneys' fees and costs, and **GRANT IN FULL** the amount of appellate attorneys' fees sought by Defendant the Society for Science-Based Medicine, Inc.

## BACKGROUND

This appeal stems from a dispute between two doctors, Dr. Tobinick and Defendant Dr. Novella, about the efficacy of using a certain drug to treat spinal pain, neurological dysfunctions, and Alzheimer's disease. Dr. Novella doubted Dr. Tobinick's purported success in using the drug for such purposes, which had not been approved by the FDA,[2] and he published an article critical of Dr. Tobinick on the Science-Based Medicine blog. Upon learning of the article, Dr. Tobinick's medical corporation (Plaintiff Edward Lewis Tobinick, MD) filed the underlying lawsuit alleging false advertising under the Lanham Act, unfair competition, libel, and tortious interference with business relationships. (DE 1). In response, Dr. Novella published another article opining that the lawsuit was intended to silence Dr. Tobinick's critics.[3]

Ultimately, the District Court granted Defendants' motions to dismiss and for summary judgment, and awarded Dr. Novella his attorneys' fees and costs (DE 333, 334). Specifically, the District Court awarded Dr. Novella $223,598.75 in sanctions under the Lanham Act, as well as $36,186.00 in attorneys' fees and costs pursuant to California's Anti-SLAPP statute. (DE 334).[4] Plaintiffs appealed the District Court's rulings, but the Eleventh Circuit affirmed them in

---

[2]  The drug had only been FDA approved to treat rheumatoid arthritis.

[3]  Dr. Tobinick then amended his complaint to include allegations about Dr. Novella's second article.

[4]  California's Anti-SLAPP statute was enacted in response to a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional right[ ] of freedom of speech" and to "encourage continued participation in matters of public significance . . . [which] should not be chilled through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a). The statute provides that a defendant who prevails on an Anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs." §425.16(c)(1).

all respects. (DE 365). *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935 (11th Cir. 2017).

Currently before the Court is Dr. Novella's motion seeking $120,280.00 for the attorneys' fees and costs he incurred in successfully defending against this appeal.[5]   Also pending is the Society's motion which seeks $27,220.00 in appellate attorneys' fees.

## DISCUSSION

### 1.  Dr. Novella's Entitlement to Appellate Attorneys' Fees and Non-taxable Expenses

Dr. Novella seeks to recover his appellate attorneys' fees and costs under both the Lanham Act and California's Anti-SLAPP statute.

#### A.   The Anti-SLAPP Statute

According to the Amended Complaint, jurisdiction in this case arises under 28 U.S.C. § 1331 based on Plaintiffs' allegation that Defendants violated the Lanham Act.  (DE 55). Plaintiffs sought to have the Court exercise supplemental jurisdiction over the state law claims, which included Dr. Novella's Anti-SLAPP motion, brought pursuant to California law.  Dr. Novella prevailed on his Anti-SLAPP motion in the underlying case and the District Court awarded him attorneys' fees and costs in connection with that claim.  Plaintiffs challenged this ruling on appeal, but Dr.Novella once again triumphed.  Thus, he now seeks reimbursement for defending on appeal the District Court's decision to strike Plaintiff's claims for unfair competition and libel, in accordance with the Anti-SLAPP statute.

Under the "American Rule," each party to a lawsuit is generally responsible for its own attorneys' fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  Thus, the general rule in

---

[5]   Specifically, Dr. Novella seeks $110,947.50 in attorneys' fees and non-taxable expenses for defending on appeal the Anti-Slapp and Lanham Act claims, and $9,332.50 in fees incurred by the instant motion.

federal courts is that "absent an express statutory command, attorney's fees will not be awarded in civil cases." *Home Sav. Bank, F.S.B. v. Gillam*, 952 F.2d 1152, 1162 (9th Cir. 1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 262 (1975)). However, an award of attorneys' fees may be proper where a valid contract or statute shifts fees to a losing party. *Royal Hawaiian Orchards, L.P. v. Olson*, 2015 WL 6039202, at *2 (C.D. Cal. Oct. 15, 2015). Where it is state law that allows for a fee award, "federal courts must look to that law to determine the propriety of such an award." *Id.* (citing *Michael–Regan Co., Inc. v. Lindell*, 527 F.2d 653, 656 (9th Cir. 1975)).  *See also Indep. Living Ctr. of S. California v. Maxwell-Jolly,* 2015 WL 4162471, at *8 (C.D. Cal. July 6, 2015) ("state law with respect to attorneys' fees applies in federal court only where state substantive law governs the underlying action . . . federal courts apply state attorneys' fee statutes when . . . 'exercising supplemental jurisdiction over state law claims,' because in such cases 'the federal court applies the substantive law of the state to the claim'") (quoting *City of San Jose v. San Jose Police Officers' Ass'n*, 2013 WL 4805453 (N.D. Cal. Sept. 9, 2013)).  Accordingly, "[e]ligibility for an award of attorneys' fees and costs on [California] state law claims is a matter of California law." *Indep. Living Ctr. of S. California,* 2015 WL 4162471, at *6 (quoting *Pearson v. Green Tree Serv., LLC,* 2015 WL 632457, at *2 (N.D. Cal. Feb.13, 2015)).

In California, the Anti-SLAPP statute specifically mandates an award of attorneys' fees and costs for a prevailing defendant, and since Dr. Novella prevailed on his Anti-SLAPP motion, he was awarded his fees and costs by the District Court in the underlying lawsuit.  By extension, California law also mandates recovery at the appellate level.  Under California law, "[a] statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise."  *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th

459, 489, 178 Cal. Rptr. 3d 784, 809 (2014).   Notably, the Anti-SLAPP statute "does not preclude recovery of appellate attorney fees by a prevailing defendant-respondent; hence they are recoverable."  *Id.* (citing *Lucky United Properties Investment, Inc. v. Lee*, 185 Cal. App. 4th 125, 138–139, 110 Cal. Rptr. 3d 159 (2010)).   Accordingly, Dr. Novella is entitled to reimbursement of a reasonable amount of attorneys' fees and costs spent defending the Anti-SLAPP ruling on appeal.

### B.   The Lanham Act Claim

Only in "exceptional cases" brought under the Lanham Act, is the court permitted to award reasonable attorney fees to the prevailing party.  15 U.S.C. 1117(a).  While Congress has not defined what constitutes "exceptional," courts have traditionally relied on the legislative history of the Act which suggests that exceptional cases are those where the infringing party acts in a "malicious," "fraudulent," "deliberate," or "willful" manner.  *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994).

However, in its decision granting attorneys' fees to Dr. Novella in the underlying case, the District Court relied upon a recent U.S. Supreme Court case which interpreted identical language in the Patent Act much more broadly.  Specifically, the Supreme Court "reject[ed] a standard from the Federal Circuit that required evidence of misconduct and subjective bad faith" as being "unduly rigid" and "impermissibly encumber[ing]" the district court's discretion to award fees.  (DE 333 at pgs. 13-14) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014)).  "The Supreme Court held that this standard was . . . not required by the common understanding of the word "exceptional."  *Id.* (citing *Octane Fitness, LLC*, 134 S. Ct. at 1756) ("an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and

the facts of the case) or the unreasonable manner in which the case was litigated").  Following the recent trend in the case law, the District Court here relied on the guidance provided by the Supreme Court, which stated that courts may determine whether a case is "exceptional" based on a "case-by-case exercise of their discretion, considering the totality of the circumstances."  *Id.*

In making its assessment of exceptionality, the District Court considered the procedural history of this case, noting Plaintiffs' stubborn disregard of the Court's earlier rulings that Dr. Novella's articles did not constitute commercial speech.  The Court noted that Plaintiffs flouted these adverse rulings by "repeatedly [seeking] to multiply the proceedings by adding new parties and claims," even going so far as to raise an "unsupported allegation[ ] of perjury."  (DE 333 at pgs. 15-16).  Given Plaintiffs' unreasonable litigation strategy, the District Court concluded that Plaintiffs' unsuccessful Lanham Act claim constituted an exceptional case which warranted the imposition of attorneys' fees.  (DE 333).

Undeterred, Plaintiffs continued to pursue this course on appeal.  Indeed, Plaintiffs filed a 108-page brief and repeated many of the same unsuccessful arguments raised below.[6]  Plaintiffs also attempted (unsuccessfully) to raise an *Erie* question for the first time on appeal, notwithstanding that Plaintiffs' counsel "explicitly conceded" the issue when the District Court alerted counsel to it in the proceedings below.  *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d at 945 (Court declined to consider the merits of Plaintiffs' *Erie* challenge which was conceded by counsel and raised for the first time on appeal).

---

[6]  The Eleventh Circuit noted that Plaintiffs only presented "circumstantial evidence" to support their claim of actual malice and that "even [if] all of [it]" were taken as true, it would still be "insufficient."  *Edward Lewis Tobinick, MD*, 848 F.3 at 946.  Moreover, according to the Eleventh Circuit, Plaintiffs were "unable to point to a definitively false statement[ ]" by Dr. Novella.  *Id.*  The Court also highlighted Plaintiffs' mischaracterization of the evidence, which accused Dr. Novella of "falsely impl[ying]" that Dr. Tobinick committed health fraud, while observing that "the article itself, however, never states that Dr. Tobinick is committing or has committed health fraud."  *Id.* at 946-47.  Finally, the Court of Appeals rejected Plaintiffs' argument that Dr. Novella's articles were "commercial speech" under the Lanham Act, declaring that Plaintiffs' claim "relies on such a level of attenuation" that it must fail.  *Id.* at 951.

These ill-founded appellate tactics mimic the inadvisable strategy Plaintiffs pursued below, and as such, this Court finds that Plaintiffs' continued unreasonable conduct on appeal warrants an award of appellate fees to Dr. Novella, pursuant to the Lanham Act's carve-out for "exceptional cases." *See Burger King Corp.*, 15 F.3d at 168 (where district court deemed it an exceptional Lanham Act case and awarded attorneys' fees, the Eleventh Circuit, in affirming the district court's findings, also awarded appellate attorneys' fees).

Accordingly, this Court finds that Dr. Novella is entitled to recovery of his appellate attorneys' fees and will consider the reasonableness of the amount sought.

## 2.  Calculation of Attorneys' Fees: the Lodestar Method

In calculating attorney fee awards, federal courts use the lodestar method, whereby a reasonable fee award is "properly calculated by multiplying the number of hours reasonably expended times a reasonable hourly rate." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (*citing Blum v. Stenson*, 465 U.S. 886, 888 (1994)).[7]  This "lodestar" may then be adjusted for the results obtained.  *See Barnes*, 168 F.3d at 427 (*citing Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994)).[8]

---

[7]  Likewise, the lodestar method is "the primary means of calculating the reasonableness of attorney fees in California."  *Roos v. Honeywell Int'l, Inc.*, 241 Cal. App. 4th 1472, 1495, 194 Cal. Rptr. 3d 735, 753 (2015).

[8]  In computing the lodestar amount, courts should consider: (1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature; (4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained; (5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and (8) whether the fee is fixed or contingent. *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010).  *See also Johnson v. Georgia Highway Express,*

The reasonable hourly rate is defined as the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Barnes*, 168 F.3d at 436 (*quoting Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1999)). The fee applicant bears the burden of establishing the claimed market rate. *See Barnes*, 168 F.3d at 427.

The Court must consider "what a reasonable, paying client would be willing to pay," bearing in mind "*all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees," including the *Johnson* factors. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184, 190 (2d Cir. 2008)(court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively")(*emphasis in original*). In addition, the Court may consider prior hourly rates awarded to other attorneys of similar experience in the community and also the Court's own knowledge of the rates charged by local practitioners. *See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006)("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate."). *See also Norman*, 836 F.2d at 1303 ("[t]he court . . . is itself an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees . . .").

As to the type of evidence that the fee claimant should produce in support of a fee claim, in *Barnes*, the Eleventh Circuit stated,

> The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates. That burden includes supplying the court with specific and detailed evidence from which the court can determine the

---

*Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)(listing nearly identical factors to consider in determining a reasonable attorney's fee).

> reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity.

168 F.3d at 427 (citations and quotations omitted).

In submitting a request for attorney's fees, fee applicants are required to exercise "billing judgment." *Barnes*, 168 F.3d at 428 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, which are hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel*," the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (*quoting Norman*, 836 F.2d at 1301 (*emphasis in original*)).

**A. <u>Number of Timekeepers and Hours Expended</u>**

Dr. Novella's application seeks reimbursement for fees generated by six attorneys during the approximately fifteen month period that this appeal was pending. (DE 366). As an initial matter, the Court finds that assigning six attorneys to defend against Plaintiffs' appeal was excessive. *See ACE Ltd. v. CIGNA Corp.,* 2001 WL 1286247, *5 (S.D.N.Y. Oct. 22, 2001)(where case was "overstaffed" by "numerous attorneys and paraprofessionals," court took such factors into consideration and reduced the fee requested accordingly)(*citing General Elec. Co. v. Compagnie Euralair, S.A.*,1997 WL 397627, *4-5 (S.D.N.Y. July 3, 1997)).

Therefore, the Court will begin its reduction of the fees sought by Dr. Novella by eliminating the three attorneys whose combined hours (21.2) totaled a mere fraction of the

overall attorney hours spent (276.8). Clearly, the bulk of the work for this appeal was done by Marc Randazza, Jay Wolman, and Alex Shepard. (DE 366 at pgs. 115, 117, 119, 234). [9]

The Court has assessed the billing records submitted by these three attorneys and finds that the time spent defending the variety of issues raised by Plaintiffs on appeal was warranted. Indeed, Plaintiffs raised five issues in their appellate brief, thus justifying Dr. Novella's lengthy 80-page responsive brief. As Attorney Randazza observed, "[o]wing to the sheer volume of issues, including those raised for the first time on appeal, this appeal was more complex than is typical." (DE 366 at p. 72). Defense counsel's motion also notes that a concerted effort was made to "avoid[ ] duplication of work" by dividing responsibilities so that Mr. Wolman and Mr. Shepard were primarily responsible for research and drafting, and Mr. Randazza determined litigation strategy and made the ultimate decisions. *Id.* at p. 71. This division of tasks is reflected in the billing records, which reveal minimal overlap of work.

In addition to preparing the opposition brief, Dr. Novella's attorneys were also involved in the filing of multiple *amici curiae* briefs, and they spent significant time preparing for oral argument before the Eleventh Circuit. Moreover, Dr. Novella's attorneys spent time preparing a mandatory mediation statement, as well as responding to three Notices of Supplemental Authority filed by Plaintiffs. Finally, the Court finds that Dr. Novella is entitled to recover for the time his attorneys' spent litigating his entitlement to his appellate "fees on fees." *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("Federal courts . . . have uniformly held that the time spent in establishing the entitlement to and the amount of the fee is compensable."). Accordingly, the Court finds that Dr. Novella should be compensated for

---

[9] To the extent that Plaintiffs attempt to undermine the credibility of Dr. Novella's lead counsel, Marc Randazza, the District Court has already rejected such arguments as irrelevant, and thus, they will not be reconsidered here. (DE 333 at pgs. 9-10).

the time these attorneys spent as follows: 63.6 hours by Mr. Randazza; 107.6 by Mr. Wolman; and 59.7 hours by Mr. Shepard.[10]

Next, the Court will assess whether the hourly rates charged by Attorneys Randazza, Wolman and Shepard were reasonable.

### B.  Hourly Rates

Marc Randazza is the founder and managing partner of Randazza Legal Group, PLLC. He received his law degree from Georgetown University, and is licensed to practice law in five states (California, Nevada, Florida, Massachusetts, and Arizona).   He specializes in First Amendment litigation and has testified before legislative bodies drafting Anti-SLAPP statutes. Mr. Randazza charged an hourly rate of $650.00 for the appeal in this case, which rate was previously approved by the District Court in the underlying litigation.

Jay Wolman has been practicing law for 15 years and is admitted in Connecticut, New York, Massachusetts, and the District of Columbia.  His hourly rate for this appeal was $400.00, which was previously approved by the District Court in the underlying litigation.

Alex Shepard is an associate attorney who earned his law degree in 2013 from Washington University.  He is admitted to practice law in California and Nevada.  Mr. Shepard charged $325.00/hour for his work on this appeal, which was also approved by the District Court in the underlying litigation.

Given that the District Court has already approved these hourly rates in this case, this Court will not revisit that determination here.

---

[10]   The Court calculated these hours by adding the time each attorney spent on the Anti-SLAPP and Lanham Act claims (jointly), plus the time spent on the attorneys' fee motion.  According to defense counsel, the "vast majority of time spent defending the appeal falls under the 'joint' billing category, where such is inextricably intertwined with both the Anti-SLAPP issues and the Lanham Act issues, such that no line-by-line separation can reasonably be made."  (DE 366 at p. 78).

### C. <u>Paralegal Time</u>

Consistent with the Court's handling of multiple attorney timekeepers above, the Court will similarly reduce certain administrative time spent.  Specifically, the Court will eliminate the 4.1 hours spent by a legal assistant, Elizabeth Fricker, but the Court will carefully consider the 42 hours spent by paralegal Trey Rothell, since it is evident that he was heavily involved in the appeal.  Defense counsel's filings indicate that Mr. Rothell has a Bachelor of Science degree and that his hourly rate is $150.00, however, there is no information about the length of his experience. In light of these facts, the Court recommends that his hourly rate be reduced to $125.00.  *See HPC US Fund 1, L.P. v. Wood*, 2016 WL 7636373, at *2 (S.D. Fla. Apr. 22, 2016)(reducing paralegal's hourly rate from $150 to $125).

With regard to the activities performed by paralegals, the general rule is that where the work performed is that normally performed by an attorney, paralegal time may be included as part of an attorney's fee award.  *See Jean v. Nelson*, 863 F.2d 759, 778-80 (11th Cir. 1988) (time spent by paralegals and law clerks could be reimbursed to the extent that the work was normally done by an attorney).  However, work that is primarily clerical in nature is not reimbursable.  *See Knight v. Paul & Ron Enterprises, Inc.,* 2015 WL 2401504, at *8 (M.D. Fla. May 19, 2015) (work that is clerical or secretarial in nature is not recoverable). *See also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) ("The relevant inquiry for requested paralegal fees is whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder.")(citation omitted). Here, there is evidence that Mr. Rothell performed some administrative tasks (such as calendaring deadlines and transcribing dictation), but also some substantive tasks (such as researching rules and drafting a motion for an extension of time).  The Court finds that Mr.

Rothell performed substantive work approximately 50% of the time and will reduce his billable hours to 21.

### 3.  Dr. Novella's Motion for Non-taxable Costs

Generally, courts are limited in awarding costs and can only do so as provided by statute. Indeed, the Supreme Court has held that "absent explicit statutory or contractual authorization for the taxation of costs, federal courts are bound by the limitations set forth in 28 U.S.C. § 1821 and § 1920." *Crawford Fitting Co. v. J.T. Gibbons Inc.*, 482 U.S. 437, 441 (1987).  Dr. Novella argues that he is entitled to recover his non-taxable expenses pursuant to the costs provision of the Anti-SLAPP statute. Specifically, Dr. Novella seeks reimbursement of $1,435.84 for printing, copying, Westlaw costs, and travel expenses associated with the oral argument.  While these items might ordinarily be recoverable as non-taxable expenses, counsel's failure to support the request with invoices renders these expenses unrecoverable. *See* S.D. Fla. Local Rule 7.3(a)(6) (requiring movant to "document with invoices" all non-taxable expenses).[11]

### 4.  The Society's Motion for Appellate Attorneys' Fees

The opening paragraphs of the Society's motion for appellate fees succinctly describes why this is an exceptional case under the Lanham Act for which fees should be awarded.

> On numerous occasions throughout these appellate proceedings, the Society sought clarification from Appellants regarding whether they sought reversal of the district court's Order granting final summary judgment to the Society in order to determine whether the Society's participation in these proceedings was necessary . . . Appellants, however, refused to provide such clarification, going as far as filing a Response in opposition to the Society's Motion to Dismiss itself from the appeal despite the fact that their Initial Brief did not raise any issue alleging error pertaining to the district court's grant of summary judgment to the Society.  As a result, the Society was forced to expend resources preparing a Motion to Dismiss, a Reply thereto, and an Answer Brief, as well as preparing for and attending oral

---

[11]  The Court notes that Dr. Novella's taxable appellate expenses were already awarded by the Eleventh Circuit.

argument, and all for naught ultimately, as Appellants conceded at oral argument that they were not seeking to bring the Society back into this litigation.

(DE 366 at pgs. 9-10).

Based on this egregious conduct, the Eleventh Circuit concluded that the Society was entitled to recover its appellate attorneys' fees. All that remains for this Court is to make a recommendation regarding the reasonable amount to be awarded. The Society seeks to recover $27,220.00 in appellate attorneys' fees.

Three attorneys worked on this appeal on behalf of the Society. Attorney Scott Cole, of the law firm Cole, Scott & Kissane, P.A., has been practicing law in Florida for over twenty years, and spent 30.3 hours on this appeal. Attorney Edward Polk, who is a partner at the firm and has also been practicing law for over twenty years, spent 10.2 hours on the appeal; and Attorney Alexandra Valdes, who is a fourth-year associate at the firm, spent 114 hours on this appeal. All three attorneys seek an hourly rate of $160.00.

At the outset, the Court finds that the hourly rate charged by these three attorneys is well below that customarily charged in this market by lawyers with similar experience, and therefore, it is eminently reasonable. The Court has also reviewed the time spent on this appeal and finds it to be reasonable. Notably, Plaintiffs' opposition to the Society's motion for appellate fees primarily objects on entitlement grounds, which the Eleventh Circuit has already rejected. In terms of the amount sought, Plaintiffs only make general allegations of "improper billing" (DE 368-4 at pgs. 29-30) that this Court declines to adopt. For these reasons, this Court finds that the Society's request for appellate attorneys' fees in the amount of $27,220.00 should be granted.

## RECOMMENDATION

In conclusion, this Court **RECOMMENDS**

1)  that the District Court **GRANT IN PART AND DENY IN PART** Defendant Dr.

Novella's Motion for Appellate Attorneys' Fees and Costs as follows:

Attorneys' Fees          $103,587.50 [12]

Paralegal Fees          $   2,625.00

TOTAL:                             $106,212.50

2)  that the District Court **GRANT** Defendant The Society for Science-Based Medicine

Inc.'s Motion for Appellate Attorneys' Fees as follows:

Attorneys' Fees          $ 27,220.00


## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within fourteen (14) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that "[w]ithin fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."); *see also* Fed. R. Civ. P. 72(b) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy"). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained

---

[12]  As the District Court declined to award Dr. Novella a fee multiplier for time counsel spent on the Anti-SLAPP motion below, so too does this Court decline to recommend a fee multiplier on appeal.

herein. *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).


**DONE and SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 29th day of November, 2017.


JAMES M. HOPKINS
United States Magistrate Judge